**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTIE VAN, CHARMELLA LEVIEGE MARIA PRICE, HELEN ALLEN each Individually and on behalf of other similarly Situated persons** | ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **vs.** | ) ) | **Case No.** |
| **FORD MOTOR COMPANY** | ) ) ) | **JURY DEMANDED** |
| **Defendants.** | ) ) | |

**CLASS ACTION COMPLAINT FOR INJUNCTIVE,
<u>MONETARY AND CLASS WIDE RELIEF</u>**

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,
HUNT & ASSOCIATES, P.C.

By: /s/ Keith L. Hunt (electronic signature)
An Attorney for Plaintiffs

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
Three First National Plaza,
Suite 2100
Chicago, Illinois 60602
(312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com
*Attorneys for Plaintiffs*

**TABLE OF CLAIMS**

| COUNT | PARTY | CLAIM | PARAGRAPHS | PAGE |
|---|---|---|---|---|
| COMMON | ALL | COMMON ALLEGATIONS | 1 - 45 | 1 |
| 1 | VAN | SEX HARASSMENT | 46 - 51 | 10 |
| 2 | VAN | SEX DISCRIMINATION | 52 – 56 | 14 |
| 3 | LEVIEGE | SEX HARASSMENT | 57 - 67 | 14 |
| 4 | LEVIEGE | SEX DISCRIMINATION | 68 - 72 | 18 |
| 5 | PRICE | SEX HARASSMENT | 73 - 77 | 19 |
| 6 | PRICE | SEX DISCRIMINATION | 78 - 82 | 22 |
| 7 | ALLEN | SEX HARASSMENT | 83 - 100 | 22 |
| 8 | ALLEN | SEX DISCRIMINATION | 101 - 105 | 27 |
| 9 | VAN | TITLE VII RACE | 106 - 126 | 27 |
| 10 | VAN | §1981 RACE | 127 - 131 | 30 |
| 11 | LEVIEGE | TITLE VII RACE | 132 - 151 | 31 |
| 12 | LEVIEGE | §1981 RACE | 152 - 156 | 33 |
| 13 | PRICE | TITLE VII RACE | 157 - 177 | 34 |
| 14 | PRICE | §1981 RACE | 178 - 182 | 36 |
| 15 | ALLEN | TITLE VII RACE | 183 - 198 | 37 |
| 16 | ALLEN | §1981 RACE | 199 - 203 | 39 |
| 17 | VAN | RETALIATION | 204 - 208 | 39 |
| 18 | LEVIEGE | RETALIATION | 209 - 213 | 42 |
| 19 | PRICE | RETALIATION | 214 - 218 | 43 |
| 20 | ALLEN | RETALIATION | 219 - 223 | 44 |
| 21 | LEVIEGE | ADAAA | 224 - 233 | 46 |
| 22 | VAN | ADAAA | 234 - 248 | 47 |
| 23 | VAN | BATTERY | 249 - 252 | 49 |
| 24 | LEVIEGE | BATTERY | 253 - 256 | 49 |
| 25 | PRICE | BATTERY | 257 - 260 | 50 |
| 26 | ALLEN | BATTERY | 261 -264 | 51 |
| 27 | VAN | ASSAULT | 265 - 268 | 51 |
| 28 | LEVIEGE | ASSAULT | 269 - 272 | 52 |
| 29 | PRICE | ASSAULT | 273 - 276 | 53 |
| 30 | ALLEN | ASSAULT | 277 - 280 | 53 |

| 31 | VAN | IIED | 281 - 285 | 54 |
|----|-----|------|-----------|----|
| 32 | LEVIEGE | IIED | 286 - 290 | 54 |
| 33 | PRICE | IIED | 291 - 295 | 55 |
| 34 | ALLEN | IIED | 298 - 302 | 56 |
|    | ALL | PRAYER FOR RELIEF |  | 56 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHRISTIE VAN, CHARMELLA LEVIEGE** ) | |
| **MARIA PRICE, HELEN ALLEN each** ) | |
| **Individually and on behalf of other similarly** ) | |
| **Situated persons** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No.** |
| ) | |
| **FORD MOTOR COMPANY** ) | |
| ) | **JURY DEMANDED** |
| ) | |
| **Defendants.** ) | |

**CLASS ACTION COMPLAINT FOR INJUNCTIVE,**
**MONETARY AND CLASS WIDE RELIEF**

The plaintiffs, Christie Van, Charmella Leviege, Maria Price and Helen Allen, ("The Named Plaintiffs") each individually and on behalf of other persons similarly situated, complains against the defendants, Ford Motor Company and the Ford Chicago Assembly Plant as follows:

1.      This is a proceeding for declaratory and injunctive relief and damages to redress the deprivation of Plaintiffs', and other similarly situated individuals', civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. '2000e et seq. ("Title VII"),under 42 U.S.C. ' 1981 (Section 1981") and under the Americans With Disabilities Act (ADAAA) 42 U.S.C. §12101.

**JURISDICTION AND VENUE**

2.      Jurisdiction of this court is invoked Title VII, 42 U.S.C. '2000e-5, 42 U.S.C. § 1981 and §1981a, the ADAAA (29 USC §12101) as well as  28 U.S.C. §1337 and §1343.

This Court also has jurisdiction over the state law claims pursuant to the supplemental jurisdiction statute, 28 U.S.C. §1367.

3.      Defendants further constitute "employers" within the meaning of Title VII, 42 U.S.C. §2000e-(b), based on their engagement in an industry affecting commerce and their employment of fifteen (15) or more employees for each workup day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

4.      Prior to filing this civil action, the Named Plaintiffs timely filed written charges under oath asserting employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). The Named Plaintiffs received notices of Right to Sue. (The plaintiffs' Charges and Notices of Right to Sue and Exhibits A through F).

5.      Each of the Named Plaintiffs timely filed this action in federal court.

6.      The unlawful employment practices stated herein were, in part, committed within the Northern District of Illinois.  Accordingly, venue thus lies within this judicial district under 28 U.S.C. '1391(b).  Venue further lies within this judicial district under 28 U.S.C. '1391(c), since Defendant Ford Motor Company does business in this judicial district. Ford operates at least three (3) plants and assembly facilities in this judicial district.

## THE PARTIES

7.      The plaintiff, Christy Van, is a resident of Calumet City, Illinois and resides within this judicial district.

8.      The plaintiff, Charmella Leviege, is a resident of Merrillville, Indiana, and works within this judicial district.

2

9.     The plaintiff, Maria Price, is a resident of Riverdale, Illinois and resides within this judicial district.

10.     The plaintiff, Helen Allen, is a resident of Glenwood, Illinois and resides within this judicial district.

11.     The other putative members of the plaintiff class all live or work within this judicial district.

12.     The defendant Ford Motor Company operates the Ford Chicago Assembly Plant and the Ford Chicago Stamping Plant in Cook County, Illinois and within this judicial district.

13.     Each of the Named Plaintiffs works at the Chicago Assembly Plant.

14.     In addition to the Named plaintiff's there are hundreds of other women working at the plant who have been subjected to, or who work within, the same hostile working environment in which the Named Plaintiffs are employed.

15.     At least a dozen women (and perhaps scores more) other than the Named Plaintiffs have filed EEOC charges and/or filed internal complaints.

**CLASS ALLEGATIONS**

16.     The Named Plaintiffs are asserting class claims for sex discrimination and sexual harassment under Title VII, as well as individual claims on other bases.

17.     Prior to this lawsuit, at least nine people sued Ford for sexual harassment, sex discrimination, race discrimination, assault, battery intentional infliction of emotional

distress and negligent retention in *Rivera v. Ford Motor Company, No.* 95 C 2990 in the

United States District Court for the Northern District of Illinois.

18.     In 1997, a total of 14 women filed a class action lawsuit against Ford

Motor Company in a case known as *Warnell v. Ford Motor Company*, No. 98 C 1503 in

the United States District Court for the Northern District of Illinois.

19.     In 1999, the EEOC attempted to reach a settlement with Ford requiring Ford

to pay $17.5 million toward training and to create a fund to compensate victims. The EEOC

Conciliation Agreement also subjected Ford to workplace monitoring for a period of 3

years.

20.     The EEOC investigated Ford's Stamping and Assembly Plants in 1994-1995

and again in 1998. As a result of these investigations, the EEOC has issued findings in the

form of a Determination which states:

> I have determined that the evidence obtained in the investigation
> establishes reasonable cause to believe that a class of female
> employees at Ford's Chicago area manufacturing facilities, including
> the Charging Party, has been subjected to sexual harassment by
> managers and nonmanagers. The women have been called sexually
> degrading names such as bitches, whores and offensive references to
> female genitalia, as well as being subjected to other profanity. They
> have been physically touched, grabbed and groped, and have had
> body parts massaged without their consent. They have had to endure
> sexual comments and innuendos including suggestive references to
> female body parts and their functions. In addition, the women have
> been subjected to sexually explicit graffiti, including drawings of male
> and female genitalia with sexual terms and, at times, references to
> specific named women throughout the facilities. The presence of
> other pornographic materials such as calendars and other pictures of
> nude women also contributes to the hostile and sexually offensive
> environment.

21.     In addition to these findings, the EEOC made similar findings that Ford

sexually harassed and discriminated against a class of females on at least 8 other

occasions including in connection with Charges of Discrimination filed by Michelle Sheets, Traci Graham, Rebecca Curwick, Juanita Rivera, Veronica Kuznieski, Jeannette Jones, Wilynthia Wiseman and Mary Ann Allegria.

22.     Ford is a recidivist offender that has wilfully ignored the issues and evidence raised in prior litigation, prior Determinations and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace. In addition, Ford has knowingly allowed sexual harassers, molesters and sex offenders to remain in the workplace to repeat their heinous acts on other women.

23.     Ford has engaged in a pattern and practice of discrimination, harassment and retaliation, and the plaintiffs and other women have been subjected to harassment, discrimination and a hostile working environment including, but not limited to:

a.  Unwelcome and unwanted sexual advances;

b.  Requests for sexual favors;

c.  Unwanted and unwelcome touching and groping;

d.  Being subjected to jeers, lewd comments, sexual suggestions, cat-calls and the like;

e.  Being stared at by male employees who were focused on certain parts of plaintiff's body and/or "elevator eyes";

f.  Being subjected to comments or offers of sexual contact or males telling me what they could or would like to do for me or to me (and other women);

g.  Being subjected to men exposing their genitals and/or showing pictures of their genitals;

h.  Being subjected to men sharing or displaying pornographic images in the workplace;

i.  Graffiti in the workplace;

j.  By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

k.  Sexually offensive graffiti is painted on the walls in the plants and defendants did not take effective corrective action.

l.  Female employees are referred to as "bitches" on an ongoing basis.

m.  Female employees are also referred to as "whores," "sluts" and "dogs."

n.  Male employees also place sexually offensive graffiti about female employees in the men's bathrooms.

o.  Male employees routinely undress in full view of female employees at various areas of the plant.

p.  Male employees fail to properly button their uniforms such that their pubic hair is exposed.

q.  Male employees would routinely stare at female employees in a sexually offensive manner.

r.  Male employees would routinely make crude and lewd comments directed at female employees, such as "Are you cold? I can tell that you are cold by looking at your nipples."

s.  Female employees are sometimes exposed to condoms thrown into their work areas or tool boxes.

t.  Female employees are subjected to whistles, offensive touching, gazing and comments such as "what color are your underclothes?" on a daily basis.

u.  At various times, male employees would rub against females, pretending as though they dropped something on the floor.

v.  In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary action, or insufficient action, against employees who engage in such sexually offensive conduct.

w.  Defendants' Human Resources and Labor Relations personnel routinely reveal confidential medical information regarding female employees to other workers in the plants.

6

x.   After such information is leaked, some male employees would subject such female employees to ridicule, offensive jokes and embarrassment.

y.   Male employees have historically been paid for overtime that they did not work, while female employees are required to work every hour that they are paid.

z.   Male employees are allowed personal days even when not entitled to them, while female employees are harassed and are not given such days off.

aa.  Such female employees were also written up or threatened with termination.

bb.  Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better tasks to those female employees who submit to their sexual advances or who agree to go out with them.

cc.  The less desirable tasks would be assigned to the female employees who reject or do not submit to their sexual advances.

dd.  On many occasions, female employees would see soiled sanitary napkins moved from the ladies room to the aisles where they are in full view of male employees and supervisors.

ee.  They would make lewd comments such as "look at these -- old nasty bitches" as they walked past.

ff.  Male employees and supervisors regularly sabotage the work areas of female employees in different and innumerable ways.

gg.  On numerous occasions, female employees would have phallic symbols (penis-like objects) thrown in their work areas, tool boxes, or thrown at them. Such objects would sometimes be carved out of rubber hoses, styrofoam, etc. by some male employees during their breaks.

hh.  Some female employees would frequently find pictures of penises placed on their tool boxes or work areas.

ii.  On a daily basis, women are harassed, denigrated and referred to as a "bitch," "stupid bitch," "you fucking people," mother-fuckers, "cunt," and "fucking bitches."

jj.  At various locations in the defendant's plants are displayed pictures, posters and drawings that are humiliating to women, such as: pictures and posters of

7

nude women, sex organs, female private parts, people performing sex acts, lesbians having intercourse, penises, pictures of black women  oral sex on white men, etc. Some of these pictures are in full view at various places throughout the plants.

24.     Male employees routinely make discriminatory and harassing remarks and gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate workplace environment.

25.     That the defendants also maintained a pattern and practice of inferior treatment of females respect to the terms and conditions of employment, including job assignments, harassment, training, promotions, and overtime assignments.

26.     Ford aware of the ongoing discrimination and harassment which occurs on a daily basis in an open manner, such that it is observed by employees and supervisors, and has turned a blind eye toward it.

## **SEX AT FORD**

27.     Historically, Ford employees have organized parties which have been held both on and off site at the respective plants at which strippers and/or prostitutes were present.

28.     During these parties which were attended by both management and hourly employees, various employees engaged in lewd and lascivious behavior, including sexual acts.

29.     These parties and the lewd, disgusting and foul activities involved were, on information and belief, recorded and captured on video and on camera.

30.     Tickets to such parties were sold in the plants during working hours.

8

31.     Invitations to such parties were distributed throughout the plants, both orally and in writing.

32.     The videos and photos from prior parties, including visual depictions of strippers, prostitutes, nudity, sex acts and other pornographic material relating to the parties, were frequently distributed and displayed throughout the plants.

33.     In approximately 1997 or 1998 NBC acquired a copy of a tape from a sex party and broadcast portions of the tape on television as part of the coverage of the *Warnell* case.

34.     On numerous occasions various male supervisors and managers have had sexual relations with female employees in their offices.

35.     Ford has engaged in a practice of intimidation and retaliation which, on information and belief, has had the effect of making additional people more reluctant to come forward with complaints.

### **PLAINTIFFS' CLASS**

36.     This case is being brought under Fed. R.Civ. P. 23(b)(2), or, in the alternative, pursuant to Fed. R.Civ. P. 23(b)(3).

37.     The plaintiff class includes all present and former female employees in the Ford organization who worked at the Ford Chicago Assembly from 2012 through the present.

38.     Each class includes at least three subclasses, including those persons who were: (1) sexually harassed; (2) discriminated on the basis of their gender; and/or (3) retaliated for opposing unlawful discrimination.

9

39.     The members of the class, and each subclass, are so numerous as to render joinder impractical.

40.     On information and belief, Ford employs more than 500 females at the Assembly Plant.

41.     There are questions of law and fact which are common to the class and those questions predominate over questions which may not be common.

42.     The claims of the representative class members are typical of the claims of the class members. In particular, the claims of Van, Allen, Leviege and Price are typical of subclass members who have claims of sexual harassment, sex discrimination and/or retaliation.

43.     The Named Plaintiffs will fairly and adequately protect the interests of the class.

44.     The class action mechanism is the most efficient and most appropriate mechanism for resolving this controversy.

45.     On information and belief, there are dozens of other individuals who have filed EEOC complaints containing allegations similar to those contained in the plaintiffs' complaint and charges.

**COUNT 1**
**TITLE VII**
**SEXUAL HARASSMENT**

**(CHRISTIE VAN)**

46.     The plaintiff, Christie Van adopts, realleges and incorporates by reference the allegations contained in paragraphs 1-45 of this Complaint and in her Charge of discrimination as if set forth here.

10

47.    Van started with Ford in December, 2006 and was transferred to the Chicago Assembly plant on or about February 20, 2012.

48.    Plaintiff has been sexually harassed, discriminated  against and has been subjected to a sexually offensive and hostile working environment in the following ways:

a.    Male co-workers exposing their genitals to plaintiff and other similarly situated female workers.

b.    A male co-worker named Kenny who worked in the trim department exposed his penis to plaintiff by holding it in his hand with his pants unzipped and telling me "Christie, look what you are missing out on."

c.    A male co-worker whose name I do not know, stood on top of one of the lockers in the employee area of the building and pulled down his pants revealing his genitals and buttocks to me and several other female co-workers who were in the vicinity.

d.    One of plaintiff's direct supervisors, Willie Forcea showed plaintiff  a cell-phone picture he had taken of his penis and told me "you know you want it."

e.    Plaintiff has been subjected to unwelcome and unwanted touching.

f.    Male co-workers touched, caressed and squeezed plaintiff's body and plaintiff's similarly situated female co-workers' bodies in ways that were offensive, unwanted and sexually harassing.

g.    Bruce, who worked in Zone A on B Crew regularly referred to plaintiff and other female workers as "bitches", and frequently touched us like we were his sexual playthings.

h.    Bruce regularly rubbed his hands on plaintiff and other similarly situated female co-workers' backs, shoulders, arms or buttocks;

i.    Kenny, who worked in the trim department, has touched plaintiff in a sexually offensive manner;

j.    Male co-workers regularly made lewd and offensive statements;

k.    Male employees requested sex or sexual acts from plaintiff which were offensive, unwanted and sexually harassing.

l.    Team Leader Eddie Cather stated to plaintiff that he liked that plaintiff is a "black girl with a loose booty."

    i.    When he first introduced himself, Cather asked about plaintiff's ability to perform oral sex.

    ii.    Cather expressed a specific desire to work with "cock-sucking entry level" girls.

m.    Reiss (a supervisor) asked plaintiff if she wanted to see his penis after she complained to him about Supervisor Willie Forcea.

    i.    After plaintiff complained to him about sexual harassment, Reiss began to regularly sexually harass plaintiff and request sex from her.

    ii.    Supervisor Reiss invited plaintiff to play "hooky" with him from work, meaning that he wanted plaintiff to take a day off and spend it having sex with him. Plaintiff refused.

    iii.    After plaintiff refused Reiss's overt and perverted request, he started assigning plaintiff to jobs that put her in close contact with him. He then started asking plaintiff out on dates. I declined his advances.

    iv.    Eventually, Reiss began regularly asking me if he could lick plaintiff's body and for sexual favors on a daily basis.

n.    Bruce from the Skilled Trades Department has sexually harassed me.

    i.    Bruce approached me and asked if I "liked to have a good time."

    ii.    Bruce instructed me to perform oral sex on him.

    iii.    When plaintiff refused, he offered me $50.00 to give him oral sex while at work.

    iv.    Bruce then invited Plaintiff to go home with him after work and engage in a sexual three-way with him and his wife.

    v.    Despite plaintiff's pleas for him to stop harassing her, he continued to invite her out on dates and ask if he could come over to plaintiff's house to have sex.

    o.    Bruce has made similar statements to other similarly situated female co-workers.

    p.    Kevin "Red" Marshall, the Ergonomics Manager has made unwanted sexual advances towards plaintiff and many other women.Red Marshall has told me that he wanted to get me drunk so he could sexually take advantage of me.

        i.    Red said he wanted to "lick up on" me.

       ii.    Red regularly engages in these types of conversations with other similarly situated female co-workers and that it makes them feel sexually harassed and uncomfortable.

    q.    Dazman Gray, one of plaintiff's supervisors and "Team Leader" for Zone B told plaintiff "You should be fucking me."

        i.    As he said this, Gray thrust his pelvis towards plaintiff.

    r.    Male employees have touched, coerced or induced other similarly situated female employees into having sex with them, and on occasion, these take place at work or in the parking lot.

49.    Plaintiff has complained about harassment, discrimination and the events described in her Charge to managers, supervisors, Labor Relations and the Ford harassment hotline about these issues to no avail.

50.    Plaintiff was told by Labor Relations to stop complaining to the hotline because Ford did not want to address plaintiff's complaints.

51.    Despite plaintiff's complaints, Ford did not take appropriate or timely remedial action.

**COUNT 2**
**TITLE VII**
**SEX DISCRIMINATION -**

**(CHRISTIE VAN)**

52.     The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 51  of the complaint.

53.     Plaintiff and other women have been treated differently than their male counterparts.

54.     Plaintiff and other women have been subjected to discriminatory comments from supervisors and coworkers which have not been directed to male counterparts and which males are not required to endure as a condition of their employment.

55.     The plaintiff and other women have been given different work assignments than male counterparts and have been told that they are not being assigned to perform certain tasks "because they are women."

56.     The plaintiff and other women have been subjected to comments of a derogatory nature.

**COUNT 3**
**TITLE VII**
**SEXUAL HARASSMENT**

**(CHARMELLA LEVIEGE)**

57.     The plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 45 of this complaint.

58.     The plaintiff and other similarly situated women have been sexually harassed and discriminated against in one or more of the following ways:

14

a.  Male supervisors and co workers, including Buck Owens ("Owens") have made unwanted sexual comments to LEVIEGE and similarly situated female co-workers, made sexual advances towards me, and inappropriately touched her breasts.

b.  On numerous occasions, Owens stated that he wanted to have sex with LEVIEGE.

c.  Owens told LEVIEGE "I like to eat pussy" and asked plaintiff if he could perform oral sex.

d.  Owens frequently questioned me regarding plaintiff's sexual history and inquired whether I was promiscuous.

e.  Owens asked me "When was the last time you had sex."

f.  Owens fondled plaintiff's breasts;

g.  Owens pointed out to me about a location up above where Ford employees went to have sex while at work, making me feel extremely angry, humiliated and scared that Owens was going to force me to have sex with him;

h.  A male co-worker named Brandon frequently spoke to LEVIEGE and other similarly situated women about how he wanted to have sex or engage in sex acts with plaintiff and her female co-workers.

   i.  Brandon asked LEVIEGE about having sex with him and asked her to take part in three-way sex with him, stating "I got a pussy appointment" and "Do you want to get in on it?"

   ii.  Brandon has made statements like this to LEVIEGE in front of plaintiff's supervisors, including plaintiff's line supervisor, Geraldo "Dre" Harris.

15

      iii.      LEVIEGE complained about Brandon to Dre, a supervisor. Dre laughed and smiled at Brandon, thereby condoning Brandon's statements and conduct.

j.    LEVIEGE and other women constantly endure other male co-workers' sexually harassing verbal comments.

k.    A co-worker Jabari regularly made sexually harassing comments to me and other similarly situated female co-workers.

      i.      Jabari regularly pointed at female co-workers and openly verbalized women that wanted to have sex with, pointing at whichever woman he was referencing at any given time and making statements such as: "I want to fuck her" and "I want to put a baby in her."

l.    Male employees frequently engage in discussions about penis size and who was the best at having sex with women.

m.    Many male co-workers revere supervisors such as Alexander and the Ergonomics Director, "Red" Marshall because these men are known to have successfully induced female co-workers to have sex with them in the building.

      i.      Red and other males speak to females as though they are prostitutes is Kevin "Red" Marshall.

      ii.      Ford is aware that Red paid women to have sex with him at work, yet Ford continues to let Red walk from department to department to meet and seduce similarly situated female co-workers.

      iii.      Red uses his supervisory authority to sexually abuse other women or to coerce them into providing sexual favors.

n.    Males refer to women as "hoes" and "sluts."

o.    Males groping and touching female employees.

      p.      Males soliciting and/or paying female employees to have sex;

59.    Women are not viewed as equals, but rather as sexual objects in the plant.

60.    Plaintiff was offended by these comments and felt humiliated that plaintiff and other women at Ford are regularly spoken about and treated as though we are merely sexual objects and that Ford tolerates and in many instances condones, through the conduct of its managers and supervisors, conversations of a sexual nature regarding male sex organs and sexual conquests.

61.    Ford failed to remedy this ongoing sexually harassing conduct.

62.    Being constantly exposed to unwanted sexual comments and discussion is offensive and degrades plaintiff and similarly situated women.

63.    Plaintiff has complained to the sexual harassment hotline and to the Personnel Department about being exposed to a sexually harassing and hostile work environment, but Ford has failed to stop and/or remedy this ongoing harassment.

64.    Ford has not disciplined or reassigned any males about whom I have complained nor has Ford conducted a thorough or timely investigation of Plaintiff's complaints.

65.    Plaintiff complained about harassment and discrimination to Ford and Ford's Labor Relation's representatives Alex Keweny ("Keweny") and Natalie Dehringer, but Ford failed to discipline Brandon and failed to remedy the hostile and sexually harassing workplace environment. I and other similarly situated women were forced to endure. Plaintiff also complained to her supervisor Mike Reese.

66.    Plaintiff has also complained to her union representative Reggie for help and guidance, but he has also sexually harassed me.

    a.  Reggie has approached plaintiff with open arms for a hug.

    b.  Reggie grabbed plaintiff and forcefully gyrated his crotch against plaintiff in a very offensive and sexual way.

67.   Plaintiff complained about this to Ford but Ford failed to discipline Reggie and failed to remedy the hostile and sexually harassing workplace environment I and other similarly situated women were forced to endure.

**COUNT 4**
**TITLE VII**
**SEX DISCRIMINATION -**

**(CHARMELLA LEVIEGE)**

68.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 and 57 - 67 of the Complaint.

69.   Plaintiff and other women have been treated differently than their male counterparts.

70.   Plaintiff and other women have been subjected to discriminatory comments from supervisors and coworkers which have not been directed to male counterparts and which males are not required to endure as a condition of their employment.

71.   The plaintiff and other women have been given different work assignments than male counterparts and have been told that they are not being assigned to perform certain tasks "because they are women."

72.   The plaintiff and other women have been subjected to comments of a derogatory nature.

18

**COUNT 5**
**TITLE VII**
**SEXUAL HARASSMENT**

**(MARIA PRICE)**

73.     Price adopts, realleges and incorporates by reference the allegations in paragraphs 1-45 as if set forth here.

74.     Price started with Ford on June 11, 2011.

75.     Price and other similarly situated women have been sexually harassed, discriminated against and have been subjected to a hostile working environment in the following ways:

    a.  Muse frequently told plaintiff that he wanted her to "have his baby" and that he was going to "get [plaintiff] pregnant."

    b.  Muse told plaintiff that she "owed him" and had to have sex with him because he was a witness to Labor Relations when she complained about prior instances of sexual harassment.

    c.  Muse requested sex with plaintiff.

    d.  Muse told plaintiff that he is good at performing oral sex on women and would like to engage in that with plaintiff.

    e.  Muse told plaintiff that he has a "big dick."

    f.  Muse frequently tried to use hand gestures to demonstrate the size of his penis to plaintiff and other similarly situated women by grabbing his penis.

    g.  Muse tried to seduce plaintiff into having sex with him by telling plaintiff she can quit plaintiff's job at Ford if she would have his baby because he is rich.

    h.  When plaintiff refused Muse's sexual advances and told him that his conduct was offensive and harassing, Muse told plaintiff to "stop playing games and fuck me" and "How long are you going to keep playing? Give me some pussy."

i.   Muse has harassed plaintiff by grabbing or grabbing at plaintiff's breasts and buttocks and has attempted to kiss me in the workplace.

j.   Muse has attempted to reach inside plaintiff's jumpsuit and grab plaintiff's breasts.

k.   Muse has grabbed and smacked plaintiff's buttocks.

l.   Muse has made offensive and unwelcome comments about various parts of plaintiff's body including her buttocks;

m.   Muse regularly bragged to male co-workers of his sexual conquests with other women and his interest in adding plaintiff and other similarly situated female co-workers to his list of sexual partners.

n.   Muse and other male co-workers regularly referred to women as "bitches."

o.   Muse regularly boasted to plaintiff's co-workers that he was never going to get married because it was his practice to "keep fucking bitches and go on to the next."

p.   Pierre Hawkins ("Hawkins") regularly makes sexually harassing comments to me and other similarly situated female coworkers.

      i.   During one of plaintiff's first encounters with Hawkins, he told me that he had been staring at plaintiff's body and that "I seen your pussy print. Nice!"

      ii.   Since then, Hawkins has repeatedly commented to me about plaintiff's "phat ass" and "nice pussy print" on dozens of subsequent occasions and has told me "I really want to suck the shit out of your pussy."

      iii.   Hawkins regularly makes similar comments regarding plaintiff's other similarly situated female coworkers.

q.   Jeff Tucker ("Tucker") is a co-worker who regularly makes sexually harassing comments to plaintiff and other similarly situated female co-workers.

      i.   Tucker discusses his sexual moods in the workplace and openly states in front of plaintiff and other similarly situated co-workers when he is "feeling horny" and which women he intends to prey on at any given point in time.

20

      ii.    Tucker has stated his desire to have sexual relations with a female co-worker named Tammy who he refers to as "white Tammy". He speaks openly and in explicit detail about these sexual fantasies.

      iii.    Tucker also speaks in this way about a co-worker named Tracy who he refers to as "Bitch Tracy." Tucker openly tells plaintiff and other similarly situated female co-workers that Tracy is "slick" and is his "hoe."

   r.  Coby Millender is the Building Chairman and sexually harassed me when I attempted to complain to him about ongoing sexual harassment by other men at Ford.

      i.    When plaintiff attempted to complain directly to Coby, he invited plaintiff to have a romantic lunch with him in his office. He specifically told me to "bring those pretty lips."

      ii.    When plaintiff reacted with a look of shock and horror at his invitation, he told plaintiff that he would transfer plaintiff from the A Crew (the most desirable shift) to the C Crew (the least desirable shift) if she refused to comply.

76.   Plaintiff and other similarly situated women have complained to Ford and Ford's sexual harassment hotline about sexual harassment, discrimination, retaliation and a hostile working environment to no avail.

77.   The harassment, discrimination and hostile working environment is extremely embarrassing, humiliating and caused plaintiff emotional distress.

**COUNT 6**
**TITLE VII**
**SEX DISCRIMINATION -**

**(MARIA PRICE)**

78.    The plaintiff incorporates by reference the allegations contained in paragraphs 1

through 45 and 68 - 72 of the Complaint.

79.    Plaintiff and other women have been treated differently than their male counterparts.

80.    Plaintiff and other women have been subjected to discriminatory comments from

supervisors and coworkers which have not been directed to male counterparts and

which males are not required to endure as a condition of their employment.

81.    The plaintiff and other women have been given different work assignments than

male counterparts and have been told that they are not being assigned to perform

certain tasks "because they are women."

82.    The plaintiff and other women have been subjected to comments of a derogatory

nature.

**COUNT 7**
**TITLE VII**
**SEXUAL HARASSMENT**

83.    The plaintiff incorporates by reference the allegations contained in

paragraphs 1 through 45 of the complaint.

84.    Allen started with Ford in August, 2000, and was transferred to the Chicago

Assembly Plant in January, 2012.

85.    Allen and other similarly situated women have been subjected to unwanted or

unwelcome sexual advances, unwanted or unwelcome touching, comments of a sexually

22

suggestive nature, name calling, lurid, foul and offensive language, and other conduct of a sexually inappropriate nature for the workplace.

86.     The incidents of sexual harassment directed at Allen and other women include, by way of example, but are not limited to the following:

      a.      Male co-workers and supervisors making sexually discriminatory and degrading comments towards me other women, including comments made by Coby Millender, Mike Polk, Tony Amandillo, Dazman Gray, and numerous male co-workers whose names I do not know.

            i.      Male co-workers and supervisors regularly engaged in telling each other nasty, sexual jokes that were occasionally about me or plaintiff's female co-workers.

            ii.      They regularly made demeaning statements towards women or about women, including referring to women as "bitches" and "hoes."

            iii.      They regularly talk about plaintiff's and plaintiff's similarly situated female co-workers' "big coochies", "fat asses", "titties", and "pussies." They brag to each other about the size of their "dicks."

      b.      I have regularly witnessed male co-workers, including supervisors instruct others to perform oral sex on them.

      c.      All of these sexually harassing statements are disgusting, completely inappropriate in a workplace environment, and were humiliating for me and other similarly situated female co-workers.

      d.      Allen complained about unwanted, offensive sexual discussions in the workplace to plaintiff's supervisor Fred Jones, but Fred Jones told me that he had no intention of doing anything to stop ongoing sexual harassment at Ford.

87.     Plaintiff complained about unwanted, offensive sexual discussion in the workplace and about Fred Jones' refusal to do anything about it to Ford's sexual harassment hotline and to Labor Relations.

88.     Allen has experienced numerous male co-workers, including supervisors viewing, buying and selling pornographic magazines, tapes or DVD's in the workplace or viewing pornography on their cell phones.

    a.     Male co-workers posted sexy nude Playboy and Penthouse pictures in the maintenance locker room.

    b.     Male co-workers routinely sold pornographic videos and/or DVD's to other men in the workplace.

    c.     Supervisors have collected and shared sexy and/or nude pictures of women on cellular phones, including pictures of female co-workers.

89.     Not only is sexual harassment ongoing, pervasive and offensive, but it has led to what is a dangerous workplace environment in which Allen and other similarly situated women do not feel safe.

90.     Allen  complained about pornography, the buying, selling and trading of pornography, and about the violence that is occurring as a result of unwanted, offensive sexually harassing conduct to supervisor Fred Jones, to Ford's sexual harassment hotline and to Labor Relations to no avail.

91.     Allen has been subjected to numerous male co-workers, including supervisors groping, fondling and touching  women in a sexually harassing ways; as a result these women have complained to Allen creating a further hostile working environment:

    a.    Supervisors Coby Milender, Erin Strayker, Dazman Gray and Reggie, one of the union representatives regularly engage in inappropriate touching, including inappropriate hugs, and grabbing or caressing women's arms,

shoulders and thighs in ways that make me and similarly situated women

feel uncomfortable and sexually harassed.

b.   Allen complained about inappropriate and sexually harassing touching

towards plaintiff and/or similarly situated women to plaintiff's supervisor

Fred Jones, to Ford's sexual harassment hotline and to Labor Relations to

no avail.

92.   Co-workers, including supervisors solicit and/or coerce women in the

workplace to engage them in unwanted sexual acts.

93.   A male electrician has solicited a female co-worker and offered to pay her

to have sex with him in the plant or in Ford's parking lot. Allen and plaintiff's similarly

situated female co-worker were extremely offended when we experienced this

solicitation.

94.   Managers, including Kevin "Red" Marshall, regularly walk through the

plant and attempts to flirtatiously engage women in unwanted requests for dates or

romantic rendezvous.

95.   Male co-workers regularly discuss with each other that they revere Red

because he has sex with numerous women in the plant.

96.   Allen has complained about the foregoing sexual harassment to her

supervisors, managers, through Ford's hotline and to Labor relations to no avail.

a.  Allen was uncomfortable complaining to many of plaintiff's supervisors

about sexual harassment, including Mike Reese ("Reese") and Ron

25

Alexander ("Alexander") because they were also known to have sexually harassed other women.

b. After Allen complained about sexual harassment, plaintiff's male co-workers mocked her complaints by leaving behind spray-painted and chalk-marked graffiti depicting penises and testicles in plaintiff's work area and lunch area.

c. Allen's male co-workers also anonymously leave in plaintiff's work area totems of banana's sticking up in the air and other symbols depicting penises or which are otherwise degrading to plaintiff and other similarly situated sexually harassed women.

97.     Women are not viewed as equals, but rather as sexual objects in the plant.

98.     Being constantly exposed to unwanted sexual comments and discussion is offensive and degrades Allen and similarly situated women.

99.     Despite Allen's complaints and opposition to sexual harassment,  Ford has failed to stop and/or remedy this ongoing harassment.

100.    Despite numerous prior lawsuits and the EEOC Conciliation Agreement, sexual harassment and discrimination continues to be an everyday way of life at Ford.

**COUNT 8**
**TITLE VII**
**<u>SEX DISCRIMINATION -</u>**

**(HELEN ALLEN)**

101.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 and 83 - 100 of the complaint.

102.    Allen and other women have been treated differently than their male counterparts.

103.    Allen and other women have been subjected to discriminatory comments from supervisors and coworkers which have not been directed to male counterparts and which males are not required to endure as a condition of their employment.

104.    The plaintiff and other women have been given different work assignments than male counterparts and have been told that they are not being assigned to perform certain tasks "because they are women."

105.    The plaintiff, Helen Allen, and other women, have been subjected to comments of a derogatory nature.

**COUNT 9**
**TITLE VII**
**<u>RACE DISCRIMINATION</u>**

**(CHRISTIE VAN)**

106.    The plaintiff adopts, realleges and incorporates by reference the allegations in paragraphs 1- 25 as and for this paragraph.

27

107. The plaintiff is a member of a protected class based on her race: African American.

108. The plaintiff and others similarly situated have been subjected to different treatment on the basis of their race, African-American.

109. This claim is brought under Title VII, 42 U.S.C. §2000e et seq.

110. Plaintiff along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act.

111. Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

112. African American/black employees at Ford are assigned to lower quality work assignments than white/Caucasian co-workers.

113. Career opportunities at Ford are also more limited at Ford where most management positions are held by whites and most production and maintenance positions are held by blacks.

114. Plaintiff's white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks, whereas plaintiff and other African American employees are not afforded similar conveniences.

115. The plaintiff and other similarly situated individuals have been given work assignments which are different and less desirable than white counterparts.

28

116.   Lighter skinned employees are also given preferential treatment to darker skinned employees.

117.   Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

118.   The plaintiff and other similarly situated individuals have been subjected to name calling such as "nigger," "pickaninny" "shine," "buckwheat," "Aunt Jemima" and "Alfalfa."

119.   Because of my race/color, plaintiff and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

120.   Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

121.   Plaintiff and other similarly situated African Americans have been denied the opportunity to work overtime based on my/our race/color (African American/black), even when the plaintiff and others have indicated a willingness to work overtime and/or have requested to do so.

122.   White employees are given preferential treatment.

123.     Plaintiff and other similarly situated African Americans have been subjected to discrimination in discipline as well. Whites are not disciplined or are less severely disciplined for similar conduct.

124.     Plaintiff complained about this to Labor Relations to no avail.

125.     Plaintiff complained about this discrimination on Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

126.     After I complained about discrimination and harassment, I was regularly referred to by my white co-workers and supervisors as "Black Snitch Bitch" – which was extremely racially offensive and derogatory.

**COUNT 16**
**RACE DISCRIMINATION UNDER §1981**
**(CHRISTIE VAN)**

127.     The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 25, and 106 - 126 of the Complaint.

128.     This claim is made under 42 U.S.C. ' 1981.

129.     The plaintiff is a member of a racial minority (African-American).

130.     These acts were done intentionally.

131.     Defendant's treatment of the plaintiff and other African-American employees denied them of the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of  42 U.S.C.  §1981.

**COUNT 11**
**TITLE VII**
**RACE DISCRIMINATION**

**(CHARMELLA LEVIEGE)**

132.    The plaintiff adopts, realleges and incorporates by reference the allegations in paragraphs 1- 25 as and for this paragraph.

133.    The plaintiff is a member of a protected class based on her race: African American.

134.    The plaintiff and others similarly situated, have been subjected to different treatment on the basis of their race, African-American.

135.    This claim is brought under Title VII, 42 U.S.C. §2000e et seq.

136.    Plaintiff along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act.

137.    Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

138.    African American/black employees at Ford are assigned to lower quality work assignments than white/Caucasian co-workers.

139.    Career opportunities at Ford are also more limited at Ford where most management positions are held by whites and most production and maintenance positions are held by blacks.

31

140.     Plaintiff's white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks, whereas plaintiff and other African American employees are not afforded similar conveniences.

141.     The plaintiff and other similarly situated individuals, have been given work assignments which are different and less desirable than white counterparts.

142.     Lighter skinned employees are also given preferential treatment to darker skinned employees.

143.     Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

144.     The plaintiff and other similarly situated individuals, have been subjected to name calling such as "nigger," "pickaninny" "shine," "buckwheat," "Aunt Jemima" and "Alfalfa."

145.     Because of my race/color, plaintiff and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

146.     Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

147.    Plaintiff  and other similarly situated African Americans have been denied the opportunity to work overtime based on my/our race/color (African American/black), even when the plaintiff and others have indicated a willingness to work overtime and/or have requested to do so.

148.    However, similarly situated white employees, including Michelle Tucker, were allowed to work overtime while on medical restrictions.

149.    Plaintiff and other similarly situated African Americans have been subjected to discrimination in discipline as well. Whites are not disciplined or are less severely disciplined for similar conduct.

150.    Plaintiff complained about this to Labor Relations to no avail.

151.    Plaintiff complained about this discrimination on Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

## COUNT 12
## RACE DISCRIMINATION UNDER §1981
### (CHARMELLA LEVIEGE)

152.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 25, and 132 through 151 of the complaint.

153.    This claim is made under 42 U.S.C. §1981.

154.    The plaintiff is a member of a racial minority (African-American).

155.    These acts were done intentionally.

156.    Defendant's treatment of the plaintiff and other African-American employees denied them of the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

**COUNT 13**
**TITLE VII**
**RACE DISCRIMINATION**

**(MARIA PRICE)**

157.    The plaintiff adopts, realleges and incorporates by reference the allegations in paragraphs 1- 25 as and for this paragraph.

158.    The plaintiff is a member of a protected class based on her race: African American.

159.    The plaintiff and others similarly situated, have been subjected to different treatment on the basis of their race, African-American.

160.    This claim is brought under Title VII, 42 U.S.C. '2000e et seq.

161.    Plaintiff along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act.

162.    Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

163.    African American/black employees at Ford are assigned to lower quality work assignments than white/Caucasian co-workers.

164.    Career opportunities at Ford are also more limited at Ford where most management positions are held by whites and most production and maintenance positions are held by blacks.

165.    Plaintiff's white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks, whereas plaintiff and other African American employees are not afforded similar conveniences.

166.    The plaintiff and other similarly situated individuals, have been given work assignments which are different and less desirable than white counterparts.

167.    Lighter skinned employees are also given preferential treatment to darker skinned employees.

168.    Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

169.    The plaintiff and other similarly situated individuals, have been subjected to name calling such as "nigger," "pickaninny" "shine," "buckwheat," "Aunt Jemima" and "Alfalfa."

170.    Because of my race/color, plaintiff and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

171.    Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

172.    Plaintiff  and other similarly situated African Americans have been denied the opportunity to work overtime based on my/our race/color (African American/black), even when the plaintiff and others have indicated a willingness to work overtime and/or have requested to do so.

173.    However, similarly situated white employees, including Michelle Tucker, were allowed to work overtime while on medical restrictions.

174.    Plaintiff and other similarly situated African Americans have been subjected to discrimination in discipline as well. Whites are not disciplined or are less severely disciplined for similar conduct.

175.    Plaintiff complained about this to Labor Relations to no avail.

176.    Plaintiff complained about this discrimination on Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

177.    After I complained about discrimination and harassment, I was regularly referred to by my white co-workers and supervisors as "Black Snitch Bitch" – which was extremely racially offensive and derogatory.

**COUNT 14**
**RACE DISCRIMINATION UNDER §1981**
**(MARIA PRICE)**

178.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 25, and 153 through 173 of the complaint.

179.    This claim is made under 42 U.S.C. §1981.

180.    The plaintiff is a member of a racial minority (African-American).

181.    These acts were done intentionally.

36

182.    Defendant's treatment of the plaintiff and other African-American employees denied them of the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

**COUNT 15**
**TITLE VII**
**RACE DISCRIMINATION**

**(HELEN ALLEN)**

183.    The plaintiff adopts, realleges and incorporates by reference the allegations in paragraphs 1- 25 as and for this paragraph.

184.    The plaintiff is a member of a protected class based on her race: African American.

185.    The plaintiff  and others similarly situated, have been subjected to different treatment on the basis of their race, African-American.

186.    This claim is brought under Title VII, 42 U.S.C. '2000e et seq.

187.    Plaintiff along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act.

188.    Plaintiff and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

189.    African American/black employees at Ford are assigned to lower quality work assignments than white/Caucasian co-workers.

37

190.   Career opportunities at Ford are also more limited at Ford where most management positions are held by whites and most production and maintenance positions are held by blacks.

191.   Plaintiff's white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks, whereas plaintiff and other African American employees are not afforded similar conveniences.

192.   The plaintiff and other similarly situated individuals, have been given work assignments which are different and less desirable than white counterparts.

193.   Lighter skinned employees are also given preferential treatment to darker skinned employees.

194.   Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

195.   The plaintiff, Helen Allen, and other similarly situated individuals, have been subjected to name calling such as "nigger," "pickaninny" "shine," "buckwheat," "Aunt Jemima" and "Alfalfa."

196.   Because of my race/color, plaintiff and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

197.   Plaintiff complained about this to Labor Relations to no avail.

198.   Plaintiff complained about this discrimination on Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

## COUNT 16
## RACE DISCRIMINATION UNDER §1981
## (HELEN ALLEN)

199.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 25, and 183 through 198 of the complaint.

200.   This claim is made under 42 U.S.C. §1981.

201.   The plaintiff is a member of a racial minority (African-American).

202.   These acts were done intentionally.

203.    Defendant's treatment of the plaintiff and other African-American employees denied them of the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

## COUNT 17
## TITLE VII
## RETALIATION

## (CHRISTIE VAN)

204.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 56, and 106 - 131 of the Complaint.

205.   The plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

206.   Supervisors have gone out of their way to make the plaintiff's, and other similarly situated individuals' jobs more difficult, have made it clear that they were going to

39

make their jobs more difficult and their life in the plant miserable, and have taken extra measures to make the performance of the plaintiff's, and other similarly situated individuals', job duties more difficult and/or to subject them to increased scrutiny and/or discipline.

207.    In addition, Ford has retaliated against plaintiff in one or more of the following ways:

- a. On February 28, 2013, I was assaulted and attacked from behind out of retaliation for complaining about sexual harassment and racial discrimination in the workplace.

  - i.    One of the offenders or an individual on behalf of one of those offenders or on behalf of Ford physically assaulted and attacked Van as she was leaving work. She was thrown down to the ground from behind while walking to her car.

  - ii.    Van's assailant stomped on the middle of my back, told me not to look at his face, told me that I was a "black snitch bitch" for complaining about sexual harassment, and told her that she better never come back to her job at Ford. The assailant threatened Van that he knew where she lived and would kill her if she came back.

  - iii.    Van complained to her union and to Labor Relations about this incident but Ford never investigated this incident.

- b. Van repeatedly complained about an atmosphere of sexual harassment and racial and gender discrimination at Ford. She complained numerous times to Labor Relations and to her Union about inappropriate gestures and remarks by supervisors and co-workers. Van complained that supervisors were inviting her me to have sex with them and that she had been groped. One of her supervisors responded by showing her a picture of his genital parts and said "You know you want it."

- c. Van has been called "black snitch bitch" by supervisors and co-workers.

- d. Salary Labor Supervisor, Terrence McClain intimidated and berated plaintiff for talking about sexual harassment in the workplace with

other co-workers and other non-Ford employees outside of the workplace. McClain, in an aggressive manner told me: "I don't know what they did where you came from, but you are at Chicago Assembly now and you need to realize that things are run much differently here. You need to forget the incident that happened and need to let it go. Or else!"

e. Labor Relations Specialist, Alex Keweny was present when McClain intimidated and berated and threatened plaintiff but did nothing about it. On subsequent occasions, Keweny reinforced that Van needed to stop complaining as she had been instructed by McClain. Keweny also required Van to continue to work wither her harassers.

f. Mike Reiss, one of Van's direct supervisors dismissed her from my work assignment on one or more occasions in retaliation for reporting his sexual harassment and for filing an EEOC charge against him.

g. Willie Forcea, one of Van's direct supervisors assigned her to lower quality job assignments and continued to harass her in a threatening way in retaliation for reporting his sexual harassment and for filing an EEOC charge against him.

h. Dazman Gray, one of Van's direct supervisors and his fiancé, Ashley Lowe, one of Van's shift supervisors falsely accused Van of violating a safety rule and had me written up and suspended for a day without pay in retaliation for Van complaining that Gray had sexually harassed her the week before.

i. The EEOC attempted on at least three occasions to mediate her Charges of Discrimination. When Van refused to accept Ford's offer, Ford terminated Van's employment effective May 28, 2014 – just days after the EEOC's most recent attempt at mediating this matter proved unsuccessful. Van was forced to take a grievance of her termination and Ford's refusal to return her to work to arbitration. The arbitrator ruled in van's favor after a hearing on the merits.

208. Ford's retaliatory acts against plaintiff constitute materially adverse employment actions.

**COUNT 18**
**TITLE VII**
**RETALIATION**

**(CHARMELLA LEVIEGE)**

209.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45, 57 - 72 and 132 - 156 of the Complaint.

210.    The plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

211.    Supervisors have gone out of their way to make the plaintiff's, and other similarly situated individuals' jobs more difficult, have made it clear that they were going to make their jobs more difficult and their life in the plant miserable, and have taken extra measures to make the performance of the plaintiff's, and other similarly situated individuals', job duties more difficult and/or to subject them to increased scrutiny and/or discipline.

212.    In addition, Ford has retaliated against plaintiff in one or more of the following ways:

a. I have been repeatedly disciplined, sent home early for the remainder of my shift, denied overtime opportunities, and reassigned to different job assignments that did not match my medical restrictions.

b. Ford's retaliatory acts deprived me of the same financial opportunities Ford offers to other employees who do not complain about sexual harassment or racial discrimination.

213.    Ford's retaliatory acts against plaintiff constitute materially adverse employment actions.

42

**COUNT 19**
**TITLE VII**
**RETALIATION**

**(MARIA PRICE)**

214.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45, 73 - 82 and 157 – 182 of the Complaint.

215.    The plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

216.    Supervisors have gone out of their way to make the plaintiff's, and other similarly situated individuals' jobs more difficult, have made it clear that they were going to make their jobs more difficult and their life in the plant miserable, and have taken extra measures to make the performance of the plaintiff's, and other similarly situated individuals', job duties more difficult and/or to subject them to increased scrutiny and/or discipline.

217.    In addition, Ford has retaliated against plaintiff in one or more of the following ways:

a.  Male Supervisors have tried to put an end to my complaining about sexual harassment at Ford and have subjected me to materially adverse employment actions, including writing me up and suspending without pay based on false accusations.

i.  Supervisor Alex Curry told plaintiff after she complained that he and other supervisors at Ford are "tired of hearing you name" and are "trying to set you up." Thereafter, Supervisors retaliated against me.

ii.  Plaintiff was suspended for three days without pay for allegedly being late to work, when she was actually on time

43

for work but was receiving medical attention from a nurse in the medical department at the time my shift began.

218.    Ford's retaliatory acts against plaintiff constitute materially adverse employment actions.

## COUNT 20
## TITLE VII
## RETALIATION

## (HELEN ALLEN)

219.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45, 83 - 105 and 183 - 203 of the Complaint.

220.    The plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

221.    Supervisors have gone out of their way to make the plaintiff's, and other similarly situated individuals' jobs more difficult, have made it clear that they were going to make their jobs more difficult and their life in the plant miserable, and have taken extra measures to make the performance of the plaintiff's, and other similarly situated individuals', job duties more difficult and/or to subject them to increased scrutiny and/or discipline.

222.    Managers, supervisors and representatives from Labor Relations have retaliated against plaintiff and other similarly situated employees by:

a.      Disclosing to other employees who did not have the need to know

that the plaintiff had made a complaint of discrimination in an effort

to further humiliate and ostracize the plaintiff;

   i.  After I complained, Labor Relations representative Natalie
       Dehrenger held a meeting with my male co-workers in which she
       "outed" plaintiff or in which she allowed others to "out" the plaintiff
       as the complainer to all of plaintiff's sexually harassing male co-
       workers.

b.   Subsequently, Coby Millender told approximately 200 of plaintiff's union

members that plaintiff was the complainer who had "filed a sexual

harassment lawsuit against Ford."

   i.  After these two incidents in which both Ford and the Union
       Chairperson (who was one of the complained-of sexual harassers)
       disclosed me as being the "complainer", I experienced numerous
       anonymous acts of vandalism in my work area and lunch area
       depicting penises/phalluses and testicles, all meant to mock me
       and make me feel even more harassed and humiliated.

c.   After I complained to Ford, Jim Larese, the head of the plant told his

immediate staff to "be careful around Helen because she's filing a lawsuit

against Ford."

223.    Ford's retaliatory acts against plaintiff and other similarly situated workers

constitute materially adverse employment actions.

## COUNT 21
## ADA – FAILURE TO ACCOMMODATE/RETALIATION
## (CHARMELLA LEVIEGE)

224.    The Plaintiff adopts and incorporates by reference paragraphs 1-25 of the

Complaint.

225.    This claim is brought under the ADAAA.

226.    Plaintiff is a qualified individual with a disability.

227.    Plaintiff suffers both a right shoulder disorder and a left shoulder disorder.

228.    Ford has knowledge of plaintiff's disability.

229.    Ford has failed to accommodate plaintiff's disability in one or more of the

following ways:

   a. By requiring plaintiff to violate her restrictions even though Ford's medical
      station nurse, safety representative, ergonomics representative and other
      supervisors determined that the particular jobs Tim Bell demanded I
      perform were outside of my restrictions.

      i. Plaintiff informed Tim Bell that the specific job duties he assigned
         were outside of plaintiff's restrictions. However, Tim Bell and Ford
         failed to engage in an interactive process, and instead caused
         plaintiff to endure further pain and injury in order to perform the job.

      ii. Ford and Bell threatened to discipline plaintiff and sent her home
          without pay for the remainder of my shift if she insisted she could
          not do the job without a reasonable accommodation.

   b. Ford and its supervisors and managers discriminated against plaintiff and
      treated her differently than non-disabled similarly situated co-workers.

230.    Plaintiff is capable of performing her essential job functions with or without

an accommodation.

231.    Plaintiff suffered materially adverse employment actions including:

   a. assigning plaintiff to jobs that violated her restrictions;

46

b.  denying plaintiff an accommodation

c.  refusing to engage in an interactive process

d.  threatening plaintiff with discipline

e.  sending plaintiff home for the remainder of a shift without pay;

f.   suspending plaintiff without pay for three days at a time; and

g.   denying plaintiff the same overtime and double time opportunities that similarly situated non-disabled employees enjoyed.

232.    Plaintiff complained about disability discrimination, failure to accommodate, and failure to engage me in an interactive process to Ford and Ford's Labor Relations Department to no avail.

233.    After plaintiff complained, Labor Representative Aaron told plaintiff to stop complaining or he would remove her restriction.

**COUNT 22**
**ADA- FAILURE TO ACCOMMODATE/RETALIATION**
**(CHRISTIE VAN)**

234.    Plaintiff adopts, realleges and incorporates by reference the allegations of paragraphs 1-25 of this complaint.

235.    This claim is brought under the ADAAA.

236.    Plaintiff is a qualified individual with a disability (Major Depression, and Severe and Generalized Anxiety Disorder) all of which were caused by the harassment and discrimination she endured at Ford.

237.    As a result of her condition, plaintiff took a medical leave of absence.

238. Thereafter, while on leave, Ford required the plaintiff to be examined by a company doctor and to submit to an IME with Dr. Alexander Obolsky from the Northwestern Medical Faculty Foundation.

239. Dr. Obolsky released Van to return to work with the only restriction being that Ford should not place Van in proximity to her harassers.

240. Ford refused to return Van to work despite the return being authorized by its own physician.

241. Van was forced to file a grievance and take the matter to arbitration to win her job back.

242. The arbitrator ruled in Van's favor and against Ford at the arbitration.

243. Ford has knowledge of plaintiff's disability.

244. Plaintiff requested a reasonable accommodation – that she be allowed to work without being directly supervised by the same sexual harassers about whom she previously complained.

245. Ford refused to engage in an interactive process and refused to provide plaintiff with the reasonable accommodation she requested.

246. Ford forced plaintiff to pay for the costs associated with the medical visits for the IMEs which Ford required.

247. Ford required plaintiff to undergo IMEs on September 24, 2013, September 30, 2013 and October 8, 2013.

248. Thereafter, Ford withheld and refused to provide plaintiff with the results of the IMEs for more nearly four months, thus delaying her return to work and denying plaintiff her wages and benefits.

**COUNT 23**
**BATTERY**

**(CHRISTIE VAN)**

249.     Plaintiff adopts and incorporates by reference the allegations in paragraphs 1- 56 of this Complaint.

250.     The Plaintiff and other women were subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant, managers and/or employees.

251.     The managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

252.      As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation and other forms of personal injury and bodily damage.

**COUNT 24**
**BATTERY**

**(CHARMELLA LEVIEGE)**

253.     Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-45, and 57 - 72 of this Complaint.

254.     The Plaintiff and other women were subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant, managers and/or employees.

49

255.    The managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

256.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation and other forms of personal injury and bodily damage.

**COUNT 25**
**BATTERY**

**(MARIA PRICE)**

257.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-45, and 73 - 82 of this Complaint.

258.    The Plaintiff and other women were subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant, managers and/or employees.

259.    The managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

260.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation and other forms of personal injury and bodily damage.

**COUNT 26**
**BATTERY**

**(HELEN ALLEN)**

261.    Plaintiff adopts and incorporates by reference the allegations in
paragraphs 1-45 and 83 - 105 of this Complaint.

262.    The Plaintiff and other women were subjected to a harmful or offensive
touching, without her consent, by one or more of the Defendant, managers and/or
employees.

263.    The managers and/or employees engaging in this conduct did so with the
intent to harm the Plaintiff.

264.    As a direct and proximate result of the foregoing conduct, the Plaintiff
suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered
mental anguish, anxiety and humiliation and other forms of personal injury and bodily
damage.

**COUNT 27**
**ASSAULT**
**(CHRISTIE VAN)**

265.    The Plaintiff adopts, realleges and incorporates by reference all of the
allegations in paragraphs 1 through 56, and 249 - 252 of this Complaint.

266.    The foregoing acts by the Defendant were done intentionally.

267.    As a result of the foregoing acts by the Defendant, its managers and
employees, the Plaintiff had a reasonable apprehension or fear of an imminent physical

51

violent or offensive contact or touching, without Plaintiff=s consent, which caused the Plaintiff to suffer damage.

268.    As a result of the Defendant's conduct, the Plaintiff suffered personal injuries, bodily injuries, and emotional distress and was forced to incur substantial medical bills.


**COUNT 28**
**ASSAULT**

**(CHARMELLA LEVIEGE)**

269.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1 through 45, 57 - 72 and 253 – 256 of this Complaint.

270.    The foregoing acts by the Defendant were done intentionally.

271.    As a result of the foregoing acts by the Defendant, its managers and employees, the Plaintiff had a reasonable apprehension or fear of an imminent physical violent or offensive contact or touching, without Plaintiff=s consent, which caused the Plaintiff to suffer damage.

272.    As a result of the Defendant's conduct, the Plaintiff suffered personal injuries, bodily injuries, and emotional distress and was forced to incur substantial medical bills.

## COUNT 29
## ASSAULT

### (MARIA PRICE)

273.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1 through 45, 68 - 77 and 257 - 260 of this Complaint.

274.    The foregoing acts by the Defendant were done intentionally.

275.    As a result of the foregoing acts by the Defendant, its managers and employees, the Plaintiff had a reasonable apprehension or fear of an imminent physical violent or offensive contact or touching, without Plaintiff=s consent, which caused the Plaintiff to suffer damage.

276.    As a result of the Defendant's conduct, the Plaintiff suffered personal injuries, bodily injuries, and emotional distress and was forced to incur substantial medical bills.

## COUNT 30
## ASSAULT

### (HELEN ALLEN)

277.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1 through 45, 83 - 105 and 261 – 264 of this Complaint.

278.    The foregoing acts by the Defendant were done intentionally.

279.    As a result of the foregoing acts by the Defendant, its managers and employees, the Plaintiff had a reasonable apprehension or fear of an imminent physical violent or offensive contact or touching, without Plaintiff=s consent, which caused the Plaintiff to suffer damage.

280.    As a result of the Defendant's conduct, the Plaintiff suffered personal injuries, bodily injuries, and emotional distress and was forced to incur substantial medical bills.

## COUNT 31
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (CHRISTIE VAN)

281.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 56, 106 - 131, 204 – 208, 249 – 252 and 265 - 268 of this Complaint.

282.    The Defendant, through its managers and employees, intended to cause severe emotional distress in the plaintiff.

283.    The Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

284.    The Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

285.    As a result of the Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress.

## COUNT 32
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (CHARMELLA LEVIEGE)

286.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 45, 57 - 72, 132 – 256, 209 – 213, 253 – 256 and 269 - 272  of this Complaint.

54

287.    The Defendant, through its managers and employees, intended to cause severe emotional distress in the plaintiff.

288.    The Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

289.    The Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

290.    As a result of the Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress.

**COUNT 33**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(MARIA PRICE)**

291.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 45, 73 – 82, 157 – 182, 214 – 218, 257 - 260, and 273 - 276  of this Complaint.

292.    The Defendant, through its managers and employees, intended to cause severe emotional distress in the plaintiff.

293.    The Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

294.    The Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

295.    As a result of the Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress.

**COUNT 34**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(HELEN ALLEN)**

296.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 45, 83 – 105, 183 – 203, 261 – 264, and 277 - 280 of this Complaint.

297.    The Defendant, through its managers and employees, intended to cause severe emotional distress in the plaintiff.

298.    The Defendant ′ s conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

299.    The Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

300.    As a result of the Defendant ′ s conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress.

WHEREFORE, for the foregoing reasons, the plaintiff   and other similarly situated persons, respectfully request that this Court provide the following equitable and monetary relief:

a.    Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.    Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

c.      Enjoin Ford from discriminating or harassing the plaintiff and other employees;

d.      Appoint a monitor to supervise workplace conditions for a period of at least 5 years;

e.      Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

f.      Award back pay, lost future earnings, and reimbursement for income and fringe benefits to the present;

g.      Award compensatory damages;

h.      Award punitive damages;

i.      Award prejudgment interest

j.      Award reasonable attorney's fees and expert witness fees and expenses and other costs;

k.      Grant such other relief as the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,
HUNT & ASSOCIATES, P.C.

By: /s/ Keith L. Hunt (electronic signature)
An Attorney for Plaintiffs

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
Three First National Plaza,
Suite 2100
Chicago, Illinois 60602
(312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Christie Van**<br>**c/o Keith L. Hunt**<br>**Hunt & Associates, P.C.**<br>**Three First National Plaza, Suite 2100**<br>**Chicago, IL 60602** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **Amended**<br>**440-2013-01292** | **Susan L. Smith,**<br>**Investigator** | **(312) 869-8038** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

[X] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

**John P. Rowe,**
**District Director**

10/7/14

*(Date Mailed)*

Enclosures(s)

cc: **FORD MOTOR COMPANY**
**c/o Kathy Nemechek**
**Berkowitz Oliver**
**Attorneys at Law**
**2600 Grand Blvd., Suite 1200**
**Kansas City, MO 64108**

EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | AMENDED<br>440-2013-01292 |

Illinois Department of Human Rights and EEOC
State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.)<br>Christie Van | Home Phone (Incl. Area Code)<br>(708) 921-3230 | Date of Birth<br>October 7, 1973 |
|---|---|---|

Street Address / City, State and ZIP Code
625 Paxton Avenue, Calumet City, IL 60409

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>Ford Motor Company, Chicago Assembly Plant | No. Employees, Members<br>Approximately 1300 | Phone No. (Include Area Code)<br>(773) 646-3100 |
|---|---|---|

Street Address / City, State and ZIP Code
12600 South Torrence Avenue, Chicago, IL 60633

| Name<br>See, attached Charge Outline. | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

_X_ RACE  __ COLOR  _X_ SEX  __ RELIGION  __ NATIONAL ORIGIN

_X_ RETALIATION  __ AGE  __ DISABILITY  __ OTHER (Specify below)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
February 21, 2012

_X_ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

See attached Charge Outline.

JUL 2 1 2014

CHICAGO DIST. OFFICE

OFFICIAL SEAL
CECILIA A JETT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/17

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT |
| 7/1/2014<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT A

**AMENDED CHARGE OUTLINE FOR CHRISTIE VAN (CHARGE #440-2013-01292)
(SEXUAL HARASSMENT/GENDER DISCRIMINATION/HOSTILE
WORK ENVIRONMENT/RACE DISCRIMINATION/ RETALIATION)**

## I.
## INTRODUCTION

A.    I and other similarly situated female employees were employed by Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.

   a.   I started with Ford in December, 2006 and was transferred to the Chicago Assembly plant on or about February 20, 2012.

   b.   I am a member of a protected class based on my sex/gender (female), and race (black/African-American).

## II.
## RESPONDENTS

A.    I name Ford Motor Company as my employer and as Respondent to my charges under Title VII of the Civil Rights Act of 1964 and under the Illinois Human Rights Act.

   1.   Pursuant to the Illinois Human Rights Act, I also name as <u>Respondents for sexual harassment claims</u> the following individuals, each of whom sexually harassed me and/or knowingly forced me and other women to endure a sexually harassing and hostile workplace environment (I believe each of these Respondents continues to work at Ford Motor Company's Chicago Assembly Plant, located at 12600 South Torrence Avenue, Chicago, IL 60633):

      i.   Mike Reiss, one of my direct supervisors;

      ii.   Willie Forcea, one of my direct supervisors;

      iii.   Eddie Cather, one of my supervisors and my "Team Leader";

      iv.   Dazman Gray, one of my supervisors and "Team Leader" for Zone B;

      v.   Kevin "Red" Marshall, the Ergonomics Manager;

      vi.   "Kenny," one of my co-workers in Zone A;

      vii.   "Bruce," a relief worker in Zone A on B Crew;

EXHIBIT A

    viii. "Mal," one of my co-workers;

    ix. "Bruce," a co-worker from the skilled-trades department;

    x. On numerous occasions, I have also witnessed offensive and unwanted sexual comments and conduct from other male co-workers whose names I do not know.

2. Pursuant to the Illinois Human Rights Act, I also name as Respondents for retaliation claims the following individuals (I believe each of these Respondents continues to work at Ford Motor Company's Chicago Assembly Plant, located at 12600 South Torrence Avenue, Chicago, IL 60633), each of whom retaliated against me for complaining about sexual harassment and racial discrimination in the workplace or who conspired to retaliate against me because I filed this charge or complained about sexual harassment and racial discrimination in violation of 775 Ill. Comp. Stat. 5/6-101(A):

    i. Salary Labor Supervisor, Terrence McClain;

    ii. Labor Relations Specialist, Alex Keweny;

    iii. Mike Reiss, one of my direct supervisors;

    iv. Willie Forcea, one of my direct supervisors;

    v. Dazman Gray, one of my direct supervisors;

    vi. Ashley Lowe, one of my shift supervisors.

## III.
## SEXUAL HARASSMENT/SEX DISCRIMINATION/ HOSTILE WORKPLACE ENVIRONMENT

A. Ford condones a sexually harassing and hostile workplace environment towards me and other women.

B. This sexually harassing and hostile workplace atmosphere has existed at the Chicago Assembly Plant at all times since I transferred there in February, 2012.

C. Male co-workers expose their genitals to me and other similarly situated female workers in ways that are offensive and sexually harassing.

2

a. By way of example, I have experienced multiple instances in which male co-workers exposed their penises to me.

    i. On one occasion, a male co-worker named Kenny who worked in the trim department exposed his penis to me by holding it in his hand with his pants unzipped and telling me "Christie, look what you are missing out on."

    ii. On another occasion, a male co-worker whose name I do not know, stood on top of one of the lockers in the employee area of the building and pulled down his pants revealing his genitals and buttocks to me and several other female co-workers who were in the vicinity.

        1. On each of these occasions, I was offended and upset that my male co-workers were showing me and other women their genitals. This conduct was unwanted and highly offensive.

    iii. On a yet another occasion, one of my direct supervisors, Willie Forcea showed me a cell-phone picture he had taken of his penis and told me "you know you want it."

        1. I became very disturbed that it was so common at Ford for men to show women their penises that even supervisors were doing it.

            a. I immediately complained about this to another supervisor, Mike Reiss, but Reiss dismissed my complaint, laughed and asked me if I also wanted to see his penis.

    iv. I complained about these and other instances of sexual harassment towards me and other women, but Ford did not resolve the problems.

D. Male co-workers touched, caressed and squeezed my body and my similarly situated female co-workers' bodies in ways that were offensive, unwanted and sexually harassing.

a. I have experienced multiple instances in which co-workers touched me in sexual ways which made me feel uncomfortable, offended and sexually harassed.

3

i.  By way of example, Bruce, who worked in Zone A on B Crew regularly referred to me and other female workers as "bitches", and frequently touched us like we were his sexual playthings. Bruce regularly rubbed his hands on me and my other similarly situated female co-workers' backs, shoulders, arms or buttocks when he came to relieve myself or one of the other women.

   1. I reported Bruce's sexually discriminatory and harassing conduct to my supervisor Mike Reiss, as well as to my union representative, Jimmy Jones.

      a. Ford did not take sufficient action to discipline Bruce or to stop his sexually harassing behavior.

ii.  Kenny, who worked in the trim department came up behind me at work and grabbed my buttocks. I was extremely offended and yelled at him. He just smiled and walked away.

   1. I was instructed by another co-worker named John who worked relief in Zone A not to tell on Kenny or any other union members.

iii.  A short while after Kenny grabbed my buttocks, another male co-worker came up behind me at work and used both of his hands to grab my buttocks. He walked away laughing.

   1. I reported this to my line supervisor. I told him this was the second time this had happened in a short period of time to me. I know it was happening to other women as well. I was so humiliated, offended and angered by this vulgar conduct that I did not care that John and others had discouraged me and other similarly situated women from complaining about other union members.

      a. My line supervisor did nothing to address this sexually harassing conduct.

iv.  I was repeatedly groped by a lesbian co-worker named Mal. She came up beside me and ran her hands over my hips and buttocks.

   1. I reported this sexually harassing touching to my supervisor, Mike Reiss, who responded in a sexually excited way "Oh! Wow!" This made me feel even more sexually harassed, embarrassed and humiliated.

4

EXHIBIT A

a. Reiss indicated he would not be taking any action against Mal and that I was "on my own." He told me to "just tell her to stop." Reiss took no corrective action regarding my complaint.

2. Several months later, Mal again approached me at work. She asked me about the type of panties I was wearing and commented on my underwear outline in my pants. She asked a male co-worker, Devin, to engage her in a "chain reaction" by which Devin grabbed Mal's buttocks firmly with his hand and Mal subsequently attempted to grab my thighs, buttocks and waist with her hand. I blocked her attempt to grope me, but I felt extremely embarrassed and humiliated.

E.     Male co-workers regualarly made lewd and offensive statements to me and asked me to engage them in sex or sexual acts which were offensive, unwanted and sexually harassing.

a. Team Leader Eddie Cather (white) sexually harassed me telling me that he liked that I was a "black girl with a loose booty." When he first introduced himself to me, Cather asked about my ability to perform oral sex. He expressed a specific desire to work with "cock-sucking entry level" girls.

b. Supervisor Mike Reiss

i. Reiss is the same supervisor that asked me if I wanted to see his penis after I complained to him about Supervisor Willie Forcea. Reiss also began to regularly sexually harass me and invite me to have sex with him.

ii. Supervisor Reiss invited me to play "hookey" with him from work, meaning that he wanted me to take a day off and spend it having sex with him. I told him "no."

1. After I refused Reiss's overt and perverted request, he started assigning me to jobs that put me in close contact with him. He then started asking me out on dates. I declined his advances.

a. Eventually, Reiss began regularly asking me if he could lick my body and for sexual favors on a daily basis.

i. I complained to Ford about Reiss's sexually harassing conduct, but nothing was done.

5

    2.  I declined Reiss's advances.

c.  Bruce from the Skilled Trades Department has sexually harassed me.

    i.  Bruce approached me and asked if I "liked to have a good time."

    ii.  Bruce instructed me to perform oral sex on him.

        1.  When I refused, he offered me $50.00 to give him oral sex while at work. I told him no.

            a.  Bruce then invited me to go home with him after work and engage in a sexual three-way with him and his wife. I told him no.

            b.  Despite my pleas for him to stop harassing me, he continued to invite me out on dates and ask if he could come over to my house to have sex.

        2.  I believe Bruce has made similar statements to other similarly situated female co-workers.

        3.  I reported Bruce's micsconduct, but Ford did not take any action against Bruce.

d.  Kevin "Red" Marshall, the Ergonomics Manager has made unwanted sexual advances towards me and many other women.

    i.  Red Marshall has told me that he wanted to get me drunk so he could sexually take advantage of me.

        1.  Red told me that he wanted to "lick up on" me.

            a.  I told Red that he made me feel extremely uncomfortable.

        2.  I am aware that Red regularly engages in these types of conversations with other similarly situated female co-workers and that it makes them feel sexually harassed.

            a.  I complained about this misconduct, but nothing was done.

    e. Dazman Gray, one of my supervisors and "Team Leader" for Zone B sexually harassed me.

        i. Dazman Gray approached me and told me in a very sexual way "You should be fucking me."

            1. As he said this, he thrust his pelvis towards me.

                a. I reported Dazman Gray's sexual harassment, but Ford did not discipline him.

F.    Male co-workers touched coerced or induced other similarly situated female employees into having sex with them, and on occasion, these induced sexual liaisons occurred at work or in the workplace parking lot.

G.    I complained to Labor Relations and the Ford harassment hotline about these issues to no avail.

    a. I was told by Labor Relations to stop complaining to the hotline because Ford did not want to address my complaints.

## IV.
## RACE DISCRIMINATION

A.    I, along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act and in violation of the Illinois Human Rights Act.

B.    I and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

C.    Various white team leaders and supervisors at Ford, including by way of example, Team-Leader Eddie Cather (white), regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

D.    After I complained about discrimination and harassment, I was regularly referred to by my white co-workers and supervisors as "Black Snitch Bitch" – which was extremely racially offensive and derogatory.

7

## V.
## RETALIATION

A.     Since complaining about sexual harassment and race discrimination, I have been retaliated against by my employer and the persons about whom I have complained and forced to endure a hostile work environment.

B.     Since I complained, Ford has retaliated against me by ignoring my complaints and instructing me to stop complaining.

C.  On December 18, 2012, I filed a Charge of Discrimination against Ford.

1.  On February 28, 2013, I was assaulted and attacked from behind out of retaliation for complaining about sexual harassment and racial discrimination in the workplace.

    i.  One of the offenders or an individual on behalf of one of those offenders or on behalf of Ford physically assaulted and attacked me as I was leaving work. I was thrown down to the ground from behind while walking to my car.

    ii.  My assailant stomped on the middle of my back, told me not to look at his face, told me that I was a "black snitch bitch" for complaining about sexual harassment, and told me that I better never come back to my job at Ford. The assailant told me that he knew where I lived and would kill me if I came back.

        1.  I complained to my union and to Labor Relations about this incident but to my knowledge, Ford never investigated this incident.

2.  Prior to that date, I repeatedly complained about an atmosphere of sexual harassment and racial and gender discrimination at Ford. I complained numerous times to Labor Relations and to my Union about inappropriate gestures and remarks which were made to me by my supervisors and co-workers. I complained that my supervisors were inviting me to have sex with them. I complained that I had been groped. I complained that one of my supervisors even took a picture of his genital parts and showed it to me and told me "You know you want it."

3.  Because of my complaints, my supervisors retaliated against me. They subjected me to a hostile workplace environment. My supervisors and co-workers talked about me being a "black snitch bitch." This is a racially derogatory term for an African American woman who complains about sexual harassment. Neither Labor Relations nor my

8

union adequately responded to ongoing harassment and hostility. After I complained, neither Labor Relations nor my union altered the workplace conditions so that I felt safe coming to work.

i.   Salary Labor Supervisor, Terrence McClain: McClain intimidated and berated me for talking out about sexual harassment in the workplace with other co-workers and other non-Ford employees outside of the workplace. McClain, in an aggressive manner told me: "I don't know what they did where you came from, but you are at Chicago Assembly now and you need to realize that things are run much differently here. You need to forget the incident that happened and need to let it go. Or else!"

ii.  Labor Relations Specialist, Alex Keweny; was present when McClain intimidated and berated me for talking out about sexual harassment in the workplace with other co-workers and other non-Ford employees outside of the workplace. Was present when McClain, in an aggressive manner told me: "I don't know what they did where you came from, but you are at Chicago Assembly now and you need to realize that things are run much differently here. You need to forget the incident that happened and need to let it go. Or else!" On subsequent Keweney reinforced that Van needed to stop complaining as she had been instructed by McClain; continued to require Van work under the direct supervision of supervisors she had complained about.

iii. Mike Reiss, one of my direct supervisors; dismissed me from my work assignment on one or more occasions in retaliation for reporting his sexual harassment and for filing an EEOC charge against him;

iv.  Willie Forcea, one of my direct supervisors; assigned me to lower quality job assignments and continued to harass me in a threatening way in retaliation for reporting his sexual harassment and for filing an EEOC charge against him;

v.   Dazman Gray, one of my direct supervisors and his fiancé, Ashley Lowe, one of my shift supervisors; falsely accused me of violating a safety rule and had me written up and suspended for a day because I complained that Gray had sexually harassed me the week before.

9

EXHIBIT A

D. After I and other similarly situated employees complained about sexual harassment, gender discrimination, racial discrimination and a hostile workplace environment, I/we have been retaliated against by Ford and denied an opportunity to return to work.

    1. For example, since I complained, Ford retaliated against me by ignoring my complaints and instructing me to stop complaining.

        i. The EEOC attempted on at least three occasions to mediate my charges of discrimination with the most recent attempt at mediation occurring in May.

            1. My employer-provided health insurance carrier, UniCare informed me that Ford terminated my employment effective May 28, 2014 – just days after the EEOC's most recent attempt at mediating this matter proved unsuccessful. (*See*, attached Ex. 1).

                a. Ford denied me an opportunity to return to work despite that I am capable of performing the job with or without a reasonable accommodation.

        ii. Ford terminated my employment benefits and terminated me in retaliation for complaining against Ford and for not accepting Ford's settlement offers.

        iii. This termination constitutes an adverse employment action and is a direct result of Ford's retaliation against me for complaining about disability discrimination, sexual harassment and race discrimination.

EXHIBIT A

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Christie Van<br>c/o Keith L. Hunt<br>Hunt & Associates, P.C.<br>Three First National Plaza, Suite 2100<br>Chicago, IL 60602 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **Amended**<br>**440-2014-00886** | **Susan L. Smith,**<br>**Investigator** | **(312) 869-8038** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☒ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

**John P. Rowe,**
**District Director**

10/7/14
*(Date Mailed)*

Enclosures(s)

cc: **FORD MOTOR COMPANY**
c/o Kathy Nemechek
Berkowitz Oliver
Attorneys at Law
2600 Grand Blvd., Suite 1200
Kansas City, MO 64108

EXHIBIT B

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | AMENDED<br>440-2014-00886 |

Illinois Department of Human Rights and EEOC

State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.)<br>Christie Van | Home Phone (Incl. Area Code)<br>(708) 921-3230 | Date of Birth<br>October 7, 1973 |
|---|---|---|
| Street Address<br>625 Paxton Avenue, Calumet City, IL 60409 | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>Ford Motor Company, Chicago Assembly Plant | No. Employees, Members<br>Approximately 1300 | Phone No. (Include Area Code)<br>(773) 646-3100 |
|---|---|---|
| Street Address<br>12600 South Torrence Avenue, Chicago, IL 60633 | City, State and ZIP Code | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).)<br><br>__ RACE  __ COLOR  __ SEX  __ RELIGION  __ NATIONAL ORIGIN<br><br>_X_ RETALIATION  __ AGE  _X_ DISABILITY  __ OTHER (Specify below) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest          Latest<br>February 28, 2013<br><br>_X_ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

See attached Charge Outline.

RECEIVED EEOC

JUL 2 4 2014

CHICAGO DISTRICT OFFICE

OFFICIAL SEAL
CECILIA A JETT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/17

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>7/1/2014<br>Date          Christie Van<br>          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br>Christie Van<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT B

<u>**AMENDED CHARGE OUTLINE FOR CHRISTIE VAN (CHARGE # 440-2014-00886)**</u>
**(DISABILITY DISCRIMINATION/FAILURE TO PROVIDE A**
**REASONABLE ACCOMMODATION/FAILURE TO ENGAGE**
**IN AN INTERACTIVE PROCESS/RETALIATION)**

**I.**
<u>**INTRODUCTION**</u>

A.    I was employed by Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.

   a. I started with Ford in December, 2006 and was transferred to the Chicago Assembly plant on or about February 20, 2012.

   b. I and other similarly situated employees are members of a protected class based on my/our disability(ies) or handicap(s).

**II.**
<u>**RESPONDENTS**</u>

A.    I name Ford Motor Company as my/our employer and as Respondent to this charge under the Americans with Disabilities Act (as amended) and under the Illinois Human Rights Act.

**III.**
<u>**DISABILITY/HANDICAP DISCRIMINATION/FAILURE TO PROVIDE REASONABLE**
**ACCOMMODATIONS/FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS**</u>

A.    Ford condones a sexually harassing, discriminatory and hostile workplace environment.

   1. I complained to Labor Relations and the Ford harassment hotline about sexual harassment, racial discrimination and other issues directed towards me and other women to no avail.

   2. I was told by Labor Relations to stop complaining to the hotline because Ford did not want to address complaints of mistreatment I and other women were experiencing.

      i. On December 18, 2012, I filed a Charge of Discrimination against Ford.

         1. On February 28, 2013, I was assaulted and attacked from behind out of retaliation for complaining about

EXHIBIT B

sexual harassment and racial discrimination in the workplace.

2. One of the offenders or an individual on behalf of one of those offenders or on behalf of Ford physically assaulted and attacked me as I was leaving work. I was thrown down to the ground from behind while walking to my car.

3. My assailant stomped on the middle of my back, told me not to look at his face, told me that I was a "black snitch bitch" for complaining about sexual harassment, and told me that I better never come back to my job at Ford. The assailant told me that he knew where I lived and would kill me if I came back.

   a. I complained to my union and to Labor Relations about this incident but am not aware whether Ford even investigated this incident.

B.    As a result of the February 28, 2013 attack, and as a result of sexual harassment, discrimination and retaliation I experienced at Ford, I became disabled and Ford regarded me as disabled.

1. Specifically, I suffered from Major Depression, and Severe and Generalized Anxiety Disorder ("my disability").

   i. This disability required I be off work beginning in late February, 2014.

   ii. My disability constitutes a disability within the meaning of the Americans with Disabilities Act (as amended) and the Illinois Human Rights Act as it interferes with my ability to engage in one or more normal daily life activities.

C.    I, like many other similarly situated employees at Ford am qualified to perform the essential functions of my job so long as I am provided a reasonable accommodation, but Ford has refused to let me and other similarly situated employees work because of my/our disability(ies).

1. In my instance, my doctor released me to return to work on September 2, 2013 without restrictions.

   i. Nevertheless, I requested a reasonable accommodation – that I be allowed to work without being directly supervised by the same sexual harassers about whom I previously complained.

2

    ii. However, Ford refused to allow me to return to work on September 2, 2013 or at any time thereafter.

        1. Ford refused to provide me with a reasonable accommodation, and refused to even engage me in an interactive process about this request.

            a. Instead, Ford placed me on a leave because of my disability, purportedly due to "no work available."

D.    I and other similarly situated disabled employees have been subjected by Ford to undergo one or more Independent Medical Examinations ("IMEs") that violates the Americans with Disabilities Act (as amended).

    1. As an example, in my instance, Ford subjected me to IMEs that were beyond the scope and manner of disability related injuries and beyond the scope of what was necessary to make an assessment of my ability to perform my job.

        i. Ford forced me to pay for the costs associated with the medical visits for the IMEs.

            1. Ford required I undergo IMEs on September 24, 2013, September 30, 2013 and October 8, 2013.

                a. Thereafter, Ford denied me the results of my IMEs for more nearly four months.

        ii. When Ford finally released the IMEs, the doctors performing them for Ford opined that I was capable of performing my job so long as I was not required to work directly under the supervisors that sexually harassed me.

            1. Despite Ford's own doctor(s) acknowledging that I was capable of performing my job with or without a reasonable accommodation, Ford still refused to return me to work.

E.    I and other similarly situated disabled employees complained about not being returned to work because of my disability.

    1. As an example, in my case, I complained to Ford's hotline and on November 18, 2013, when Ford still refused to return me to work because of my disability, I filed this charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

3

EXHIBIT B

F.     I and other similarly situated disabled employees suffered an adverse employment action as a result of Ford's disability-based discrimination, failure to accommodate and failure to engage in an interactive process.

   1.  As an example, I was prohibited from returning to work and refused an opportunity to resume my job.

      i.  After I filed an EEOC charge, Ford terminated my employment.

## IV.
## RETALIATION

A.     After I and other similarly situated employees complained about disability/handicapped discrimination, I/we have been retaliated against by Ford and denied an opportunity to return to work.

   1.  For example, since I complained, Ford retaliated against me by ignoring my complaints and instructing me to stop complaining.

   2.  I filed this Charge of Discrimination with the EEOC on November 18, 2013.

      i.  The EEOC attempted on at least three occasions to mediate this matter, with the most recent attempt at mediation occurring in May.

         1.  My employer-provided health insurance carrier, UniCare informed me that Ford terminated my employment effective May 28, 2014 – just days after the EEOC's most recent attempt at mediating this matter proved unsuccessful. (*See*, attached Ex. 1).

            a.  Ford denied me an opportunity to return to work despite that I am capable of performing the job with or without a reasonable accommodation.

      ii.  Ford terminated my employment benefits and terminated me because of my disability and in retaliation for complaining against Ford and for not accepting Ford's settlement offers.

      iii.  This termination constitutes an adverse employment action and is a direct result of Ford's retaliation against me for complaining about disability discrimination, sexual harassment and race discrimination.

4

EXHIBIT B

# INFORMATION ON WHERE TO FILE SUIT

You have been notified of your right to sue in Federal District Court. Suit is ordinarily filed in the District having jurisdiction of the county in which the employer, against whom you filed a Charge of employment discrimination, is located. The telephone number listed for each District is that of the Clerk of the Court.

| U.S. DISTRICT COURT<br>Northern District of Illinois<br>**Eastern Division at Chicago**<br>219 South Dearborn Street<br>Chicago, IL 60604<br>312-435-5670 | | U.S. DISTRICT COURT<br>Central District of Illinois<br>**Urbana Division**<br>201 South Vine<br>Urbana, IL 61801<br>217-373-5830 | |
|---|---|---|---|
| **Counties** | | **Counties** | |
| Cook | Kendall | Champaign | Kankakee |
| DuPage | Lake | Coles | Macon |
| Grundy | LaSalle | Douglas | Moultrie |
| Kane | Will | Edgar | Piatt |
| | | Ford | Vermillion |
| | | Iroquois | |
| U.S. DISTRICT COURT<br>Northern District of Illinois<br>**Western Division at Rockford**<br>211 South Court Street<br>Federal Building<br>Rockford, IL 61101<br>815-987-4355 | | **Peoria Division**<br><br>100 N.E. Monroe Street<br>135 Federal Building<br>Peoria, IL 61602<br>309-671-7117 | |
| **Counties** | | **Counties** | |
| Boone | McHenry | Bureau | McLean |
| Carroll | Ogle | Fulton | Peoria |
| DeKalb | Stephenson | Hancock | Putnam |
| JoDaviess | Whiteside | Knox | Stark |
| Lee | Winnebago | Livingston | Tazewell |
| | | Marshall | Woodford |
| | | McDonough | |
| U.S. DISTRICT COURT<br>**Southern District of Illinois**<br>750 Missouri Avenue<br>East St. Louis, IL 62201<br>618-482-0671<br><br>*and*<br><br>301 Main Street<br>Benton, IL 62812<br>618-438-0671 | | **Rock Island Division**<br>211 19th Street<br>Rock Island, IL 61201<br>309-793-5778 | |
| **Counties** | | **Counties** | |
| Alexander | Johnson | Henderson | Rock Island |
| Bond | Lawrence | Henry | Warren |
| Calhoun | Madison | Mercer | |
| Clark | Marion | **Springfield Division** | |
| Clinton | Monroe | 600 East Monroe Street | |
| Crawford | Perry | Springfield, IL 62701 | |
| Cumberland | Pope | 217-492-4020 | |
| Edwards | Pulaski | | |
| Effingham | Randolph | **Counties** | |
| Fayette | Richland | Adams | Logan |
| Franklin | St. Clair | Brown | Macoupin |
| Gallatin | Saline | Cass | Mason |
| Hamilton | Union | Christian | Menard |
| Hardin | Wabash | DeWitt | Montgomery |
| Jackson | Washington | Green | Morgan |
| Jasper | Wayne | Pike | Schuyler |
| Jefferson | White | Shelby | |
| Jersey | Williamson | | |

EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests).

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* **Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or**

* **After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.**

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Document Services, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost.** Payment must be made directly to **Aloha Document Services,** which charges 15 cents per page.

(Revised 09/5/12, previous copies obsolete)

EXHIBIT B

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Charmella Leviege<br>c/o Keith L. Hunt<br>Hunt & Associates, P.C.<br>Three First National Plaza, Suite 2100<br>Chicago, IL 60602 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **2nd Amended**<br>**440-2014-00370** | **Susan L. Smith,**<br>**Investigator** | **(312) 869-8038** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☒ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*      10/7/14

**John P. Rowe,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc: **FORD MOTOR COMPANY**
c/o Kathy Nemechek
Berkowitz Oliver
**Attorneys at Law**
2600 Grand Blvd., Suite 1200
Kansas City, MO 64108

EXHIBIT C

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA <br> _X_ EEOC | AMENDED <br> 440-2014-00370 |

_____ Illinois Department of Human Rights _____ and EEOC

State or local Agency, if any

| Name (indicate Mr. Ms. Mrs.) <br> Charmella Leviege | Home Phone (Incl. Area Code) <br> (216) 502-0455 | Date of Birth <br> 3/15/1956 |
|---|---|---|

Street Address          City, State and ZIP Code
8400 Grant Circle, Apt. A-408, Merrillville, IN 46410

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name <br> Ford Motor Company | No. Employees, Members <br> Over 40,000 | Phone No. (Include Area Code) <br> (773) 646-3100 |
|---|---|---|

Street Address          City, State and ZIP Code
12600 S Torrence Ave, Chicago, IL 60633

| Name | No. Employees, Members <br> More than 500 | Phone No. (Include Area Code) |
|---|---|---|

Street Address          City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| _X_ RACE __ COLOR _X_ SEX __ RELIGION __ NATIONAL ORIGIN <br><br> _X_ RETALIATION __ AGE __ DISABILITY __ OTHER (Specify below.) | Earliest          Latest <br><br> _X_ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

See attached Charge Outline.

OFFICIAL SEAL
CECILIA A JETT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/17

AUG 1 5 2014

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. <br><br> 8/6/14 <br> Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLANANT <br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT C

**CHARGE OUTLINE FOR CHARMELLA LEVIEGE – CHARGE # 440-2014-00370**
**(SEX DISCRIMINATION/SEXUAL HARRASSMENT/HOSTILE WORK**
**ENVIRONMENT/RACE DISCRIMINATION/RETALIATION)**

**I.**
**INTRODUCTION**

A.    I am employed by Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.

    a. I started with Ford in October, 2000.

    b. My work performance as an assembler in Ford's body department meets Ford's legitimate expectations.

    c. I am a member of a protected class based on my sex/gender (female), race/color (African American/black), and disability or handicap (shoulders/rotator cuffs).

**II.**
**RESPONDENTS**

A.    I name Ford Motor Company as my employer and as Respondent to my charges under Title VII of the Civil Rights Act of 1964.

    1. Pursuant to the Illinois Human Rights Act, I also name as Respondents the following individuals, each of whom sexually harassed me and/or knowingly forced me and other women to endure a sexually harassing and hostile workplace environment, each of whom continues to work at Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.:

        i. Buck Owens;

        ii. Brandon, a co-worker who worked beside me on my line;

        iii. Reggie (my union representative);

        iv. Geraldo "Dre" Harris (supervisor);

        v. Mike Reese (supervisor);

        vi. Myron Alexander (supervisor);

        vii. Kevin "Red" Marshall (Ergonomics Manager).

EXHIBIT C

IIIII
## CLASS ALLEGATIONS

I and/or other similarly situated female employees have been subjected to sexual harassment, discrimination and/or retaliation in one or more of the following ways (in addition to the specific allegations elsewhere in this Charge):

a.  By being subjected to sexual, sex based and/or gender based harassment through:

1.  Unwelcome and unwanted sexual advances;

2.  Requests for sexual favors;

3.  Unwanted and unwelcome touching and groping;

4.  Being subjected to jeers, lewd comments, sexual suggestions, cat-calls and the like;

5.  Being stared at by male employees who were focused on certain parts of my body and/or "elevator eyes";

6.  Being subjected to comments or offers of sexual contact or males telling me what they could or would like to do for me or to me (and other women);

7.  Being subjected to men exposing their genitals and/or showing pictures of their genitals;

8.  Being subjected to men sharing or displaying pornographic images in the workplace;

9.  Graffiti in the workplace;

10. By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

b.  By being treated less favorably than similarly situated male co-workers (or female co-workers who consent to have sexual relations to improve their work environment) in being required to endure a hostile working environment and/or being given less favorable assignments and/or work areas;

c.  By being retaliated against for having complained about unlawful discrimination and retaliation:

1.  By being deprived of overtime opportunities;

2

EXHIBIT C

2. By being sent home for the remainder of a shift after complaining;

3. By being ostracized, ridiculed and being subjected to increased performance scrutiny;

4. By being disciplined or written up;

5. By otherwise being "punished" for having complained;

6. By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

## IV.
## SEX DISCRIMINATION/SEXUAL HARASSMENT

A.      Beginning in approximately 2013 and continuing from time to time thereafter, Buck Owens ("Owens") made unwanted sexual comments to me and my similarly situated female co-workers, made sexual advances towards me, and inappropriately touched my breasts.

a. On numerous occasions, Owens stated that he wanted to have sex with me. Owens told me "I like to eat pussy" and asked if he could perform oral sex on me.

b. Owens frequently spoke to me regarding my sexual history and whether I was promiscuous.

c. Owens asked me "When was the last time you had sex."

d. On one occasion, while we were supposed to be traveling from one job location to another, Owens had me ride with him in one of the carts. Instead of going directly to the job assignment, Owens pulled up to an empty building on Ford's premises, fondled my breasts and pointed to a location up above where Ford employees went to have sex while at work. This made me feel extremely angry, humiliated and scared that Owens was going to force me to have sex with him in the empty building.

i. I resisted Owens' attempt to have sex with me and immediately complained about his sexual harassment, both to the police and to Ford.

1. I was uncomfortable complaining to many of my supervisors about sexual harassment, including Mike Reese ("Reese") and Myron Alexander ("Alexander") because they were also known to have sexually harassed other women.

3

EXHIBIT C

    a. I complained about Buck Owens to Labor Relations and the Sexual harassment hotline, but Owens continued to harass me for complaining and caused me to endure a hostile work environment.

2. I reported all of this to Ford and Ford's Labor Relation's representative Alex Keweny ("Keweny"), but Ford failed to discipline Owens, failed to reassign Owens from my work area and failed to remedy the hostile and sexually harassing workplace environment I was forced to endure.

B. Beginning in approximately 2012 or 2013, a male co-worker named Brandon was assigned to work beside me.

a. Brandon frequently spoke to me and other similarly situated women about how he wanted to have sex or engage in sex acts with me and my female co-workers.

b. Brandon asked me about having sex with him and asked me to take part in three-way sex with him, stating "I got a pussy appointment" and "Do you want to get in on it?"

    i. Brandon has made statements like this to me in front of my supervisors, including my line supervisor, Geraldo "Dre" Harris.

        1. I complained about this to Dre. Dre laughed and smiled at Brandon and I understood that Dre condoned Brandon's statements and conduct.

            a. That Dre enjoyed and condoned Brandon's explicit and predatory sexual harassment of me and other similarly situated female co-workers caused me to experience additional harassment and distress.

        2. I complained about this to Ford and Ford's Labor Relation's representatives Alex Keweny ("Keweny") and Natalie Dehringer, but Ford failed to discipline Brandon and failed to remedy the hostile and sexually harassing workplace environment I and other similarly situated women were forced to endure.

            a. Ford will never punish, discipline or take any action against Brandon because he is cousins with Plant Chairman Coby Menendez.

4

EXHIBIT C

C.     I have tried turning to my union representative Reggie for help and guidance, but he has also sexually harassed me.

    a.  Reggie has approached me with open arms for a hug. I opened my arms to accept his hug, but he grabbed me and forcefully gyrated his crotch against me in a very offensive and sexual way.

        i.  I complained about this to Ford but Ford failed to discipline Reggie and failed to remedy the hostile and sexually harassing workplace environment I and other similarly situated women were forced to endure.

D.     I constantly endure other male co-workers' sexually harassing verbal comments to me and other similarly situated women in the workplace.

    a.  By way of example, my male co-worker Jabari regularly made sexually harassing comments to me and other similarly situated female co-workers.

        i.  Jabari regularly pointed at female co-workers and openly verbalized women that he wanted to have sex with, pointing at whichever woman he was referencing at any given time and making statements such as: "I want to fuck her" and "I want to put a baby in her."

            1.  I was offended by these comments and felt humiliated that me and other women at Ford are regularly spoken about and treated as though we are merely sexual objects.

            2.  I complained about this to Ford, but Ford failed to remedy this ongoing sexual harassment.

    b.  Some male co-workers including Buck Owens regularly engaged in discussions about penis size and who was the best at having sex with women.

        i.  I was offended by these comments and felt humiliated that male sex organs and sexual conquests are allowed to serve as the topic of many conversations between my male employees and that they felt it was appropriate to discuss these topics in my presence and in the presence of my similarly situated female co-workers.

            1.  I complained about this to Ford, but Ford failed to remedy this ongoing sexually harassing conduct.

    c.  Many male co-workers revere supervisors such as Alexander and the Ergonomics Director, "Red" Marshall because these men are known to

5

EXHIBIT C

have successfully induced female co-workers to have sex with them in the building.

    d.  Many of my male co-workers refer to women as "hoes" and "sluts."

    e.  Women are not viewed as equals, but rather as sexual objects in the plant.

    f.  Being constantly exposed to unwanted sexual comments and discussion is offensive and degrades myself and similarly situated women.

    g.  I have complained to the sexual harassment hotline and to the Personnel Department about being exposed to a sexually harassing and hostile work environment, but Ford has failed to stop and/or remedy this ongoing harassment.

        i.  Ford has not disciplined or reassigned any males about whom I have complained nor has Ford conducted a thorough or timely investigation of my complaints.

E.     I constantly endure male co-workers inappropriately and sexually grope or touch other similarly situated female co-workers.

    a.  I have observed co-workers grope and attempt to massage other co-workers' buttocks in the workplace.

        i.  I was disgusted and offended by this conduct and felt humiliated that males were permitted to engage in intimate touching and groping in my workplace environment.

            1.  I complained about this to Ford, but Ford failed to remedy this ongoing sexually harassing conduct.

F.     I am aware that male co-workers solicit or pay some of my similarly situated female co-workers to have sex with them in the workplace.

    a.  The most notorious manager who engages my female co-workers as though they are prostitutes is Kevin "Red" Marshall.

    b.  Ford is aware that Red paid women to have sex with him at work, yet Ford continues to let Red walk from department to department to meet and seduce similarly situated female co-workers.

        i.  That Red is using his supervisory authority to sexually abuse other women or to coerce them into providing sexual favors is makes me

6

EXHIBIT C

feel like I am working in an unsafe and sexually harassing workplace.

    ii.  I complained about this to Ford, but Ford failed to take any measures to discipline or train my male employees or to otherwise remedy this ongoing sexually harassing conduct.

G.    I and similarly situated female coworkers constantly endure my male co-workers sharing or selling or viewing pornography.

    a.  I have observed some of my male co-workers showing each other nude or sexually explicit pictures on their cellular phones.

    b.  I have observed a male co-worker named Omar selling pornographic DVD's in the workplace.

        i.  Ford has completely failed to take any measures to discipline or train my male co-workers regarding pornography in the workplace.

## V.
## RACE DISCRIMINATION

A.    I, along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act and in violation of the Illinois Human Rights Act.

B.    I and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

    a.  By way of example, I and other similarly situated African Americans have been denied the opportunity to work overtime based on my/our race/color (African American/black).

        i.  At various times since I have been employed at Ford, and including in February 2014, I was denied the opportunity to work available overtime.

            1.  I was denied the opportunity to work overtime despite that I requested to work overtime and overtime work was available.

7

EXHIBIT C

2. The reason Ford gave for not allowing me to work overtime was because I have medical restrictions.

3. However, similarly situated white employees, including Michelle Tucker, were allowed to work overtime while on medical restrictions.

b. By way of further example, I have been wrongfully suspended based on my race/color (African American/black). This includes on February 19, 2014 when I was suspended from work for three days.

i. The reason Ford gave for suspending me was that I was disrespectful and argumentative to supervisors, team manager, and process coach when I asked for clarification about instructions being given.

ii. Similarly situated non-black employees such as Michele Tucker, were treated more favorably under similar circumstances and were not suspended for three days.

C.     African American/black employees are assigned to lower quality work assignments than white/Caucasian co-workers.

a. My white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks.

i. Me and similarly situated African American employees are not afforded similar conveniences. In fact, I have been disciplined and sent home for the balance of my shift for sitting down in the plant.

D.     Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

## VI.
## RETALIATION

A.     Since complaining about sexual harassment and racial and gender discrimination, both internally at Ford and to the EEOC, I have been retaliated against by my employer and the persons about whom I have complained and forced to endure a hostile work environment.

8                                          EXHIBIT C

1. I have been repeatedly disciplined, sent home early for the remainder of my shift, denied overtime opportunities, and reassigned to different job assignments that did not match my medical restrictions.

2. Ford's retaliatory acts deprived me of the same financial opportunities Ford offers to other employees who do not complain about sexual harassment or racial discrimination.

3. Ford's retaliatory acts against me constitute materially adverse employment actions.

9

EXHIBIT C

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  **Charmella Leviege**<br>c/o Keith L. Hunt<br>Hunt & Associates, P.C.<br>Three First National Plaza, Suite 2100<br>Chicago, IL  60602 | From:  **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **Amended**<br>**440-2014-02553** | **Susan L. Smith,**<br>**Investigator** | **(312) 869-8038** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| [ ] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [ ] | The EEOC is terminating its processing of this charge. |
| [X] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| [ ] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                                          10/7/14

**John P. Rowe,**
**District Director**                                          *(Date Mailed)*

Enclosures(s)

cc:  **FORD MOTOR COMPANY**
c/o Kathy Nemechek
**Berkowitz Oliver**
**Attorneys at Law**
**2600 Grand Blvd., Suite 1200**
**Kansas City, MO  64108**

EXHIBIT D

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>X EEOC | AMENDED<br>440-2014-02553 |

Illinois Department of Human Rights _____ and EEOC
*State or local Agency, if any*

| Name *(indicate Mr. Ms. Mrs.)*<br>Charmella Leviege | Home Phone (Incl. Area Code)<br>(216) 502-0455 | Date of Birth<br>3/15/1956 |
|---|---|---|
| Street Address<br>8400 Grant Circle, Apt. A-408, Merrillville, IN 46410 | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Ford Motor Company | No. Employees, Members<br>Over 40,000 | Phone No. (Include Area Code)<br>(773) 646-3100 |
|---|---|---|
| Street Address<br>12600 S Torrence Ave, Chicago, IL 60633 | City, State and ZIP Code | |
| Name | No. Employees, Members<br>More than 500 | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE __ COLOR __ SEX __ RELIGION __ NATIONAL ORIGIN<br><br>X RETALIATION __ AGE X DISABILITY __ OTHER (Specify below.) | Earliest       Latest<br><br>X CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attached extra sheet(s)):*

See attached Charge Outline.

OFFICIAL SEAL
CECILIA A JETT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/17

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT |
| 8/6/14<br>Date       *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EXHIBIT D

### AMENDED CHARGE OUTLINE FOR CHARMELLA LEVIEGE
### CHARGE # 440-2014-02553
### (DISABILITY DISCRIMINATION/FAILURE TO PROVIDE A
### REASONABLE ACCOMMODATION/FAILURE TO ENGAGE
### IN AN INTERACTIVE PROCESS/RETALIATION)

### I.
### INTRODUCTION

A.      I am employed by Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.

    a. I started with Ford in October, 2000.

    b. My work performance as an assembler in Ford's body department meets Ford's legitimate expectations.

    c. I am a member of a protected class based on my disability or handicap (Right Shoulder Disorder/Left Shoulder Disorder).

### II.
### RESPONDENTS

A.      I name Ford Motor Company as my employer and as Respondent to my charges under Title VII of the Civil Rights Act of 1964.

    1. Pursuant to the Illinois Human Rights Act, I also name as Respondents the following individuals, each of whom retaliated against me and/or knowingly forced me and other women to endure a hostile work environment after I complained about harassment and discrimination internally and to the EEOC, each of whom continues to work at Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois:

        i. Tim Bell (supervisor);

        ii. Darryl Galloway (supervisor);

        iii. Terry Conwell (supervisor);

        iv. Joel Thornsberry (department manager).

RECEIVED EEOC

AUG 0 6 2014

CHICAGO DISTRICT OFFICE

EXHIBIT D

## III.
### DISABILITY/HANDICAP DISCRIMINATION/FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS/FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS

A.　I am an individual with a disability as defined within the Americans with Disabilities Act, as amended and Section 1-103(I) of the Illinois Human Rights Act in that I have both a right shoulder disorder and a left shoulder disorder.

B.　Ford has knowledge of my disability.

C.　On various occasions, Ford's supervisors have failed to accommodate me and other similarly situated disabled or handicapped employees.

　　1.　By way of example, on many occasions, including December 11, 2013 and February 19, 2014, Tim Bell, Acting Superintendent, failed to accommodate me when he demanded that I perform tasks that violated my restrictions.

　　　　i.　This was despite that he knew of my restrictions and after prior violations of my restrictions caused me to undergo medical treatment and surgeries.

　　　　ii.　This was despite that Ford's medical station nurse, safety representative, ergonomics representative and other supervisors determined that the particular jobs Tim Bell demanded I perform were outside of my restrictions.

D.　My disability is unrelated to my ability to perform the essential functions of my job duties with or without a reasonable accommodation. However the specific job duties which Tim Bell demanded I perform could only be performed with a reasonable accommodation – which Tim Bell refused to provide.

　　1.　I informed Tim Bell that the specific job duties he assigned me to perform as complained of here were outside of my restrictions. However, Tim Bell failed to engage me in an interactive process, and instead caused me to endure further pain and injury in order to perform the job or disciplined me and sent me home without pay for the remainder of my shift if I insisted I could not do the job without a reasonable accommodation.

　　2.　Tim Bell engaged other supervisors including Darryl Galloway, Terry Conwell and Joel Thornsberry to harass me, punish me and discriminate against me based on my disability.

EXHIBIT D

3. Tim Bell, Darryl Galloway, Terry Conwell and Joel Thornsberry effectuated materially adverse employment actions against me as further discrimination based on my disability/handicap.

    i. These materially adverse employment actions included:

        1. assigning me to jobs that violated my restrictions without providing me a reasonable accommodation, causing me to endure further pain and injury or endure further discipline if I refused to do the job without a reasonable accommodation.

        2. sending me home for the remainder of my shift without pay;

        3. suspending me without pay for three days at a time; and

        4. denying me the same overtime and double time opportunities that similarly situated non-disabled employees enjoyed.

E.    I complained about disability discrimination, failure to accommodate, and failure to engage me in an interactive process to Ford and Ford's Labor Relations Department to no avail.

1. After I complained, Labor Representative Aaron told me to stop complaining or he would remove my restriction.

## IV.
## RETALIATION

A.    Since complaining about sexual harassment and racial and gender discrimination, both internally at Ford and to the EEOC, I have been retaliated against by my employer and the persons about whom I have complained and forced to endure a hostile work environment.

1. I have been repeatedly disciplined, sent home early for the remainder of my shift, denied overtime opportunities, and reassigned to different job assignments that did not match my medical restrictions.

2. Ford's retaliatory acts deprived me of the same financial opportunities Ford offers to other employees who do not complain about sexual harassment or racial discrimination.

3. Ford's retaliatory acts against me constitute materially adverse employment actions.

3

EXHIBIT D

i.   After I complained, Supervisors Tim Bell and Terry Conwell, at the direction of their boss, Joel Thornsberry assigned me to work in the old body shop in the plant where there are no jobs I can perform without a reasonable accommodation.

ii.  These supervisors did not provide me with a reasonable accommodation.

    1.  Another Supervisor in the body shop, Ken Perry told me Joel Thornsberry, Terry Conwell and Tim Bell wanted me assigned to the old body shop as punishment for me sitting momentarily to rest my disabling shoulder conditions.

iii. After I complained, Supervisors Darryl Galloway and Tim Bell made up reasons on multiple occasions to send me home without pay or suspend me without pay.

iv.  I have also been denied the same overtime and double time opportunities enjoyed by similarly situated non-disabled employees who did not complain about discrimination.

4



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests).

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* <u>**Before filing a lawsuit,**</u> but within 90 days of your receipt of the Right to Sue, or

* <u>**After your lawsuit has been filed.**</u>  **If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.**

If you are the _**Respondent**_ you may be granted access to the file _only after_ a lawsuit has been filed. Include with your request a copy of the court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request.  (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted.  You may review the file in our offices and/or request that a copy of the file be sent to you.  Files may not be removed from the office.

Your file will be copied by **Aloha Document Services, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.**   You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service.  Therefore, <u>it is recommended that you first review your file</u> to determine what documents, if any, you want copied.  EEOC will not review your file or provide a count of the pages contained in it.  If you choose not to review your file, it will be sent <u>in its entirety</u> to the copy service, <u>and you will be responsible for the cost.</u>  Payment must be made directly to **Aloha Document Services,** which charges 15 cents per page.

(Revised 09/5/12, previous copies obsolete)

EXHIBIT D

# INFORMATION ON WHERE TO FILE SUIT

You have been notified of your right to sue in Federal District Court. Suit is ordinarily filed in the District having jurisdiction of the county in which the employer, against whom you filed a Charge of employment discrimination, is located. The telephone number listed for each District is that of the Clerk of the Court.

| U.S. DISTRICT COURT Northern District of Illinois **Eastern Division at Chicago** 219 South Dearborn Street Chicago, IL 60604 312-435-5670 | | U.S. DISTRICT COURT Central District of Illinois **Urbana Division** 201 South Vine Urbana, IL 61801 217-373-5830 | |
|---|---|---|---|
| **Counties** | | **Counties** | |
| Cook | Kendall | Champaign | Kankakee |
| DuPage | Lake | Coles | Macon |
| Grundy | LaSalle | Douglas | Moultrie |
| Kane | Will | Edgar | Piatt |
| | | Ford | Vermillion |
| | | Iroquois | |
| U.S. DISTRICT COURT Northern District of Illinois **Western Division at Rockford** 211 South Court Street Federal Building Rockford, IL 61101 815-987-4355 | | **Peoria Division** 100 N.E. Monroe Street 135 Federal Building Peoria, IL 61602 309-671-7117 | |
| **Counties** | | **Counties** | |
| Boone | McHenry | Bureau | McLean |
| Carroll | Ogle | Fulton | Peoria |
| DeKalb | Stephenson | Hancock | Putnam |
| JoDaviess | Whiteside | Knox | Stark |
| Lee | Winnebago | Livingston | Tazewell |
| | | Marshall | Woodford |
| | | McDonough | |
| U.S. DISTRICT COURT **Southern District of Illinois** 750 Missouri Avenue East St. Louis, IL 62201 618-482-0671 *and* 301 Main Street Benton, IL 62812 618-438-0671 | | **Rock Island Division** 211 19th Street Rock Island, IL 61201 309-793-5778 | |
| **Counties** | | **Counties** | |
| Alexander | Johnson | Henderson | Rock Island |
| Bond | Lawrence | Henry | Warren |
| Calhoun | Madison | Mercer | |
| Clark | Marion | **Springfield Division** 600 East Monroe Street Springfield, IL 62701 217-492-4020 | |
| Clinton | Monroe | | |
| Crawford | Perry | | |
| Cumberland | Pope | | |
| Edwards | Pulaski | | |
| Effingham | Randolph | **Counties** | |
| Fayette | Richland | Adams | Logan |
| Franklin | St. Clair | Brown | Macoupin |
| Gallatin | Saline | Cass | Mason |
| Hamilton | Union | Christian | Menard |
| Hardin | Wabash | DeWitt | Montgomery |
| Jackson | Washington | Green | Morgan |
| Jasper | Wayne | Pike | Schuyler |
| Jefferson | White | Shelby | |
| Jersey | Williamson | | |

EXHIBIT D

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Maria D. Price<br>c/o Keith L. Hunt<br>Hunt & Associates, P.C.<br>Three First National Plaza, Suite 2100<br>Chicago, IL 60602 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **Amended**<br>**440-2013-03575** | **Susan L. Smith,**<br>**Investigator** | **(312) 869-8038** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ ] The EEOC is terminating its processing of this charge.

[X] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                    10/7/14

**John P. Rowe,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc:     **FORD MOTOR COMPANY**
c/o Kathy Nemechek
Berkowitz Oliver
Attorneys at Law
2600 Grand Blvd., Suite 1200
Kansas City, MO 64108

EXHIBIT E

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA  X  EEOC | AMENDED 440-2013-03575 |

Illinois Department of Human Rights _____ and EEOC

*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) Maria Price | Home Phone (Incl. Area Code) (708) 692-2412 | Date of Birth October 24, 1985 |
|---|---|---|

| Street Address 13824 South Wabash, Riverdale, IL 60827 | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name Ford Motor Company, Chicago Assembly Plant | No. Employees, Members Approximately 1300 | Phone No. (Include Area Code) (773) 646-3100 |
|---|---|---|

| Street Address 12600 South Torrence Avenue, Chicago, IL 60633 | City, State and ZIP Code |
|---|---|

| Name *See,* attached Charge Outline. | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

 X  RACE  __ COLOR   X  SEX  ___ RELIGION  __ NATIONAL ORIGIN

 X  RETALIATION  __ AGE  __ DISABILITY  __ OTHER (Specify below)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
February 21, 2011

 X  CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

See attached Charge Outline.

OFFICIAL SEAL
CECILIA A JETT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/17

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  8/6/14 _____  *Date*  Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLANANT  Maria Price  8/6/14  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EXHIBIT E

## CHARGE OUTLINE FOR MARIA PRICE
## (SEX DISCRIMINATION/SEXUAL HARRASSMENT/HOSTILE WORK
## ENVIRONMENT/RACIAL DISCRIMINATION/RETALIATION)

### I.
### INTRODUCTION

A.     I am employed by Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.

    a. I started with Ford on June 11, 2011.

    b. I am a member of a protected class based on my sex/gender (female) and race/color (African American/black).

B.     Since I began working at Ford's Chicago Assembly Plant, I and other similarly situated female employees have been subjected to constant unwanted sexual advances from male co-workers and supervisors and forced to endure a sexually harassing and hostile workplace environment.

    a. I have repeatedly complained to Ford's sexual harassment hotline about these issues to no avail.

    b. I have complained to Labor Relations about these issues.

        i. Despite my complaints, I and similarly situated female employees continue to be sexually harassed.

### II.
### RESPONDENTS

A.     I name Ford Motor Company as my employer and as Respondent to my charges under Title VII of the Civil Rights Act of 1964.

B.     Pursuant to the Illinois Human Rights Act, I also name as Respondents the following individuals, each of whom sexually harassed me and/or knowingly forced me and other women to endure a sexually harassing and hostile workplace environment. Each of these individuals continues to work at Ford at 12600 Torrence Avenue, Chicago, Illinois:

        i. Jabari Muse;
        ii. Ben Anderson (supervisor);
        iii. Pierre Hawkins;
        iv. Jeff Tucker;
        v. Brian Robinson;

    vi.  Coby Millender (Building Chairman);

   vii.  Ken Perry (supervisor);

  viii.  Dre Harris (supervisor);

   ix.  Carmel Gregory (supervisor);

    x.  Terrel Wilkerson;

   xi.  Jackie Montgomery.

## III
## <u>CLASS ALLEGATIONS</u>

I and/or other similarly situated female employees have been subjected to sexual harassment, discrimination and/or retaliation in one or more of the following ways (in addition to the specific allegations elsewhere in this Charge):

a. By being subjected to sexual, sex based and/or gender based harassment through:

   1.  Unwelcome and unwanted sexual advances and/or sex;

   2.  Requests for sexual favors;

   3.  Unwanted and unwelcome touching and groping;

   4.  Being subjected to jeers, lewd comments, sexual suggestions, cat-calls and the like;

   5.  Being stared at by male employees who were focused on certain parts of my body and/or "elevator eyes";

   6.  Being subjected to comments or offers of sexual contact or males telling me what they could or would like to do for me or to me (and other women);

   7.  Being subjected to men exposing their genitals and/or showing pictures of their genitals;

   8.  Being subjected to men sharing or displaying pornographic images in the workplace;

   9.  Graffiti in the workplace;

 10. By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

EXHIBIT E

b. By being treated less favorably than similarly situated male co-workers (or female co-workers who consent to have sexual relations to improve their work environment) in being required to endure a hostile working environment and/or being given less favorable assignments and/or work areas;

c. By being retaliated against for having complained about unlawful discrimination and retaliation:

1. By being deprived of overtime opportunities;

2. By being sent home for the remainder of a shift after complaining;

3. By being ostracized, ridiculed and being subjected to increased performance scrutiny;

4. By being disciplined or written up;

5. By otherwise being "punished" for having complained;

6. By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

## IV.
## SEX DISCRIMINATION/SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

A.      Beginning in 2011 and continuing to the present, male co-workers have made sexually harassing statements and sexually assaulted me and other similarly situated women in the workplace.

a. Jabari Muse ("Muse") was originally a witness when other co-workers and supervisors sexually harassed me at Ford. But after he supported me in making a prior sexual harassment complaint, he repeatedly and continuously became one of my principal sexual harassers.

i. Muse frequently verbally harassed me. He repeatedly told me that he wanted me to "have his baby" and that he was going to "get me pregnant.

1. Muse told me I owed him and had to have sex with him because he was a witness to Labor Relations when I complained about prior instances of sexual harassment.

2. Muse told me to break up with my significant other on Valentine's Day so that he could have sex with me.

3

3. Muse told me that he is good at performing oral sex on women and would like to engage in that with me.

4. Muse told me that he has a "big dick."

5. Muse tried to seduce me into having sex with him by telling me I can quit my job at Ford if I have his baby because he is rich.

6. When I refused Muse's sexual advances and told him that his conduct was offensive and harassing, he told me to "stop playing games and fuck me" and "How long are you going to keep playing? Give me some pussy."

ii. Muse has harassed me by grabbing or grabbing at my breasts and buttocks and has attempted to kiss me in the workplace.

1. Muse has attempted to reach inside my jumpsuit and grab my breasts and vagina.

2. On numerous occasions, Muse has grabbed and smacked my buttocks.

iii. Muse commented to me on my body, including that he liked "looking at your ass through your jumpsuit."

iv. Muse frequently tried to use hand gestures to demonstrate the size of his penis to me and other similarly situated women by grabbed or acted like was grabbing his penis in our presence.

1. Muse has attempted to expose his penis to me and other similarly situated female co-workers.

v. I have complained to Ford and Ford's sexual harassment hotline about Muse's sexually harassing comments to no avail.

b. Ben Anderson ("Anderson") was one of my supervisors and sexually harassed me when I complained about sexual harassment to him and Ford.

i. After I complained to Anderson, he told me that he would protect me and that he would transfer me to a better position in which I would not be sexually harassed.

1. Anderson made me feel protected against the other sexual harassers and used his position of authority to persuade me

4

to feel comfortable with him so that I would engage him in sexual acts.

    a. Anderson used his position of authority and my state of emotional distress to manipulate me into having sex with him.

        i. Anderson told me that as long as I had sex with him, he would protect me against further sexual harassment from others in the workplace.

    b. Anderson never transferred me to a better position in which I was not sexually harassed.

  i. Anderson bragged to my male co-workers of his sexual conquests with me other women and his interest in adding other similarly situated female co-workers to his list of sexual partners.

    2. Anderson and other male co-workers regularly referred to women as "bitches."

        a. Anderson regularly boasted to my co-workers that he was never going to get married because it was his practice to "keep fucking bitches and go on to the next."

  ii. I have complained to Ford and Ford's sexual harassment hotline about Anderson's sexually harassing conduct towards me to no avail.

c. Pierre Hawkins ("Hawkins") regularly makes sexually harassing comments to me and other similarly situated female coworkers.

  i. During one of my first encounters with Hawkins, he told me that he had been staring at my body and that "I seen your pussy print. Nice!"

    1. Since then, Hawkins has repeatedly commented to me about my "phat ass" and "nice pussy print" on dozens of subsequent occasions and has told me "I really want to suck the shit out of your pussy."

    2. Hawkins regularly makes similar comments regarding my other similarly situated female coworkers.

5

    a. These comments are unwanted and make me feel extremely embarrassed, humiliated and emotionally distressed.

    b. I have complained to Ford and Ford's sexual harassment hotline about Hawkins' sexually harassing comments to no avail.

        i. Hawkins' sexually harassing conduct towards me and other similarly situated female co-workers continues.

d. Jeff Tucker ("Tucker") is a co-worker who regularly makes sexually harassing comments to me and other similarly situated female co-workers.

    i. Tucker discusses his sexual moods in the workplace and openly states in front of me and other similarly situated co-workers when he is "feeling horny" and which women he intends to prey on at any given point in time.

        1. By way of example, Tucker has stated his desire to have sexual relations with a female co-worker named Tammy who he refers to as "white Tammy." He speaks openly and in explicit detail about these sexual fantasies.

        2. Tucker also speaks in this way about a co-worker named Tracy who he refers to as "Bitch Tracy." Tucker openly tells me and other similarly situated female co-workers that Tracy is "slick" and is his "hoe."

        3. I have complained to Ford about Tucker's sexually harassing comments to no avail. Tucker's sexually harassing conduct towards me and other similarly situated female co-workers continues.

e. Brian Robinson ("Robinson") was a "Trainer" and made unwanted sexually harassing comments and advances towards me and other similarly situated female co-workers.

    i. Robinson discusses his sexual moods in the workplace with me.

        1. By way of example, Robinson stated his desire to have sexual relations with me such as he "wants to slide inside of [me]" and that he "wants to know how [my] lips feel."

6

2. Robinson helped me become stationed at a preferable work assignment in the plant, and thereafter, told me that I "owed it to him to experience the fantasy" (meaning that he thought I owed him and that I should "repay" him with sex).

   a. Robinson invited me to his office on several occasions, but I was uncomfortable being alone with him and did not attend.

   b. Robinson then met with me outside the plant and attempted to and did kiss me.

3. I have complained to Ford about Robinson's sexually harassing comments to no avail. Tucker's sexually harassing conduct towards me and other similarly situated female co-workers continues.

4. I told Robinson that I was not interested in a romantic relationship with him and that his advances were unwanted and harassing and made me feel unsafe in the workplace.

5. I complained to Ford about Robinson's comments and conduct to no avail.

6. Robinson's sexually harassing conduct towards me and other similarly situated female co-workers continues.

f. Coby Millender is the Building Chairman and sexually harassed me when I attempted to complain to him about ongoing sexual harassment by other men at Ford.

   i. When I attempted to complain directly to Coby, he invited me to have a romantic lunch with him in his office. He specifically told me to "bring those pretty lips."

      1. When I reacted with a look of shock and horror at his invitation, he told me that he would transfer me from the A Crew (the most desirable shift) to the C Crew (the least desirable shift) if I refused to comply.

7

EXHIBIT E

    a. I complained about this to Reggie Easter instead. Fortunately, Reggie prevented me from being transferred from my shift. But it is humiliating to know that I and other similarly situated women are being threatened with materially adverse employment actions by supervisors who are demanding sexual relations.

  2. I have complained to Ford about this incident to no avail. Coby's sexually harassing conduct towards me and other similarly situated female co-workers continues.

g. Ken Perry is a supervisor who condones sexual harassment and gender discrimination in my department.

  i. By way of example, Ken Perry has bragged to male co-workers, in front of me and similarly situated female co-workers that he has engaged some women in the work place who he referred to as "bitches and hoes" from various departments, and that these women poured maple syrup on his naked body and lick it off of him.

    1. I have complained to Ford about Perry's sexually harassing conduct towards me and other similarly situated female co-workers, but his conduct continues.

h. Dre Harris ("Harris") is a supervisor who regularly makes demeaning comments to me and similarly situated women.

  i. Harris regularly refers to me and similarly situated women as "bitches" and "hoes."

  ii. Harris tells women in the workplace that he will "beat their asses" if they make a mistake at work. Harris does not make the same hostile and discriminatory comments towards men.

  iii. Harris tells women in the workplace that if they call the police against him for his discriminatory and violent statemetns, it does not matter because "the police have to leave sometime." Harris does not make the same hostile and discriminatory comments towards men.

  iv. I have complained to Ford about Perry's sexually harassing conduct towards me and other similarly situated female co-workers, but his conduct continues.

EXHIBIT E

i. Carmel Gregory ("Gregory") is a supervisor who regularly makes unwanted sexual advances towards me and similarly situated women.

    i. Gregory regularly makes sexual harassing comments towards me.

        1. Gregory makes me feel uncomfortable by commenting on my beauty, telling me I'm "a pretty girl," and commenting about my "baby-doll eyes."

        2. Gregory has repeatedly informed me that I was being disciplined and asked me to step to the side so she could talk about the disciplinary action against me. However, when she pulled me aside, she revealed there were no disciplinary actions against me. She used the opportunity to have me alone to attempt to engage me in unwanted romantic talk so she could "get to know" me.

    ii. I have repeatedly complained to Ford about Gregory's sexually harassing conduct towards me and other similarly situated female co-workers, but her conduct continues.

j. Terrel Wilkerson ("Wilkerson") is a lesbian co-worker who has regularly sexually harassed me in the workplace.

    i. Wilkerson has repeatedly made sexual passes at me at work. By way of example, Wilkerson purchased sexy see-through lingerie for me and gave it to me at work.

        1. Wilkerson told me that she liked my "body frame" and told me that she "had just the thing" for me.

            a. This lingerie "gift" was offensive, unwanted and unsolicited.

        2. While still at work, and after giving me the lingerie, Wilkerson invited me over to her house for a sex-toy party so that she could attempt to have sex with me.

            a. This invitation was offensive, unwanted and unsolicited.

        3. Wilkerson has also brought sex-toy magazines to work and asked me to shop for dildos with her using the magazine. She told me about dildos she has helped other women purchase while at work in Ford's plant.

a. This was offensive, unwanted and unsolicited and made me feel humiliated to be forced to endure discussions about sex toys, dildos and sex with other co-workers in the workplace.

4. Wilkerson has also made unwanted sexual advances towards other similarly situated female co-workers.

ii. I and other similarly situated female co-workers have repeatedly complained to Ford about Wilkerson's sexually harassing conduct towards women at Ford, but her conduct continues.

k. Jackie Montgomery ("Montgomery") is believed to be a lesbian co-worker, was good friends with Wilkerson and with Wilkerson, regularly sexually harassed me and other similarly situated women in the workplace.

i. Montgomery made unwanted sexual advances towards me.

ii. Montgomery regularly joined in with other male co-workers and with Wilkerson to talk about me and other similarly situated female co-workers in a sexually harassing way.

1. Montgomery discussed with male co-workers and Wilkerson openly in the workplace that I was a "dick-sucker," "hoe," and told men that I would "fuck anything with legs."

## V.
## RACE DISCRIMINATION

A.    I, along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act and in violation of the Illinois Human Rights Act.

B.    I and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

C.    Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

D.    After I complained about discrimination and harassment, I was regularly referred to by my white co-workers and supervisors as "Black Snitch Bitch" – which was extremely racially offensive and derogatory.

10

EXHIBIT E

E.    I have repeatedly complained to Ford about racial discrimination towards me and other similarly situated African-American/black co-workers, but this discriminatory conduct continues.

## VI.
## RETALIATION

A.    I have repeatedly complained about sexual harassment in the workplace to labor relations and to the sexual harassment hotline to address many issues and have turned in numerous statements, only to be retaliated against through discipline or further harassment.

B.    Since complaining about sexual harassment, I and other similarly situated female employees who have complained have been retaliated against by my employer and the persons about whom I have complained and forced to endure a hostile work environment.

    1.    My male Supervisors have tried to put an end to my complaining about sexual harassment at Ford and have subjected me to materially adverse employment actions, including writing me up and suspending without pay based on false accusations.

        i.    Supervisor Alex Curry told me after I complained that he and other supervisors at Ford are "tired of hearing you name" and are "trying to set you up." Thereafter, Supervisors retaliated against me.

            1.    By way of example, I was suspended for three days without pay for allegedly being late to work, when I was actually on time for work but was receiving medical attention from a nurse in the medical department at the time my shift began.

C.    A co-worker, Ms. Harvey, has informed me that she learned Ford was trying to come up with reasons to terminate my employment.

D.    I have been unfairly disciplined at work, including by way of example, being written up repeatedly for taking what were authorized and routine bathroom breaks.

    1.    When I and other similarly situated employees at Ford who were then being retaliated against, complained about being unfairly and retaliatorily disciplined at work, supervisors retaliated against complaining employees by refusing to grant routine bathroom breaks.

11

EXHIBIT E

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Helen D. Allen<br>c/o Keith L. Hunt<br>Hunt & Associates, P.C.<br>Three First National Plaza, Suite 1200<br>Chicago, IL 60602 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **2nd Amended**<br>**846-2013-24644** | **Susan L. Smith,**<br>**Investigator** | **(312) 869-8038** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☒ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☒ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

**John P. Rowe,**
**District Director**

*10/7/14*
*(Date Mailed)*

Enclosures(s)

cc:  **FORD MOTOR COMPANY**
c/o Kathy Nemechek
Berkowitz Oliver
Attorneys at Law
2600 Grand Blvd., Suite 1200
Kansas City, MO 64108

EXHIBIT F

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **Amended**<br>**846-2013-24644** |

| | Illinois Department Of Human Rights | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Helen D. Allen** | | **08-27-1964** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **315 E Maple Dr, Glenwood, IL 60425** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **FORD MOTOR COMPANY** | 500 or More | **(773) 646-7542** |

RECEIVED EEOC

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **12600 S. Torrence Blvd,  Chicago, IL 60633** | JAN 1 4 2014 | |

CHICAGO DISTRICT OFFICE

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☒ COLOR   ☒ SEX   ☒ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest            Latest
**03-18-2013**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or around August 21, 2000. My current position is Pipefitter. On or around July 3, 2012 and March 3, 2013, I was disciplined. Similarly-situated non-Black, light skinned employees who engaged in the same infractions have not been disciplined as severely as I have been. In or around March of 2013, I requested a religious accommodation from Respondent to no avail. Throughout my employment, I have been subjected to different terms and conditions of employment, including, but not limited to, training. I have complained to Respondent to no avail. Also, during my employment, I have been subjected to harassment.

I believe I have been discriminated against because of my race, Black, color, dark-skinned, sex, female, religion, Muslim and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 1/14/14   X *[signature]*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT F

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | **AMENDED**<br>846-2013-24644 |

|  | Illinois Department of Human Rights | and EEOC |
|---|---|---|
|  | State or local Agency, if any |  |

| Name (*indicate Mr. Ms. Mrs.*)<br>Helen Allen | Home Phone (Incl. Area Code)<br>(708) 275-4185 | Date of Birth<br>8/27/1964 |
|---|---|---|
| Street Address<br>315 Glenwood, IL 60425 | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**Ford Motor Company** | No. Employees, Members<br>Over 40,000 | Phone No. (Include Area Code)<br>(773) 646-3100 |
|---|---|---|
| Street Address<br>12600 S Torrence Ave, Chicago, IL 60633 | City, State and ZIP Code | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>_X_ RACE  _X_ COLOR  _X_ SEX  _X_ RELIGION  __ NATIONAL ORIGIN<br><br>_X_ RETALIATION  _X_ AGE  __ DISABILITY  __ OTHER (Specify below.) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest        Latest<br><br>_X_ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

See attached Charge Outline.

**RECEIVED EEOC**

AUG 1 8 2014

CHICAGO DISTRICT OFFICE

OFFICIAL SEAL
CECILIA A JETT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/09/17

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>8/6/14<br>Date    *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EXHIBIT F

## CHARGE OUTLINE FOR HELEN ALLEN – CHARGE NUMBER 846-2013-24644 (SEX/GENDER DISCRIMINATION/SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RACE/COLOR DISCRIMINATION/RELIGIOUS DISCRIMINATION/AGE DISCRIMINATION/RETALIATION)

### I.
### INTRODUCTION

A.      I am employed by Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.

      a. I started with Ford in August, 2000, and was transferred to the Chicago Assembly Plant in January, 2012.

      b. I am a member of a protected class Under Title VII of the Civil Rights Act of 1964 and Illinois Human Rights Act based on my race/color (African American/dark black), gender (female), religion (Orthodox Muslim), and age (over forty (40) for purposes of the Age Discrimination in Employment Act).

### II.
### RESPONDENTS

A.      I name Ford Motor Company as my employer and as Respondent to my charges under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and under the Illinois Human Rights Act.

      1. Pursuant to the Illinois Human Rights Act, I also name as Respondents the following individuals, each of whom sexually harassed me and/or knowingly forced me and other women to endure a sexually harassing and hostile workplace environment, each of whom continues to work at Ford Motor Company, ("Ford"), located at 12600 Torrence Avenue, Chicago, Illinois.:

          i. Coby Millender (Plant Superintendent);

          ii. Reggie (one of the union representatives);

          iii. Mike Polk (supervisor);

          iv. Tony Amandillo (supervisor);

          v. Myron Alexander (supervisor);

          vi. Fred Jones (supervisor);

EXHIBIT F

vii.  Erin Strayker;

viii.  Dazman Gray;

ix.  Kevin "Red" Marshall (Ergonomics Manager);

x.  Omar (a male co-worker).

### III.
### CLASS ALLEGATIONS

I and/or other similarly situated female employees have been subjected to sexual harassment, discrimination and/or retaliation in one or more of the following ways (in addition to the specific allegations elsewhere in this Charge):

a.  By being subjected to sexual, sex based and/or gender based harassment through:

1.  Unwelcome and unwanted sexual advances;

2.  Requests for sexual favors;

3.  Unwanted and unwelcome touching and groping;

4.  Being subjected to jeers, lewd comments, sexual suggestions, cat-calls and the like;

5.  Being stared at by male employees who were focused on certain parts of my body and/or "elevator eyes";

6.  Being subjected to comments or offers of sexual contact or males telling me what they could or would like to do for me or to me (and other women);

7.  Being subjected to men exposing their genitals and/or showing pictures of their genitals;

8.  Being subjected to men sharing or displaying pornographic images in the workplace;

9.  Graffiti in the workplace;

10. By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

2

b. By being treated less favorably than similarly situated male co-workers (or female co-workers who consent to have sexual relations to improve their work environment) in being required to endure a hostile working environment and/or being given less favorable assignments and/or work areas;

c. By being retaliated against for having complained about unlawful discrimination and retaliation:

　　1. By being deprived of overtime opportunities;

　　2. By being sent home for the remainder of a shift after complaining;

　　3. By being ostracized, ridiculed and being subjected to increased performance scrutiny;

　　4. By being disciplined or written up;

　　5. By otherwise being "punished" for having complained;

　　6. By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

## IV.
## SEX DISCRIMINATION/SEXUAL HARASSMENT

A.　　From the time that I was transferred to the Chicago Assembly Plant in January, 2012 to the present, I have endured a workplace environment that was hostile and discriminatory against myself and other similarly situated women.

a. When I transferred into Chicago Assembly, I experienced numerous male co-workers, including supervisors making sexually discriminatory and degrading comments towards me and similarly situated women.

　　i. These men included Coby Millender, Mike Polk, Tony Amandillo, Dazman Gray, and numerous male co-workers whose names I do not know.

　　　　1. These men regularly engaged in telling each other nasty, sexual jokes that were occasionally about me or my female co-workers.

　　　　2. They regularly made demeaning statements towards women or about women, including referring to women as "bitches" and "hoes."

3

3. They regularly talk about my and my similarly situated female co-workers' "big coochies", "fat asses", "titties", and "pussies." They brag to each other about the size of their "dicks."

4. I have regularly witnessed male co-workers, including supervisors instruct others to perform oral sex on them.

   a. All of these sexually harassing statements are disgusting, completely inappropriate in a workplace environment, and were humiliating for me and other similarly situated female co-workers.

   ii. I complained about unwanted, offensive sexual discussions in the workplace to my supervisor Fred Jones, but Fred Jones told me that he had no intention of doing anything to stop ongoing sexual harassment at Ford.

   iii. I complained about unwanted, offensive sexual discussion in the workplace and about Fred Jones' refusal to do anything about it to Ford's sexual harassment hotline and to Labor Relations.

b. When I transferred into Chicago Assembly, I experienced numerous male co-workers, including supervisors viewing, buying and selling pornographic magazines, tapes or DVD's in the workplace or viewing pornography on their cell phones.

   i. Male co-workers posted sexy nude Playboy and Penthouse pictures in the maintenance locker room.

   ii. A male co-worker named Omar routinely sold pornographic videos and/or DVD's to other men in the workplace.

   iii. Supervisor Myron Alexander collected and shared sexy and/or nude pictures of women on his cellular phone, including pictures of female co-workers including Ashely Lowe.

      1. Ashley Lowe was married to supervisor Dazman Gray. When Gray discovered Alexander was sharing sexy pictures of Lowe with other male co-workers, Gray engaged Alexander in workplace violence.

         a. Not only is sexual harassment ongoing, pervasive and offensive, but it has led to what is a dangerous

4

workplace environment in which I and other similarly situated women do not feel safe.

    iv. I complained about pornography, the buying, selling and trading of pornography, and about the violence that is occurring as a result of unwanted, offensive sexually harassing conduct to my supervisor Fred Jones, to Ford's sexual harassment hotline and to Labor Relations to no avail.

c. I regularly experience and observe numerous male co-workers, including supervisors inappropriately touching my similarly situated co-workers in a sexually harassing ways and receive complaints from my female-co-workers who ask me to report that they have been inappropriately groped, fondled and touched.

    i. Supervisors Coby Milender, Erin Strayker, Dazman Gray and Reggie, one of the union representatives regularly engage in inappropriate touching, including inappropriate hugs, and grabbing or caressing women's arms, shoulders and thighs in ways that make me and similarly situated women feel uncomfortable and sexually harassed.

    ii. I complained about inappropriate and sexually harassing touching towards myself and/or similarly situated women to my supervisor Fred Jones, to Ford's sexual harassment hotline and to Labor Relations to no avail.

d. I am aware that co-workers, including supervisors solicit and/or coerce women in the workplace to engage them in unwanted sexual acts.

    i. I am aware that one of the male electricians has solicited a female co-worker and offered to pay her to have sex with him in the plant or in Ford's parking lot.

        1. I and my similarly situated female co-worker were extremely offended when we experienced this solicitation.

    ii. I am aware that the ergonomics manager, Kevin "Red" Marshall regularly walks through the plant and attempts to flirtatiously engage women in unwanted requests for dates or romantic rendezvous.

        1. Other male co-workers regularly discuss with each other that they revere Red because he has sex with numerous women in the plant.

EXHIBIT F

iii. I complained about inappropriate and unwanted solicitation and requests for sex made in my presence and to similarly situated women to Ford's sexual harassment hotline and to Labor Relations to no avail.

    1. I was uncomfortable complaining to many of my supervisors about sexual harassment, including Mike Reese ("Reese") and Myron Alexander ("Alexander") because they were also known to have sexually harassed other women.

e. After I complained about sexual harassment, my male co-workers mocked my complaints by leaving behind spray-painted and chalk-marked graffiti depicting penises and testicles in my work area and lunch area.

    i. My male co-workers also anonymously leave in my work area totems of banana's sticking up in the air and other symbols depicting penises or which are otherwise degrading to myself and other similarly situated sexually harassed women.

f. Women are not viewed as equals, but rather as sexual objects in the plant.

g. Being constantly exposed to unwanted sexual comments and discussion is offensive and degrades myself and similarly situated women.

h. I have complained to the sexual harassment hotline and to the Personnel Department about being exposed to a sexually harassing and hostile work environment, but Ford has failed to stop and/or remedy this ongoing harassment.

## V.
## AGE DISCRIMINATION

A. I am forty-nine (49) years old.

B.     I and other older workers experience age discrimination at Ford.

C.     My supervisors regularly harass myself and other older workers and give preferences to younger workers in an effort to discourage older workers from continuing to work.

D.     My supervisors, regularly harass myself and other older workers and give preferences to younger workers in an effort to discourage older workers from continuing to work and in the hopes that I and other similarly situated older workers will retire.

6

EXHIBIT F

E. I complained about this to Labor Relations to no avail.

F. I complained about all of this to Ford's hotline, but Ford did not promptly respond to stop ongoing age discrimination.

## VI.
## RELIGIOUS DISCRIMINATION

A. I am Orthodox Muslim.

B. I and other Muslim workers experience religious discrimination at Ford.

C. My supervisors regularly harass myself and other Muslim workers and give preferences to non-Muslim workers in an effort to discourage Muslim workers from continuing to work.

D. Because of my religious beliefs, I have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

E. I complained about this to Labor Relations to no avail.

F. I complained about all of this to Ford's hotline, but Ford did not promptly respond to stop ongoing Religious discrimination.

## VII.
## RACE DISCRIMINATION

A. I, along with other similarly situated African American co-workers in the protected class were discriminated against and subjected to a hostile work environment based on our race in violation of Title VII of the Civil Rights Act and in violation of the Illinois Human Rights Act.

B. I and other similarly situated African Americans were discriminated against in the terms and conditions of our employment, including that we were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

C. African American/black employees are assigned to lower quality work assignments than white/Caucasian co-workers.

EXHIBIT F

    a.  My white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks.

        i.  Me and similarly situated African American employees are not afforded similar conveniences.

D.    Various white team leaders and supervisors at Ford regularly made racially offensive references to me and other African-Americans, including stereotypical and derogatory references to our hair, figures and clothes.

G.    Because of my race/color, I have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

H.    I complained about this to Labor Relations to no avail.

I.    I complained about all of this to Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

## VIII.
## RETALIATION

A.    Since complaining about sexual harassment and discrimination based on my gender, race, religious beliefs and age I have been retaliated against by my employer and the persons about whom I have complained and forced to endure a hostile work environment.

B.    After I complained, Labor Relations representative Natalie Dehrenger held a meeting with my male co-workers in which she "outed" me or in which she allowed me to be "outed" as the complainer to all of my sexually harassing male co-workers.

    1.  Subsequently, Coby Millender told approximately 200 of my union members that I was the complainer who had "filed a sexual harassment lawsuit against the and Ford."

        i.  After these two incidents in which both Ford and the Union Chairperson (who was one of the complained-of sexual harassers) disclosed me as being the "complainer", I experienced numerous anonymous acts of vandalism in my work area and lunch area depicting penises/phalluses and testicles, all meant to mock me and make me feel even more harassed and humiliated.

8

EXHIBIT F

2. After I complained to Ford, Jim Larese, the head of the plant told his immediate staff to "be careful around Helen because she's filing a lawsuit against Ford."

3. Area Manager Anthony Williams' Clerk, Debbie relayed to my similarly situated co-workers who also complained, including a woman named Kaina that Williams and Larese were "out to get" me and my similarly situated female co-workers because we were "complainers."

C.  Since I complained, Ford has retaliated against me by ignoring my requests to be compensated and stalling a union grievance I filed more than a year ago.

D.  In further retaliation, Ford has threatened me with unwarranted discipline, suspended me without pay and subjected me to heightened scrutiny in the workplace.

9

EXHIBIT F