UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, JACQUELINE BARRON, THERESA BOSAN, SHRANDA CAMPBELL, KETURAH CARTER, MICHELLE DAHN, TONYA EXUM, JEANNETTE GARDNER, ARLENE GOFORTH, CHRISTINE HARRIS, ORISSA HENRY, LAWANDA JORDAN, DANIELLE KUDIRKA, TERRI LEWIS-BLEDSOE, CONSTANCE MADISON, CEPHANI MILLER, MYOSHI MORRIS, STEPHANIE SZOT, SHIRLEY THOMAS-MOORE, ROSE THOMAS, TONI WILLIAMS, BERNADETTE CLYBURN, MARTHA CORBIN, ANGELA GLENN, LADWYNA HOOVER, OGERY LEDBETTER, LATRICIA SHANKLIN, ANTOINETTE SULLIVAN, DERRICKA THOMAS, AND NICHEA WALLS, individually and on behalf of all similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Case No. 14 cv 8708 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed a 123-Count First Amended Complaint on behalf of themselves and all similarly situated persons, alleging sexual harassment and hostile work environment, gender/sex discrimination, race discrimination, retaliation, national origin discrimination, failure to accommodate under the Americans with Disabilities Act, battery, assault, and intentional infliction of emotional distress. Defendant, Ford Motor Company ("Ford"), moves for partial dismissal of the First Amended Complaint and to strike the class allegations [33]. For the reasons set forth herein, the motion is granted in part and denied in part.

1

**Background**

The following facts from the First Amended Complaint are taken as true for purposes of ruling on the motion. The named plaintiffs, Christie Van, Charmella Leviege, Maria Price, Helen Allen, Jacqueline Barron, Theresa Bosan, Shranda Campbell, Keturah Carter, Michelle Dahn, Tonya Exum, Jeannette Gardner, Arlene Goforth, Christine Harris, Orissa Henry, Lawanda Jordan, Danielle Kudirka, Terri Lewis-Bledsoe, Constance Madison, Cephani Miller, Myoshi Morris, Stephanie Szot, Shirley Thomas-Moore, Rose Thomas, Toni Williams, Bernadette Clyburn, Martha Corbin, Angela Glenn, Ladwyna Hoover, Ogery Ledbetter, Latricia Shanklin, Antoinette Sullivan, Derricka Thomas, and Nichea Walls, bring the instant lawsuit on behalf of themselves and a purported class of individuals similarly situated. Defendant, Ford, manufactures vehicles. Ford employs more than 4,000 employees at its Chicago Assembly Plant and more than 800 employees at its Chicago Stamping Plant. All the named plaintiffs were employed at one of the Chicago plants between January 1, 2012, and the present.

The EEOC issued determinations that plaintiffs Van, Leviege, Price, Allen, Barron, Carter, Dahn, Gardner, Lewis-Bledsoe, Miller, and Williams, were discriminated against based on their sex (female), subjected to sexual and gender-based harassment, and retaliation while employed at the Ford Assembly Plant in Chicago. The EEOC determinations for these plaintiffs also found that they were subject to racial discrimination, harassment, and retaliation. The EEOC issued determinations that plaintiffs Campbell and Exum were discriminated against based on their sex (female), subjected to sexual and gender-based harassment, and retaliation while employed at the Ford Stamping Plant in Chicago. Plaintiffs allege that Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas, and Walls, were subjected to substantially similar discrimination and harassment while employed at the Chicago Ford plants, and therefore, should be permitted to piggyback their

2

claims to the other named plaintiffs without separately filing individual EEOC charges. Van worked at both plants and also seeks excusal from filing a separate EEOC charge.

The complaint alleges that male employees and supervisors routinely make discriminatory and harassing remarks and gestures based on race and gender towards female Ford employees and the company takes no action. Plaintiffs allege that Ford maintains a pattern and practice of inferior treatment of female employees with respect to the terms and conditions of employment, including job assignments, harassment, training, promotions, and overtime assignments. This pattern and practice of harassment and discrimination created a hostile work environment that has continued at the Chicago plants since the 1980s.

In addition to the allegations of a sexually and racially charged hostile work environment contributing to gender and race discrimination and retaliation, the plaintiffs allege battery, assault, and intentional infliction of emotional distress. Ford moves to dismiss many of the allegations for failure to state a claim, and also moves to strike the class claims.

**Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). The complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief…to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting Fed. R. Civ. P. 8(a)(2)). The plaintiff does not need to provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable

3

inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 449 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

*I. Motion to Dismiss*

Ford makes numerous arguments for dismissal of various claims, and this Court will address each in turn.

*1. Bankruptcy*

First, Ford moves to dismiss all claims brought by plaintiffs Van, Price, Campbell, Leviege, and Exum, arguing that they failed to disclose their claims in their respective bankruptcy petitions. When a debtor files for bankruptcy without listing a potential claim and then files a federal lawsuit, the failure to disclose the claim usually bars the debtor from pursuing the claim. *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 358 (7th Cir. 2015). "[A] debtor is judicially estopped from litigating after the bankruptcy ends; having told the bankruptcy court implicitly that any… claim had no value, and having received a discharge in response, the debtor is estopped from contending in a later suit that the claim is valuable." *Id.* (citing *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014)). Courts make an exception where an omission of a claim from the bankruptcy schedule is "innocent," meaning based on poor communication with counsel or on the good faith belief that the claim has no value. *Metrou*, 781 F.3d at 360. However, a debtor who denies owning an asset cannot capitalize on that concealed asset after discharge by the bankruptcy court. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

The doctrine of judicial estoppel turns on whether a party (i) took a clearly inconsistent position in the first of two judicial proceedings; (ii) was successful in the first proceeding as a result of that position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (iii) the opposing

4

party would suffer an unfair detriment if the doctrine of judicial estoppel was not applied. *Rogers v. Ford Motor Co.*, 2015 WL 2097679, 2015 U.S. Dist. LEXIS 57801, *7 (N.D. Ill. May 4, 2015) (Gottschall, J.); *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011). The doctrine of judicial estoppel does not apply to a debtor who omitted a claim but corrected her filings before receiving a discharge. *Spaine*, 756 F.3d at 547.

None of the plaintiffs in this case should be judicially estopped from asserting their claims based on their bankruptcy filings. Price filed a *pro se* Chapter 7 bankruptcy petition on June 6, 2013, a month after filing her EEOC charge against Ford. After Price retained counsel, she moved to reopen and amend her bankruptcy schedule to include the EEOC charge. Price's initial omission of the instant claims from her bankruptcy schedule is an innocent omission that does not trigger judicial estoppel.

Similarly, plaintiff Exum omitted her claims against Ford from her initial bankruptcy filing, which was discharged on March 25, 2014. Although Exum never moved to reopen or amend her bankruptcy schedule, her attorney sent the bankruptcy trustee a letter on April 3, 2015, notifying him of the EEOC charge filed on August 28, 2013. The trustee responded that he did not intend to assert an interest in the cause of action that arose post-petition. This Court therefore finds that Exum's omission was not intended to conceal the claim.

Both plaintiff Campbell and Leviege should likewise be excused for their omissions. Campbell filed for Chapter 7 bankruptcy on August 7, 2012, and was discharged on December 3, 2012. Campbell did not file her EEOC charge until eight months later. Plaintiff Leviege filed her EEOC charge sixteen months after she was discharged from bankruptcy. There is nothing in the record currently before this Court to suggest that either Campbell or Leviege intended to conceal the claims from the bankruptcy court or that they were even aware that they may have claims to assert against Ford. Accordingly, this Court denies Ford's motion to dismiss the claims of Price,

Exum, Campbell, and Leviege for failure to disclose their claims against Ford in their bankruptcy proceedings.

*2. Racial Discrimination, 42 U.S. C. § 1981*

Ford moves to dismiss the section 1981 claims raised by Bosan, Campbell, Carter, Clyburn, Corbin, Exum, Gardner, Glenn, Goforth, Harris, Henry, Hoover, Jordan, Ledbetter, Lewis-Bledsoe, Madison, Miller, Shanklin, Sullivan, Rose Thomas, Derricka Thomas, Thomas-Moore, Walls, and Williams for failure to state a claim of racial discrimination and harassment. To be actionable under section 1981, harassment must be: (1) based on race; (2) subjectively and objectively hostile; and (3) sufficiently severe or pervasive to interfere with an employee's ability to perform his assigned duties. *Hrobowski v. Worthington Steel Co. & Worthington Indus., Inc.*, 358 F.3d 473, 476 (7th Cir. 2004). Courts consider the following factors to determine whether the harassment is objectively hostile: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) whether it unreasonably interferes with the employee's ability to complete his or her assigned duties. *Dandy v. UPS*, 388 F.3d 263, 271 (7th Cir. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

To survive a motion to dismiss, plaintiffs "cannot plead discrimination in a conclusory fashion" but must plead facts to show or raise a plausible inference that the defendant discriminated against the plaintiffs based on their race. *Payne v. Abbott Lab.*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998) (citing *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982)). Specifically, some particularized facts demonstrating a constitutional violation are needed to sustain a cause of action. *Id.*

The allegations of the First Amended Complaint only provide specific facts of racial harassment directed at plaintiff Morris. (Dkt. 29, FAC, Count 4 at ¶¶ 1-75, 116-140, 141-146). Since the allegations included in the section 1981 claim do not provide any particularized facts as to Bosan, Campbell, Carter, Clyburn, Corbin, Exum, Gardner, Glenn, Goforth, Harris, Henry, Hoover,

6

Jordan, Ledbetter, Lewis-Bledsoe, Madison, Miller, Shanklin, Sullivan, Rose Thomas, Derricka Thomas, Thomas-Moore, Walls, and Williams, this Court grants Ford's motion to dismiss their claims in Count 4.

### 3. *Title VII Retaliation*

Ford moves to dismiss the following Title VII retaliation claims: (1) all claims to the extent they are premised on refusing sexual advances; (2) retaliation alleged by Campbell, Carter, Clyburn, Corbin, Glenn, Ledbetter, Shanklin, Sullivan, Derricka Thomas, and Walls; (3) claims by Jordan, Kurdicka, Shanklin, Sullivan, Derricka Thomas, and Walls to the extent they are based on reassignment; (4) claims alleged by Barron, Carter, Jordan, and Szot to the extent they are based on failure to remedy discrimination; and (7) Barron's claim to the extent it is based on her termination. This Court will address each argument in turn.

Title VII prohibits employers from discriminating against employees who report allegedly discriminatory acts. 42 U.S.C. §2000e-(3)(a). To state a prima facie case of retaliation, a plaintiff must allege (i) that she engaged in a statutorily protected activity, (ii) she suffered an adverse action at the hands of the defendant, and (iii) there was a causal link between the protected activity and the adverse action. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

The Seventh Circuit defines adverse employment broadly, categorizing it in three ways: "(i) termination or reduction in compensation…or other financial terms of employment; (ii) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; or (iii) unbearable changes in job conditions, such as hostile work environment or conditions amounting to constructive discharge." *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2009); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2008). To satisfy the causal link requirement, a plaintiff

must allege that her complaint led to or "was a major factor" in the adverse employment action. *Silver v. Townstone Fin., Inc.*, 2015 WL 1259507, at *2 (N.D. Ill. Mar. 17, 2015) (Coleman, J.).

There is a split in the circuits on the issue of whether a person who rejects a supervisor's sexual advances has engaged in protected activity for purposes of a retaliation claim. *Compare LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007) (holding that a single, express rejection of sexual advances does not constitute "protected activity" for purposes of a retaliation claim), *with Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (finding that when the plaintiff told her supervisor to stop harassing her, she engaged in the most "basic form of protected conduct"). The Seventh Circuit has expressly declined to address the issue. *See Tate v. Executive Mgmt. Servs., Inc.*, 546 F.3d 528, 532 (7th Cir. 2008); *Murray v. Chi. Transit Auth.*, 252 F.3d 880, 890 (7th Cir. 2001). In *Tate*, the Seventh Circuit found that, even assuming rebuffing sexual advances constituted a protected activity, the particular plaintiff in that case could not prevail because there was nothing in the record indicating that Tate believed he was being sexually harassed by his supervisor. *Tate,* 546 F.3d at 532. In this district the majority of courts to consider this issue hold that refusal of an employer's sexual advances does not qualify as protected activity under Title VII. *EEOC v. Caterpillar, Inc.*, 628 F. Supp. 2d 844, 875 n.8 (N.D. Ill. 2009) (Pallmeyer, J.) (collecting cases). Until such time that the Seventh Circuit resolves the issue in this circuit, or the Supreme Court resolves the circuit-split, this Court finds that plaintiffs cannot state a claim for retaliation where the sole protected activity alleged is the refusing of sexual advances.

Next, Ford moves to dismiss the retaliation claims of Campbell, Carter, Clyburn, Corbin, Glenn, Ledbetter, Shanklin, Sullivan, Derricka Thomas, and Walls for failure to state a claim. Ford argues that these ten plaintiffs merely recite the same laundry-list of allegedly retaliatory and wrongful acts without identifying which, if any, actions were taken against them specifically. Campbell alleges that Ford retaliated against her for refusing sexual advances (Dkt. 29 at ¶ 191), for

complaining to Ford about sexual harassment, and for filing an EEOC charge of discrimination (*Id.* at ¶193). Campbell alleges generally that she was reassigned to different job assignments that did not match her medical restrictions, sent home early without pay, and denied overtime opportunities that were offered to employees who did not complain. *Id.* at ¶¶193(b-d). Such allegations are too bare to meet the minimum requirements and put Ford on notice of the claims against it.

Carter alleges in Count 12 that Ford retaliated against her because she refused sexual advances, complained to Ford, and filed of an EEOC charge against Ford. Dkt. 29 at ¶¶197, 199; Ex. 8(A). Although her EEOC charge did not include retaliation, her retaliation claim is reasonably related to the claims in her EEOC charge that this Court will excuse the omission. *See Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir. 2002). Nevertheless, Carter's retaliation claim cannot survive. The allegations contain no factual support indicating a causal connection between the alleged adverse actions and her complaints. Dkt. 29 at ¶¶ 198-203. Carter's retaliation claim must also be dismissed to the extent she alleges that Ford failed to remedy the harassment since there is no factual support for any allegation that Carter complained to Ford or that Ford had an opportunity to remedy.

Clyburn alleges in Count 29 that she was retaliated against in "one or more of the following ways," but she does not state which of the listed allegations apply to her or provide sufficient factual allegations for Ford to be on notice of the claims against it. Dkt. 29 at ¶¶ 303-306. Thus, this Count must be dismissed. Corbin's, Ledbetter's, Shanklin's, Sullivan's, Derricka Thomas', and Walls allegations in Counts 30, and 33 to 37, are equally bare bones. Dkt. 29 at ¶¶ 309-312, 327-329, 333-336, 339-342, 345-348, 351-354. Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.

Ford moves to dismiss Jordan's retaliation claim in Count 19 to the extent that it relies on reassignment and failure by Ford to remedy Jordan's complaints. Jordan alleges, as many other plaintiffs do, very generally that Ford retaliated against her for refusing her supervisor's sexual advances, for complaining and for filing an EEOC charge. Dkt. 29 at ¶ 243. In terms of reassignment, the only allegation is that "Plaintiff was assigned to less desirable job placements." Dkt. 29 at ¶243(b). An adverse employment action must "materially alter the terms and conditions of employment" and not be a "mere inconvenience or an alteration of job responsibilities." *Dass v. Chicago Bd. of Education*, 675 F.3d 1060, 1069 (7th Cir. 2012). Reassignment can constitute an adverse action if it is "reassignment with significantly different responsibilities." *Burlington Industries Inc. v. Ellerth,* 524 U.S. 742, 761, 141 L. Ed. 3d 633, 118 S. Ct. 2257 (1998). Jordan's allegations based on reassignment require more factual enhancement to support retaliation. Her allegations regarding Ford's response to complaints are similarly lacking. Although Jordan names a supervisor, Ken Perry, whom she allegedly complained to about the sexual harassment and discrimination, there is no time frame or indication of the manner of complaint such that Ford was put on notice. Thus, this Court grants the motion without prejudice to the extent that Jordan's claims of retaliation are based on reassignment and a failure to remedy.

Kurdicka alleges retaliation in Count 20 based on reassignment in precisely the same manner as Jordan and therefore her claim must also be dismissed to the extent it relies on reassignment. Dkt. 29 at ¶ 249(b) ("Plaintiff was placed on less desirable job placements.").

Barron's retaliation claims in Count 9, by contrast, contain significantly more factual enhancement relating to Ford's alleged failure to remedy the harassment and discrimination, for example, Barron asserts that she complained to Natalie Dahrenger at Labor Relations and that her supervisors had passed on information that she had complained. Dkt. 29 at ¶ 181(b). Ford also moves to dismiss Barron's retaliation claim based on her termination for filing an EEOC charge.

The Seventh Circuit has stated that speculation based on suspicious timing alone does not support a reasonable inference of retaliation, a causal link is required. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (stating that a two-month lapse failed to establish a causal connection). The First Amended Complaint alleges that Barron filed her EEOC charge in early December 2012, but that she was not terminated until January 15, 2014. Barron asserts that the termination date is an error. Barron's Amended EEOC charge, which is attached to the First Amended Complaint, shows her termination date was January 15, 2013, one month following the filing of her initial EEOC charge. Dkt. 29-13, Ex. 5(A). The Seventh Circuit has held that one month is short enough to support an inference of retaliation. *See Magyar v. St. Joseph Reg'l Med. Ctr.*, 544 F.4d 766, 772 (7th Cir. 2008). The Court declines to dismiss Barron's retaliation claim based on a typographical error when the correct date is part of the First Amended Complaint in an attached exhibit.

Ford also moves to dismiss Szot's retaliation claim in Count 25, to the extent it relies on Ford's failure to remedy the discrimination and harassment because the conduct merely continued and thus Szot has not alleged a material change in employment condition. *See EEOC v. RJB Props., Inc.*, 857 F. Supp. 2d 727, 739 (N.D. Ill. 2012). Szot alleges that she was stalked by a supervisor, that Ford informed her that her stalker would not be reassigned, but if she wanted to be reassigned it would be to a lower paying position and shift with fewer overtime hours or she could be suspended for 30 days. Dkt. 29 at ¶ 280(b). Szot also alleges that she was forced to accept a lower paying job assignment. *Id.* at at ¶ 280(b)(i). This Court denies the motion to dismiss Szot's claim for retaliation.

*4. Hostile Work Environment*

Clyburn and Sullivan have asserted hostile work environment claims, which Ford argues should be dismissed for failure to state a claim. In order to establish a prima facie case of hostile work environment based on sexual harassment under Title VII, the plaintiff must allege (i) she was subjected to unwelcome sexual harassment; (ii) the harassment was based on her sex; (iii) the sexual

11

harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment that affected the psychological well-being of the plaintiff; and (iv) there is a basis for employer liability. *Boumehdi v. Plastag Holdings, LLC*, 439 F.3d 781, 788 (7th Cir. 2007); *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004). The motion is granted with respect to Clyburn and Sullivan since none of the allegations contained in Count I refer to them at all, unlike the other named plaintiffs, where instances of sexually harassing conduct are alleged.

### 5. State-Law Tort Claims

Plaintiffs assert various state law tort claims against Ford for battery, assault, and intentional infliction of emotional distress. Plaintiffs argue the Ford is liable for the intentional conduct of its employees for which it took no steps to remedy. Ford contends that it cannot be held vicariously liable for its employees' acts outside the scope of employment, and state law preempts the claims as alleged here. Plaintiffs further argue that their tort claims are not preempted because the conduct was intentional and the intentional infliction of emotional distress claims are not dependent on the employment relationship and thus are not covered by the Illinois Human Rights Act.

#### a. Illinois Workers Compensation Act Preemption

The Illinois Workers Compensation Act ("IWCA"), which provides that it is the exclusive state law remedy against an employer for accidental injuries sustained by an employee arising out of and in the course of her employment. *See* 820 ILCS 305/5, 305/11; *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1225-26 (1990). To avoid preemption plaintiffs must show that Ford committed, commanded, or expressly authorized a supervisor to commit an intentional tort. *Meerbrey*, 139 Ill. 2d at 464. "A claim that management ignored evidence that the conduct was taking place is not sufficient; what is required is 'actual direction, encouragement, or participation' by management. *Temores v. SG Cowen*, 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 239, 408 N.E. 2d 198, 203, 41 Ill. Dec. 776 (1980). The fact that

12

some of the participants in the conduct were managers does not by itself make their conduct that of the company for purposes of the preemption analysis. Plaintiffs must allege that the perpetrators had "the authority to make decisions and set policy on behalf of" the employer. *Daulo v. Commonwealth Edison*, 938 F. Supp. 1388, 1406 (N.D. Ill. 1996); *Robinson v. Roney Oatman, Inc.*, 1999 U.S. Dist. LEXIS 1866, 97 C 8964, 1999 WL 1102694, at *14 (N.D. Ill. Nov. 23, 1999).

The allegations in the First Amended Complaint fall short of these requirements to avoid preemption by the IWCA. Although there are several allegations in the complaint asserting that supervisors and managers participated in and knew of the conduct complained of by plaintiffs, there are no allegations showing that even these managers had any authority to make decisions or set policy on behalf of Ford. Accordingly, this Court finds the IWCA preempts the intentional tort claims in Counts 40-123.

*b. Illinois Human Rights Act Preemption*

Ford also asserts that the Illinois Human Rights Act, 775 ILCS 5/8-111(C), preempts plaintiffs' intentional infliction of emotional distress claims. To state a claim under Illinois law for intentional infliction of emotional distress plaintiffs must allege: "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-605 (7th Cir. 2006) (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)). Not every tort claim is preempted by the IHRA. "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; 'that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish[] the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Naeem v. McKesson*

13

*Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000)). Where, as here, a claim of intentional infliction of emotional distress is supported by factual allegations identical to those set forth in a Title VII sexual-harassment claim, the IHRA preempts the intentional infliction of emotional distress claim. *See Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 905 (7th Cir. 2002). Accordingly, this Court finds plaintiffs' intentional infliction of emotional distress claims are preempted by IHRA.

*II. Motion to Strike*

Ford also moves to strike the class claims from the First Amended Complaint. This Court finds the motion to strike premature. Federal Rule of Civil Procedure 23(c)(1)(A) provides that the court must determine whether to certify the action as a class action as early as practicable. Resolving the question of class certification is only "practicable" at the pleading stage when it is apparent from the complaint that class certification is inappropriate. *Cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1983); *see also Hill v. Wells Fargo Bank*, 946 F.Supp.2d 817, 829 (N.D. Ill. 2013).

The First Amended Complaint asserts a class under Rule 23(b)(2) or, alternatively, Rule 23(b)(3). Plaintiffs allege that there are more than a thousand women working at the two Ford plants in Chicago who have been subjected to or who work in the same hostile work environment in which the named plaintiffs are employed. Dkt. 29 at ¶ 65. Plaintiffs further allege that numerous women have filed EEOC charges and internal complaints about sexually and racially harassing environment. *Id.* at ¶¶ 66-69.

Ford first argues that the class definition is impermissibly "fail safe," meaning that membership in the class depends on liability of the defendant and thus cannot be determined until final judgment. *See Messner v. Northshore Univ. Healthsystem,* 669 F.3d 802, 825 (7th Cir. 2012). The problem with this type of class definition is that "a class member either wins, or by virtue of losing,

14

is defined out of the class and is therefore not bound by the judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (quotation omitted). The appropriate remedy for alleging a fail-safe class in a complaint is not to strike the class claims, but to refine the class definition. *See Messner*, 669 F.3d at 825 ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Plaintiffs here have not yet moved to certify the purported class and, thus, this Court will consider the claims as a placeholder for plaintiffs to seek certification if it becomes appropriate to do so.

Ford also moves to strike the class claims on the basis that the putative class contains conflicts of interest since the proposed class definition could include both managerial and non-managerial employees and the complaint contains allegations that female supervisors engaged in some of the allegedly wrongful conduct. Yet, this argument too is easily resolved by refinement of the class definition at such time that plaintiffs seek to certify the class. Ford's argument with respect to plaintiff's counsel is similarly premature. This Court therefore denies Ford's motion to strike the class allegations without prejudice.

**Conclusion**

Based on the foregoing, Ford's motion [33] is granted in part and denied in part. Plaintiffs are allowed 21 days to file a Second Amended Complaint in accordance with this Order.

IT IS SO ORDERED.

Date: March 28, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge