**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, JACQUELINE BARRON, THERESA BOSAN, SHRANDA CAMPBELL, KETURAH CARTER, MICHELLE DAHN, TONYA EXUM, JEANNETTE GARDNER, ARLENE GOFORTH, CHRISTINE HARRIS, ORISSA HENRY, LAWANDA JORDAN, DANIELLE KUDIRKA, TERRI LEWIS-BLEDSOE, CONSTANCE MADISON, CEPHANI MILLER, MIYOSHI MORRIS, STEPHANIE SZOT, SHIRLEY THOMAS-MOORE, ROSE THOMAS, TONI WILLIAMS, BERNADETTE CLYBURN, MARTHA CORBIN, ANGELA GLENN, LADWYNA HOOVER, OGERY LEDBETTER, LATRICIA SHANKLIN, ANTOINETTE SULLIVAN, DERRICKA THOMAS, and NICHEA WALLS, each individually and on behalf of similarly situated persons, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 14-CV-08708  JUDGE SHARON JOHNSON COLEMAN  Jury Trial Demanded |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) ) | |

**FORD MOTOR COMPANY'S ANSWER TO SECOND AMENDED**
**CLASS ACTION COMPLAINT FOR INJUNCTIVE,**
**MONETARY AND CLASS WIDE RELIEF**

For its Answer to the Second Amended Class Action Complaint for Injunctive, Monetary

and Class Wide Relief ("SAC"), Defendant Ford Motor Company ("Ford" or "Defendant")

responds as follows:

1.      This is a proceeding for declaratory and injunctive relief and damages to redress the deprivation of Plaintiffs' and Plaintiffs similarly situated individuals' civil rights under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000 *et seq.)* ("Title VII"), under 42 U.S.C. § 1981 ("Section 1981"), under the Americans with Disabilities Act, as amended (42 U.S.C. § 12101)("ADA"), and for state law causes of action.

**ANSWER:**      Paragraph 1 of the SAC merely recites purported causes of action that Plaintiffs presumably seek to assert against Ford and therefore do not require a response.  To the extent a response is required, Ford denies that Plaintiffs' claims have merit and denies that it violated the above statutes or state law as alleged.

## THE PARTIES

2.      Each of the thirty-three (33) Named Plaintiffs are [sic] or were [sic] employed by Ford at its Assembly Plant or Stamping Plant in this judicial district and most reside here.

**ANSWER**:      Ford admits that each of the thirty-three named Plaintiffs is or was employed at Ford's Chicago Assembly Plant or Chicago Stamping Plant and that those facilities are within the judicial district where the case is filed. Ford is without knowledge or information sufficient to admit or deny the current residence of all thirty-three Named Plaintiffs and therefore, denies same.

3.      The putative members of the plaintiff class all live or work (or previously worked) for Ford within this judicial district at Ford's Assembly Plant or Stamping Plant.

**ANSWER**:      Ford admits only that Plaintiffs seek to allege a putative class of individuals who work or previously worked at the Chicago Assembly or Chicago Stamping Plants and that those facilities are within the judicial district where the case is filed.  Ford denies

that this matter should proceed as a class action. Ford is without knowledge or information sufficient to admit or deny whether each of the alleged putative class members lives in this judicial district.

4.      Defendant Ford Motor Company operates at least two facilities in the Chicago area.

**ANSWER**:      Ford admits the allegations in paragraph 4.

5.      Ford's Chicago Assembly Plant is located at 12600 South Torrence Avenue in Chicago, Illinois and in this judicial district.

**ANSWER**:      Ford admits the allegations in paragraph 5.

6.      Ford's Chicago Stamping Plant is located at 1000 E. Lincoln Highway in Chicago Heights, Illinois and in this judicial district.

**ANSWER**:      Ford admits the allegations in paragraph 6.

7.      All of the named plaintiffs ("Named Plaintiffs") and putative class members were employed at either Ford's Chicago Assembly Plant or its Chicago Stamping plant or both between January 1, 2012 and the present.

**ANSWER**:      Ford admits that the Named Plaintiffs were employed at either the Chicago Assembly or Chicago Stamping Plants at some time between January 2, 2012, and the present and that Plaintiffs assert a punitive class comprised of members who were also employed at the two facilities during the identified time frame. Ford denies that this matter should proceed as a class action or that Plaintiffs can establish the requirements of Rule 23 and denies all remaining allegations in paragraph 7.

8. Ford is an "employer" within the meaning of Title VII (42 U.S.C. § 2000e-(b)), and the ADA (42 U.S.C. § 12111).

**ANSWER**: Ford admits the allegation in paragraph 8.

9. Ford is engaged in an "industry affecting commerce" as that phrase is used in Title VII.

**ANSWER:** Ford admits the allegation in paragraph 9.

10. Ford employs more than 4,000 employees at its Chicago Assembly Plant and more than 800 employees at its Chicago Stamping plant.

**ANSWER:** Ford admits the allegations in paragraph 10.

## JURISDICTION AND VENUE

11. Jurisdiction over the Plaintiffs' federal law claims exists pursuant to 28 U.S.C.§ 1331 as these claims involve Federal Questions under Title VII (42 U.S.C. § 2000e-5), and Section 1981 (42 U.S.C. § 1981 and §1981a), and the ADA (29 U.S.C. § 12101).

**ANSWER**: Paragraph 11 of the SAC contains allegations of jurisdiction to which no answer is required.

12. This Court has Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' state law claims which arise out of the same nucleus of operative fact giving rise to the federal law claims.

**ANSWER**: Paragraph 12 of the SAC contains allegations of jurisdiction to which no answer is required.

13.     The Court has jurisdiction over the Parties and the subject matter.

**ANSWER**:     Paragraph 13 of the SAC contains allegations of jurisdiction to which no answer is required.

14.     Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices stated herein were, in whole or in part, committed within the Northern District of Illinois.

**ANSWER**:     Paragraph 14 of the SAC contains allegations of venue to which no answer is required.   Ford denies committing any unlawful employment practices and denies all remaining allegations in paragraph 14.

15.     Venue further lies within this judicial district under 28 U.S.C. § 1391(c), since Defendant Ford Motor Company does business in this judicial district -- Ford operates at least three (3) plants including the Chicago Assembly Plant and Stamping Plant in this judicial district.

**ANSWER**:     Paragraph 15 of the SAC contains allegations of venue to which no answer is required.  Ford admits that it operates the Chicago Assembly Plant and the Chicago Stamping Plant in the Northern District of Illinois.

## EEOC CHARGES

16.     Each of the following Named Plaintiffs timely filed written charges with the EEOC asserting employment discrimination, sexual harassment and retaliation: Christie Van (Ex. 1(A) and 25(A)), Charmella Leviege (Ex. 2(A)), Maria Price (Ex. 3(A)), Helen Allen (Ex. 4(A)), Jacqueline Barron (Ex. 5(A)), Theresa Bosan (Ex. 6(A)), Shranda Campbell (Ex. 7(A)),

Keturah Carter (Ex. 8(A)), Michelle Dahn, (Ex. 9(A)), Tonya Exum (Ex. 10(A) and 26(A)), Jeannette Gardner (Ex. 11(A)), Arlene Goforth (Ex. 12(A)), Christine Harris (Ex. 13(A)), Orissa Henry (Ex. 14(A)), Lawanda Jordan (Ex. 15(A)), Danielle Kudirka (Ex. 16(A)), Terri Lewis-Bledsoe (Ex. 17(A)), Constance Madison (Ex. 18(A)), Cephani Miller (19(A)), Miyoshi Morris (Ex. 20(A)), Stephanie Szot (Ex. 21(A)), Shirley Thomas-Moore (Ex. 22(A)), Rose Thomas (Ex. 23(A)) and Toni Williams (Ex. 24(A)).

**ANSWER**:    Ford admits that each of the Plaintiffs identified in paragraph 16 filed a Charge of Discrimination with the EEOC.  The allegation that such Charges were timely is a legal conclusion to which no responsive pleading is required.  Ford further denies that it has engaged in any actionable employment discrimination, sexual harassment and/or retaliation as alleged in the Charges of Discrimination filed by these Plaintiffs or otherwise alleged herein and denies all remaining allegations in paragraph 16.

17.    The EEOC issued Notices of Right to Sue to these Named Plaintiffs. (The Notices of Right to Sue are attached as Exhibits 1(B)-24(B)).

**ANSWER**:    Ford admits the allegations in paragraph 17.

18.    Each of these Named Plaintiffs' claims are timely filed in federal court within ninety (90) days of their receipt of their Right to Sue Letters.

**ANSWER**:    Ford admits that the Named Plaintiffs who filed EEOC charges filed the complaint within 90 days of receiving a Right to Sue Letter from the EEOC.  Ford denies all remaining allegations in paragraph 18.

19.     This Complaint alleges acts of unlawful harassment and discrimination between February 14, 2012 and the present (hereafter, the "Relevant Time Period"), however, Antoinette Sullivan only seeks redress for acts which occurred subsequent to July 11, 2012.

**ANSWER:**     Paragraph 19 does not contain facts to which a responsive pleading is required. To the extent a response is required, Ford denies it has engaged in any actionable unlawful harassment and discrimination as alleged herein and denies all remaining allegations in paragraph 19.

### THE EEOC DETERMINED THAT NAMED PLAINTIFFS ARE MEMBERS OF A CLASS OF WOMEN WHO WERE SEXUALLY HARASSED AND WHO WERE UNLAWFULLY DISCRIMINATED AGAINST

20.     The EEOC conducted an investigation of Ford's Chicago Assembly Plant and its Chicago Stamping Plant based on the Charges of Discrimination (Ex's. 1 (A)-26(A)) filed by the Named Plaintiffs.

**ANSWER**:     Ford admits only that the EEOC investigated Charges of Discrimination filed by one or more of the Named Plaintiffs. Ford denies all remaining allegations in paragraph 20.

21.     After its investigation, the EEOC concluded that several of the Named Plaintiffs were members of a Class of women who were sexually harassed and were subjected to gender discrimination and/or race discrimination.

**ANSWER**:     Ford admits only that the EEOC issued determinations for some of the Named Plaintiffs and that the findings varied. Ford denies all remaining allegations in paragraph 21 and denies that it engaged in harassment, gender or race discrimination.

22.     The EEOC issued a Determination for Named Plaintiff Christie Van who worked at Ford's Chicago Assembly Plant finding:

> The Charging Party alleged that she and a Class of employees were discriminated against based on their sex, female, in that they were subjected to sexual harassment and gender based harassment and that they were further harassed and subjected to different terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.
>
> The Charging Party further alleged that she and a Class of employees were discriminated against based on their race, Black, in that they were subjected to racial harassment and that they were further harassed and subjected to different terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.
>
> * * *
>
> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a Class of employees based on their sex, female, in that they were subjected to sexual harassment and gender based harassment, in violation of Title VII.
>
> I have further determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a Class of employees based on their race, Black, in that they were subjected to racial harassment, in violation of Title VII.

(Ex. 1(C)).

**ANSWER**:     Ford admits that the EEOC issued a finding containing the quoted language. Ford denies that it engaged in actionable harassment or discrimination on any prohibited basis against Plaintiff Van, the Named Plaintiffs, or any class of employees and denies all remaining allegations in paragraph 22.

23.     The EEOC has made similar Determinations for Plaintiffs who also work at the Ford Chicago Assembly Plant including Named Plaintiffs Leviege (Ex. 2(C)), Price (Ex. 3(C)),

Allen (Ex. 4(C)), Barron (Ex. 5(C)), Carter (Ex. 8(C)), Dahn (Ex. 9(C)), Gardner (Ex. 11(C)),

Lewis-Bledsoe (Ex. 17(C)), Miller (Ex. 19(C)), and Williams (Ex. 24(C)).

**ANSWER**:    Ford admits that the EEOC issued findings for the individuals identified in

SAC paragraph 23 and that such findings are attached to the SAC.  Ford denies that it engaged in

actionable harassment or discrimination on any prohibited basis against the plaintiffs named in

paragraph 23 or any class of employees and denies all remaining allegations in paragraph 23.


24.    The EEOC issued a Determination for Named Plaintiff Shranda Campbell who

worked at Ford's Chicago Stamping Plant finding:

> The Charging Party alleged that she was discriminated against based on her sex,
> female, in that she was subjected to sexual harassment and that she was further
> harassed and subjected to different terms and conditions of employment in
> retaliation for engaging in protected activity, in violation of Title VII.
>
> I have determined that the evidence obtained in the investigation establishes
> reasonable cause to believe that Respondent discriminated against Charging Party
> and a Class of employees based on their sex, female, in that they were subjected
> to sexual harassment and gender based harassment, in violation of Title VII.

(Ex. 7(C)).

**ANSWER**:    Ford admits that the EEOC issued a finding concerning Shranda Campbell

containing the quoted language. Ford denies that it engaged in actionable harassment,

discrimination or retaliation on any prohibited basis against Plaintiff Campbell, any of the

Named Plaintiffs, or any class of employees and further denies all remaining allegations in

paragraph 24.


25.    The EEOC made similar Determinations for Named Plaintiff Tonya Exum who

also works at the Ford Chicago Stamping plant. (Ex. 10(C)).

**ANSWER**:   Ford admits that the EEOC issued a finding concerning Tonya Exum. Ford denies that it engaged in actionable harassment or discrimination on any prohibited basis against Plaintiff Exum, the Named Plaintiffs, or any class of employees and further denies all remaining allegations in paragraph 25.

## OTHER NAMED PLAINTIFFS

26.     Plaintiffs Bernadette Clyburn, Martha Corbin, Angela Glenn, LaDwyna Hoover, Ogery Ledbetter, Latricia Shanklin, Antoinette Sullivan, Derricka Thomas and Niches Walls also worked for Ford at the Chicago Assembly and/or Stamping Plants.

**ANSWER**:     Ford admits the allegations in paragraph 26.

27.     Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls also experienced gender discrimination, sexual harassment and/or a hostile working environment during the Relevant Time Period of the type and nature which Van, Barron, Campbell and the rest of the Named Plaintiffs complained about to the EEOC.

**ANSWER**:     Ford denies the allegations in paragraph 27.

28.     From 2012 to present, more than two dozen EEOC charges of unlawful sexual harassment, gender discrimination, race discrimination and retaliation were filed against Ford based on conduct at Ford's Chicago Assembly and Stamping plants.

**ANSWER**:     Ford admits that more than two dozen charges have been filed concerning the Chicago Assembly and Chicago Stamping Plant and that the allegations vary.  Ford denies that it engaged in any actionable sexual harassment, gender discrimination, race discrimination and/or retaliation and denies all remaining allegations in paragraph 28.

10

29. Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls are each members of the Class of women described by the EEOC in its Determinations.  (See, e.g., Ex. 1(C)).

**ANSWER**:    Paragraph 29 states a legal conclusion to which no responsive pleading is required.  To the extent further response is required, Ford denies the allegations in paragraph 29.

30. Given that dozens of charges of sexual harassment, gender discrimination and race discrimination were filed and pending at the EEOC, Ford and the EEOC was adequately apprised that an ongoing pattern and practice of sexual harassment, gender discrimination and race discrimination was taking place at the Ford Chicago Assembly Plant and Stamping Plant.

**ANSWER**:    Ford denies the allegations in paragraph 30 and further denies there is or was a pattern and practice of harassment, gender discrimination and/or race discrimination.

31. Ford did not conciliate the EEOC Determinations issued under which are attached as exhibits to this Amended Complaint, despite that several of these EEOC charges had been pending for years.  (See, Ex's. 1(C)-5(C), 7(C)-i i(C), 17(C), 19(C) and 24(C)).

**ANSWER**:    Ford denies the allegations in paragraph 31. Ford further avers that the Named Plaintiffs withdrew from the EEOC conciliation process.

32. Because Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls allege unlawful harassment and discrimination that are substantially similar to those of the dozens of other women who are Named Plaintiffs who timely filed EEOC Charges, these Plaintiffs are eligible to file their claims in this matter under the "single filing" or "piggybacking" rule.

**ANSWER**:    Paragraph 32 states a legal conclusion to which no responsive pleading is required.  To the extent further response is required, Ford denies the allegations in paragraph 32.

33.    Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls piggyback their claims in this lawsuit with those of the above Named Plaintiffs who filed timely file charges with the EEOC.

**ANSWER**:    Ford admits only that the Plaintiffs identified in paragraph 33 seek to assert a "piggybacking" theory to excuse their failure to file EEOC Charges.  Ford denies they are entitled to "piggybacking" and denies all remaining allegations in paragraph 33.

34.    It would be futile to require Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls and all women who experienced sexual harassment and gender or racial discrimination at Ford from 2012-present to file EEOC charges.

**ANSWER**:    Ford denies the allegations in paragraph 34.

35.    Named Plaintiff Van currently works at the Stamping Plant and continuing discrimination, sexual harassment and retaliation that she experiences since her transfer are included herein based on the single filing rule/piggybacking rule and/or based on consolidation of her additional claims with this suit by Court Order.

**ANSWER**:    Ford admits only that Plaintiff Christie Van currently works at the Chicago Stamping Plant.  Ford denies all remaining allegations in paragraph 35 and denies that Plaintiff Van is entitled to piggybacking.

## PRIOR DISCRIMINATION AND SEXUAL HARASSMENT AT FORD

36.     Prior to this lawsuit, at least nine people sued Ford for sexual harassment, sex discrimination, race discrimination, assault, battery intentional infliction of emotional distress and negligent retention in *Rivera v. Ford Motor Company,* No. 95-CV-2990 in the United States District Court for the Northern District of Illinois.

**ANSWER**:     Ford admits only that in 1995 a lawsuit titled *Rivera v. Ford Motor Company* was filed in the U.S. District Court for the Northern District of Illinois.  Ford denies all remaining allegations in paragraph 36 and further denies that such lawsuit, filed almost 20 years ago, is relevant to the current action.

37.     In 1997, a total of 14 women filed a Class action lawsuit against Ford Motor Company in a case known as *Warnell v. Ford Motor Company,* No. 98-CV-1503 in the United States District Court for the Northern District of Illinois.

**ANSWER**:     Ford admits only that in 1998 a lawsuit titled *Warnell v. Ford Motor Company* was filed in the U.S. District Court for the Northern District of Illinois.  Ford denies all remaining allegations in paragraph 37 and further denies that such lawsuit, filed some 18 years ago, is relevant to the current action.

38.     In 1999, the EEOC attempted to reach a settlement with Ford requiring Ford to pay $7.5 million toward training and to create a fund to compensate victims.  The EEOC Conciliation Agreement subjected Ford to workplace monitoring for a period of 3 years.

**ANSWER**:     Ford admits only that a Conciliation Agreement was reached with the EEOC in 1999, which included a monitoring period of 3 years, provisions for training, and

created a $7.5 million fund to compensate claimants. Ford denies all remaining allegations in paragraph 38 as stated.

39.     The EEOC investigated Ford's Stamping and Assembly Plants in 1994-1995 and again in 1998. As a result of those investigations, the EEOC issued findings in the form of a Determination which states:

> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that a Class of female employees at Ford's Chicago area manufacturing facilities, including the Charging Party, has been subjected to sexual harassment by managers and non-managers. The women have been called sexually degrading names such as bitches, whores and offensive references to female genitalia, as well as being subjected to Plaintiffs profanity. They have been physically touched, grabbed and groped, and have had body parts massaged without their consent. They have had to endure sexual comments and innuendos including suggestive references to female body parts and their functions. In addition, the women have been subjected to sexually explicit graffiti, including drawings of male and female genitalia with sexual terms and, at times, references to specific named women throughout the facilities. The presence of Plaintiff's pornographic materials such as calendars and Plaintiff's pictures of nude women also contributes to the hostile and sexually offensive environment.

**ANSWER**:     Ford admits only that the EEOC issued determinations to plaintiffs in the *Rivera* action on or about January 25, 1996, related to the Chicago Stamping Plant only but which did not contain the quoted passage in paragraph 39. Ford also admits that the EEOC issued determinations substantially similar to the quoted passage in paragraph 39 to various plaintiffs in the *Warnell* action on or about September 11, 1998 and December 22, 1998, which related to both plants. Ford denies all remaining allegations in paragraph 39 and further denies that determinations issued more than 17 years ago, are relevant to the current action.

40.     The EEOC found Ford sexually harassed and discriminated against a Class of females on at least eight (8) occasions including in connection with Charges of Discrimination

filed by Michelle Sheets, Traci Graham, Rebecca Curwick, Juanita Rivera, Veronica Kuznieski, Jeannette Jones, Wilynthia Wiseman and Mary Ann Allegria.

**ANSWER**:    Ford admits that the EEOC issued determinations related to the Stamping Plant to Juanita Rivera, Veronica Kuznieski, Jeannette Jones, Wilynthia Wiseman and Mary Ann Allegria on or about January 25, 1996.  Ford further admits that Michelle Sheets, Traci Graham and Rebecca Curwick filed EEOC charges in 1997 or 1998.  Ford denies all remaining allegations in paragraph 40 and further denies that such charges filed or determinations issued some 18 or more years ago, are relevant to the current action.

41.    Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

**ANSWER**:    Ford denies the allegations in paragraph 41.

42.    Ford knowingly allowed sexual harassers, molesters and sex offenders to remain in the workplace and repeat heinous acts of sexual harassment on Ford's female employees.

**ANSWER**:    Ford denies the allegations in paragraph 42.

43.    Ford engaged in a pattern and practice of discrimination, harassment and retaliation and the Plaintiffs have been subjected to harassment, discrimination and a hostile working environment including, but not limited to

a.    Sexual assault and attempted rape;

b.    Unwelcomed and unwanted sexual advances;

c.    Requests for sexual favors;

d.    Unwanted and unwelcomed touching and groping;

15

e.      Being subjected to jeers, lewd comments, sexual suggestions, cat calls and the like;

f.      Being stared at by male employees who were focused on certain parts of plaintiff's body and/or "elevator eyes";

g.      Being subjected to comments or offers of sexual contact or males stating what they could or would like to do to Plaintiffs or other women;

h.      Being subjected to men exposing their genitals and/or showing pictures of their genitals;

i.      Being subjected to men sharing or displaying pornographic images in the workplace;

j.      Graffiti in the workplace;

k.      By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

l.      Female employees are referred to as "bitches" "hoes," whores," "sluts" and "dogs" on an ongoing basis;

m.      Sexually offensive graffiti is painted on the walls in the plants and defendants did not take effective corrective action;

n.      Male employees also place sexually offensive graffiti about female employees in the men's bathrooms;

o.      Male employees routinely undress in full view of female employees at various areas of the plant;

p.      Male employees fail to properly button their uniforms such that their pubic hair is exposed;

q.      Male employees would routinely stare at female employees in a sexually offensive manner;

r.      Male employees would routinely make crude and lewd comments directed at female employees, such as "Are you cold? I can tell that you are cold by looking at your nipples"

s.      Female employees are sometimes exposed to condoms thrown into their work areas or tool boxes;

t.      Female employees are subjected to whistles, offensive touching, gazing and comments such as "what color are your underclothes?" on a daily basis;

u.      At various times, male employees would rub against females, pretending as though they dropped something on the floor;

v.       In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary action, or insufficient action, against employees who engage in such sexually offensive conduct;

w.      Defendants Human Resources and Labor Relations personnel routinely reveal confidential medical information regarding female employees to Plaintiff's workers in the plants;

x.      After such information is leaked, male employees subjected female employees to ridicule, offensive jokes and embarrassment;

y.      Male employees have historically been paid for overtime that they did not work, while female employees are required to work every hour that they are paid;

z.      Males are allowed personal days even when not entitled to them, while female employees are harassed and are not given such days off;

aa.     Female employees that complained were written up or threatened with termination;

bb.     Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better tasks to those female employees who submit to their sexual advances or who agree to go out with them;

cc.     The less desirable tasks would be assigned to the female employees who reject or do not submit to their sexual advances;

dd.     On many occasions, female employees would see soiled sanitary napkins moved from the ladies room to the aisles where they are in full view of male employees and supervisors;

ee.     Males would make lewd comments such as "look at these -- old nasty bitches" as they walked past;

ff.     Male employees and supervisors regularly sabotage the work areas of female employees in different and innumerable ways;

gg.     On numerous occasions, female employees would have phallic symbols (penis-like objects) thrown in their work areas, tool boxes, or thrown at them. Such objects would sometimes be carved out of rubber hoses, Styrofoam, etc. by some male employees during their breaks;

hh.     Some female employees would frequently find pictures of penises placed on their tool boxes or work areas;

ii.     On a daily basis, women are harassed, denigrated and referred to as "bitch," stupid bitch," "you fucking people," mother-fuckers, "cunt," and "fucking bitches";

jj.     Male employees and supervisors call woman who make sexual harassment complaints "snitch bitches';

kk.    At various locations in Defendant's plants, posters and drawings that are humiliating to women are posted or displayed, including: pictures and posters of nude women, sex organs, female private parts, people performing sex acts, lesbians having intercourse, penises, pictures of black women performing oral sex on white men, etc. Some of these pictures are in full view at various places throughout the plants.

**ANSWER**:    Ford denies the allegations in paragraph 43, including but not limited to the allegation that it engaged in a pattern or practice of conduct as alleged in subparagraphs (a)-(kk). Ford avers that it has received complaints of some of the behavior alleged in this paragraph and that it appropriately responded.

44.    Male employees routinely make discriminatory and harassing remarks and gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate workplace environment.

**ANSWER**:    Ford denies the allegations in paragraph 44.

45.    Defendant maintained a pattern and practice of inferior treatment of females with respect to the terms and conditions of employment, including job assignments, harassment, training, promotions and overtime assignments.

**ANSWER**:    Ford denies the allegations in paragraph 45.

46.    Ford's pattern and practice of harassment and discrimination and a hostile working environment from the 1980's and 1990's has continued through and including the present time.

**ANSWER**:    Ford denies the allegations in paragraph 46, including but not limited to the allegation that a pattern and practice of harassment and discrimination and a hostile work

environment existed at the Chicago facilities in the 1980's, 1990's or that such has continued to the present time.

47.     Ford is aware of the ongoing discrimination and harassment which occurs on a daily basis in an open manner, such that it is observed by employees and supervisors, and has turned a blind eye toward it.

**ANSWER**:     Ford denies the allegations in paragraph 47.

## SEX AT FORD

48.     Historically, Ford employees have organized parties which have been held both on and off site at the respective plants at which strippers and/or prostitutes were present.

**ANSWER**:     Ford admits only that allegations of such conduct were made in a lawsuit some 18 years ago.  Ford denies the allegations in paragraphs 48.  To the extent these allegations refer to conduct allegedly occurring decades ago, Ford further states such allegations are irrelevant to the current lawsuit.

49.     During these parties, attended by both management and hourly employees, various employees engaged in lewd and lascivious behavior, including sexual acts.

**ANSWER**:     Ford admits only that allegations of such conduct were made in a lawsuit some 18 years ago. Ford denies the allegations in paragraphs 49.  To the extent these allegations refer to conduct allegedly occurring decades ago, Ford further states such allegations are irrelevant to the current lawsuit.

50.     These parties and the lewd, disgusting and foul activities involved were, on information and belief, recorded and captured on video and on camera.

**ANSWER**:     Ford admits that allegations of such conduct were made in a lawsuit some 18 years ago.  Ford further admits that a news magazine called "Dateline NBC" ran a story in 1998 involving excerpts from a home videotape it reported to be of an off-site party involving Ford employees from Chicago and which NBC further reported to have occurred some 10 years prior to 1998.  Ford denies all remaining allegations in paragraph 50 and to the extent these allegations refer to conduct allegedly occurring decades ago, Ford further states such allegations are irrelevant to the current lawsuit.

51.     Tickets to such parties were sold in the plants during working hours.

**ANSWER**:     Ford admits only that allegations of such conduct were made in a lawsuit some 18 years ago. Ford denies the allegations in paragraphs 51. To the extent these allegations refer to conduct allegedly occurring decades ago, Ford further states such allegations are irrelevant to the current lawsuit.

52.     Invitations to such parties were distributed throughout the plants, both orally and in writing.

**ANSWER**:     Ford admits only that allegations of such conduct were made in a lawsuit some 18 years ago.  Ford denies the allegations in paragraphs 52.  To the extent these allegations refer to conduct allegedly occurring decades ago, Ford further states such allegations are irrelevant to the current lawsuit.

53.     The videos and photos from prior parties, including visual depictions of strippers, prostitutes, nudity, sex acts and pornographic material relating to the parties, were frequently distributed and displayed throughout the plants.

**ANSWER**:    Ford admits only that allegations of such conduct were made in a lawsuit some 18 years ago.  Ford denies the allegations in paragraphs 53.  To the extent these allegations refer to conduct allegedly occurring decades ago, Ford further states such allegations are irrelevant to the current lawsuit.

54.    In approximately 1997 or 1998 NBC acquired a copy of a tape from a sex party and broadcast portions of the tape on television as part of the coverage of the *Warnell* case.

**ANSWER**:    Ford admits only that a news magazine called "Dateline NBC" ran a story in 1998 involving excerpts from a home videotape it reported to be of an off-site party involving Ford employees from Chicago and which NBC further reported to have occurred some 10 years prior to 1998. Ford denies all remaining allegations in paragraph 54 and further denies that any off-site party or tape depicting an off-site party reportedly occurring some 30 years ago is relevant to the current action.

55.    On numerous occasions - both during the 1980's and 1990's, as well as during the Relevant Time Period, various male supervisors and managers have used their offices, the parking lot and various places throughout the plant, including on the roof to have sexual relations with other employees during work.

**ANSWER**:    Ford denies the allegations in paragraph 55.

56.    The frequent sex that takes place in the building contributes to the hostile and offensive work environment.

**ANSWER**:    Ford denies the allegations in paragraph 56.

57. Top ranking employees in both management and human resources regularly engaged in sex at work.

**ANSWER**:   Ford denies the allegations in paragraph 57.

58. As an example, Superintendents Robert Devine and Myron Alexander required female personnel at Ford's Chicago Assembly Plant to provide them with sexual favors as a precondition to promotional opportunities.

**ANSWER**:   Ford denies the allegations in paragraph 58.

59. As recently as April 2016, a Ford manager demanded and received oral sex from a new employee.

**ANSWER**:   Ford denies the allegations in paragraph 59.

60. Terrance McClain, the Human Resources Manager at Ford's Chicago Assembly Plant, frequently sexually harassed women, including women who complained to him about sexual harassment.

**ANSWER**:   Ford denies the allegations in paragraph 60.

61. Ford's upper level Supervisors and HR professionals have covered up sexual harassment complaints made by mid-level supervisors sexually harassing women or retaliating against women who complained.

**ANSWER**:   Ford denies the allegations in paragraph 61.

62.     As further examples, Supervisors such as Jeff Bivens and Zack Bozanick repeatedly sexually harassed female employees and/or retaliated against them when they complained.

**ANSWER**:     Ford denies the allegations in paragraph 62.

63.     Ford's upper level Supervisors and HR professionals targeted complaining women with discipline and termination.

**ANSWER**:     Ford denies the allegations in paragraph 63.

64.     Ford promoted many complained-about, sexually harassing Supervisors.

**ANSWER**:     Ford denies the allegations in paragraph 64.

65.     Since this lawsuit was filed, and after multiple sexual harassment or retaliation complaints were filed against each of them, Robert Devine, Jeff Bivens and Zack Bozanick were promoted.

**ANSWER**:     Ford admits only that Bob Devine became an Area Manager in June 2015 and that Zach Bozanik became a Team Manager in April 2016.  Ford denies all remaining allegations in paragraph 65.

66.     That Superintendents and Human Resource Management engaged in sex at Ford made it untenable for women to complain about sexual harassment, a hostile working environment and discrimination to these supervisors and managers or to go to Human Resources and Labor Relations about these problems.

**ANSWER**:     Ford denies the allegations in paragraph 66.

67.     That Ford protected and rewarded sexually harassing Supervisors with promotions and terminated sexually harassed women that complained further discouraged sexual harassment victims from complaining.

**ANSWER**:     Ford denies the allegations in paragraph 67.

68.     When the Named Plaintiffs and other women began complaining about sexual harassment, Ford's Labor Relations Supervisor, Jim Larese confronted then-union chairman Grant Morton and told him "your people better stop complaining."

**ANSWER**:     Ford denies the allegations in paragraph 68.

69.     Other Labor Relations personnel, including Fluretta Drummer and Natalie Dahrenger confronted Morton, told him they were upset that women were filing sexual harassment complaints with the EEOC, and told him that complainers would be terminated if they did not drop their EEOC charges.

**ANSWER**:     Ford denies the allegations in paragraph 69.

70.     Ford engaged in a practice of intimidation and retaliation which, on information and belief, had the effect of making additional sexual harassment victims reluctant to complain.

**ANSWER**:     Ford denies the allegations in paragraph 70.

## PLAINTIFF CLASS

71.     This case is being brought under Fed. R. Civ. P. Rule 23(b)(2), or, in the alternative, pursuant to Fed. R. Civ. P. Rule 23(b)(3).

**ANSWER**:     Ford admits that Plaintiffs assert that Plaintiffs will seek to certify their hostile environment/discrimination claims under Title VII and Section 1981 under Fed. R. Civ.

P. 23(b)(2) or 23(b)(3).  Ford denies all remaining allegations in paragraph 71 and denies that Plaintiffs are entitled to certification of their claims under Fed. R. Civ. P. 23.

72.     In addition to the Named Plaintiffs, there are more than 1,000 women working at the two plants who have been subjected to, or who work within the same hostile working environment in which the Named Plaintiffs are employed.

**ANSWER**:     Ford admits only that there are more than 1,000 women who work at the two Chicago facilities. Ford denies all remaining allegations in paragraph 72.

73.     Numerous women beyond the Named Plaintiffs filed EEOC charges and filed internal complaints about sexual harassment and the hostile workplace environment to which they are subjected at Ford and forced to endure.

**ANSWER**:     Ford admits only that it has received, between January 2012 and the present, internal complaints and EEOC charges alleging sexual harassment from employees other than the Named Plaintiffs. Ford denies all remaining allegations in paragraph 73 and denies such allegations of sexual harassment or hostile work environment.

74.     The Class Claims include sex discrimination and sexual harassment under Title VII and race discrimination and harassment under Title VII and 42 U.S.C. § 1981. In addition, various Named Plaintiffs are asserting individual claims.

**ANSWER**:     Ford admits that Plaintiffs assert class claims of sex discrimination and sexual harassment under Title VII and race discrimination and harassment under Title VII and Section 1981.  Ford further admits that certain Named Plaintiffs assert individual claims.  Ford denies committing any violations of Title VII or Section 1981 as alleged, denies liability on

Plaintiffs' individual claims asserted in this lawsuit and denies all remaining allegations in paragraph 74.

75.     The Plaintiff Class includes: all present or former female employees at the Ford Chicago Assembly Plant and the Ford Chicago Stamping Plant from 2012 through the present.

**ANSWER**:     Ford admits that in paragraph 75, Plaintiffs purport to describe the alleged class of individuals that Plaintiffs seek to represent.  Ford denies that Plaintiffs' alleged class is appropriate for certification and denies that Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

76.     The Class potentially includes the following sub-Classes: (1) all female employees except Team Leader and managers alleging gender discrimination and sexual harassment claims; and (2) female team leaders and managers alleging gender discrimination and sexual harassment claims; (3) female African American employees alleging race claims.

**ANSWER**:     Ford admits that Plaintiffs purport to describe the subclasses within their alleged class in paragraph 76.  Ford denies that Plaintiffs' alleged subclasses are appropriate for certification and denies that Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

77.     The EEOC's issued "reasonable cause" Determinations with respect to these class allegations. (Ex's. 1(C)-5(C), 7(C)-11(C), 17(C), 19(C) and 24(C)).

**ANSWER**:     Ford denies the allegations in paragraph 77 as stated and denies that any conclusion was reached by the EEOC on the requirements of Fed. R. Civ. P. 23.  Ford avers that the EEOC determinations on Plaintiffs' claims speak for themselves. Ford further denies it has engaged in harassment, gender discrimination, race discrimination or retaliation.

78.     The members of the Class, and each sub-Class, are so numerous as to render joinder impractical.

**ANSWER**:     Paragraph 78 states a legal conclusion to which no response is required. To the extent that a response is required, Ford denies the allegations in paragraph 78 and further denies that Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

79.     There are questions of law and fact which are common to the Class and those questions predominate over questions which may not be common.

**ANSWER**:     Paragraph 79 states a legal conclusion to which no response is required. To the extent that a response is required, Ford denies the allegations in paragraph 79 and further denies that Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

80.     The claims of the Named Plaintiffs, who are class representatives, are typical of the claims of the absent Class members.

**ANSWER**:     Paragraph 80 states a legal conclusion to which no response is required. To the extent that a response is required, Ford denies the allegations in paragraph 80 and further denies that Named Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

81.     The Named Plaintiffs will fairly and adequately protect the interests of the Class and the sub-classes.

**ANSWER**:     Paragraph 81 states a legal conclusion to which no response is required. To the extent that a response is required, Ford denies the allegations in paragraph 81 and further denies that Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

82.     The Class action mechanism is the most efficient and most appropriate mechanism for resolving this controversy.

**ANSWER**:     Paragraph 82 states a legal conclusion to which no response is required. To the extent that a response is required, Ford denies the allegations in paragraph 82 and further denies that Plaintiffs can satisfy the requirements for certification under Fed. R. Civ. P. 23.

**COUNT I**
**TITLE VII-SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**
**(VAN, LEVIEGE, PRICE, ALLEN, BARRON, BOSAN, CAMPBELL, CARTER, DAHN, EXUM, GARDNER, GOFORTH, HARRIS, HENRY, JORDAN, KUDIRKA, LEWIS- BLEDSOE, MADISON, MILLER, MORRIS, SZOT, THOMAS-MOORE, R. THOMAS, WILLIAMS, CLYBURN, CORBIN, GLENN, HOOVER, LEDBETTER, SHANKLIN, SULLIVAN, D. THOMAS, WALLS, and all similarly situated women)**

83.     Plaintiffs adopt, reallege and incorporate by reference the allegations contained in paragraphs 1-84 of this Second Amended Complaint as and for this paragraph.

**ANSWER**:     Ford adopts its responses to paragraphs 1-84 as if fully set forth herein.

84.     The individual Named Plaintiffs identified in this Count adopt and incorporate by reference all allegations of sexual harassment and of a hostile work environment alleged in their respective EEOC Charges and Charge Outlines (Ex's. 1 (A)-26(A)) as if set forth here.

**ANSWER**:     Ford denies the allegations of sexual harassment, hostile work environment, and other wrongful conduct alleged in the EEOC Charges and Charge Outlines referenced in paragraph 84 and denies all remaining allegations in this paragraph.

85.     Plaintiff Van incorporates by reference her separate EEOC charges related to sexual harassment she experienced at both the Chicago Assembly Plant (Ex. 1(A)) and Chicago Stamping Plant (Ex. 25(A)).

**ANSWER**:   Ford   denies   the   allegations   of   sexual   harassment,   hostile   work environment and other wrongful conduct alleged in the EEOC Charges and Charge Outlines referenced in paragraph 85 and denies all remaining allegations in this paragraph.

86.    Plaintiff Exum also filed multiple charges based on sexual harassment and retaliation which she experienced at Ford's Stamping Plant, both of which are incorporated by reference herein. (Ex. 10(A) and 26(A)).

**ANSWER**:    Ford admits that Plaintiff Exum filed two Charges of Discrimination against Ford which are attached as Exs. 10(A) and 26(A) to Plaintiffs' SAC. Ford denies the allegations of sexual harassment and retaliation and other wrongful conduct alleged in the Charges referred to in paragraph 86 and denies all remaining allegations in this paragraph.

87.    Several of the Named Plaintiffs, including Ogery Ledbetter and Martha Corbin have experienced decades of sexually harassing conduct at Ford, but the extent that sexual harassment has run rampant in the last few years is the worst they ever saw.

**ANSWER**:    Ford denies the allegations in paragraph 87.

88.    In addition to the allegations in the Charges of Discrimination (Ex.'s 1-26) the Named Plaintiffs and other similarly situated female employees have been sexually harassed, in one or more of the following ways, by being subjected to

        a.     Unwanted or unwelcome sexual advances;

        b.     Unwelcome and unwanted touching,

        c.     Requests for sexual favors;

        d.     Stories of sexual conquests, desires or escapades;

        e.     Comments about the female anatomy;

  f.  Comments about individual women's body parts;

  g.  Comments about what a male "would like to do" to or with a particular female sexually;

  h.  Comments of a sexually suggestive nature,

  i.  Name calling using names demeaning toward women such as bitch", 'slut" or "whore" or "hoe";

  j.  Graffiti and/or pornography images;

  k.  Pictures of genitalia and/or of a sexual nature

  l.  Lurid, foul and offensive language, and/or

  m.  Other conduct of a sexually inappropriate nature for the workplace.

**ANSWER**: Ford denies the allegations in paragraph 88, including subparts (a)-(m). Ford avers that women have made complaints of some such conduct in the workplace and that Ford has appropriately responded.

89. Sexual batteries and assaults were a normal occurrence at Ford. As further examples of unwelcome or unwanted touching, Ford's supervisors, managers and employees touched, groped and sexually assaulted the Named Plaintiffs and other similarly situated female employees including but not limited to the following instances:

  a.  Superintendent Myron Alexander repeatedly groped Michelle Dahn, Latricia Shanklin's and other similarly situated women's buttocks, and attempted to do the same to Ogery Ledbetter, while saying to Ledbetter: "I'm going to feel that booty before you leave and you can't do nothing about it."

  b.  Alexander inappropriately touched, caressed, hugged, lifted, squeezed, and/or attempted to kiss Shanklin, Ledbetter, Terri Lewis-Bledsoe, Martha Corbin, Michelle Dahn and similarly situated female co-workers, despite that these women repeatedly told Alexander that they did not want to be touched.

  c.  Alexander called Miyoshi Morris into an upstairs office and when she entered, forcibly grabbed Morris by the wrist, pulled out his penis and

30

forced her hand to touch his penis as she struggled to break free from his grasp.

    i.    On a separate occasion, Alexander assaulted Shanklin in a similar way when she came out of the upstairs women's restroom, he instructed she follow him to a nearby upstairs office and demanded she give him a hand job", threatening she would be terminated if she refused, resisted or complained.

d.    Alexander physically assaulted Jeannette Gardner and made her believe she was about to be raped when he grabbed her right arm from behind, forcefully twisted it behind her back, bent her down over a desk against her will and pushed himself up against her backside while two other male Supervisors, George Melchor and Kevin Taylor watched and did nothing.

e.    Christie Van was repeatedly groped and inappropriately touched on her buttocks, thigh, shoulders and back by numerous male employees, including co-workers Bruce (last name unknown) and Kenny (last name unknown) and men that Van did not know.

f.    Ken Millender repeatedly touched, groped and slapped Tonya Exum's buttocks and did the same to numerous women at Ford's Stamping Plant, and Ken Millender has refused to contest these allegations in a proceeding before the Illinois Human Rights Commission.

g.    Exum and other similarly situated have been inappropriately touched in a sexually harassing way on the back, shoulders and arms by several male co-workers, including Neely Clemons and Marquis Sullivan, despite that Exum repeatedly and explicitly told these men keep your hands to yourself'

h.    Superintendent Darryl Galloway regularly touched Danielle Kudirka and other similarly situated female employees on the shoulders, necks and arms and insisted on hugging Kudirka even though she told him she did not want to be touched.

i.    Supervisor Buck Owens inappropriately touched Charmella Leviege's breasts and asked her "when's the last time you had sex?"

j.    Coby Millender repeatedly touched, grabbed and tried to kiss Miyoshi Morris and numerous similarly situated women even though they did not want to be touched.

k.    Ron Woods repeatedly grabbed and touched Arlene Goforth's buttocks when he walked by her station.

l.    Co-workers named Rappa Arrington and Jeremy (last name unknown) repeatedly groped Michelle Dahn's buttocks and breasts.

m.    Supervisor Robert Powell regularly and repeatedly made sexual advances toward Toni Williams, Teresa Bosan and Angela Glenn and inappropriately touched subordinate female employees, including that he repeatedly touched Bosan, Glenn and women on the shoulders, arms and back and when Glenn told him to stop, he told her l do it with all the women and I'm going to keep doing it to you" and you belong to me now."

n.    Male supervisors regularly stood directly behind female employees who were bent over working, such that when the female stood up or backed up, her buttocks bumped into the man's penis/pelvis, including Robert Powell (who did this to Theresa Bosan and other women) and Kendall Brooks (who did it to Jacqueline Barron and other women).

o.    Supervisor Rich Murray pushed his penis/pelvis into/against Shranda Campbell's buttocks and Supervisor Mike Reese stepped in close behind Niches Walls and pressed his penis/pelvis against Walls's buttocks.

p.    Supervisor Rich Murray inappropriately touched Campbell's shoulders, waist and body making her feel uncomfortable and violated.

q.    A male co-worker physically assaulted another woman Campbell closely worked with, Kim Sykes, giving her a half-nelson" with one arm so that she could not get away, while using his free arm to grope Sykes' buttocks.

r.    When Campbell and Sykes complained about being sexually assaulted, they were criticized and ridiculed for being bitches" and "hoes" for complaining about sexual assaults.

s.    Kendall Brooks repeatedly slapped and groped Barron's buttocks, grabbed her hair and groped her breasts.

t.    Jabari Muse grabbed and squeezed Maria Price's buttocks, and reached inside her coveralls and groped her breasts.

u.    Group Leader Lance Caldman forcibly pulled Michelle Dahn into a utility closet against her will, forcefully unzipped her coveralls, pulled her shirt up as high as he could, forced his hand down her pants and attempted to rape her before she finally broke free.

v.    Keturah Carter was inappropriately touched on her neck, back, shoulders and the top of her buttocks by men she worked with, including LaDell Conway, who made the unwanted statement to Carter that he wanted to massage her full body.

w.    Christine Harris has been repeatedly touched, groped and gyrated against by her Team Leader Tony (last name unknown), and after she complained,

Tony further humiliated her, held her down and dry humped" her from behind on multiple occasions.

x. Although Christine Harris fought Team Leader Tony off of her and repeatedly begged him to stop sexually harassing her, he forcefully grabbed Harris and told her ""Get used to it. I do it to all the girls and I'm going to keep doing it to you."

y. Ford employee Chris Martin repeatedly and inappropriately touched and rubbed Stephanie Szot's back, shoulders and arm at work and groped her buttocks.

z. Ford employee Wilde Regatte molested Stephanie Szot by forcefully grabbing her, putting his hand inside her clothes and groping and rubbing his hand against her breast.

aa. A co-worker named "Reggie" (last name currently unknown) hugged and gyrated his crotch against Charmella Leviege.

bb. Other male supervisors and managers including Union Building Chairman Coby Millender, Kevin ("Red') Marshall and Reggie Easter constantly and repeatedly greeted many of the Named Plaintiffs and numerous other female co-workers with unwanted and uncomfortable touches and hugs.

cc. A male parts-delivery employee sexually grabbed Constance Madison's co-worker Rita Kelly from behind (around her hips/waist) and gyrated against her.

**ANSWER**: Ford denies the allegations in paragraph 89, including subparts (a)-(cc). Ford avers that it has received complaints concerning some of the conduct alleged in this paragraph and that it appropriately responded.

90. In addition to the allegations in the Charges of Discrimination (Ex.'s 1-26) and as described elsewhere in the complaint, Ford's supervisors, managers and employees subjected the Named Plaintiffs and other women to sexually harassed and a hostile working environment in non-physical ways, including but not limited to the following instances:

a. having sex in the workplace, the parking lot, the roof of the building and other areas of the workplace;

b.      talking about sexual escapades which took place both in and outside of the workplace;

c.      making unwelcome requests for sexual favors and grotesque sexual acts;

d.      offering money, drugs and alcohol for sex;

e.      threatening sexual batteries or rape;

   ii.      one employee, Franklin Stottlemeyer has threatened one or more female employees that he was going to rape them;

   iii.      other employees, including as an example, Myron Alexander, has threatened women, including Ogery Ledbetter that he was going to grope her buttocks and "there isn't anything you can do to stop me."

   iv.      When Tonya Exum told Ken Millender to stop groping her he told her "shut the fuck up" and threatened that he would harm her if she complained.

f.      showing their penises and asking women to suck it" or telling women "I'm going to choke you by shoving my dick down your throat";

g.      showing "dick pic's" or videos of themselves masturbating using their cell phones, including that both Supervisors Fonseca and Reese showed women (including Plaintiffs Van and Niches Walls) pictures of their penises on their cell phone, and when Van reported Supervisor Fonseca's misconduct to Reese, he laughed and asked her "do you want to see mine too?"

h.      showing women pornographic magazines or pornographic cell phone images and/or videos;

i.      commenting about women's vaginas and breasts in degrading and sexual ways;

j.      commenting about women vaginal secretions, infections and menstrual cycles in degrading and sexual ways including as an example, that Supervisor Willie Fonseca repeatedly made offensive, degrading, humiliating and sexual comments toward women, including telling Cephani Miller that her pants were so tight he hoped she got a yeast infection, and commenting that stains on her pants looked like vaginal discharge.

k.      commenting about their desire to perform sex acts on the Named Plaintiffs and similarly situated women;

        i.        Numerous men repeatedly made unwanted requests for permission to perform oral sex on the Named Plaintiffs and other women. Just a few examples of this pervasive conduct include:

           1.     Marquis Sullivan repeatedly asked Tonya Exum "can I eat your pussy?" and "just lay there and let me eat it."

           2.     When Latricia Shanklin complained about other sexually harassing supervisors to Human Resources Manager Terrance McClain, McClain told her "I want to suck your pussy."

           3.     Ken Millender repeatedly told women "get with a hero and let me eat your pussy."

l.      jeering, making lewd comments, sexual suggestions and cat—calls;

m.    referring to new female employees as "fresh meat';

n.     talking and gesturing about the size of their penis;

o.     commenting women's buttocks with statements that women had a "big booty, "loose booty', "nice ass" and "fat ass", and, in the case of Robert Cronenwett, grading women including Constance Madison as to whether they had "enough ass" for him;

p.     making bets with each other about which male would be the first to have sex with new female employees;

q.     assigning the women to work areas requiring them to constantly bend over in front of the male supervisor with their buttocks in the air;

r.     constantly staring at women's breasts and buttocks;

s.     offering better job assignments, better overtime opportunities and better opportunities for promotions if the Named Plaintiffs and similarly situated women had sex with them;

t.     demoting and/or assigning the Named Plaintiffs and similarly situated women to less desirable job opportunities when they rejected male supervisors' sexual requests;

u.     ridiculing the Named Plaintiffs and similarly situated women during sexual harassment training sessions;

v.     Following a sexual-harassment awareness session, Plaintiff Szot witnessed male co-workers joking about the training and continuing to harass women, including that one of the men was wearing a t-shirt with a

silhouette of a naked woman on a pole with the words "I support single mothers" - suggesting that women who are single mothers are best suited to stripping or prostitution in order to support their children.

w.  asking the Named Plaintiffs and similarly situated women to be their work wife" even after the women had rejected their sexual advances;

x.  stalking several of the Named Plaintiffs and similarly situated female employees who rejected their sexual advances.

**ANSWER**:  Ford denies the allegations in paragraph 90, including subparts (a)-(x). Ford avers that women have made complaints of some of the above conduct in the workplace and that Ford has appropriately responded.

91.  In addition to sexually harassment and a hostile working environment described elsewhere in this Complaint, the following Named Plaintiffs suffered sexual harassment in the following ways, creating a hostile working environment:

a.  <u>Bernadette Clyburn</u>: Plaintiff Bernadette Clyburn and other similarly situated women was repeatedly subjected to pervasive and ongoing sexual stares, comments and innuendo from male co-workers, including but not limited to the following examples:

i.  Male co-workers frequently discussed the size of their penis with Plaintiff and with each other in front of Plaintiff and other women.

ii.  As an example, a co-worker named Joe stated he had "all of ten inches waiting for your pleasure."

iii.  Plaintiff was sexually harassed when male Supervisors and co-workers frequently stood behind her and other women and stared at women's buttocks.

iv.  Plaintiff continues to be sexually harassed when male co-workers repeatedly and frequently make sexual comments such as "I'd like to get all up in that" --- recently made by a male employee in the Trim Department.

v.  Plaintiff was sexually harassed when Supervisors, including Human Resources Manager Terrance McClain bragged about his sexual conquests, including with female employees and supervisors.

36

      vi.     McClain bragged about his ability to get women better jobs in the workplace if they had sexual relations with him.

      vii.    McClain bragged that he could do whatever he wanted and that he even had sexual relations with female supervisors.

      viii.   Plaintiff was offended when male employees frequently grabbed, groped, hugged and had sex with female employees in her presence.

      ix.     Plaintiff was sexually harassed when a male employee named Troy regularly touched women and used the upstairs bathroom to have sex with women at work.

      x.      Plaintiff was offended when Supervisors knew about and permitted Troy to have sex with women in the bathroom.

      xi.     Sexual harassment is especially pervasive on C-Crew at the Assembly Plant. While temporarily working on C-Crew, Plaintiff was offended by discussion between male employees of which female employees would provide sex or sex acts for money either in the workplace or in the parking lot.

      xii.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**: Ford denies the allegations in paragraph 91, including subparts 91(a) and 91(a)(i)-(xii).

      b.    <u>Martha Corbin</u>: Plaintiff Martha Corbin and similarly situated women were sexually harassed when Superintendent Myron Alexander and other male co-workers and supervisors repeatedly touched and groped her and made unwanted sexual comments to her, including but not limited to the following examples:

      i.      Superintendent Myron Alexander repeatedly and regularly picked Plaintiff up and flirtatiously touched her.

      ii.     This touching and flirtation was unwanted and offensive.

      iii.    Plaintiff repeatedly told Alexander "no" and "stop" but he continued to do touch and make unwanted sexual comments to Plaintiff.

iv.    Other men also made sexual harassing comments to Plaintiff, including for example, co-worker John Williams, who regularly talked about and commented to Plaintiff about her "big booty."

v.    Despite Plaintiffs frequent pleas for her male Supervisors and co-workers to stop making sexual comments to her, the comments continued.

vi.    Plaintiff became tense and emotionally upset whenever sexually harassing male supervisors and co-workers came near her.

vii.    Plaintiff's female co-workers Terri Lewis-Bledsoe and Ogery Ledbetter complained to the sexual harassment hotline to no avail.

viii.    Ford failed to remedy these complaints.

ix.    Rather than continue to endure ongoing sexual harassment, Plaintiff retired early from Ford.

x.    Had Plaintiff worked in a harassment-free workplace, she would have continued working at Ford and would not have retired early.

xi.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:    Ford admits only that Plaintiffs Terri Lewis Bledsoe and Ogery Ledbetter have, during their careers at Ford, called Ford's Hotline. Ford denies all remaining allegations in paragraph 91(b), including subparts (i)-(xi).

b[1].    Angela Glenn:  Plaintiff Angela Glenn was sexually harassed by male Supervisors and co-workers who repeatedly requested sex and touched, groped and caressed her and other similarly situated women in offensive ways, including but not limited to the following examples:

i.    Supervisor Robert Powell regularly and inappropriately touched subordinate female employees, including Plaintiff.

ii.    Powell repeatedly touched Plaintiff on the shoulders, arms and back.

---

[1] Ford notes that there are multiple subparagraphs "b" to fact number 91. To avoid confusion, Ford's answer mirrors the numbering, including duplication, of the SAC.

      iii.    Plaintiff complained about this unwanted and offensive touching and told Powell to stop touching her at work.

      iv.    Supervisor Powell responded: I do it with all the women and I'm going to keep doing it to you.'

      v.    When Plaintiff received a position assignment away from Powell,

      vi.    Powell had Supervisor Darren McElroy reassign Plaintiff back to his work area.

      vii.    Powell told Plaintiff: 'you belong to me now' and continued to sexually harass her verbally and physically.

      viii.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:    Ford denies the allegations in paragraph 91(b), including subparts (i)-(viii). Ford avers that hourly employees such as Plaintiff Glenn may be moved between jobs from time to time for a variety of legitimate, business-related reasons. Ford denies that Plaintiff Glenn was moved for any inappropriate reason.

      c.    <u>LaDwyna Hoover</u>:  Plaintiff LaDwyna Hoover has been sexually harassed by offensive and unwanted touching, groping and requests from sex, including but not limited to the following examples:

      i.    Plaintiff was confused and upset even on her first day of work, as she and other female employees were warned by a Labor Relations Representative that they would be sexually harassed upon being given an introductory tour of the plant and that male employees would refer to them as "fresh meat."

      ii.    Plaintiff was sexually harassed when she and other new female employees were whistled at and referred to as fresh meat."

      iii.    Plaintiff was sexually harassed when some male employees pointed at her and shouted "she's mine."

      iv.    Supervisor Jeffrey Bivens made unwanted sexual advances toward Plaintiff and told Plaintiff that he could easily fire her if she refused his sexual demands.

v.     Bivens attempted to have sex with Plaintiff at work when he called her into his office claiming she needed to sign some paperwork.

vi.    Bivens turned the lights down, and touched or caressed her arm and hand.

vii.   This touching was offensive, unwanted and Plaintiff immediately pulled away and refused to have sex with Bivens.

viii.  Despite that Plaintiff refused his sexual advances, Bivens continued to repeatedly make unwanted requests for sex or sexual favors from Plaintiff.

ix.    On one occasion, Bivens implied that he would pay Plaintiff to have sex with him and when Plaintiff rejected Bivens request for sex, he responded "then I guess you don't want to make this money."

x.     Plaintiff was repulsed and sexually harassed that Bivens and other men considered her and other female employees to be prostitutes.

xi.    Plaintiff complained about Bivens' sexual harassment to no avail.

xii.   Ford terminated Plaintiff.

xiii.  Ford promoted Bivens.

xiv.   The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:     Ford admits that Plaintiff Hoover was terminated for failure to comply with the notice to report provisions of the collective bargaining agreement as applied at the Chicago Assembly Plant. Ford also admits that Jeff Bivens remains employed at that Chicago Assembly Plant as a Process Coach.  Ford denies all remaining allegations in paragraph 91(c), including subparts (i)-(xiv).

d.     Ogery Ledbetter:  Plaintiff Ogery Ledbetter and other similarly situated women was repeatedly subjected to pervasive and ongoing sexual stares, comments and innuendo from male co-workers, including but not limited to the following examples:

i. Superintendent Myron Alexander repeatedly and regularly picked up, hugged and sexually and flirtatiously touched and groped Plaintiff's female co-workers, including Marth Corbin and Terri Lewis-Bledsoe.

ii. Plaintiff's co-workers complained to Plaintiff that these touches were unwelcome and unwanted.

iii. Plaintiff began to watch for whenever Superintendent Alexander came into her work area and warned her co-workers that the sexual predator was near.

iv. Plaintiff told Alexander that he should not touch her and that he should not touch other women at work.

v. Alexander told Plaintiff that unless she quit or retired, he was going to grope her buttocks just like he groped other women.

vi. Alexander told Plaintiff that "there isn't anything you can do to stop me."

vii. As Alexander said this, he walked toward Plaintiff. Plaintiff fled the work area to avoid a sexual battery.

viii. Alexander also sexually harassed women by taking nude or nearly-nude pictures of himself on his phone and showing it to Plaintiff and other women at work.

ix. Other men in Plaintiff's work area also made sexual harassing comments to Plaintiff and her female co-workers, including comments about women's breasts and buttocks.

x. John Williams told Plaintiff that all the men" commented on her being "too hot."

xi. Numerous men frequently discussed that Plaintiff and other women had "nice asses", big butts" and "big juicy booties."

xii. Plaintiff was sexually harassed by constant uncomfortable sexual from male co-workers.

xiii. Plaintiff pleaded for her male Supervisors and co-workers to stop making sexual comments to her and her female co-workers, but in response to these pleas, she was criticized for being an "old hen" and the sexually offensive comments continued.

      xiv.    Plaintiff complained to her supervisor and to Labor Relations that women could not walk anywhere in the plant without men staring at women's buttocks or requesting romantic or sexual relations.

      xv.    Plaintiff's complaints were to no avail and Ford failed to remedy these complaints.

      xvi.    Superintendent Charlie Smart forbade Plaintiff from going to Labor Relations and to stop complaining about sexual Harassment, telling her "don't go to Labor Relations, you're going to get me fired."

      xvii.    Rather than continue to endure ongoing sexual harassment, Plaintiff retired early from Ford.

      xviii.    Had Plaintiff worked in a harassment-free workplace, she would have continued working at Ford and would not have retired early.

      xix.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:    Ford is without knowledge or information sufficient to admit or deny what female co-workers may have told Plaintiff Ledbetter and therefore denies same. Ford denies all remaining allegations in paragraph 91(d), including subparts (i)-(xix).

      e.    <u>Latricia Shanklin</u>: Plaintiff Latricia Shanklin was sexually harassed when she received unwanted requests for sex and sexual comments from numerous men in Ford's Assembly Plant and when she was sexually assaulted, including but not limited to the following examples:

      i.    Superintendent Brian Hubbard made unwanted or unwelcome sexual advances toward the Plaintiff.

      ii.    Hubbard made repeated sexual statements to the Plaintiff, including describing sexual acts he wanted to perform on her.

      iii.    Hubbard made repeated and unwanted requests for dates and physically romantic relations which Plaintiff refused.

      iv.    Hubbard told Plaintiff that he had a large penis and that she would be "hooked" on it if she had sex with her.

v.      Hubbard repeatedly told Plaintiff that she would be sexually interested in him if she would just let him massage her feet.

vi.     Hubbard issued discipline against Plaintiff's daughter, terminated Plaintiff's daughter and subsequently told Plaintiff that he would not have disciplined or terminated Plaintiff's daughter and that her daughter would still be working at Ford if Plaintiff would have accepted his romantic requests.

vii.    Plaintiff was physically sexually assaulted by Superintendent Myron Alexander, as described elsewhere in this complaint.

viii.   Alexander told Plaintiff she was "so pretty" and made unwanted, offensive comments about Plaintiff's breasts and buttocks.

ix.     Alexander rubbed up against Plaintiff's buttocks with his pelvis.

x.      Alexander forcefully tried to kiss Plaintiff and grope her breasts.

xi.     Plaintiff repeatedly complained to Human Resources Manager Terrance McClain about sexual harassment at Ford including sexual harassment from Hubbard.

xii.    Overtime, when Plaintiff continued complaining to McClain about sexual harassment, McClain became progressively more aggressive in sexually harassing Plaintiff.

xiii.   Eventually, McClain told Plaintiff "I want to suck your pussy" and "I want to fuck you. I know you got some good pussy" and sexually assaulted Plaintiff.

xiv.    After McClain was moved away from the Assembly Plant, she again complained to Ford's sexual harassment hotline, to no avail.

xv.     After Plaintiff repeatedly complained about sexual harassment from Brian Hubbard, he was promoted to Superintendent.

xvi.    Sexual harassment at Ford caused Plaintiff substantial emotional distress which necessitated Plaintiff take substantial medical leave from work.

xvii.   The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:     Ford admits that Plaintiff Shanklin called Ford's anti-harassment Hotline in May 2015 and raised concerns about Brian Hubbard and Terrance McClain and that at the time of the Hotline call McClain no longer worked for Ford.   Ford also admits that Brian Hubbard was promoted to a Team Manager position May 1, 2014.   Ford denies all remaining allegations in paragraph 91(e), including subparts (i)-(xvii).

      f.    <u>Antoinette Sullivan</u>:  In addition to other forms of sexual harassment as described elsewhere in this Complaint, Plaintiff Antoinette Sullivan was sexually harassed when she received unwanted requests for sex and sexual comments from numerous men in Ford's Assembly Plant, including but not limited to the following examples:

    i.    After July 13, 2012, Plaintiff continued to be sexually harassed by complained-of sexual predator Michael Francisco.

    ii.    After Plaintiff complained about sexual harassment by Francisco, he was promoted to Team Leader.

    iii.    Francisco used his position as Team Leader to continue to offend and sexually harass women throughout at least the summer and fall of 2012.

    iv.    In or about early August, 2012, Francisco openly bragged to male co-worker Paris Garu while standing in front of Sullivan, that he used his Team Leader position to get a female co-worker who was working on the Highline job to provide him oral sex in the workplace parking lot.

    v.    Francisco and other men made constant sexual references and comments about women and women's bodies in front of Sullivan.

    vi.    Plaintiff and similarly situated women were sexually harassed when male co-workers bragged and joked about employees having sex on the Assembly Plant roof and about five men on the "C-Crew" sexually humiliating a female employee as part of a work-place "gangbang."

    vii.    Plaintiff was offended when her Supervisor Mark, in her presence, lamented to other male co-workers that since the gangbang had been "found out", men would have to be more careful when they had sex with women at work.

viii.     Plaintiff was sexually harassed in August or September, 2012 when she worked side-by-side with a new female employee named Nicki in a position that required Sullivan and Nicki to bend inside of cars to install a part for a seatbelt.

ix.     UAW Representative Coby Millender and Ergonomics Manager Kevin "Red" Marshall stood behind Sullivan and Nicki starring at their bodies and making loud sexual comments that both Sullivan and Nicki could hear.

x.     Marshall asked Millender if Nicki was "the new ass you had been talking about?" and commented that Nicki had "a fat ass."

xi.     Millender responded "Yes, this is her right here. I'd like to take her [Sullivan's, tits and stick em on the new girl [Nicki]."

xii.     Marshall commented that he wanted to "fuck [Sullivan's], tits" and discussed with Millender various other sexual acts that he wanted to perform on Sullivan and Nicki.

xiii.     Between August, 2012 and November, 2012, Plaintiff repeatedly met with Labor Relations Representative Natalie Dahrenger, but Dahrenger only wanted to discuss a carpal-tunnel procedure Plaintiff had undergone and refused to discuss ongoing sexual harassment with the Plaintiff.

xiv.     The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:     Ford denies the allegations in paragraph 91(f), including subparts (i)-(xiv).

g.     <u>Derricka Thomas</u>: Plaintiff Derricka Thomas has been sexually harassed by offensive and unwanted touching and unwanted and offensive comments of a sexual nature, including but not limited to the following examples:

i.     Plaintiff has experienced repeated acts of sexual assaults and offensive touching including from her co-worker, John.

ii.     John repeatedly placed his hands on Plaintiff's waist and lower back and rubbed up against Plaintiff from behind.

iii.     John repeatedly told Plaintiff that he liked her buttocks.

iv.     John repeatedly told Plaintiff that he wanted to bite her buttocks.

v.      These comments were offensive and unwanted.

vi.     Plaintiff complained to her Team Leaders, including Quise and to her Supervisors that she was being sexually harassed at work.

vii.    Despite these complaints, Plaintiff's Supervisors permitted John to subsequently grab Plaintiff around the waist and bite her buttocks while she was bent over performing her job at Ford.

viii.   Plaintiff has further experienced sexual harassment when her Team Leader Quise seized Plaintiff's phone without her knowledge and forwarded pictures of Plaintiff to himself.

ix.     Team Leader Quise forwarded these pictures to other men throughout the plant.

x.      These pictures were private and personal and included intimate private pictures Plaintiff had taken of herself, with her boyfriend and infant child in which Plaintiff was wearing a bra.

xi.     Plaintiff was further sexually harassed when Team Leader Quise circulated provocative pictures of Plaintiff to other male employees in her department.

xii.    Plaintiff and other women have been sexually harassed by men leaving opened (and possibly used) condoms in and around her work area.

xiii.   On one occasion, male co-workers completely wrapped work equipment that Plaintiff and her female co-worker Tiffany used with a (possibly used) condom.

xiv.    Plaintiff and Tiffany complained about opened and possibly used condoms being left in their work area to Supervisor Robert Pryor, but Pryor laughed and thought it was funny.

xv.     Supervisors Mike Reese and Willie Fonseca frequently made sexually harassing comments to Plaintiff and other women.

xvi.    Supervisors Reese and Fonseca showed or attempted to show penis pictures to Plaintiff and female co-workers in Plaintiff's presence.

xvii.   The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:    Ford admits that Plaintiff Thomas reported that a co-worker had bitten her on the buttocks on one occasion. Ford avers that it appropriately responded to that report.  Ford denies all remaining allegations in paragraph 91(g), including subparts (i)-(xvii).

      h.    <u>Nichea Walls</u>:  Plaintiff Nichea Walls was sexually harassed when male supervisors and co-workers repeatedly made unwanted sexual comments and showed penis pictures to Plaintiff and similarly situated co-workers, including but not limited to the following examples.

      i.    Supervisors Willie Fonseca and Mike Reese repeatedly made offensive, unwanted sexual comments to Plaintiff and similarly situated women.

      ii.    Plaintiff was sexually harassed when Supervisor Fonseca showed her and other women a picture of his penis that he had taken with his phone.

      iii.    Plaintiff was sexually harassed when male co-workers constantly preyed on her and similarly situated co-workers in her work area, including aggressive requests for sex or sex acts.

      iv.    Plaintiff became extremely distressed when men pressured women to perform sex acts on them at work, including when she discovered men were pressuring women to have sex with them in the parking lot and when Plaintiff was informed that Superintendent Robert Devine pressured a Team Leader to perform oral sex with him on the roof of the Assembly Plant.

      v.    Plaintiff and other women were further subjected to a hostile work environment and were demeaned when Union Chairman, Coby Millender belittled sexual harassment complaints and told women: "regarding the sexual harassment suit, that's bullshit. I'm going to represent the company and keep that bullshit away from me."

      vi.    The foregoing incidents and others like them were pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:    Ford denies the allegations in paragraph 91(h), including subpart (i)-(vi).

92.     Pervasive sexual harassment continues at Ford and the Plaintiffs that continue to work at Ford are still being sexually harassed by Supervisors that are aware of the pending lawsuit, including by way of example:

a.      In late 2015 or early 2016, Ford hired a new Supervisor at its Chicago Assembly Plant named "Charles" (last name unknown).

b.      Charles was assigned to supervise Plaintiff Maria Price.

c.      Supervisor Charles told Price that he was friends with one of Price's complained-of sexual harassers, Supervisor Dre Harris.

d.      Supervisor Charles told Price that he got the Supervisor job at Ford because he was friends with Harris and that he never applied for the job.

e.      Supervisor Charles told Price that Ford called him out-of-the-blue to work at Ford as a Supervisor in the Assembly Plant based solely on the recommendation of a known sexual harasser, Harris.

f.      When Charles met Price, he told her that he had read about this lawsuit, knew that Price was one of the original Named Plaintiffs, and told her he had discussed Prices allegations with other Supervisors, including Demario Petite.

g.      Supervisor Charles told Price that he believed all of her allegations as contained in this lawsuit and its exhibits.

h.      Supervisor Charles told Plaintiff "I believed everything I read when I saw how beautiful you were."

i.      In front of other employees Frank and Chuck (last names unknown), Supervisor Charles repeatedly asked Price on romantic dates and told her that he wanted to give her a massage and "I want to treat you special."

j.      Plaintiff Maria Price told Charles that she was not interested in dating him or any Supervisors or co-workers and that his requests were offensive and unwanted.

k.      Supervisor Charles continued making unwanted requests for romantic relations to Price.

l.      Plaintiff complained about Supervisor Charles to Labor Relations Representatives, including Catina McCoy and Anita O'Connor.

m.      McCoy and O'Connor did not take prompt action to investigate Supervisor Charles' sexual harassment.

**ANSWER**:    Ford denies that sexual harassment continues at the Plants or that Plaintiffs are subject to ongoing sexual harassment at the Chicago facilities. Ford admits that in April 2016, Plaintiff Price reported that a supervisor named Charles had made statements to her that she found inappropriate and that such report was made several months after Charles's employment with Ford had terminated. As the accused individual was no longer employed at the time of the report, Ford is without knowledge or information sufficient to admit or deny the nature of any interaction between Plaintiff Price and the former employee and therefore denies same. Ford denies all remaining allegations in paragraph 92, including subparts (a)-(m).

93.    The sexually harassing conduct of which the Named Plaintiffs complain, was unwelcome, unwanted and non-consensual.

**ANSWER**:    Ford denies the allegations in paragraph 93 and denies that the Named Plaintiffs were subject to sexually harassing conduct.

94.    In addition to being sexually harassed themselves, the named Plaintiffs were subjected to a hostile working environment, in that they were forced to endure hostile working conditions in which other women were harassed, as more particularly described in other allegations of this Count.

**ANSWER**:    Ford denies the allegations in paragraph 94.

95.    Sexually harassing touching and other conduct was so pervasive and so widespread that the Named Plaintiffs and similarly situated women were constantly in fear for their own safety and of being touched.

**ANSWER**:    Ford denies the allegations in paragraph 95.

96.     Each of the incidents described in this count were offensive and harassing to the Named Plaintiffs and similarly situated women who observed these occurrences and/or who heard other women complain about them.

**ANSWER**:     Ford denies the allegations in paragraph 96 and incorporates its denials that alleged conduct occurred as stated in response to paragraphs 83 to 95.

97.     The foregoing conduct is degrading, offensive and sexually harassing to the Named Plaintiffs and similarly situated women.

**ANSWER**:     Ford denies the allegations in paragraph 97 and incorporates its denials that alleged conduct occurred as stated in response to paragraphs 83 to 95.

98.     The types of sexually harassing behavior mentioned throughout this Count were experienced by the Named Plaintiffs and other similarly situated women on almost a daily basis.

**ANSWER**:     Ford denies the allegations in paragraph 98.

99.     These instances of sexual harassment were continuous, severe and pervasive.

**ANSWER**:     Ford denies the allegations in paragraph 99.

100.     Each of the incidents described in this Complaint were offensive and unwanted by the Named Plaintiffs and other similarly situated women.

**ANSWER**:     Ford denies the allegations in paragraph 100.

101.     By being forced to endure, experience and/or observe the conduct alleged in this Count and elsewhere in the Complaint and Exhibits 1(a)-24(a), each of the Named Plaintiffs and other putative class members were subjected to a hostile working environment.

50

**ANSWER**:     Ford denies the allegations in paragraph 101.


102.     These occurrences resulted in the Named Plaintiffs being sexually harassed and caused these women to suffer damage and emotional trauma.

**ANSWER**:     Ford denies the allegations in paragraph 102.


103.     These occurrences are but several examples of events that happened with regularity at Ford to the Named Plaintiffs and contributed to a sexually harassing workplace environment which affected all of the Named Plaintiffs and their similarly situated female employees.

**ANSWER**:     Ford denies the allegations in paragraph 103.


104.     This conduct created a dangerous workplace environment in which the Named Plaintiffs and similarly situated women do not feel safe.

**ANSWER:**     Ford denies the allegations in paragraph 104.


**PLAINTIFFS COMPLAINED ABOUT SEXUAL HARASSMENT BUT DEFENDANT FAILED TO TAKE PROMPT REMEDIAL ACTION**

105.     As a direct and proximate result of the foregoing acts of sexual harassment, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost time from work, have suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 105 and denies that the Named Plaintiffs and/or other allegedly similarly situated employees are entitled to any recovery.

106.    The Named Plaintiffs and numerous similarly situated female employees repeatedly complained about sexual harassment during the Relevant Time Period by calling Ford's sexual harassment hotline, and making numerous reports to their supervisors, union, and Ford's Labor Relations and/or Human Resources department.

**ANSWER**:    Ford admits only that employees of both the Chicago Assembly Plant and the Chicago Stamping Plant, and including one or more of the Named Plaintiffs, at times, used available reporting avenues under Ford's anti-harassment policy. Ford denies all remaining allegations in paragraph 106.

107.    Ford failed to take prompt remedial action to stop sexual harassment in the workplace.

**ANSWER**:    Ford denies the allegations in paragraph 107.

108.    After the Named Plaintiffs and other similarly situated female employees complained about sexual harassment, male co-workers mocked their complaints and left behind spray-painted and chalk-marked graffiti depicting penises and testicles in the Complainers' work area and lunch area.

**ANSWER**:    Ford denies the allegations in paragraph 108.

109.    Male co-workers anonymously left totems of banana's sticking up in the air and symbols depicting penises in the complainers work area, which were degrading to the Named Plaintiffs who experienced it such as Helen Allen and similarly situated sexually harassed women.

**ANSWER**:    Ford denies the allegations in paragraph 109.

110.     The above mentioned occurrences and numerous other occurrences like them, and Ford's failure to promptly take remedial action to stop these occurrences from continuing, resulted in the Plaintiffs being sexually harassed.

**ANSWER**:     Ford denies the allegations in paragraph 110 and incorporates its denials that the alleged conduct occurred as set forth in paragraphs 105 to 109.

111.     As a direct and proximate result of the foregoing acts of sexual harassment, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost time from work, have suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 111 and denies that the Named Plaintiffs and/or other allegedly similarly situated employees are entitled to any recovery.

**COUNT 2**
**TITLE VII-GENDER/SEX DISCRIMINATION**
**(VAN, LEVIEGE, PRICE, ALLEN, BARRON, BOSAN, CAMPBELL, CARTER, DAHN, EXUM, GARDNER, GOFORTH, HARRIS, HENRY, JORDAN, KUDIRKA, LEWIS- BLEDSOE, MADISON, MILLER, MORRIS, SZOT, THOMAS-MOORE, R. THOMAS, WILLIAMS, CLYBURN, CORBIN, GLENN, HOOVER, LEDBETTER, SHANKLIN, SULLIVAN, D. THOMAS, WALLS, and all similarly situated women)**

112.     Plaintiffs adopt, reallege and incorporate by reference the allegations contained in paragraphs 1-111 of this Second Amended Complaint, as if set forth here.

**ANSWER**:     Ford incorporates its responses to paragraph 1-111 as if fully set forth herein.

113.     Plaintiffs and other women have been treated differently than their male counterparts.

**ANSWER**:     Ford denies the allegations in paragraph 113.

114.    Plaintiffs and other women have been subjected to hostile working environment, sexual harassment, gender discrimination and discriminatory comments from supervisors and coworkers which males are not required to endure as a condition of their employment.

**ANSWER**:    Ford denies the allegations in paragraph 114.

115.    Plaintiffs and other women have been given different work assignments than male counterparts and have been told that they are not being assigned to perform certain tasks "because they are women."

**ANSWER**:    Ford admits that there are thousands of jobs at the two Chicago facilities and that both male and female employees may be assigned to different job assignments for a variety of legitimate, business-related reasons. Ford denies that women have been given different work assignments based on gender. Ford denies all remaining allegations in paragraph 115.

116.    Male supervisors have treated female restroom breaks as a significant delay in the production line, whereas male restroom breaks have been stereotypically viewed as shorter and having little or no impact on the speed of production.

**ANSWER**:    Ford denies the allegations in paragraph 116. Ford avers that whether and how quickly a restroom break can be provided in any individual circumstance depends on a variety of legitimate factors, but not on gender.

117.    Thus, when females requested a restroom break, they have been denied that privilege much more frequently than their similarly situated male co-workers.

**ANSWER**:    Ford denies the allegations in paragraph 117.  Ford avers that whether and how quickly a restroom break can be provided in any individual circumstance depends on a variety of legitimate factors, but not on gender.

118.     By way of example, Constance Madison and her female co-worker Cherlonda Johnson occasionally requested restroom breaks but were denied that privilege by their male Supervisors, including floor-manager Rob Kemp who frequently told Constance and other female employees that restroom privileges are "what the breaks are for."

**ANSWER**:     Ford denies that Madison and Johnson were denied restroom breaks based on gender.  Ford avers that whether and how quickly a restroom break can be provided in any individual circumstance depends on a variety of legitimate factors, but not gender, and that employees are provided breaks during which time they may use the restroom.  Ford denies all remaining allegations in paragraph 118.

119.     Madison witnessed Kemp and other male Supervisors including Team Leader Tyson frequently permit male employees to use the restroom during non-break periods.

**ANSWER**:     Ford is without knowledge or information sufficient to admit or deny what Madison believes she observed and therefore denies same. Ford denies that restroom breaks are provided based on gender.  Ford avers that whether and how quickly a restroom break can be provided in any individual circumstance depends on a variety of legitimate factors, but not gender. Ford denies all remaining allegations in paragraph 119.

120.     Plaintiffs and other women have been subjected to comments of a derogatory nature toward women, including that they are regularly referred to as 'bitches", "hoes" and "sluts."

**ANSWER**:     Ford denies the allegations in paragraph 120.

121.     Women are not viewed as equals, but rather as sexual objects at Ford.

**ANSWER**:     Ford denies the allegations in paragraph 121.

122.     Being constantly exposed to unwanted sexual comments and discussion is offensive and degrades the Named Plaintiffs and similarly situated women.

**ANSWER**:     Ford denies that women at the two Chicago facilities are constantly exposed to sexual comments and discussion.  Ford denies all remaining allegations in paragraph 122.

123.     Females are treated differently than similarly situated male employees who are not required to endure sexual harassment as a term and condition of their employment.

**ANSWER**:     Ford denies the allegations in paragraph 123, including but not limited to the allegations that women are required to endure sexual harassment as a term and condition of their employment.

124.     The Named Plaintiffs and numerous similarly situated female co-workers have complained to Ford's sexual harassment hotline and to the Labor Relations and Human Resources Departments about being exposed to a discriminatory, sexually harassing and hostile work environment.

**ANSWER**:     Ford admits only that employees of both the Chicago Assembly Plant and the Chicago Stamping Plant, including one or more of the Named Plaintiffs, have at times used available reporting avenues under Ford's anti-harassment policy to report concerns. Ford denies all remaining allegations in paragraph 124.

125.     Ford has failed to stop and/or remedy this ongoing harassment, and male supervisors and employees continue to openly refer to women as bitches" and to women who complain as "snitch bitches."

**ANSWER**:     Ford denies the allegations in paragraph 125.

56

126.    Ford failed to promptly disciplined or reassign any males about whom Plaintiffs' complained and did not conduct a thorough or timely investigation of Plaintiffs complaints.

**ANSWER**:    Ford denies the allegations in paragraph 126. Ford further avers that it is not required to discipline or reassign male employees each time a complaint is made, regardless of whether the complaint is corroborated, as suggested by this allegation.

127.    Despite numerous prior lawsuits and the EEOC Conciliation Agreement, sexual harassment and sex/gender discrimination continues to be an everyday way of life at Ford.

**ANSWER**:    Ford denies the allegations in paragraph 127.

128.    As a direct and proximate result of the foregoing acts of gender discrimination, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost or been deprived of income opportunities, have suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 128 and denies that the Named Plaintiffs and/or other allegedly similarly situated employees are entitled to any recovery.

**COUNT 3**
**TITLE VII-RACE DISCRIMINATION**
**(CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN,**
**MIVOSHI MORRIS, and all persons similarly situated)**

129.    The Named Plaintiffs to this Count and their similarly situated African American employees ("Plaintiffs" for purposes of this Count) adopt, reallege and incorporate by reference the allegations in paragraphs 1-82 as and for this paragraph.

**ANSWER**:    Ford incorporates its responses to paragraphs 1-82 as if fully set forth herein.

130.    Plaintiffs adopt and incorporate by reference all allegations of sexual harassment and of a hostile work environment alleged in their respective EEOC Charges and Charge Outlines (Exs. 1(A), 2(A), 3(A), 4(A) and 20(A)) as if set forth here.

**ANSWER**:    Ford admits only that Plaintiffs Van, Leviege, Price, Allen and Morris attempt to incorporate their allegations of sexual harassment and hostile work environment. Ford denies that Plaintiffs Van, Leviege, Price, Allen and Morris have been subject to sexual harassment or a hostile work environment as alleged in their charges or otherwise. Ford further avers that the allegations of sexual harassment and hostile environment are not relevant to this Count of the SAC. Ford denies all remaining allegations in paragraph 130, and contained in the Charges and Charge Outlines/SAC exhibits.

131.    Plaintiffs are members of a protected Class based on their race: African American.

**ANSWER**:    Ford admits that Plaintiffs Van, Leviege, Price, Allen and Morris self-identify, according to Ford's records, as African American.

132.    Plaintiffs and other similarly situated African American employees have been subjected to different treatment on the basis of their race, African-American.

**ANSWER**:    Ford denies the allegations in paragraph 132.

133.    This claim is brought under Title VII, 42 U.S.C. §2000e *et seq.*

**ANSWER**:    Ford admits only that this count asserts violation of Title VII. Ford denies that any such violation has occurred.

134.    Plaintiffs and other similarly situated African American co-workers in the protected Class were discriminated against and subjected to a hostile work environment based on race in violation of Title VII of the Civil Rights Act.

**ANSWER**:    Ford denies the allegations in paragraph 134.

135.    Plaintiffs and other similarly situated African Americans were discriminated against in the terms and conditions of their employment, including that they were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

**ANSWER**:    Ford denies the allegations in paragraph 135.

136.    Plaintiffs and similarly situated African Americans have been denied the opportunity to work overtime based on their race/color (African American/black), even when the Plaintiffs and others have indicated a willingness to work overtime and/or have requested to do so.

**ANSWER**:    Ford admits only that one or more of the Plaintiffs asserting this Count may have expressed, at various times, an interest in working overtime as do most hourly employees at the Chicago facilities.   Ford further avers that the availability of overtime on any given occasion, with respect to any individual employee, is based on a variety of legitimate factors but is not based on race. Ford denies all remaining allegations in paragraph 136.

137.    African American/black employees at Ford are assigned to lower quality work assignments than non-African American/black co-workers.

**ANSWER**:    Ford denies that it assigns employees to lower quality work assignments based on race.  Ford avers that there are thousands of jobs at the two Chicago facilities and that

individuals of different races may be assigned to different job assignments at different times, based on a variety of legitimate factors, but not based on race. Ford further avers that "lower quality work" is based on each employee's subjective opinions. Ford denies all remaining allegations in paragraph 137.

138.    Career opportunities at Ford are also more limited at Ford where most management positions are held by whites and most production and maintenance positions are held by blacks.

**ANSWER**:    Ford denies that career opportunities are based on an employee's race. Ford avers the career opportunities for any employee are based on a variety of legitimate factors. Ford admits that most production positions are held by African Americans at the Chicago Assembly Plant. Ford denies all remaining allegations in paragraph 138.

139.    Plaintiffs' white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks, whereas the Named Plaintiffs and other African American employees are not afforded similar conveniences.

**ANSWER**:    Ford denies that it assigns employees to jobs based on race. Ford avers that there are thousands of jobs at the two Chicago facilities and that individuals of different races may be assigned to different job assignments at different times for a variety of legitimate, business-related reasons, but not based on race. Ford denies all remaining allegations in paragraph 139.

140.    Plaintiffs and other similarly situated individuals have been given work assignments which are different and less desirable than white counterparts.

60

**ANSWER**:     Ford denies that it assigns employees to work assignments based on race. Ford avers that there are thousands of jobs at the two Chicago facilities and that individuals of different races may be assigned to different job assignments at different times for a variety of legitimate, business-related reasons, but not based on race.   Ford further avers that what constitutes a "less desirable work assignments" is based on each employee's subjective opinions. Ford denies all remaining allegations in paragraph 140.

141.    Lighter skinned employees are also given preferential treatment to darker skinned employees.

**ANSWER**:     Ford denies the allegations in paragraph 141.

142.    Various white team leaders and supervisors at Ford regularly made racially offensive references to Plaintiff and other African-Americans, including stereotypical and derogatory references to their hair, figures and clothes.

**ANSWER**:     Ford denies the allegations in paragraph 142.

143.    Plaintiffs and similarly situated individuals have been subjected to name calling such as "nigger," "pickaninny" "shine," "buckwheat," "Aunt Jemima" and "Alfalfa."

**ANSWER**:     Ford denies the allegations in paragraph 143.

144.    Because of Plaintiffs' race/color, Plaintiffs and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions and loss of overtime opportunities.

**ANSWER**:     Ford denies the allegations in paragraph 144.

145.    Plaintiff and other similarly situated African Americans have been subjected to discrimination in discipline as well.  Whites are not disciplined or are less severely disciplined for similar conduct.

**ANSWER**:    Ford denies the allegations in paragraph 145, including that discipline is related to race.  Ford avers that discipline is based on the facts and circumstances of a particular situation and a variety of legitimate factors may determine the result in any given instance, but not the employee's race.

146.    By way of example, Ford terminated Miyoshi Morris, claiming this was due to a paperwork issue associated with taking a bereavement leave.

**ANSWER**:    Ford admits that Morris was terminated after an inquiry revealed that she had falsified paperwork/information in connection with a request for bereavement leave.  Ford denies that this is an example of race discrimination or that the decision was based on race.  Ford denies all remaining allegation in paragraph 146.

147.    Another white employee who Ford claims was "terminated" at about the same time as Morris for the same reason as Morris was promptly reinstated and returned to work while Morris was not.

**ANSWER**:    Ford admits that a Caucasian, male employee who was terminated for falsification of records was reinstated through the grievance process. Ford avers that whether or not someone is reinstated pursuant to the grievance process may be based on a variety of legitimate factors, but not based on race. Ford denies that Morris was treated differently in connection with her termination or grievance based on race or that the Caucasian employee is similarly situated to Morris.  Ford denies all remaining allegations in paragraph 147.

148.     Ford has returned Morris' white co-worker to work but refuses to reinstate Morris because of her race (black).

**ANSWER**:    Ford admits that a Caucasian male employee who was terminated for falsification of records was reinstated through the grievance process and that Morris has not been returned to work.  Ford avers that whether or not someone is reinstated pursuant to the grievance process may be based on a variety of legitimate factors, but not based on race. Ford denies that Morris was treated differently based on her race, or that the Caucasian employee is similarly situated to Morris.  Ford denies all remaining allegations in paragraph 148.

149.     Because of their race/color, plaintiff and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

**ANSWER**:    Ford denies the allegations in paragraph 149.  Ford avers that discipline, write-ups, and suspensions are handled on a case-by-case basis, the outcome of which is based on a variety of legitimate factors, but not on race/color.  Ford further avers that the availability of overtime on any given occasion, with respect to any individual employee, is based on a variety of legitimate factors, but is not based on race.

150.     Plaintiffs complained about this to Labor Relations to no avail.

**ANSWER**:    Ford denies the allegations in paragraph 150 as stated as there are no specific complaints identified. Ford avers that the Plaintiffs have made various complaints to Labor Relations about various issues between January 2012 and the present.

151.     Plaintiffs complained about this discrimination on Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

**ANSWER**:   Ford denies the allegations in paragraph 151 as stated as there are no specific complaints identified.  Ford denies that it did not promptly respond to allegations of race discrimination. Ford avers that the Plaintiffs have made various complaints to Ford's anti-harassment hotline about various issues between January 2012 and the present.

152.   After Plaintiffs complained about discrimination and harassment, they were regularly referred to by white co-workers and supervisors as "Black Snitch Bitch" - which was extremely racially offensive and derogatory.

**ANSWER**:   Ford denies the allegations in paragraph 152.

153.   As a direct and proximate result of the foregoing acts of racial discrimination, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost or been deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER**: Ford denies the allegations in paragraph 153 and denies that the Named Plaintiffs and/or other allegedly similarly situated employees are entitled to any recovery.

**COUNT 4**
**RACE DISCRIMINATION UNDER § 1981**
**(VAN, LEVIEGE, PRICE, ALLEN, CAMPBELL, CLYBURN,**
**EXUM, MORRIS and all persons similarly situated)**

154.   The Named Plaintiffs to this Count and their similarly situated employees ("Plaintiffs" for purposes of this Count) incorporate by reference the allegations contained in paragraphs 1 through 82 and 129-153 of the Complaint and Plaintiffs charges of discrimination.

**ANSWER**:   Ford incorporates its responses to paragraph 1-82 and 129-153 as if fully set forth herein.

155.    This claim is made under 42 U.S.C. § 1981.

**ANSWER**:    Ford admits only that Van, Leviege, Price, Allen, Campbell, Clyburn, Exum and Morris assert this claim under the statute cited.  Ford denies any violation thereof.

156.    Plaintiffs are members of a racial minority (African-American).

**ANSWER**:    Ford admits that, according to Ford's records, Van, Leviege, Price, Allen Campbell, Clyburn, Exum and Morris self-identify as African American.

157.    Defendant's treatment of the Plaintiffs and other African-American employees denied them of the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

**ANSWER**:    Ford denies the allegations in paragraph 157 and denies that it has violated the cited statute.

158.    African American employees are forced to work under Supervisors that UAW representatives have identified are racist or are known for being racist.

**ANSWER**:    Ford denies the allegations in paragraph 158.

159.    African American employees at Ford were subjected to a racially hostile workplace environment that provided white employees more favorable terms and conditions of employment.  By way of example (and in addition to allegations contained in the Named Plaintiffs' EEOC Charges and incorporated by reference to Count 3 and this Count of this complaint),

**ANSWER**: Ford denies the allegations in the introductory portion of paragraph 159.

a.  White employees are given preference in promotions, especially at Ford's Stamping Plant (where Van, Exum and Campbell continue to work and enure a racially hostile workplace environment).

**ANSWER**:  Ford denies the allegations in paragraph 159(a).

i.  Hourly production line workers in Ford's Assembly and Stamping Plants are subject to the instructions of salaried Supervisors or Managers of various titles.

**ANSWER:** Ford admits that it employs salaried supervisors and managers who manage various aspects of Ford's business operations consistent with the terms of the applicable collective bargaining agreements. Ford denies all remaining allegations in paragraph 159(a)(i).

ii.  Ford promotes some hourly employees into lower-level managers roles, carrying titles of 'Team Leaders" and "Utilities" (Utilities assist Team Leaders and serve in their place in their absence).

**ANSWER:** Ford denies that Team Leaders and Utilities are "lower level managers" and that Utilities' job functions consist of assisting Team Leaders. Ford admits that hourly employees are, at times, selected into hourly classifications of Utilities and Team Leaders. Ford denies all remaining allegations in paragraph 159(a)(ii).

iii.  Reassignment to the positions of Team Leaders and Utilities are considered promotions, and are accompanied with increased levels of managerial responsibilities and wage increases and/or increased overtime opportunities.

**ANSWER:** Ford admits that selection to Team Leader and Utility classifications are considered promotions. Ford admits that, consistent with the collective bargaining agreements, Team Leaders and Utilities typically have an hourly wage higher than regular production workers.

Ford avers that overtime availability and hours are dependent on a variety of legitimate factors, but not on race. Ford denies all remaining allegations in paragraph 159(a)(iii).

iv.    Between 2012 and the present, Ford was short on "Utilities" in its Stamping Plant.

     **ANSWER**: Ford denies the allegations in paragraph 159(a)(iv).

v.    Ford, through its white Supervisors, including Brad Swing and Roy Erdman trained Exum, Campbell and other African American employees as "Utilities" and had them working for many months in that position in an "acting as" capacity.

     **ANSWER**: Ford denies the allegations in paragraph 159(a)(v).

Ford avers that employees are cross-trained, at times, for purposes of versatility.

vi.    Ford promoted a white co-worker from the assembly line who had not been previously trained as a Utility named Kevin Clay into the Utility position over Plaintiff Campbell and other African American employees that had been trained for that position and who had been "acting as" Utilities.

     **ANSWER**: Ford denies the allegations in paragraph 159(a)(vi).

Ford further avers that Kevin Clay is African American.

vii.    Ford did not officially promote Exum to a Utility position and did not pay Exum or Campbell the same hourly rate for similar work being performed by other white Utilities on their shift and in their department.

     **ANSWER:** Ford admits that Exum was not classified as a Utility.

Ford denies all remaining allegations in paragraph 159(a)(vii).

viii.    Of approximately twelve (12) Utilities on First Shift, none were black.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(viii).

ix.     Eventually, Campbell was informed that if she wanted to work as a Utility, she needed to apply for an open Utility position on 3rd Shift - a less desirable shift.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(ix). Ford avers that job postings may be shift-specific and that employee seniority generally governs shift assignment consistent with the terms of the collective bargaining agreement. Ford further avers that which shift is or is not "desirable" is a matter of individual employee preference.

x.     Since moving to Third Shift, Campbell has experienced that white Supervisors Ed Smith and Mark Olsen repeatedly deny black female employees including herself and Deedee Perkins proportional overtime opportunities relative to similarly situated white employees.

**ANSWER:** Ford denies the allegations in paragraph 159(a)(x). Ford avers that overtime availability is based on a variety of legitimate factors, but not on race.

xi.     Smith and Olsen frequently given overtime to white male employee Octavia to perform Set-up Utility work, despite that his job classification is as a Schuler, because Campbell, Perkins and other African Americans would otherwise receive the overtime chance by virtue of being at the top of the Overtime Equalization list.

**ANSWER:** Ford denies the allegations in paragraph 159(a)(xi).

xii.     Campbell and Perkins complained about this to Don Byers, but when Byers investigated, he found that Olsen admitted misclassifying Octavia to allow him overtime, but that Olsen refused to provide equal overtime opportunities to African American utilities.

**ANSWER:** Ford is without knowledge or information sufficient to either admit or deny what information may have been shared with

UAW representative Don Byers and therefore denies the same. Ford denies all remaining allegations in paragraph 159(a)(xii).

xiii. In 2012 or 2013, Exum and other African American employees applied and interviewed for a promotion to "Team Leader."

**ANSWER:** Ford admits that Exum and other African American employees applied for Team Leader on January 20, 2014. Ford further admits that Exum was interviewed and was selected for a Team Leader Position. Ford denies all remaining allegations in paragraph 159(a)(xiii).

xiv. Exum interviewed for the Team Leader position with white managerial personnel Steve Van Baber and Lisa Risinelli, and is aware that white Supervisor Roy Erdman was also involved in the selection process.

**ANSWER**: Ford admits that Exum interviewed with UAW representative Steve Van Bader and Lisa Rechinelli. Ford further admits that Roy Erdman interviewed other candidates for Team Leader positions. Ford denies all remaining allegations in paragraph 159(a)(xiv).

xv. Ford selected white male employee Michael Malone for the position over Plaintiff and several other African American candidates including but not limited to Osiris Selby and Randall Willis who had more experience, more seniority and who had served in the role of Team Leader, even if only in an "acting as" capacity (as was the case with Exum).

**ANSWER**: Ford admits that Michael Malone was selected as a Team Leader. Ford further avers that Plaintiff Exum, Osiris Selby and Randall Willis were also selected as Team Leaders. Ford denies all remaining allegations in paragraph 159(a)(xv).

xvi.   Although Ford eventually promoted some African Americans to Team Leader positions including Exum, Selby and Willis, those promotions did not occur for several months, and there is still a great disparity between the number of white employees serving as Team Leaders and Utilities and the number of African American employees serving in those positions at Ford's Stamping Plant.

   **ANSWER:**   Ford admits that Exum, Selby and Willis were selected as Team Leaders.   Ford denies all remaining allegations in paragraph 159(a)(xvi).

xvii.   In 2015, Campbell and other African American employees applied for a promotion to "Team Leader."

   **ANSWER:** Ford admits the allegations in paragraph 159(a)(xvii).

xviii.   Campbell was told she "did not have enough knowledge" and was not even interviewed for the position, however, Tracy Longtin, a white co-worker with less than one year of seniority and experience at Ford was promoted to that Team Leader position.

   **ANSWER**: Ford admits that Tracy Longtin was selected as a Team Leader and that she is Caucasian. Ford denies all remaining allegations in paragraph 159(a)(xviii).

xix.   At the (time) Longtin was promoted to Team Leader (and as of the time Campbell and other African Americans were denied that promotion), only three of more than twenty Team Leaders and Utilities on First Shift at the Stamping Plant were African American, despite that Ford had a large population of African Americans eligible for such positions.

   **ANSWER:** Ford denies the allegations in paragraph 159(a)(xix). Ford avers that shift placement is governed by the terms of the collective bargaining agreement.

xx.   Exum and other African Americans also applied for positions as "Supervisors."

**ANSWER:** Ford admits that Exum and other African Americans have applied for positions as Supervisors at the Chicago Stamping Plant.

xxi.    Exum interviewed for the position with white Superintendent Lawrence and white Labor Relations Representative Keven Deake.

**ANSWER**: Ford admits that Exum interviewed for a supervisor position with Mark Lawrence, a CSP Superintendent. Ford denies all remaining allegations in paragraph 159(a)(xxi).

xxii.    White employee Dan Lawrence was hired for the Supervisor position, despite that he had less experience, seniority and education than Exum and other African American applicants.

**ANSWER**: Ford admits that Dan Lawrence was hired as a supervisor at CSP and that he is Caucasian. Ford denies all remaining allegations in paragraph 159(a)(xxii).

xxiii.    After Exum was denied a promotion to Supervisor in favor of Dan Lawrence, Exum asked white Labor Relations Representative Rebecca why Lawrence was selected over her.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(xxiii).

xxiv.    Exum complained that Superintendent Lawrence hired Dan Lawrence to the Supervisor job merely because Dan Lawrence looked like Superintendent Lawrence.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(xxiv).

xxv.    Rebecca denied this and told Exum that the Supervisor job required a college degree and thus, Superintendent Lawrence found Dan Lawrence to be more qualified.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(xxv).

xxvi.    Rebecca's explanation was based on a racial stereotype and was racially offensive to Exum, as Exum was more highly educated than Dan Lawrence and had a four-year Bachelor's degree, whereas Dan Lawrence merely had a two-year Associate's degree.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(xxvi).

xxvii.  Ford failed to provide a valid business-reason for its selection of Dan Lawrence to Supervisor.

**ANSWER:** Ford denies the allegations in paragraph 159(a)(xxvii).

xxviii.  Since Exums complaints, no other Supervisor positions have been openly advertised for African Americans at the Stamping Plant.

**ANSWER:**  Ford  denies  the  allegations  in  paragraph 159(a)(xxviii).

xxix.  However, Ford continues to hire/promote white co-workers to Supervisor positions.

**ANSWER**:  Ford admits that it has hired Causacian supervisors. Ford denies this is evidence of racial discrimination.  Ford avers that it has also hired minority supervisors. Ford denies all remaining allegations in paragprah 159(a)(xxix).

xxx.  In late 2015 or early 2016, Ford hired a white female co-worker named Jennifer directly into a Supervisor position without any announcement that the position was available and without advertising an open application period, despite that she had less than two-years of experience working for Ford.

**ANSWER**: Ford admits that Jennifer Brewer was hired as a supervisor on November 29, 2015.  Ford denies all remaining allegations in paragraph 159(a)(xxx).

xxxi.  Plaintiff and other African American Team Leaders had more experience managing their respective departments in the plant.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(xxxi).

xxxii.  Jennifer was given the privilege of a promotion over African American employees with more experience and education because she was white and because she was involved in a sexual

relationship with upper level manager Brad Via (white), which she openly admitted to co-worker Shenetta Cowgar.

**ANSWER:** Ford denies the allegations in paragraph 159(a)(xxxii).

xxxiii. Plaintiff complained to Labor Relations Representative Kevin Deake about Jennifer's promotion being yet another example of promotional preferences being given to white employees who slept with upper level managers but Deake ignored Plaintiff's complaint.

**ANSWER**: Ford denies the allegations in paragraph 159(a)(xxxiii).

b.     Certain Supervisors at the Chicago Assembly Plant foster a hostile workplace environment toward employees of color.

**ANSWER:** Ford denies the allegations in paragraph 159(b).

i.     The UAW has received numerous complaints about Superintendent Chuck Nennert (white) treating white employees more favorably than African American employees.

**ANSWER:** Ford is without knowledge or information sufficient to admit or deny the allegations in paragraph 159(b)(i) as to what information was provided to the UAW and therefore deny the same. Ford denies that Nennert treats employees differently based on race. Ford denies all remaining allegations in paragraph 159(b)(i).

ii.     Indeed, UAW Representative Mark Allen has informed African American employees at Chicago's Assembly Plant to be careful around Superintendent Chuck Nennert who "is racist and known for being racist."

**ANSWER:** Ford is without knowledge or information sufficient to admit or deny what a UAW representative may have told unidentified employees and therefore denies same. Ford denies that Nennert treats

employees differently based on race. Ford denies all remaining allegations in paragraph 159(b)(ii).

    iii.    Plaintiff Bernadette Clyburn (black) has repeatedly experienced working under Nennert, including Supervisors Zach Bozanick (white) and Alissa Millard (white) to permit white employees to take longer breaks than African American employees.

    **ANSWER:** Ford denies the allegations in paragraph 159(b)(iii).

        1.    Upon complaining about this observation to these supervisors, Bozanick and Millard accused Clyburn of being "defiant" and subject her to increased performance scrutiny.

        **ANSWER**: Ford denies the allegations in paragraph 159(b)(iii)(1).

        2.    Bozanick and Millard do not permit Clyburn and other African Americans who observe and speak about obvious differences in the treatment of white and black employees to receive equal overtime as white employees and employees who do not complain.

        **ANSWER:** Ford denies the allegations in paragraph 159(b)(iii)(2).

c.    Between 2012 and the present, Ford has tolerated a racially discriminatory workplace environment in which symbols of racism are permitted to be posted and to remain in plain sight of African American employees.

    **ANSWER**:    Ford denies the allegations in paragraph 159(c).

    i.    A noose has been hung in the Stamping Plant in plain view of African American employees, including Exum and Campbell;

    **ANSWER:** Ford denies the allegations in paragraph 159(c)(i).

    ii.    Constant reminders of racism have been painted in the restroom and Campbell and other African American employees have been forced to endure these reminders. By way of example, these

statements have included "Why did you hire all these niggers?" Despite numerous complaints, Ford permitted this particular statement to remain posted in the restroom for a substantial period of time.

**ANSWER:** Ford admits that on one occasion in March 2015, graffiti was found on a restroom wall at the Chicago Stamping Plant with language similar to that quoted. Ford denies that it allowed the statement to remain in the restroom for a substantial period of time. Ford avers that it promptly removed the graffiti. Ford denies all remaining allegations in paragraph 159(c)(ii).

d.   Racial (and sexist) epithets have been yelled by white employees toward black employees at both the Chicago Assembly and Stamping plants, including in Plaintiffs' presence.

**ANSWER:** Ford denies the allegations in paragraph 159(d).

i.   Exum has witnessed white male employees angrily yelling at women, including Clay Kuesis distinguishing that African American women were "black bitches."

**ANSWER**:   Ford denies the allegations in paragraph 159(d)(i).

ii.   Campbell has recently experienced a white employee named Larry yelling that an African American female Sharon Hawkins was a 'black nigger bitch" while threatening to stab her with a screwdriver.

**ANSWER:** Ford denies the allegations in paragraph 159(d)(ii).

iii.   Despite complaints of racism and workplace violence by Hawkins, Plaintiff and others, white Superintendent Roy Erdman permitted Larry to continue working that day and penalized him with only nominal discipline.

**ANSWER**:   Ford denies the allegations in paragraph 159(d)(iii).

iv.   White Supervisors subject African Americans to much higher discipline for lesser conduct, as was the case when Cory Hawkins (black) was terminated after being accused of raising his voice to a white Supervisor.

**ANSWER**: Ford denies the allegations in paragraph 159(d)(iv). Ford avers that discipline depends on the facts and circumstances of each individual situation, but not on race.

160. These acts were done intentionally.

**ANSWER**: Ford denies that it discriminated against African American employees. Ford further incorporates its responses to paragraphs 154-159 as they appear to be the "acts" referred to in this paragraph.

161. As a result of the foregoing conduct, each of the Named Plaintiffs and other similarly situated employees has been denied equal rights and have been denied equal enjoyment of the benefits, privileges, terms and conditions of their employment.

**ANSWER**: Ford denies the allegations in paragraph 161 and incorporates its responses to paragraphs 154 to159 which appear to be the "foregoing conduct" alleged in this paragraph.

162. As a direct and proximate result of the foregoing acts of racial discrimination, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost or been deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER:** Ford denies the allegations in paragraph 162 and denies that the Named Plaintiffs and/or other allegedly similarly situated employees are entitled to any recover.

**COUNT 5**
**TITLE VII-RETALIATION**
**(CHRISTIE VAN)**

163.     The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and her EEOC Charges (Ex. 1(A) and 25(A)).

**ANSWER**:     Ford incorporates its responses to paragraphs 1-162 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charges/SAC exhibits.

164.     Plaintiff repeatedly complained about an atmosphere of sexual harassment and racial and gender discrimination at Ford.

**ANSWER**:     Ford admits only that Plaintiff Van has made various complaints to Ford between January 1, 2012 and the present and that some of those complaints alleged harassment and discrimination.  Ford denies all remaining allegations in paragraph 164.

165.     Plaintiff complained numerous times to Labor Relations and to her Union about inappropriate gestures and remarks by supervisors and co-workers.

**ANSWER**:     Ford admits only that Plaintiff Van has raised various complaints with Labor Relations and that some of the complaints have alleged inappropriate conduct.  Ford is without sufficient information to admit or deny what Plaintiff Van may have told her Union. Ford denies all remaining allegations in paragraph 165.

166.     Plaintiff complained that supervisors were inviting her to have sex with them and that she had been groped.

**ANSWER**:     Ford denies the allegations in paragraph 166.

167.    One of Plaintiff's supervisors, Willie Fonseca responded by showing her a picture of his genital parts and said "You know you want it."

**ANSWER**:    Ford denies the allegations in paragraph 167.

168.    The Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 168.

169.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 169.

170.    In retaliation for the Plaintiffs' numerous complaints and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

**ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 170.

a.    On February 28, 2013, Van was assaulted and attacked from behind out of retaliation for complaining about sexual harassment and racial discrimination in the workplace.

**ANSWER:**    Ford denies the allegations in paragraph 170(a).

i.    One of the offenders or an individual on behalf of one of those offenders or on behalf of Ford physically assaulted and attacked Van as she was

leaving work. She was thrown down to the ground from behind while walking to her car.

> **ANSWER:** Ford denies the allegations in paragraph 170(a)(i).

ii. Van's assailant stomped on the middle of her back, told her not to look at his face, told her that she was a black snitch bitch" for complaining about sexual harassment, and told her that she better never come back to her job at Ford.

> **ANSWER**: Ford denies the allegations in paragraph 170(a)(ii).

iii. The assailant threatened Van that he knew where she lived and would kill her if she came back.

> **ANSWER:** Ford denies the allegations in paragraph 170(a)(iii).

iv. Van complained to her union and to Labor Relations about this incident but Ford never investigated this incident.

> **ANSWER**: Ford denies the allegations in paragraph 170(a)(iv).

b. Van has been called "black snitch bitch" by supervisors and co-workers.

> **ANSWER**: Ford denies the allegations in paragraph 170(b).

c. Human Resources Manager/Supervisor, Terrence McClain intimidated and berated Plaintiff for talking about sexual harassment in the workplace with other co-workers and with non-Ford employees outside of the workplace.

> **ANSWER**: Ford denies the allegations in paragraph 170(c).

      d.      McClain, in an aggressive manner told Van: "I don't know what they did where you came from, but you are at Chicago Assembly now and you need to realize that things are run much differently here.

      **ANSWER**:    Ford denies the allegations in paragraph 170(d).

      i.      McClain did not want sexual harassment investigated because he was also sexually harassing women in the workplace, including but not limited to:

      1.      exposing his penis to women at work;

      2.      sexually assaulting and touching women in unwanted sexual ways;

      3.      staring at women in an uncomfortable way; and

      4.      making offensive and unwanted comments to women on a regular basis.

      **ANSWER**:    Ford denies the allegations in paragraph 170(d)(i), including subparts 1-4.

      e.      McClain told Plaintiff "You need to forget the incident that happened and need to let it go. Or else!"

      **ANSWER**:    Ford denies the allegations in paragraph 170(e).

      f.      Labor Relations Specialist, Alex Keweny was present when McClain intimidated and berated and threatened Plaintiff but did nothing about it.

      **ANSWER**:    Ford denies the allegations in paragraph 170(f).

g.      On subsequent occasions, Keweny reinforced that Plaintiff needed to stop complaining as she had been instructed by McClain.

**ANSWER**:      Ford denies the allegations in paragraph 170(g).

h.      Keweny required Van to continue to work wither [sic] her harassers, including under her harassing supervisors.

**ANSWER**:      Ford denies the allegations in paragraph 170(h).

i.      Meanwhile, other personnel in Labor Relations told Plaintiff's Union Chairman that she would be fired unless she stopped complaining or dropped her EEOC charge.

**ANSWER**:      Ford denies the allegations in paragraph 170(i).

j.      Reese, one of Plaintiff's direct supervisors dismissed Plaintiff from her work assignment on one or more occasions in retaliation for reporting his sexual harassment and for filing an EEOC charge against him.

**ANSWER**:      Ford denies that Plaintiff Van was moved for any inappropriate reason and denies all remaining allegations in paragraph 170(j). Ford avers that hourly employees such as Plaintiff Van may be moved between jobs from time to time for a variety of legitimate, business-related reasons.

k.      Fonseca, one of Plaintiff's direct supervisors assigned her to lower quality job assignments and continued to harass her in a threatening way in retaliation for reporting his sexual harassment and for filing an EEOC charge against him.

**ANSWER**:      Ford denies that Plaintiff Van was moved for any inappropriate reason. Ford further avers that hourly employees such as Plaintiff Van may be moved

between jobs from time to time for a variety of legitimate, business-related reasons. Ford denies all remaining allegations in paragraph 170(k).

l.      Dazman Gray, one of Plaintiff's direct supervisors and his fiancé, Ashley Lowe, one of Van's shift supervisors falsely accused Plaintiff of violating a safety rule and had her written up and suspended for a day without pay in retaliation for Plaintiff complaining that Gray had sexually harassed her the previous week.

**ANSWER**:  Ford admits that Plaintiff Van has been disciplined on an occasion for violating a safety rule and was given a reprimand and warning and the balance of shift without pay, but denies that it was improper or based upon a false report.  Ford denies all remaining allegations in paragraph 170(l).

m.      The EEOC attempted on at least three occasions to mediate her Charges of Discrimination.

**ANSWER**:  Ford admits that it mediated Plaintiff Van's EEOC Charges without resolving them.  Ford denies all remaining allegations in paragraph 170(m).

n.      When Plaintiff refused to accept Ford's offer, Ford terminated Van's employment effective May 28, 2014 – just days after the EEOC's most recent attempt at mediating this matter proved unsuccessful.

**ANSWER:**    Ford denies the allegations in paragraph 170(n).

o.      Plaintiff was forced to grieve her termination and Ford's refusal to return her to work to arbitration. The arbitrator ruled in Plaintiff's favor after a hearing on the merits.

**ANSWER**:    Ford admits that an arbitrator ruled in Plaintiff Van's favor on her grievance related to Ford's alleged refusal to return her to work from a medical leave.  Ford denies all remaining allegations in paragraph 170(o).

p.    Only after the arbitrator ruled in Plaintiff's favor, Ford transferred Plaintiff Van to the Stamping Plant and returned Plaintiff to work, but Plaintiff Van continued to subject her to heightened scrutiny and more dangerous workplace conditions than are afforded other employees who did not complain.

**ANSWER**:    Ford admits that following the arbitrator's ruling, Ford returned Plaintiff Van to work at the Chicago Stamping Plant.   Ford denies all remaining allegations in paragraph 170(p).

170[2].  Since transferring Plaintiff to the Stamping Plant, Ford continued to retaliate against Van for complaining about sexual harassment, including:

**ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 170.

a.    Ford subjected Plaintiff to heightened scrutiny and "birddogged" Plaintiff with supervisors specifically watching her performance for any nominal reason to write her up.

**ANSWER:**    Ford denies the allegations in paragraph 170(a).

b.    Plaintiff's supervisors have failed to provide Plaintiff adequate training in the jobs to which she was assigned, and then criticized and overly scrutinized Plaintiff's performance;

---

[2] Ford notes that Plaintiff's SAC contains two paragraphs numbered 170.

**ANSWER:**    Ford denies the allegations in paragraph 170(b).

c.      on at least one occasion, Supervisor Dan Lawrence, at the instruction of Labor Relations Supervisor Mary Goldberg, forced Plaintiff to remain at work without pay;

**ANSWER:**    Ford denies the allegations in paragraph 170(c).

d.      Plaintiff was subjected to ridicule from other employees who openly called her "the black bitch who filed a lawsuit."

**ANSWER:**    Ford admits that Plaintiff Van has reported that she has been addressed in such a manner. Ford denies all remaining allegations in paragraph 170(d).

e.      Plaintiff was forced to work in the most dangerous job assignments in which OSHA-prescribed safety measures were not in place, in order to subject Plaintiff to increased risk of becoming injured;

**ANSWER:**    Ford denies the allegations in paragraph 170(e).

f.      Plaintiff has been forced to work with known violent co-workers.

**ANSWER:**    Ford denies the allegations in paragraph 170(f).

g.      Ford took no corrective action after Van complained about a forklift driver, Rob Diver, operating his machine negligently and endangering workers.

**ANSWER**:    Ford admits that Plaintiff Van complained about co-worker, Rob Diver.  Ford avers that it appropriately responded to the complaint.  Ford denies that it took no corrective action and denies all remaining allegations in paragraph 170(g).

h.      After Plaintiff complained, Diver intentionally attempted to run Van down using his forklift.

**ANSWER:**    Ford admits that Plaintiff Van complained about co-worker, Rob Diver.  Ford denies all remaining allegations in paragraph 170(h).

i.      Plaintiff complained about this intentional attempt to cause her severe bodily harm and also filed a police report against Diver's assault.

**ANSWER:**    Ford admits that Plaintiff Van complained about co-worker, Rob Diver. Ford is without knowledge or information sufficient to admit or deny whether Plaintiff Van filed a police report against Diver. Ford denies all remaining allegations in paragraph 170(i).

j.      Ford did not obtain a Protective Order for Van's benefit under the Illinois Workplace Violence Protection Act.

**ANSWER:**    Ford admits that it did not obtain a protective order.  Ford denies that it had an obligation to do so. Ford denies all remaining allegations in paragraph 170(j).

k.      Instead of taking corrective measures against workplace violence, Supervisor Brad Swing ordered Van to continue working directly with Diver and told her that if she refused, she would be disciplined and suspended without pay.

**ANSWER:**    Ford denies the allegations in paragraph 170(k).

l.      Instead of taking corrective measures, Ford informed Plaintiff's union representative that she would be terminated if she continued to complain.

**ANSWER:**   Ford denies the allegations in paragraph 170(l).

m.   The union representative told Plaintiff that Ford is "coming after you" and "be careful."

**ANSWER:**   Ford is without knowledge or information sufficient to either admit or deny what an unidentified Union representative has told Plaintiff Van and therefore denies the allegations in paragraph 170(m).

n.   As recently as March, 2016, Plaintiff received retaliatory threats at her home. A dead rat was been placed on the doormat on Plaintiff's front porch, suggesting to Plaintiff that she is a "rat" for complaining about sexual harassment and discrimination and sending her the threatening message that "rats get killed."

**ANSWER:**   Ford admits that Plaintiff Van complained to Ford about allegedly finding a dead rat on her doorstep.  Ford denies all remaining allegations in paragraph 170(n).

o.   As recently as April, 2016, after Plaintiff continued complaining about sexual harassment and retaliation and informed Supervisors that she was even being threatened at her home, Human Resources Manager Anita O'Connor accused Plaintiff of creating a hostile work environment.

**ANSWER:**   Ford denies the allegations in paragraph 170(o).

p.   O'Connor blamed Plaintiff that Plaintiff was "too aggressive" in complaining about sexual harassment and retaliation and thus, it was her fault other employees became upset and threatened Plaintiff by placing a dead rat on Plaintiff's porch.

**ANSWER:**    Ford denies the allegations in paragraph 170(p).

q.    O'Connor told Plaintiff that Plaintiff was "aggressive" when Plaintiff complained about retaliation, including perceived threats on Plaintiff's life, health or physical safety.

**ANSWER:**    Ford denies the allegations in paragraph 170(q).

r.    O'Connor told Plaintiff that Ford was performing an "ongoing investigation" into Plaintiff being "too aggressive" when Plaintiff complained to Supervisors and HR about sexual harassment and ongoing retaliation, including when she complained that a dead rat was left on her porch.

**ANSWER:**    Ford denies the allegations in paragraph 170(r). Ford further avers that O'Connor has confirmed to Plaintiff Van that she can continue to report improper behavior to Ford through available reporting channels.

s.    O'Connor threatened Plaintiff with discipline as a possible result of the investigation, and told Plaintiff that she could be suspended or terminated as a result of her "aggressive" complaints.

**ANSWER**:    Ford denies the allegations in paragraph 171(s). Ford avers that an employee may be disciplined for inappropriate workplace conduct.

171.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 171, including but not limited to the allegation that Plaintiff Van was subject to retaliatory acts.

172.    Plaintiff's complaints and her filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 172, including but not limited to the allegation that Plaintiff Van was subject to adverse employment actions.

173.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 173 and denies that the Plaintiff Van is entitled to any recovery.

**COUNT 6**
**TITLE VII-RETALIATION**
**(CHARMELLA LEVIEGE)**

174.    The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

**ANSWER**:    Ford adopts its responses to paragraphs 1 through 162 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

175.    Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 175.

176.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken

extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 176.

177.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

**ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 177.

a.    repeatedly assigning unfair discipline against Plaintiff in an effort to write her up;

**ANSWER**:    Ford admits Plaintiff Leviege has been disciplined numerous times during her employment with Ford.  Ford denies that Plaintiff Leviege was unfairly disciplined or that it was based upon her engagement in protected activity. Ford denies all remaining allegations on paragraph 177(a).

b.    reassigned her to different job assignments that did not match her medical restrictions.

**ANSWER**:    Ford admits Plaintiff Leviege has been assigned a number of different tasks which Ford avers have been consistent with her medical restrictions. Ford denies all remaining allegations in paragraph 177(b).

c.    sent Plaintiff home early for the remainder of a shift without pay;

**ANSWER**:    Ford denies that Plaintiff Leviege was ever sent home without pay in retaliation for engaging in protected activity. Ford further avers that it may administer unpaid disciplinary leave for multiple types of offenses and send an employee home early without pay depending on the circumstance of the employee's

offense or violation of policy. Ford denies all remaining allegations in paragraph 177(c).

      d.    denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain.

    **ANSWER**: Ford denies the allegations in paragraph 177(d), including but not limited to the allegation that Plaintiff Leviege was denied overtime opportunities in retaliation for engaging in protected activity. Ford further avers that availability of overtime on any given occasion depends on a variety of legitimate factors, but not protected activity.

178. Ford's retaliatory acts deprived Plaintiff of the other financial opportunities Ford offers to employees who did not complain about sexual harassment or racial discrimination.

    **ANSWER**: Ford denies the allegations in paragraph 178.

179. Ford's retaliatory acts against plaintiff constitute materially adverse employment actions.

    **ANSWER**: Ford denies the allegations in paragraph 179, including but not limited to the allegation that Plaintiff Leviege was subject to retaliatory acts.

180. Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

    **ANSWER**: Ford denies the allegations in paragraph 180, including but not limited to the allegation that Plaintiff Leviege was subject to adverse employment actions.

181.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 181 and denies that the Plaintiff Leviege is entitled to any recovery.

## COUNT 7
## TITLE VII-RETALIATION
### (MARIA PRICE)

182.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

**ANSWER**:     Ford adopts its responses to paragraphs 1 through 162 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

183.     Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 183.

184.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 184.

185.     Supervisor Alex Curry told Plaintiff after she complained that he and Plaintiff's supervisors at Ford are "tired of hearing your name" and are "trying to set you up." Thereafter, Supervisors retaliated against her.

**ANSWER**:     Ford denies the allegations in paragraph 185. Ford further avers that it is unaware of a supervisor named Alex Curry.

186.     In retaliation for the Plaintiff's numerous complaints and for filing EEOC charges and this lawsuit, Ford retaliated against this Plaintiff in the following ways:

**ANSWER**:     Ford denies the allegations in the introductory portion of paragraph 186.

a.     repeatedly assigned unfair discipline against Plaintiff in an effort to write her up, including:

i.     disciplining Plaintiff based on a claim that she was thirty (30) minutes late even though she was at work on time;

ii.     disciplining Plaintiff for being 'late" when she was actually early for work but was in Ford's medical department being evaluated by a nurse.

iii.     disciplining Plaintiff based on a claim that she walked off the job" because she did receive permission to use the restroom;

1.     This was despite that Plaintiff informed her Supervisor and Team Leader more than two hours earlier that she needed to use the restroom;

**ANSWER:**     Ford admits Plaintiff Price has a lengthy disciplinary record. Ford denies that Plaintiff Price was unfairly disciplined and further denies all remaining allegations in paragraph 186(a), including all subparts.

b.     denied Plaintiff restroom breaks that were allowed to other employees who did not complain;

**ANSWER**:     Ford denies the allegations in paragraph 186(b).

c.     denying Plaintiff for three-days-worth of pay, claiming she was "absent-without-leave" even though she was at work and worked each of those days;

**ANSWER:**     Ford denies the allegations in paragraph 186(c).

d.     suspended Plaintiff and/or sent Plaintiff home early without pay for allegedly being late to work, when she was actually on time for work but was receiving medical attention from a nurse in the medical department at the time her shift began;

**ANSWER**:     Ford denies the allegations in paragraph 186(d). Ford avers that Plaintiff Price has been counseled for being absent numerous times and given warnings for absenteeism. Ford further avers that Plaintiff Price has been "absent-without-leave" and that she has been disciplined for leaving her job without permission.

e.     denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain;

**ANSWER**:     Ford denies the allegations in paragraph 186(e).  Ford avers that overtime opportunities are determined based on a variety of legitimate factors, but not on protected activity.

f.     Supervisor Demario Petite (a cousin of sexual harasser-Superintendent Ben Anderson) was assigned to supervise Plaintiff and repeatedly marked Plaintiff late when she was on time and threatened to write her up for being slow.

93

**ANSWER**:    Ford denies the allegations in paragraph 186(f). Ford avers that Plaintiff Price has been counseled for being absent numerous times and given warnings for absenteeism. Ford further avers that Plaintiff Price has been "absent-without-leave" and that she has been disciplined for leaving her job without permission.

g.    Supervisor Petite did not constantly threaten to write-up non-complaining employees.

**ANSWER**:    Ford denies the allegations in paragraph 186(g).

h.    Plaintiff has been informed that one of her complained-of sexual harassers, Jabari Muse has likely taken a "hit" out on her.

**ANSWER**:    Ford admits that Plaintiff Price informed Ford that a co-worker told her the co-worker heard there was a "hit" out on her.  Ford denies all remaining allegations in paragraph 186(h).

i.    Plaintiff has complained about her concerns of retaliatory violence at work and that the area to which she is assigned has a high concentration of gang-affiliated employees.  Plaintiff has informed Ford of these threats of violence but Ford has not taken any noticeable steps to permanently reassign Plaintiff away from gang-infested areas of the plant or to otherwise ensure that she will not be violently assaulted.

**ANSWER**:    Ford admits that Plaintiff Price has complained about retaliation and has informed Ford about alleged gang members in the plant.  Ford admits that Plaintiff Price has informed Ford about threats she alleges she received.  Ford denies all remaining allegations in paragraph 186(i).

i.[3]    Plaintiff has informed Human Resource Manager Anita O'Connor of specific persons that Plaintiff believes are possible violent threats.

**ANSWER**:    Ford admits that Plaintiff Price had a conversation with Annita O'Connor in Personnel Relations on November 23, 2015, regarding alleged threats. Ford avers that the threats concerned a former employee. Ford denies all remaining allegations in paragraph 186(i).

j.    Ford has not taken out a Protective Order for the benefit of this Plaintiff as it is permitted to do pursuant to the Illinois Workplace Violence Prevention Act.

**ANSWER:**    Ford admits that it has not taken out a protective order for the benefit of Plaintiff Price. Ford denies that it had an obligation to do so. Ford denies all remaining allegations in paragraph 186(j).

187.    Ford's retaliatory acts deprived Plaintiff of the other financial opportunities Ford offers to employees who did not complain about sexual harassment or racial discrimination.

**ANSWER**:    Ford denies the allegations in paragraph 187, including but not limited to the allegation that Plaintiff Price has been subject to retaliatory acts.

188.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 188, including but not limited to the allegation that Plaintiff Price has been subject to retaliatory acts.

---

[3] Ford notes that Plaintiff's SAC contains two subparagraphs (i)'s to numbered paragraph 186.

189.    Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 189, including but not limited to the allegation that Plaintiff Price has been subject to adverse employment actions.

190.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 190 and denies that Plaintiff Price is entitled to any recovery.

**COUNT 8**
**TITLE VII-RETALIATION**
**(HELEN ALLEN)**

191.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and Plaintiff's EEOC Charge.

**ANSWER**:    Ford incorporates its responses to paragraphs 1 through 162 as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

192.    Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 192.

193.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken

extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 193.

194.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

a.    Disclosing to Other employees who did not have the need-to-know that Plaintiff Complained of discrimination, including:

i.    Labor Relations representative Natalie Dahrenger held a meeting with Plaintiff's male co-workers and "outed" Plaintiff or allowed others to "out" Plaintiff as the complainer.

ii.    Ford employee and union Building Chairman Coby Millender told approximately 200 union members that Plaintiff was the complainer who had "filed a sexual harassment lawsuit against Ford."

iii.    After these two incidents in which both Ford and the Union Chairperson, Millender disclosed Plaintiff as being the "complainer," she experienced numerous anonymous acts of vandalism in her work area and lunch area depicting penises/phalluses and testicles, all meant to mock Plaintiff and make her feel even more harassed and humiliated.

b.    After Plaintiff complained to Ford, Jim Larese, a senior manager overseeing the plant told his immediate staff to "be careful around Helen because she's filing a lawsuit against Ford."

c.    repeatedly assigning unfair discipline against Plaintiff in an effort to write her up;

   d.  denied Plaintiff restroom breaks that were allowed to other employees who did not complain;

   e.  suspended Plaintiff and/or sent Plaintiff home early without pay;

   f.  denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain.

  **ANSWER**:  Ford admits that Plaintiff Allen has been disciplined for various reasons on various occasions, but denies that any discipline was unfair or that it was based on engagement in protected activity. Ford avers that Plaintiff Allen reported graffiti on one occasion that was not in her work area. Ford further avers that the existence/availability of overtime opportunities or restroom breaks on any given occasion depends on a variety of legitimate factors, but not engagement in protected activity. Ford denies all remaining allegations in paragraph 194 including subparagraphs (a)-(f) and all subparts.

  195.  Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

  **ANSWER**:  Ford denies the allegations in paragraph 195, including but not limited to the allegation that Plaintiff Allen was subject to retaliatory acts.

  196.  Plaintiff's complaints and her filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

  **ANSWER**:  Ford denies the allegations in paragraph 196, including but not limited to the allegation that Plaintiff Allen was subject to adverse employment actions.

197.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 197 and denies that Plaintiff Allen is entitled to any recovery.

**COUNT 9**
**TITLE VII-RETALIATION**
**(Jacqueline Barron)**

198.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and Plaintiff's EEOC Charge.

**ANSWER**:     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.   Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

199.     Barron and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 199.

200.     Supervisors have gone out of their way to make the Barron's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Barron and others who complained about sexual harassment and discrimination subject her to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 200.

201.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against Barron in the following ways:

**ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 201.

a.    After Plaintiff refused her supervisors' requests for sex, she was denied restroom breaks.

**ANSWER**:    Ford denies the allegations in paragraph 201(a).

b.    Although nothing was being done to remedy her complaints, one of Barron's co-workers tipped Barron off to "watch her back" because her supervisors had informed Kendall Brooks that she had complained.

i.    Barron was told that Brooks intended to physically harm her for complaining about his constant unwanted touching, groping, lewd comments and unwanted penis pictures and invitations for sex.

ii.    In November or December, 2012, Plaintiff complained to Natalie Dahrenger at Labor Relations, but Dahrenger did not respond or listen to the details of Barron's sexual harassment and told Barron to report back to work.

iii.    Barron asked Labor Relations to reassign her to an area of the plant away from sexual harassment and threats of physical violence.

1.    Dahrenger told Plaintiff she would contact her "within 24 hours" and let Plaintiff know what Ford could do to remedy the situation.

2.      Barron waited for Dahrenger's call, and when it did not come, Barron again tried contacting Labor Relations to determine when she would be returned to work away from her sexual harassers.

3.      Dahrenger failed and refused to return Plaintiff to work.

**ANSWER**:      Ford is without knowledge or information sufficient to form a belief as to the truth of this allegation as to what an unspecified co-worker may have said to Barron, and therefore denies same. Ford admits that Plaintiff Barron reported certain concerns to Natalie Dahringer at or about the referenced time frame.  Ford avers that it appropriately investigated Plaintiff Barron's claims.   Ford denies all remaining allegations in paragraph 201(b), including all subparts thereof.

c.      Barron contacted the EEOC and complained about ongoing sexual harassment and discrimination in early December, 2012.

**ANSWER:**      Ford admits that Plaintiff Barron filed an EEOC charge on or about December 3, 2012.  Ford denies that Plaintiff Barron has been subject to sexual harassment and discrimination and denies all remaining allegations in paragraph 201(c).

d.      A month later, January 15, 2013, Ford terminated Barron in retaliation for complaining and filing an EEOC Charge.

**ANSWER:**      Ford denies the allegations in paragraph 201(d).

e.      Ford has refused to rehire Barron and has refused to return Barron to work.

**ANSWER**:    Ford admits that Barron has not been returned to work following discharge. Ford denies all remaining allegations in paragraph 201(e).

202.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 202, including but not limited to the allegation that Plaintiff Barron was subject to retaliatory acts.

203.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 203, including but not limited to the allegation that Plaintiff Barron has been subject to adverse employment actions.

204.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 204 and denies that Plaintiff Barron is entitled to any recovery.

**COUNT 10**
**TITLE VII-RETALIATION**
**(THERESA BOSAN)**

205.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER**:    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

206.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 206.

207.    After Plaintiff complained to Labor Relations about Supervisor Jeff Bivens sexually harassing, another Supervisor named Bob (last name unknown) warned Plaintiff that Bivens intended to retaliate against her and terminate her position.

**ANSWER**:    Ford denies the allegations in paragraph 207.

208.    A Superintendent named Akili similarly approached Bosan and warned her that being petite would not benefit her at Ford because some Supervisors targeted petite women like her as they were more likely to become sexual harassment victims and complainers.

**ANSWER**:    Ford denies the allegations in paragraph 208.

209.    After Plaintiff was sexually harassed, she complained to Supervisor Peggy and to Labor Relations.

**ANSWER**:    Ford admits that Plaintiff Boson complained to Labor Relations. Ford denies all remaining allegations in paragraph 209.

210.    After complaining, Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 210.

211.    In retaliation for the Plaintiff's engaging in protected activity and making numerous complaints against sexual harassment and discrimination, Ford has retaliated against this Plaintiff in the following ways:

a.    After Plaintiff refused her supervisors requests for sex and complained about sexual harassment, she was unfairly disciplined.

b.    Supervisor Bivens and Superintendent Chuck Nennert assigned Bosan to the most physically demanding job assignments knowing that she was too small to perform the job and that she was required to stand on her tippy-toes in order to do it, and then criticized Plaintiff for not being able to sufficiently perform the job.

c.    Bivens and Nennert used this same technique to retaliate against other women who spurned and complained about Bivens sexual advances, including LaDwyna Hoover.

d.    After Bivens assigned Bosan to a job which was impossible for her to effectively perform, Kevin "Red" Marshall, the ergonomics specialist at Ford's Assembly

Plant, told Bosan "We're not supposed to tell you this, but not all jobs are for women who are as small as you. This one is not for you. You are too little."

     e.    Union representative, Mark Allen told Bosan that not only was her job assignment retaliatory and intentional on the part of Jeff Bivens, but that Nennert condoned Bosan being placed on a physically difficult job because it might get her to quit.

     f.    Mark Allen stated that it was widely known that Chuck has it out for you because of your complaining on his supervisors.

     g.    When Bosan refused to quit, Ford terminated her in retaliation for her complaining about sexual harassment.

     h.    Ford has refused to reinstate Bosan or return Bosan to work.

**ANSWER**:    Ford admits that Plaintiff Bosan has been disciplined for various reasons on various occasions, but denies that any discipline was unfair or that it was based on engagement in protected activity. Ford further admits that it terminated Bosan and that she has not returned to work, but states that her UAW Grievance is still in process and that any reinstatement is determined based on a variety of legitimate factors unrelated to protected activity. Ford further avers that job assignments are determined based on a variety of legitimate factors, but not based on protected activity. Ford denies all remaining allegations in paragraph 211, including subparts (a)-(h).

212.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 212, including but not limited to the allegation that Plaintiff Bosan was subject to retaliatory acts.

213.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:     Ford denies the allegations in paragraph 213, including but not limited to the allegation that Plaintiff Bosan was subject to adverse employment actions.


214.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 214 and denies that Plaintiff Barron is entitled to any recovery.


### COUNT 11
### TITLE VII-RETALIATION
### (SHRANDA CAMPBELL)

215.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

**ANSWER**:     Ford incorporates its responses to paragraphs 1 through 162 as if fully set forth herein.   Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.


216.     Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 216.

217.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 217 .

218.     In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

**ANSWER**:     Ford denies the allegations in the introductory portion of paragraph 218.

a.     repeatedly assigning unfair discipline against Plaintiff in an effort to write her up;

**ANSWER:**     Ford admits that Plaintiff Campbell has been disciplined multiple times during her employment for a variety of reasons, but denies that Campbell was ever unfairly disciplined or that any discipline was in retaliation for engagement in protected activity. Ford denies all remaining allegations in paragraph 218(a).

b.     After Plaintiff complained about being sexually harassed by Rich Murray, Murray told Plaintiff "you aren't running the line anymore";

**ANSWER:**     Ford denies the allegations in paragraph 218(b).

c.     Although Plaintiff had been "acting as" a Utility (a lower level managerial position) and was due for a raise and official promotion in title, Murray refused to officially promote Plaintiff;

**ANSWER**:     Ford denies the allegations in paragraph 218(c).

d.      Murray demoted Plaintiff from working as a Utility and reassigned her back to a non-managerial position on the production line;

**ANSWER**:    Ford denies the allegations in paragraph 218(d). Ford avers that promotions and job assignments are determined based on a variety of legitimate factors, but not based on protected activity.

e.      sent Plaintiff home early for the remainder of a shift without pay;

**ANSWER**:    Ford denies the allegations in paragraph 218(e).   Ford avers Campbell was disciplined prior to her complaint about Murray, in which she received a balance of shift penalty for being out of her work area after she had been previously counseled for the offense, but denies that it was in retaliation for any protected activity.

f.      denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain.

**ANSWER**:    Ford denies that Campbell was denied overtime opportunities in retaliation for any protected activity.   Ford further avers that overtime opportunities are determined based on a variety of legitimate factors, but not on protected activity.  Ford denies all remaining allegations in paragraph 218(f).

219.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 219, including but not limited to the allegation that Plaintiff Campbell was subject to retaliatory acts.

220.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:     Ford denies the allegations in paragraph 220, including but not limited to the allegation that Plaintiff Campbell was subject to adverse employment actions.

221.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**: Ford denies the allegations in paragraph 221 and denies that Plaintiff Campbell is entitled to any recovery.

## COUNT 12
## TITLE VII-RETALIATION
### (KETURAH CARTER)

222.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER**:     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.   Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

223.     Plaintiff and other similarly situated individuals have been retaliated against for refusing and complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 223.

224.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 224.

225.     In or about late 2013 or early 2014, Plaintiff complained to Labor Relations Representative Natalie Dahringer both verbally and in writing about favorable treatment being given to male employees in the workplace and about sexual harassment by males against females in her department.

**ANSWER**:     Ford denies the allegations in paragraph 225.

226.     Plaintiff complained about numerous specific events of sexual harassment and discrimination to Ford's sexual harassment hotline and to Labor Relations again in or August and September, 2014.

**ANSWER**:     Ford admits that on August 29, 2014, Plaintiff Carter contacted Ford's 1-800 Hotline and left a message.  A few days later, Plaintiff Carter submitted a letter to the Plant Labor Relations department complaining about alleged inappropriate conduct. Ford denies all remaining allegations in paragraph 226.

227.     In her complaints to Labor Relations and subsequently to the EEOC, Plaintiff complained of specific sexually harassing and retaliatory actions by Supervisors Ken Perry and Geraldo "Dre" Harris and Team Leader Marvin Jones and other male employees.

**ANSWER**:     Ford admits that Plaintiff Carter complained about alleged sexual harassment and retaliation by various Ford employees.  Ford denies that such actions occurred.

Ford further avers that it appropriately responded to Plaintiff Carter's complaints. Ford denies all remaining allegations in paragraph 227.

228.    At least by November, 2014, Plaintiff cooperated with the UAW's Civil Rights Committee's investigation into sexual harassment at Ford, despite that her Supervisors did not want her freely speaking about sexual harassment against them.

**ANSWER**:    Ford is without knowledge or information sufficient to admit or deny whether Plaintiff Carter cooperated with a UAW Civil Rights Committee investigation and therefore denies the allegation. Ford denies all remaining allegations in paragraph 228.

229.    After Plaintiff complained and because Plaintiff complained, Supervisor Ken Perry suspended Plaintiff and/or sent Plaintiff home early without pay for allegedly being "late", when she was actually on time for work but was receiving medical attention from a nurse in the medical department at the time her shift began.

**ANSWER**:    Ford admits that in late September 2014, Plaintiff Carter was disciplined for leaving her work area without permission. Ford denies that such discipline was because of Plaintiff Carter's complaints and denies all remaining allegations in paragraph 229.

230.    In retaliation for the Plaintiff's numerous complaints and because Plaintiff filed charges of discrimination with the EEOC, Ford retaliated against and continues to retaliate against this Plaintiff in the following ways:

    a.    From late 2014-present, Supervisor Geraldo "Dre" Harris, a complained-of sexual harasser, repeatedly had open conversations in front of other employees, bragging to Team Leader Jeff Tucker that he is going to have Plaintiff terminated or "get her, out of there";

111

      b.      Harris subjected Plaintiff's work relative to increased scrutiny employees that have not complained;

      c.      Harris repeatedly threatened that he is going to find a reason to declare that there is "no work available" for Plaintiff;

      d.      Harris threatened and attempted to write Plaintiff up for going "too slow" even though she was operating at the same pace of the moving assembly line.

      e.      Harris did not threaten to write-up non-complaining employees.

      f.      By docking Plaintiff's pay.

**ANSWER**: Ford denies the allegations in paragraph 230, including subparts (a)-(f). Ford avers that Plaintiff Carter has had repeated issues related to her job performance and has been appropriately disciplined. Ford further avers that whether an employee is disciplined depends on a variety of legitimate factors but not on her engagement in protected activity.

231.    Supervisors Perry and Harris subjected Plaintiff to increase scrutiny and repeated and threatened discipline because Plaintiff repeatedly complained of sexual harassment by them and other male employees from at least late 2013 or early 2014-present.

    **ANSWER**:    Ford denies the allegations in paragraph 231.

232.    Ford's retaliatory acts deprived Plaintiff of financial opportunities Ford offered to employees who did not complain about sexual harassment or discrimination.

    **ANSWER**:    Ford denies the allegations in paragraph 232, including but not limited to the allegation that Plaintiff Carter was subject to retaliatory acts.

233.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

112

**ANSWER**:     Ford denies the allegations in paragraph 233, including but not limited to the allegation that Plaintiff Carter was subject to retaliatory acts.

234.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:     Ford denies the allegations in paragraph 234, including but not limited to the allegation that Plaintiff Carter was subject to adverse employment actions.

235.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 235 and denies that Plaintiff Cater is entitled to any recovery.

236.    The EEOC investigated illegal retaliation with respect to this Plaintiff and determined there was reasonable cause to believe she was subjected to illegal retaliation. (Ex. 8(C)).

**ANSWER**:     The allegations in paragraph 236 call for a legal conclusion to which no response is required.   To the extent a response is required, Ford admits the EEOC issued a determination concerning Plaintiff Carter, which is attached to the SAC as exhibit 8(c).   Ford denies all remaining allegations in paragraph 236 and denies the Carter was subject to illegal retaliation.

**COUNT 13**
**TITLE VII-RETALIATION**
**(MICHELLE DAHN)**

237.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER**:    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

238.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 238.

239.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 239.

240.    In addition, Ford has retaliated against Plaintiff for her protected activity in complaining about sexual harassment in the following ways:

a.    After Plaintiff refused her supervisors' requests for sex and complained about sexual harassment, she was unfairly disciplined, suspended without pay, and subsequently terminated.

114

        i.      When Plaintiff attempted to complain, she was told that she should not complain about the men involved in sexually harassing or disciplining her.

        ii.     When Plaintiff suffered severe emotional distress and had to take a medical leave, Ford terminated her on the false excuse that she failed to submit certain paperwork, even though she had submitted the appropriate paperwork.

**ANSWER**:    Ford admits that Plaintiff Dahn's employment with Ford was terminated in March 2014 for her failure to respond to a notice to report to work sent pursuant to the Collective Bargaining Agreement with the UAW and as applied at CAP. Ford denies all remaining allegations in paragraph 240, including subparts(a) and (a)(i)-(ii). Ford further specifically denies that Plaintiff Dahn's termination occurred after she had made any claims of sexual harassment.

      b.     When Plaintiff again complained of this continued harassment and retaliation to Coby Millender, he promised that he could correct the problem and get her back to work, but subsequently refused to have her returned to work unless and until she agreed to have sex with him, which she refused to do.

      **ANSWER**:    Ford denies the allegations in paragraph 240(b).

      c.     As a result, the Plaintiff has been terminated and has not been put back to work because she refused her supervisor's sexual advances and complained about sexual harassment.

      **ANSWER:**   Ford admits that Plaintiff Dahn has not been returned to work following discharge, but states that her UAW Grievance is still in process, and any such reinstatement is determined based on a variety of legitimate factors unrelated to protected activity. Ford denies all remaining allegations in paragraph 240(c).

      d.      Plaintiff continued complaining to Ford and subsequently the EEOC about these issues. Thereafter, Plaintiff observed strange vehicles surveilling her house, which upon information and belief are Ford employees or agents stalking her in retaliation for her complaining.

      **ANSWER:**   Ford admits that after Plaintiff Dahn was terminated, she communicated certain complaints and accusations to Ford and filed a Charge with the EEOC on or about August 26, 2014.  Ford is without knowledge or information sufficient to admit or deny whether Plaintiff Dahn saw strange vehicles "surveilling" outside her house, and therefore denies the same.  Ford denies all remaining allegations in paragraph 240(d).

      e.      Ford has refused to reinstate and return Plaintiff to work.

      **ANSWER**:   Ford admits that it has not reinstated Plaintiff Dahn, but states that her UAW Grievance is still in process, and any such reinstatement is determined based on a variety of legitimate factors unrelated to Plaintiff Dahn's complaints of discrimination and/or harassment.  Ford denies all remaining allegations in paragraph 240(e).

241.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:   Ford denies the allegations in paragraph 241, including but not limited to the allegation that Plaintiff Dahn was subject to retaliatory acts.

242.   Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 242, including but not limited to the allegation that Plaintiff Dahn was subject to adverse employment actions.

243.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 243 and denies that Plaintiff Dahn is entitled to any recovery.

### COUNT 14
### TITLE VII-RETALIATION
### (TONYA EXUM)

244.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charges (Ex. 10(A) and 26(a)).

**ANSWER**:    Ford incorporates its responses to paragraphs 1 through 162 as if fully set forth herein.    Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charges/SAC exhibits.

245.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 245.

246.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken

extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 246.

247.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

a.    denying Exum promotional opportunities to Supervisor and in favor of another employee who did not complain about sexual harassment, but who was instead having sex with an upper level manager;

b.    denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain;

c.    After Plaintiff refused her supervisors' requests for sex and complained about sexual harassment, she was unfairly disciplined and stripped of her "Utility" job duties, which negatively impacted her opportunity for promotions, raises and overtime.

**ANSWER**:    Ford denies Plaintiff Exum's allegations in paragraph 247 including subparts (a)-(c). Ford avers that promotional and overtime opportunities are determined from a variety of legitimate factors, but not protected activity.

248.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 248, including but not limited to the allegation that Plaintiff Exum was subject to retaliatory acts.

249.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

118

**ANSWER**:     Ford denies the allegations in paragraph 249, including but not limited to the allegation that Plaintiff Exum was subject to adverse employment actions.

250.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:     Ford denies the allegations in paragraph 250 and denies that Plaintiff Exum is entitled to any recovery.

## COUNT 15
## TITLE VII-RETALIATION
## (JEANNETTE GARDNER)

251.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER**:     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.   Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

252.     Plaintiff and similarly situated individuals have been and continue to be retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 252.

253.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken

extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 253.

254.    In retaliation for the Plaintiff's numerous complaints, for helping other women complain about sexual harassment and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Plaintiff was physically and sexually assaulted by her Superintendent, Myron Alexander - one of the men who was sexually harassing her female co-workers -- who demonstrated in front of other Supervisors that women should be "put in their place and should not be allowed to complain;

b.    Plaintiff was unfairly disciplined;

c.    Plaintiff has been blackballed from promotional opportunities and denied substantial economic opportunity.

i.    Ford refused to interview Plaintiff when she applied for a promotion to a Sr. Process Coach - a promotion that would have included increased pay and managerial responsibilities.

ii.    Instead of promoting Plaintiff, Ford promoted employees who "toed the company line" and did not complain or encourage others to complaint of sexual harassment, including Jeff Bivens, a complained-of sexual harasser at Ford.

**ANSWER**:    Ford denies the allegations in paragraph 254, including subparagraphs (a)-(c).  Ford further avers that promotion opportunities are determined based on a variety of legitimate factors, but not on protected activity.

255.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**     Ford denies the allegations in paragraph 255, including but not limited to the allegation that Plaintiff Gardner was subject to retaliatory acts.

256.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**     Ford denies the allegations in paragraph 256, including but not limited to the allegation that Plaintiff Gardner was subject to adverse employment actions.

257.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 257 and denies that Plaintiff Gardner is entitled to any recovery.

## COUNT 16
## TITLE VII and ADA-RETALIATION
### (ARLENE GOFORTH)

258.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER:**     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

259.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 259.

260.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 260.

261.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in one or more of the following ways:

**ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 261.

a.    Plaintiff could not perform a job requiring that she bend over frequently and repeatedly because it caused her to become extremely dizzy. This was a disabling residual side-effect from a previous cancer surgery (an equilibrium imbalance).

**ANSWER:**    Ford admits that Plaintiff Goforth was granted a temporary medical restriction described as "cannot bend as she gets dizzy" and "no bending" and noted medical facts related to Plaintiff Goforth's condition include "status post brain surgery." Ford denies all remaining allegations in paragraph 261(a).

b.     Plaintiff informed Ford of her equilibrium imbalance and was granted a restriction that permitted her to be placed in a job that did not require frequent or repetitive bending over.

**ANSWER**:     Ford admits that Plaintiff Goforth informed Ford on October 7, 2014, that she was feeling dizzy. Ford admits the Plaintiff Goforth was granted a temporary medical restriction which began October 7, 2014 and ended May 22, 2015, and included her physician's diagnosis/comments "Cannot bend as she gets dizzy." Please reassign/accommodate patient." Ford denies all remaining allegations in paragraph 261(b).

c.     However, after Plaintiff refused her supervisor's requests for sex and complained about sexual harassment and discrimination, she was reassigned from a job position that she was capable of performing to a job that violated her restrictions and required her to frequently bend over, exacerbated her disabling conditions, and resulted in her becoming disoriented, dizzy and falling and injuring her head.

**ANSWER:**     Ford admits that on January 21, 2015, Plaintiff Goforth reported that she "became dizzy and tripped on the platform and fell backward hurting my back, neck and head." Ford denies all remaining allegations in paragraph 261(c).

d.     In retaliation for Plaintiff complaining about sexual harassment and gender and disability discrimination, Ford refused to have Plaintiff placed back in a position that she could perform in an upright position which matched her disability restrictions.

**ANSWER:**     Ford denies the allegations in paragraph 261(d).

123

e.　　In retaliation for Plaintiff complaining to the EEOC about gender and disability discrimination and sexual harassment, Ford laid Plaintiff off without pay, claiming there "no work available."

**ANSWER**:　　Ford admits that Plaintiff Goforth was out on "no work available" leave at times during her employment, but denies that it was in retaliation for any protected activity and denies all remaining allegations in paragraph 261(e). Ford avers Plaintiff Goforth was placed on no work available leave because her personal restrictions could not be accommodated at that time.

f.　　Similarly situated employees who did not complain continued to be employed.

**ANSWER:**　　Ford denies the allegations in paragraph 261(f).

g.　　Ford hired non-complaining employees into positions in that Department and work area which did not require frequently bending over and standing back up, proving that there was "work available" that Plaintiff could perform.

**ANSWER:**　　Ford denies the allegations in paragraph 261(g).　Ford avers that job placements are based on a variety of legitimate factors, but not protected activity.

h.　　Ford has failed to reinstate Plaintiff.

**ANSWER:**　　Ford admits that Plaintiff GoForth has not returned to work since going out on personal leave in January 2016.　Ford denies all remaining allegations in paragraph 261(h).

262.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**     Ford denies the allegations in paragraph 262, including but not limited to the allegation that Plaintiff Goforth was subject to retaliatory acts.

263.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**     Ford denies the allegations in paragraph 263, including but not limited to the allegation that Plaintiff Goforth was subject to adverse employment actions.

264.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 264 and denies that the Plaintiff Goforth is entitled to any recovery.

**COUNT 17**
**TITLE VII-RETALIATION**
**(CHRISTINE HARRIS)**

265.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER:**     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

266.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining against sexual advances, comments, innuendo, and lurid foul and offensive language and for requesting reasonable accommodations under the ADA.

**ANSWER:**    Ford denies the allegations in paragraph 266.

267.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 267.

268.    In retaliation for refusing her supervisors' requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

    a.    Plaintiff initially complained to Union Representative Mark Allen and her Supervisor, Brandon regarding Team Leader Tony's sexual harassment.

    b.    Allen and Brandon told Plaintiff not to complain and not to go to Labor Relations because "Ford doesn't care about workplace conditions, especially for new people" and "Ford only cares about the bottom line."

    c.    Allen and Brandon told Plaintiff that she was a probationary employee and that complaining would get her fired;

    d.    Plaintiff complained to Labor Relations regarding Team Leader Tony's sexual harassment and that Supervisor Brandon failed to do anything to stop it.

e.      In mid-August, 2014, after Plaintiff complained to Labor Relations, Brandon assigned Plaintiff to a more difficult position in which Plaintiff had not received adequate training.

f.      Brandon refused to allow other employees to train Plaintiff on the new job.

g.      Brandon then criticized Plaintiff for not doing the job correctly, even though she had not been trained on how it was supposed to be performed.

h.      In further retaliation for Plaintiff complaining against Team Leader Tony, Plaintiff was forced to continue working under Tony and forced to endure his new "nickname" for Plaintiff which was "Bitch."

i.      Team Leader Tony further retaliated against Plaintiff by telling other co-workers that she was a "complainer" and could not be trusted, creating unbearable changes in Plaintiff's job conditions that constituted a hostile work environment.

j.      Several days after Plaintiff complained to Labor Relations regarding sexual harassment and retaliation, Ford terminated Plaintiff, causing her substantial lost economic opportunity.

k.      Plaintiff requested that the UAW help her file a grievance, but the UAW informed her that it provides no assistance to probationary employees and thus, that Ford requires probationary employees to endure sexual harassment to earn full-time, non-probationary status.

l.      Ford has refused to reinstate Plaintiff and return her to work.

**<u>ANSWER</u>:**    Ford admits that Plaintiff Harris has not been returned to work following discharge, but states that any reinstatement is determined based on a variety of legitimate factors

127

unrelated to protected activity. Ford further avers that Harris was terminated for performance-related issues after working at Ford for less than one month. Ford denies all remaining allegations in paragraph 268, including subparagraphs (a)-(l).

269.     Ford's retaliatory acts against Plaintiff, including termination constitute materially adverse employment actions.

**ANSWER:**     Ford denies the allegations in paragraph 269, including but not limited to the allegation that Plaintiff Harris was subject to retaliatory acts.

270.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**     Ford denies the allegations in paragraph 270, including but not limited to the allegation that Plaintiff Harris was subject to adverse employment actions.

271.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 271 and further denies that Plaintiff Harris is entitled to any recovery.

## COUNT 18
## TITLE VII and ADA-RETALIATION
### (ORISSA HENRY)

272.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and of her EEOC Charge.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.   Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

273.    Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language and for requesting reasonable accommodations under the ADA.

**ANSWER:**    Ford denies the allegations in paragraph 273.

274.    Supervisors have gone out of their way to make Plaintiff and other similarly situated individuals' jobs more difficult, have made it clear that they were going to make their jobs more difficult and their life in the plant miserable, and have taken extra measures to make the performance of the Plaintiff's and other similarly situated individuals job duties more difficult and/or to subject them to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 274.

275.    In retaliation for the Plaintiff's numerous complaints and requests for a reasonable accommodation, and for filing charges of sexual harassment and discrimination with the EEOC and for bringing this lawsuit, Ford has retaliated against this Plaintiff in the following ways:

a.    Ford disciplined, suspended without pay and laid Plaintiff off claiming there was "no work available," whereas similarly situated employees who also had a restriction for "rest every two-hours" that did not complain about sexual harassment and discrimination were not similarly disciplined and were not suspended without pay or laid-off.

b.    Denied placement on a job that fit her restrictions (brief periods of rest at least every two hours for her fibromyalgia);

c.    Since filing this lawsuit, Plaintiff has attempted to return to work on multiple occasions, but Labor Relations Representative Catina McCoy refused to discuss reasonable accommodations and refused to return Plaintiff to work and denied Plaintiff substantial economic opportunities.

**ANSWER:**    Ford admits Henry has a lengthy discipline record since she began work in 2012. Ford admits that Plaintiff Henry has been placed on no work available leave when Ford was unable to locate available work consistent with her medical restrictions. Ford denies all remaining allegations in paragraph 275, including subparts (a)-(c).

276.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 276, including but not limited to the allegation that Plaintiff Henry was subject to retaliatory acts.

277.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 277, including but not limited to the allegation that Plaintiff Henry was subject to adverse employment actions.

278.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:** Ford denies the allegations in paragraph 278 and denies that Plaintiff Henry is entitled to any recovery.

**COUNT 19**
**TITLE VII-RETALIATION**
**(LAWANDA JORDAN)**

279. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER:** Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

280. Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:** Ford denies the allegations in paragraph 280.

281. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:** Ford denies the allegations in paragraph 281.

282. Beginning in at least 2013, Plaintiff complained about sexual harassment and discrimination during meetings with Labor Relations Representative Natalie Dahrenger and UAW Representative Will Jackson.

**ANSWER:**    Ford admits that in March 2013 and December 2014, Plaintiff Jordan raised concerns to Ford about allegedly inappropriate comments.  Ford avers that it investigated the complaints and appropriately responded. Ford denies all remaining allegations in paragraph 282.

283.    Plaintiff complained about numerous sexually harassing male Supervisors and co-workers, including but not limited to Supervisor Buck Owens, Pierre Hawkins and Ken Perry.

**ANSWER:**    Ford admits that plaintiff Jordan raised concerns about Buck Owens, Pierre Hawkins and Ken Perry.  Ford denies all remaining allegations in paragraph 283.

284.    Plaintiff verbally complained that she was highly offended by sexual vulgarity in the workplace, including that Supervisor Buck Owens told her how she made him "hot and horny" and that Relief Personnel Pierre Hawkins told her she had "nice juicy titties" and a "pretty pussy print."

**ANSWER:**    Ford admits that in March 2013 and December 2014, Plaintiff Jordan raised concerns to Ford about allegedly inappropriate comments. Ford avers that it investigated and appropriately responded. Ford denies all remaining allegations in paragraph 284.

285.    Will Jackson and Dahrenger admitted they had been aware of Buck Owens' and Pierre Hawkins' sexually harassing conduct, saying "that's just Buck" and that Pierre "has no filter."

**ANSWER:**    Ford denies the allegations in paragraph 285 as to Dahringer.  Ford is without knowledge or information sufficient to either admit or deny the allegations as to what a UAW representative may have said and therefore denies same.  Ford denies all remaining allegations in paragraph 285.

286.    Ford did not take any noticeable immediate action to remedy this ongoing sexual harassment.

**ANSWER:**    Ford denies the allegations in paragraph 286.


287.    Thus, Plaintiff continued to complain verbally to numerous Labor Relations representatives including Dahrenger, Alex Keweny and Terry (it is believed Terry's last name is Gueyser).

**ANSWER:**    Ford admits that Plaintiff Jordan reported certain limited alleged incidents. Ford avers such claims were investigated and appropriately addressed. Ford denies all remaining allegations in paragraph 287.


288.    Between 2013 and the present, Plaintiff also complained about continuing sexual harassment, retaliation and workplace danger in writing on at least five separate occasions between 2014 and 2016.

**ANSWER:**    Ford admits that plaintiff Jordan reported certain limited alleged incidents. Ford avers such concerns were investigated and appropriately addressed.  Ford denies all remaining allegations in paragraph 288.


289.    In retaliation for complaining against her supervisors' sexual harassment and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Pierre Hawkins was the relief person who had lower-level supervisory responsibilities, including relieving production line employees who needed a restroom break.

b.      After Plaintiff complained about Hawkins' sexual harassment, Hawkins repeatedly referred to Plaintiff as the "bitch who complained" about him in front of other co-workers and Supervisor Ken Perry.

c.      Pierre Hawkins refused to permit Plaintiff to use the restroom while employees who did not complain continued to receive regular restroom breaks.

d.      Hawkins threatened Plaintiff, telling her "I can say whatever the fuck I want to you."

e.      When Plaintiff complained to another Supervisor, Ken Perry about continuing retaliation, he told Plaintiff he was not going to do anything to stop retaliation, sexual harassment or discrimination.

f.      After Plaintiff complained to Perry, he refused to permit Plaintiff access to the restroom, even though employees who did not complain were permitted restroom breaks.

g.      After Plaintiff complained about Supervisor Buck Owens' sexual harassment, Superintendent Townsly specifically assigned Plaintiff to continue working under the direct supervision of Owens even though Plaintiff complained about how her presence sexually aroused Owens.

h.      This was despite that Labor Relations Representative Terry Geuyser told Plaintiff that such an assignment was improper based on the "still-open investigation" regarding Owens' sexual harassment.

i.      Such a job assignment was particularly humiliating and unbearable, given that Plaintiff's presence noticeably sexually aroused Owens, causing him to fondle his

penis in front of Plaintiff - which itself, served as continuing sexual harassment of the Plaintiff.

      j.    Plaintiff's Supervisors continue to intimidate Plaintiff from reporting workplace discrimination and retaliation, such that Supervisor Andrew has followed Plaintiff to the restroom when she takes restroom breaks just to make sure she is not going to the Labor Relations office to make more sexual harassment complaints.

**ANSWER:**   Ford denies the allegations in paragraph 289, including subparagraphs (a)-(j). Ford avers that job assignments and when restroom breaks may be provided are determined based on a variety of legitimate factors, but not protected activity.

290.    After Plaintiff complained about sexual harassment, she experienced each of the aforementioned unbearable changes in job conditions which constituted a hostile work environment.

**ANSWER:**   Ford denies the allegations in paragraph 290, including but not limited to the allegation that Plaintiff Jordan was subject to a hostile work environment.

291.    Since complaining, Plaintiff has consistently been denied overtime opportunities even though she was low on the overtime equalization list within her department, classification and shift.

**ANSWER:**   Ford denies the allegations in paragraph 291. Ford avers that overtime opportunities are determined based on a variety of legitimate factors, but not on protected activity.

292.    Since Plaintiff complained about discrimination and sexual harassment, Plaintiff has been denied substantial overtime opportunities, causing her substantial lost economic opportunities.

**ANSWER:**    Ford denies the allegations in paragraph 292. Ford avers that overtime opportunities are determined based on a variety of legitimate factors, but not protected activity.

293.    Since Plaintiff complained, Plaintiff is only granted overtime opportunities when Ford requires that all employees on the B-Crew shift work overtime - known as a "mandatory Saturday."

**ANSWER:**    Ford denies the allegations in paragraph 293.  Ford avers that overtime opportunities are determined based on a variety of legitimate factors, but not protected activity.

294.    Employees that did not complain about discrimination or sexual harassment were consistently given overtime opportunities instead of Plaintiff.

**ANSWER:**    Ford denies the allegations in paragraph 294.  Ford avers that overtime opportunities are determined based on a variety of legitimate factors, but not protected activity.

295.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions, in that they collectively constitute unbearable changes in Plaintiff's job conditions and a pervasively hostile work environment that Plaintiff is forced to endure but that is not forced upon employees who do not complain.

**ANSWER:**    Ford denies the allegations in paragraph 295, including but not limited to the allegation that Plaintiff Jordan was subject to retaliatory acts or that she was subject to a pervasively hostile work environment.

296.    Plaintiff's complaints were the major factor giving rise to Plaintiff being subjected to a pervasively hostile work environment.

**ANSWER:**    Ford denies the allegations in paragraph 296, including but not limited to the allegation that Plaintiff Jordan was subject to a pervasively hostile work environment.


297.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 297, including but not limited to the allegation that Plaintiff was subject to adverse employment actions.


298.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 298 and denies that Plaintiff Jordan is entitled to any recovery.


## COUNT 20
## TITLE VII-RETALIATION
### (DANIELLE KUDIRKA)

299.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

300.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 300.

301.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 301.

302.    In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination with the Illinois Department of Human Rights and the EEOC, Ford retaliated against this Plaintiff in the following ways:

**ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 302.

a.    Plaintiff was instructed by Labor Relations Representative Natalie Dahrenger that due to her obvious emotional distress suffered from sexual harassment, Plaintiff should go on a "stress leave," apply for part-time disability benefits and effectively take a substantial reduction in income.

**ANSWER:**    Ford admits that Kudirka has taken a number of medical leaves and FMLA-related leaves.  Ford denies that Kudirka has been subjected to sexual harassment or discrimination and denies that she suffers from emotional distress as a result.  Ford further denies all remaining allegations in paragraph 302(a).

b.    Plaintiff was unfairly disciplined.

**ANSWER:** Ford admits that Kudirka has been disciplined a number of times and for various reasons, but denies that she has ever been disciplined unfairly or in retaliation for engaging in protected activity. Ford denies all remaining allegations in paragraph 302(b).

c. Plaintiff was denied substantial overtime opportunities that other employees who did not complain continued to receive.

**ANSWER:** Ford denies the allegations in paragraph 302(c). Ford further avers that availability of overtime on any given occasion depends on a variety of legitimate factors, but not protected activity.

d. Plaintiff was denied favorable job assignments, including:

i. Plaintiff is a "General Utility", meaning that she is supposed to be trained on all of the jobs in her department and assigned to work or help out as needed on any departmental job.

ii. Plaintiff has worked as a General Utility for years.

iii. Since Plaintiff complained about sexual harassment, her Supervisors have refused to train her on the six most desirable jobs in her department.

iv. Plaintiff's supervisors have refused to train her on the "Water Repair," "Hunter/Tire Inspection," "Clerk" or "FCPA" jobs.

v. Plaintiff has only received two-hours of training on the "CBT Repair" and "Export Inspection" jobs.

vi.     The aforementioned jobs are "off-line" jobs which are not directly tied to the moving assembly line.

vii.    Working in these jobs is deemed safer as they are "off the line."

viii.   Working in these jobs is more desirable as an employee is able to work at his or her own pace and is not subject to the "pace of the line."

ix.     Although Plaintiff's job classification identifies that she should be trained on these jobs, she has been singled out, remains untrained on these jobs and has not been allowed to perform these jobs as have her similarly situated co-workers that have not complained.

**ANSWER:**    Ford admits that Kudirka has been classified as "General Utility" during a portion of her employment at Ford.  Ford further admits that some jobs are not directly on the assembly line, but denies that such jobs are "deemed" safer and further avers that whether a particular job is "more desirable" is a matter of personal preference. Ford admits that employees may be assigned to different job assignments and trained for various jobs at different times for a variety of legitimate, business-related reasons, but denies that such decisions regarding assignments, training or the amount of training provided are based upon engagement in protected activity.  Ford denies all remaining allegations in paragraph 302(d), including subparts (i)-(ix).


e.      Similarly situated "General Utilities" in Plaintiff's department that did not complain about discrimination or sexual harassment were consistently trained on all job assignments within the department and more frequently placed in the more desirable job assignments.

**ANSWER:**    Ford denies the allegations in paragraph 302(e). Ford avers that

employees may be assigned to different job assignments and trained for various jobs at different times for a variety of legitimate, business-related reasons, but denies that such decisions are based upon engagement in protected activity. Ford further avers that whether such jobs are "more desirable" is a matter of personal preference.

303.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**     Ford denies the allegations in paragraph 303, including but not limited to the allegation that Plaintiff Kudirka was subject to retaliatory acts.

304.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**     Ford denies the allegations in paragraph 304, including but not limited to the allegation that Plaintiff Kudirka was subject to adverse employment actions.

305.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 305 and denies that Plaintiff Kudirka is entitled to any recovery.


## COUNT 21
## TITLE VII-RETALIATION
## (TERRI LEWIS-BLEDSOE)

306.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER:** Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

307. Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:** Ford denies the allegations in paragraph 307.

308. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:** Ford denies the allegations in paragraph 308.

309. In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination with the Illinois Department of Human Rights and the EEOC, Ford retaliated against this Plaintiff in the following ways:

    a.    Plaintiff was unfairly disciplined.

        i.    Supervisor George Melchor, at the instruction of Superintendent Alexander, repeatedly denied Plaintiff's requests to complain about sexual harassment to Ford's Labor Relations Department and disciplined or threatened to discipline Plaintiff.

    b.    Plaintiff was denied requests to use the restroom which were afforded to other similarly situated employees who did not complain about sexual harassment.

    c.    Ford denied Plaintiff use of the same tools at work that other employees are provided, and assigned her to a more difficult and less desirable job assignment in an effort to "set her up" to fail.

      d.     The aforementioned acts constituted unbearable changes in job conditions that constituted a hostile work environment.

**ANSWER:**    Ford denies the allegations in paragraph 309, including subparagraphs (a)-(d) and all subparts.

310.    In addition, Ford denied Plaintiff the same overtime opportunities offered to other similarly situated employees who did not complain about sexual harassment, causing Plaintiff lost economic opportunity and reducing the financial terms of Plaintiff's employment.

**ANSWER:**    Ford denies the allegations in paragraph 310. Ford further avers that the availability of overtime opportunities is determined based on a variety of legitimate factors, but not on whether an employee engaged in protected activity.

311.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 311, including but not limited to the allegation that Plaintiff Lewis-Bledsoe was subject to retaliatory acts.

312.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 312, including but not limited to the allegation that Plaintiff Lewis-Bledsoe suffered adverse employment actions.

313.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:** Ford denies the allegations in paragraph 313 and denies that Plaintiff Lewis-Bledsoe is entitled to any recovery.

**COUNT 22**
**TITLE VII-RETALIATION**
**(CONSTANCE MADISON)**

314. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

**ANSWER:** Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

315. Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:** Ford denies the allegations in paragraph 315.

316. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:** Ford denies the allegations in paragraph 316.

317. In retaliation for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.      Plaintiff was informed that Building Superintendent Chuck Nennert was "out to get" Plaintiff because he was upset Plaintiff filed a sexual harassment complaint.

i.      Nennert and his subordinate, Supervisor Dan Lacey are known for targeting employees for termination or in an effort to force them to quit when they have complained about sexual harassment and discrimination.

ii.      When Plaintiff complained about Nennert's retaliation to Labor Relations Representative Natalie Dahrenger, Dahrenger told Plaintiff "Chuck [Nennert] is the pillar of the community.  Whatever he says goes."

b.      Plaintiff (originally on the day-shift or "A-Crew") was unfairly demoted to a less desirable shift ("B-Crew").

i.      Working on the A-Crew is a more desirable shift and is of higher demand amongst employees than B-Crew (night-shift).

ii.      Because there is high demand for A-Crew, determining whether Plaintiff or similarly situated employees are selected for A-Crew is done by seniority and disciplinary history.

iii.      While Plaintiff was demoted to B-Crew, similarly situated employees that did not complain were permitted to remain on A-Crew even though they had less seniority.

iv.      Thereafter, Plaintiff was subjected to increased performance scrutiny, criticism and unfair discipline.

c.      Based on the foregoing, Plaintiff's demotion and unfair discipline reduced her future career prospects and reduced her likelihood of being promoted back to A-Crew.

d.    Ford denied Plaintiff the most basic of reasonable accommodation requests regarding pain and swelling in her arthritic hands - a request that she occasionally be allowed to apply ice to her hands.

**ANSWER:**    Ford admits that Plaintiff Madison has been disciplined on a number of occasions and for a number of reasons, but Ford denies that any such discipline was unfair or that it was based on engagement in protected activity. Ford further avers that crew shifts and job assignments are based on a variety of legitimate factors, but not on whether an employee engaged in protected activity. Ford denies all remaining allegations in paragraph 317, including subparagraphs (a)-(d), and all subparts.

318.    Ford's manipulation of Plaintiff's job placement and denial of the most basic request that she be allowed to occasionally apply ice to her hands has materially altered the terms and conditions of her employment.

**ANSWER:**    Ford denies the allegations in paragraph 318. Ford further avers that job assignments are based on a variety of legitimate factors, but not on whether an employee engaged in protected activity.

319.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 319, including but not limited to the allegation that Plaintiff Madison was subject to retaliatory acts.

320.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 320, including but not limited to the allegation that Plaintiff Madison was subject to adverse employment actions.

321.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 321 and denies that Plaintiff Madison is entitled to any recovery.

**COUNT 23**
**TITLE VII-RETALIATION**
**(CEPHANI MILLER)**

322.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in Plaintiff's EEOC Charge.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.    Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

323.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 323.

324.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

147

**ANSWER:**     Ford denies the allegations in paragraph 324.

325.     While working as a Process Coach (a mid-level supervisory position at Ford's Chicago Assembly Plant), Plaintiff experienced another Process Coach Willie Fonseca sexually harass her as well as lower level female employees.

**ANSWER:**     Ford admits that Process Coach, Willie Fonseca, received a four-week disciplinary suspension without pay for comments made to Plaintiff Miller. Ford denies all remaining allegations in paragraph 325.

326.     Plaintiff complained about this to her superior, Supervisor Mike Reese.

**ANSWER:**     Ford admits that Plaintiff Miller reported a problem with her co-worker, Willie Fonseca, to Michael Riese.  Ford denies all remaining allegations in paragraph 326.

327.     Thereafter, Superintendent Washington became Plaintiff's direct supervisor.

**ANSWER:**     Ford admits that another female employee, Kellie Washington, was the superintendent/team manager on a crew in the Trim Department in 2013 which included Plaintiff Miller, who was in a process coach position.  Ford denies all remaining allegations in paragraph 327.

328.     Washington informed Plaintiff that she did not like complainers and had heard that Plaintiff had been complaining about sexual harassment.

**ANSWER:**     Ford denies the allegations in paragraph 328.

329.     Under Washington, Plaintiff experienced that she, as a female, was scrutinized more heavily than similarly situated male employees.

**ANSWER:** Ford denies the allegations in paragraph 329.

330. Plaintiff's predecessor in that position, a female named Valerie, also complained about Washington giving preferential treatment to similarly situated male employees.

**ANSWER:** Ford denies the allegations in paragraph 330.

331. Valerie was moved to a department she was not familiar with after she complained about Superintendent Washington.

**ANSWER:** Ford denies the allegations in paragraph 331. Ford avers that job assignments are made based on a variety of legitimate factors, but not on protected activity.

332. In late 2013, Plaintiff complained to Human Resources Manager Tony Dotson that Superintendent Washington was providing more favorable treatment to male employees than to female employees, including increased scrutiny toward Plaintiff relative to similarly situated male employees.

**ANSWER:** Ford denies the allegations in paragraph 332.

333. Plaintiff also informed Dotson that Washington stated she did not like complainers and that Plaintiff was fearful of retaliation from Washington.

**ANSWER:** Ford denies the allegations in paragraph 333.

334. Superintendent Washington told Plaintiff "I will do everything in my power to get [Plaintiff] fired" or words to that effect.

**ANSWER:** Ford denies the allegations in paragraph 334.

335.    After Plaintiff complained to HR about Washington, Plaintiff was retaliated against and demoted from a salaried managerial position to an hourly position on the assembly line.

**ANSWER:**    Ford admits that Plaintiff Miller was returned to an hourly position from a salaried position in late 2013.  Ford avers that the demotion occurred only following Plaintiff Miller receiving frequent written coaching and counseling concerning her inability to sustain acceptable performance, including but not limited to leadership deficiencies, job-related skill deficiencies, quality and quantity deficiencies and other performance issues and her failure to improve when she was eventually placed on a Performance Enhancement Plan (PEP) by her female team manager, Kellie Washington.  Ford denies all remaining allegations in paragraph 335.

336.    When Plaintiff was demoted, she was assigned to work under sexual harassing supervisors Superintendent Myron Alexander and Supervisor George Melchor.

**ANSWER:**    Ford admits that following Plaintiff Miller's return to an hourly position, she was assigned to the Paint Department that included supervisors Myron Alexander and George Melchor.  Ford denies all remaining allegations in paragraph 336.

337.    Alexander and Melchor were uncomfortable with Plaintiff being in their department because it was known she previously complained against sexual harassment and retaliation.

**ANSWER:**    Ford denies the allegations in paragraph 337.

338.    Alexander viewed Plaintiff as a threat to expose his ongoing and rampant sexual harassment of other women in the Plaint [sic] Department at the Chicago Assembly Plant.

150

**ANSWER:**   Ford denies the allegations in paragraph 338, including but not limited to the allegations of rampant sexual harassment in the CAP Paint Department.

339.   After Plaintiff was demoted from a managerial employee to an assembly-line worker, some employees came to Plaintiff to seek guidance as to how to complain about discrimination at Ford.

**ANSWER:**   Ford admits that Plaintiff Miller was returned to an hourly position. Ford is without knowledge or information sufficient to admit or deny whether employees "came to Plaintiff" for any reason and therefore, denies the allegation.   Ford denies all remaining allegations in paragraph 339.

340.   Alexander and Melchor recognized that other women were going to Plaintiff for guidance and retaliated against Plaintiff for assisting other sexual harassment or discrimination victims by subjecting her to increased scrutiny and meritless disciplinary write-ups.

**ANSWER:**   Ford admits that while Miller was assigned to the Paint Department as an hourly employee she was disciplined for various reasons, but denies that it was without reason or that it was based on engagement in protected activity.   Ford denies all remaining allegations in paragraph 340, including but not limited to the allegation that the discipline was retaliatory.

341.   In retaliation for the Plaintiff's numerous complaints about sexual harassment and discrimination, and for helping other similarly situated women complain and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.   Plaintiff was unfairly disciplined;

   b.  Ford subjected Plaintiff to a higher standard of workplace scrutiny and unfair performance critiques;

   c.  Ford suspended Plaintiff for a week without pay in retaliation for her criticizing and complaining about Supervisor Willie Fonseca sexually harassing her and other women because she pinched his arm and told him to stop being disrespectful toward women.

   d.  Ford demoted Plaintiff because she rebuked and complained about Supervisor Willie Fonseca sexually harassing her and other similarly situated women and gender discrimination.

   e.  Ford subjected Plaintiff to repeated write-ups from sexual harassers George Melchor and Myron Alexander because she helped other women complain against sexual harassment and Superintendent Alexander viewed her as a threat to expose his ongoing and rampant sexual harassment of other women in the workplace.

   f.  Ford refused to reinstate Plaintiff to a Supervisor position.

**ANSWER:** Ford admits that Plaintiff Miller has been disciplined for her behavior and that she was demoted from a managerial position to an hourly position based upon her poor performance, but specifically denies that Ford has taken any action based upon retaliation and further denies all remaining allegations in paragraph 341, including subparagraphs (a)-(f).

342. Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:** Ford denies the allegations in paragraph 342, including but not limited to the allegation that Plaintiff Miller was subject to any retaliatory acts.

343.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 343, including but not limited to the allegation that Plaintiff Miller was subject to adverse employment actions.


344.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 344 and denies that Plaintiff Miller is entitled to any recovery.


## COUNT 24
## TITLE VII-RETALIATION
### (MIYOSHI MORRIS)

345.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 162 as if fully set forth herein.   Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.


346.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 346.

347.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 347.

348.    In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Plaintiff was unfairly disciplined.

b.    Plaintiff was held to increased performance scrutiny.

c.    Plaintiff was deprived of overtime opportunities.

d.    Ford terminated Plaintiff, claiming this was due to a paperwork issue, but a similarly situated white male employee who did not complain about sexual harassment and who was also terminated for an identical paperwork reason was allowed back to work.

e.    Ford has failed to reinstate Plaintiff or return Plaintiff to work.

**ANSWER**:    Ford admits that Plaintiff Morris has been disciplined for various infractions and that she was terminated for falsification of company records by presenting fraudulent documents related to a claim for bereavement pay. Ford admits that it has not reinstated Plaintiff Morris, but states that her UAW grievance is still in process, and any such reinstatement is determined based on a variety of legitimate factors unrelated to protected activity. Ford denies that it has taken any action in retaliation for any protected activity and further denies all remaining allegations in paragraph 348, including subparagraphs (a)-(e).

349.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**     Ford denies the allegations in paragraph 349, including but not limited to the allegation that Plaintiff Morris was subject to retaliatory acts.

350.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**     Ford denies the allegations in paragraph 350, including but not limited to the allegation that Plaintiff Morris was subject to adverse employment acts.

351.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 351 and denies that Plaintiff Morris is entitled to any recovery.


## COUNT 25
## TITLE VII-RETALIATION
### (STEPHANIE SZOT)

352.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:**     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

353.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 353.

354.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 354.

355.    In retaliation for refusing her supervisors and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Plaintiff has been stalked and assaulted by one of her sexual harassers, both in and outside of the workplace, and Ford refuses to punish the stalker.

i.    Ford has refused to protect Plaintiff and refused to obtain an Order of Protection for her benefit as it is permitted to do pursuant to the Illinois Workplace Violence Prevention Act.

b.    Plaintiff was told that Ford would not reassign her stalker to another shift because he was too important and valuable, and that if she wanted relief from his hostile, aggressive and threatening conduct at work, she could either be reassigned from her shift that received a 10% shift premium to a lower paying, less desirable work assignment that

would not receive as many overtime hours or alternatively, Defendant would "figure out a reason" to suspend Plaintiff for 30 days.

       i.     Plaintiff was forced to accept a lower paying job assignment in order to avoid a thirty-day suspension without pay, however, her sexual harasser continued to be allowed to work the higher paying and more desirable shift.

       c.     Plaintiff has also been deprived of substantial wages, including substantial overtime opportunities since complaining.

**ANSWER:**    Ford is without knowledge or information sufficient to either admit or deny whether Plaintiff Szot has been stalked or assaulted outside the workplace and therefore denies the same. Ford admits that it has not obtained a protective order related to Plaintiff Szot, but denies that it was under any obligation to do so. Ford further avers that crew shifts and job assignments are based on a variety of legitimate factors, but not on whether an employee engaged in protected activity. Ford denies all remaining allegations in paragraph 355, including subparagraphs (a)-(c) and all subparts.

356.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 356, including but not limited to the allegation that Plaintiff Szot was subject to retaliatory acts.

357.    Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 357, including but not limited to the allegation that Plaintiff Szot was subject to adverse employment actions.

358.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 358 and denies that Plaintiff Szot is entitled to any recovery.

## COUNT 26
## TITLE VII-RETALIATION
## (SHIRLEY THOMAS-MOORE)

359.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:**     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

360.     Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**     Ford denies the allegations in paragraph 360.

361.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**     Ford denies the allegations in paragraph 361.

362.    In retaliation for Plaintiff's numerous complaints and helping other women to complain, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Plaintiff has been demoted from her trainer position and transferred to a less desirable job position that pays less money;

b.    Plaintiff has been afforded fewer overtime hours than similarly situated employees who did not complain.

c.    Ford has failed and refused to reinstate and/or promote Plaintiff to her previous positon.

**ANSWER:**    Ford denies the allegations in paragraph 362, including subparagraphs (a)-(c). Ford avers that employees may be assigned to different job assignments at different times for a variety of legitimate, business-related reasons, but denies that such decisions are based upon their engagement in protected activity.  Ford further avers that the availability of overtime on any given occasion, with respect to any individual employee, is based on a variety of legitimate factors but is not based on engagement in protected activity.

363.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 363, including but not limited to the allegation that Plaintiff Thomas-Moore was subject to any retaliatory acts.

364.    Plaintiff's complaints and the filing of this EEOC Charge led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 364, including but not limited to the allegation that Plaintiff Thomas-Moore was subject to adverse employment actions.

159

365.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**     Ford denies the allegations in paragraph 365 and denies that Plaintiff Thomas-Moore is entitled to recovery.

## COUNT 27
## TITLE VII-RETALIATION
### (ROSE THOMAS)

366.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:**     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

367.     Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 367.

368.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 368.

369.     In retaliation for refusing her supervisors and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints, and for filing charges of discrimination and

sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

> **ANSWER**:    Ford denies the allegations in the introductory portion of paragraph 369.

> a.    Plaintiff was subjected to heightened performance scrutiny and unfairly disciplined;

> **ANSWER:**    Ford admits that Plaintiff Rose Thomas has been disciplined at various times and for various reasons but denies that such discipline was unfair or in retaliation for engagement in protected activity.  Ford denies all remaining allegations in paragraph 369(a).

> b.    Plaintiff suffered experienced extreme emotional distress and took a medical leave of absence to treat her condition, but when she attempted to return, Ford insisted on placing her back to work under the supervision of her sexual harassers.

> **ANSWER:**    Ford admits that Plaintiff Rose Thomas has taken various medical leaves for various medical conditions. Ford denies that Plaintiff Rose Thomas has been subjected to sexual harassment or discrimination and denies that she suffers from emotional distress as a result.  Ford denies all remaining allegations in paragraph 369(b).

> c.    Ford used the excuse that because it could not allow her to work with her sexual harassers, it would not return her to work, and instead terminated Plaintiff and/or constructively discharged Plaintiff from employment.

> **ANSWER**:    Ford admits that Plaintiff Rose Thomas took a medical leave, but avers that Plaintiff Rose Thomas' employment was terminated for failure to appropriately respond to a notice to report as set forth in the collective bargaining agreement and as

applied at CAP. Ford admits that it has not reinstated Plaintiff Rose Thomas, but states that her UAW grievance is still in process, and any such reinstatement is determined based on a variety of legitimate factors unrelated to protected activity. Ford denies all remaining allegations in paragraph 369(c).

370.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 370, including but not limited to the allegation that Plaintiff Rose Thomas was subject to retaliatory acts.

371.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 371, including but not limited to the allegation that Plaintiff Rose Thomas was subject to adverse employment actions.

372.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 372, and denies that Plaintiff Rose Thomas is entitled to any recovery.

## COUNT 28
## TITLE VII/ADA-RETALIATION
## (TONI WILLIAMS)

373.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER**:    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

374.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 374.

375.    Plaintiff suffered extreme emotional distress caused by ongoing sexual harassment and her doctor subsequently diagnosed her with hypertension and related cardio-pulmonary concerns.

**ANSWER**:    Ford is without knowledge or information sufficient to either admit or deny Plaintiff Williams' medical diagnosis and therefore denies the allegation.  Ford denies all remaining allegations in paragraph 375.

376.    Plaintiff's doctor recommended that Plaintiff be moved away from sexual harassers who were causing an acutely stressful workplace for her.

**ANSWER**:    Ford is without knowledge or information sufficient to either admit or deny what Plaintiff Williams' doctor has recommended and therefore denies the allegation.  Ford denies all remaining allegations in paragraph 376.

377.    Plaintiff complained to Alex Keweny in Labor Relations and to a nurse in Ford's medical department that she was experiencing heart-related conditions which were caused by her sexual harassers and that as a reasonable accommodation she needed to be moved away from her sexual harassers to a less-stressful workplace environment.

**ANSWER**: Ford admits that Plaintiff Williams visited Plant Medical for various conditions, including but not limited to hypertension, headache and chest pains. Ford denies all remaining allegations in paragraph 377.

378.    In retaliation for the Plaintiff's complaints, and for filing an EEOC charge, Ford has retaliated against this Plaintiff in the following ways:

**ANSWER**: Ford denies the allegations in the introductory portion of paragraph 378.

a.    Plaintiff was subjected to increased performance scrutiny relative to employees that did not complain and who did not request a reasonable accommodation.

**ANSWER:** Ford denies the allegations in paragraph 378(a).

b.    One of Plaintiff's sexually harassing Supervisors, Robert Powell refused her requests to go for medical treatment even when she experienced extreme emotional distress, elevated blood pressure and severe chest pains at work and told her "Ford is a stressful place. Deal with it."

**ANSWER:** Ford denies the allegations in paragraph 378(b). Ford avers that Plaintiff Williams visited Plant Medical for various conditions, including but not limited to hypertension, headache and chest pains.

i.    Plaintiff's chest pains were so severe that she went to Ford's medical department anyway and the medical department told Plaintiff to go to the hospital for evaluation.

**ANSWER:**    Ford admits that Plaintiff Williams went to Ford's medical department for chest pain and avers that Williams refused transport via ambulance and was picked up by her son instead. Ford denies all remaining allegations in paragraph 378(b)(i).

c.      When Plaintiff attempted to return to work, Labor Relations Representative Alex Keweny told Plaintiff that she had "walked off the job" and that she was fired.

**ANSWER:**   Ford denies the allegations in paragraph 378(c) and further avers that Plaintiff Williams' employment was terminated for failure to appropriately respond to a notice to report as set forth in the collective bargaining agreement and as applied at CAP.

i.      Keweny and Supervisor Robert Powell wrote Plaintiff up as having "walked off the job", even though she had only left to seek urgent medical treatment.

**ANSWER:**   Ford denies the allegations in paragraph 378(c)(i).

d.      The real reason Ford terminated Plaintiff was because she had complained about sexual harassment and informed Ford of her emotional distress and debilitating cardio-pulmonary condition which were triggered by workplace sexual harassment.

**ANSWER:**   Ford denies the allegations in paragraph 378(d).

e.      Ford failed to offer Plaintiff reinstatement in a work area away from Supervisor Powell and free of sexual harassment.

**ANSWER**:   Ford denies the allegations in paragraph 378(e).  Ford further states that her UAW Grievance is still in process, and any such reinstatement is determined based on a variety of legitimate factors unrelated to protected activity.

379.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 379, including but not limited to the allegation that Plaintiff Williams was subject to retaliatory acts.

380.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 380, including but not limited to the allegation that Plaintiff Williams was subject to adverse employment actions.

381.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 381, and further denies that Plaintiff Williams is entitled to any recovery.

## COUNT 29
## TITLE VII & 1981-RETALIATION
### (BERNADETTE CLYBURN)

382.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint.

**ANSWER**:    Ford incorporates by reference its responses to paragraphs 1 through 162 as if fully set forth herein.

383.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 383.

384.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 384.

385.     In retaliation for complaining about and refusing her supervisors and other male co-workers requests for sex, Ford has retaliated against this Plaintiff in one or more of the following ways:

**ANSWER**:     Ford denies the allegations in the introductory portion of paragraph 385.

a.     When Plaintiff complained about sexual harassment and/or unwanted sexual advances, Superintendent Miller assaulted Plaintiff in the workplace in front of co-worker Linda Sweeney, yelled at Plaintiff and poker her in the chest with her finger, threatening violence.

**ANSWER**:     Ford denies the allegations in paragraph 385(a).

b.     Miller subjected Plaintiff to increased performance scrutiny and unfair discipline, and demanded that other lower level supervisors watch Plaintiff for reasons to write her up or have her terminated.

**ANSWER**:     Ford denies the allegations in paragraph 385(b).

c.     Employees who did not complain about sexual harassment were not similarly scrutinized.

i.     Supervisor Janie Little recognized that Superintendent Miller's retaliatory and harassing treatment of Plaintiff was outrageous, and told Plaintiff that she was tired of Miller's fixation on and harassing treatment of Plaintiff.

**ANSWER**:     Ford denies the allegations in paragraph 385(c) and (c)(i).

d.      When Ford conducted interviews related to Plaintiff's claims of sexual harassment and retaliation.

i.      During these interviews, Labor Relations Representatives were not interested in learning about sexually harassing or retaliatory acts, but instead subjected the witnesses to extensive questions seeking to find any basis to write-up or discipline Plaintiff.

**ANSWER**:     Ford denies that it was not interested in conducting a full and fair investigation of Plaintiff Clyburn's complaints.  Ford admits that as part of its investigation, Plaintiff Clyburn was questioned about the facts and circumstances surrounding her complaints. Ford denies all remaining allegations in paragraph 385(d) and (d)(i).

ii.      Witnesses Ray Oiler and Marzette Gusta were subjected to extensive questioning asking whether they believed Plaintiff Clyburn was hostile or caused problems.

**ANSWER**:     Ford admits that as part of its investigation of Plaintiff Clyburn's complaints, witnesses named Ray Oller and Marzet Gusta were interviewed.  Ford denies all remaining allegations in paragraph 385(d) and (d)(ii).

e.      After Plaintiff complained about racial discrimination or perceived racial discrimination against Supervisors Zack Bosanick and Alissa Millard, Plaintiff was identified by her new Supervisors as being "defiant" and was deprived overtime opportunities which were given to other employees who were not considered so "defiant" - employees that did not file civil rights complaints against their supervisors.

**ANSWER**:    Ford denies the allegations in paragraph 385(e).  Ford further avers that the assignment of overtime is based on a variety of legitimate factors, but not on protected activity.

f.    Plaintiff's supervisors further retaliated against her by depriving her overtime relative to similarly situated employees who did not complain.

**ANSWER**:    Ford denies the allegations in paragraph 385(f).  Ford further avers that the assignment of overtime is based on a variety of legitimate factors, but not on protected activity.

386.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:    Ford denies the allegations in paragraph 386, including but not limited to the allegation that Plaintiff Clyburn was subject to retaliatory acts.

387.    Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER**:    Ford denies the allegations in paragraph 387, including but not limited to the allegation that Plaintiff Clyburn was subject to adverse employment actions.

388.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:    Ford denies the allegations in paragraph 388 and denies that Plaintiff Clyburn is entitled to any recovery.

**COUNT 30**
**TITLE VII-RETALIATION**
**(ANGELA GLENN)**

389.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER**:    Ford incorporates by reference its responses to paragraphs 1 through 128 as if fully set forth herein.

390.    Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:    Ford denies the allegations in paragraph 390.

391.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:    Ford denies the allegations in paragraph 391.

392.    From 2012-August, 2013, Plaintiff experienced sexual harassment at Ford.

**ANSWER**:    Ford denies the allegations in paragraph 392.

393.    In February, 2013, Plaintiff complained to the Sexual Harassment Hotline that her supervisor, Robert Powel repeatedly touched her on her shoulders, arms, back and neck and told her that he "owned" her.

**ANSWER**:    Ford denies the allegations in paragraph 393.

170

394.     Plaintiff complained to the hotline that when she repeatedly told Supervisor Powell to stop touching her, he looked at her defiantly and told her he did it with all of the other women and was going to keep doing it to her.

**ANSWER**:     Ford denies the allegations in paragraph 394.

395.     Although Plaintiff was reassigned away from Powell, she was assigned to a position similar to the position Plaintiff Teresa Bosan and other smaller statured women were assigned after complaining about sexual harassment - a position that required an employee to constantly reach overhead to install a part. This position was ergonomically designed for a much taller employee and caused much smaller employees to constantly stand on their tippy-toes to perform the job.

**ANSWER**: Ford denies the allegations in paragraph 395.

396.     Ford refused to provide Plaintiff with either adequate training on the new position that it otherwise provided to employees who did not complain.

**ANSWER**:     Ford denies the allegations in paragraph 396.

397.     Plaintiff was placed in this position and denied adequate training in retaliation for complaining.

**ANSWER**:     Ford denies the allegations in paragraph 397.

398.     As a result of this retaliatory assignment and as a result of inadequate training in this position, Plaintiff severely injured her back and shoulder doing the new job, including herniating discs in her back and tearing her rotator cuff.

**ANSWER**:     Ford denies the allegations in paragraph 398.

399.     Although Plaintiff filed a Worker's Compensation claim related to the workplace injury, Ford did not permit her to return to work and instead, terminated her employment.

**ANSWER**:     Ford admits that Plaintiff Glenn filed a workers' compensation claim. Ford also admits Plaintiff Glenn's employment was terminated for failure to appropriately respond to a notice to report as set forth in the collective bargaining agreement and as applied at CAP. Ford denies all remaining allegations in paragraph 399.

400.     Ford failed to reinstate Plaintiff or return her to work.

**ANSWER**:     Ford admits Plaintiff Glenn has not been reinstated or returned to work, but states that her UAW grievance is still in process, and any such reinstatement is determined based on a variety of legitimate factors, unrelated to protected activity. Ford denies all remaining allegations in paragraph 400.

401.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:     Ford denies the allegations in paragraph 401, including but not limited to the allegation that Plaintiff Glenn was subject to retaliatory acts.

402.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER**:     Ford denies the allegations in paragraph 402, including but not limited to the allegation that Plaintiff Glenn was subject to adverse employment actions.

403.     As a result of the foregoing, Plaintiff has suffered damages of an ongoing and continuous nature.

**ANSWER**:     Ford denies the allegations in paragraph 403 and denies Plaintiff Glenn is entitled to any recovery.

**COUNT 31**
**TITLE VII-RETALIATION**
**(LADWYNA HOOVER)**

404.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER**:     Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

405.     Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:     Ford denies the allegations in paragraph 405.

406.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER**:     Ford denies the allegations in paragraph 406.

407.     In retaliation for complaining about her supervisors and other male co-workers requests for sex, and for the Plaintiff's numerous complaints regarding sexual harassment and discrimination, Ford retaliated against this Plaintiff in the following ways:

**ANSWER**:     Ford denies the allegations in the introductory portion of paragraph 407.

173

a.      Plaintiff was subjected to heightened performance scrutiny and was unfairly disciplined.

**ANSWER**:   Ford admits that Plaintiff Hoover has been disciplined at various times and for various reasons, but denies that Plaintiff Hoover has been disciplined unfairly or based on her engagement in protected activity.  Ford denies all remaining allegations in paragraph 407(a).

b.      Supervisor Bivens assigned Hoover to the most physically demanding job assignments knowing that she was too small to perform the job. He used this same retaliatory technique to against other women who spurned his sexual advances, including Theresa Bosan.

**ANSWER**:   Ford denies the allegations in paragraph 407(b), and further states that job assignments are made from a variety of legitimate factors, but not protected activity.

c.      Ford knew that the particular position to which Bosan and Hoover were assigned was impossible for either of these employees to effectively perform as the Ergonomics manager, Red Marshall confessed to Bosan:  "We're not supposed to tell you this, but not all jobs are for women who are as small as you.  This one is not for you. You are too little."

**ANSWER**:   Ford denies the allegations in paragraph 407(c).

d.      Superintendent Chuck Nennert condoned Hoover being placed on a physically difficult job because it might get her to quit.

**ANSWER**:   Ford denies the allegations in paragraph 407(d).

e.      This retaliatory technique by Bivens was well known to the union as a way Chuck, Bivens and Ford got "complainers" to quit.

**ANSWER**:      Ford denies the allegations in paragraph 407(e).

f.      Ford's retaliatory and inappropriate job reassignment imperiled Plaintiff and caused her to become injured, and she required multiple surgeries for her injuries.

**ANSWER**:      Ford denies the allegations in paragraph 407(f).

g.      Hoover requested that her medical leave be extended to accommodate the extended medical treatment she required.

**ANSWER**:      Ford admits that Plaintiff Hoover requested medical leave extensions.  Ford denies all remaining allegations in paragraph 407(g).

h.      Ford typically granted medical leave extensions to injured employees who did not complain and whose workplace injuries required similar extensive surgeries and treatment.

**ANSWER**:      Ford denies the allegations in paragraph 407(h).  Ford further avers that medical leave extensions are granted or denied based on a variety of legitimate factors and procedural requirements, but not based on protected activity.

i.      However, because Hoover was a known "complainer", Ford did not grant her leave extension and terminated her employment.

**ANSWER**:      Ford denies the allegations in paragraph 407(i). Ford avers that Plaintiff Hoover's employment was terminated for failure to appropriately respond to a notice to report as set forth in the collective bargaining agreement and as applied at CAP.

j.     Ford has failed to reinstate Plaintiff and failed to return her to work.

**ANSWER**:     Ford admits that Plaintiff Hoover has not been reinstated or returned to work, but states that reinstatement determinations are based on a variety of legitimate factors, but not on protected activity.   Ford further denies all remaining allegations in paragraph 407(j).

408.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 408, including but not limited to the allegation that Plaintiff Hoover was subject to retaliatory acts.

409.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 409, including but not limited to the allegation that Plaintiff Hoover has been subject to adverse employment actions.

410.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 410, and denies that Plaintiff Hoover is entitled to any recovery.

**COUNT 32**
**TITLE VII-RETALIATION**
**(OGERY LEDBETTER)**

411.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

412.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language and for complaining about unfair overtime distribution between male and female employees.

**ANSWER:**    Ford denies the allegations in paragraph 412.

413.    In 2012 and 2013, Plaintiff complained to Superintendent Myron Alexander and another Supervisor that male employees were being given preferential treatment for overtime work by Alexander and Supervisor Tracy Luxx.

**ANSWER:**    Ford denies the allegations in paragraph 413.

414.    After complaining about gender discrimination to Supervisors, Tracy Luxx asked other supervisory employees to closely scrutinize Plaintiff and to write Plaintiff up, even for nominal mistakes.

**ANSWER:**    Ford denies the allegations in paragraph 414.

415.    Supervisor George Melchor subsequently informed Plaintiff of Luxx's retaliatory instructions and told Plaintiff: "watch your back."

**ANSWER:**    Ford denies the allegations in paragraph 415.

416.    In retaliation for complaining, Plaintiff was reassigned from a position in the Spill-out Department to a position in the Sealer Department.

**ANSWER:**    Ford denies the allegations in paragraph 416, and states that job assignments are based on a variety of legitimate factors, but not on protected activity.

417.    The Spill-out Department is one of the cleanest work areas in the plant.

**ANSWER:**    Paragraph 417 asserts an opinion or argument to which no response is required. If a response is required of Ford, this allegation is denied to the extent it is a furtherance of Plaintiff Ledbetter's allegation in paragraph 416 that Ford retaliated against her by reassigning her to the Sealer Department.

418.    Jobs that Plaintiff worked in Spill-out included cleaning finished vehicles and touching-up paint-jobs.

**ANSWER:**    Ford admits that Plaintiff Ledbetter was assigned to the Paint Department and had various job assignments within that department. Ford further avers that job assignments are based on a variety of legitimate factors, but not protected activity. Ford denies all remaining allegations in paragraph 418.

419.    Jobs in Spill-out are very desirable and are typically filled with employees who have the most seniority in the plant.

**ANSWER:**    Ford denies the allegations in paragraph 419. Ford further avers that job assignments are based on a variety of legitimate factors, but not protected activity, and that what jobs are "desirable" is based on the subjective belief of each employee.

420.     The Sealer Department is a much dirtier, less desirable work area in which employees, by hand use sticky clay-like materials, epoxy and other fillers to repair cracks and divots in cars.

**ANSWER:**     Ford denies the allegations in paragraph 420 to the extent it is a furtherance of Plaintiff Ledbetter's allegation in paragraph 416 that Ford retaliated against her by reassigning her to the Sealer Department.  Ford further avers that job assignments are based on a variety of legitimate factors, but not protected activity, and that what jobs are "less desirable" is based on the subjective belief of each employee. Ford denies all remaining allegations in paragraph 420.

421.     Working in the Sealer Department causes employees' clothes to become dirty and stained and their hands to become dry, brittle and cracked unless heavy moisturizers were used on a frequent basis.

**ANSWER:**     Ford denies this allegation in paragraph 421. Ford further avers that job assignments are based on a variety of legitimate factors, but not protected activity.

422.     Positions in the Sealer Department were typically filled by employees with less seniority because they were less desirable positions.

**ANSWER:**     Ford denies the allegations in paragraph 422. Ford avers that job assignments are based on a variety of legitimate factors, but not protected activity.

423.     This reassignment was to a job with significantly different job responsibilities.

**ANSWER:**     Ford denies the allegations in paragraph 423.

424.     As of 2012, Plaintiff had at least twenty-two years of seniority.

**ANSWER:**    Ford admits the allegations in paragraph 424.

425.    A transfer of a high-seniority employee from Spill-out to the Sealer Department was humiliating for the Plaintiff and an unbearable change in her job conditions.

**ANSWER:**    Ford denies the allegations in paragraph 425.

426.    Myron Alexander told Plaintiff that the UAW rules regarding transfers provided that only the Spill-out employee with the lowest seniority should have been eligible to be re-assigned to the Sealer Department job.

**ANSWER:**    Ford denies the allegations in paragraph 426.

427.    Despite that Plaintiff was one of the highest seniority employees in Spill-out, Plaintiff's Supervisors retaliated against her for complaining and reassigned her to the less desirable job in the Sealer Department.

**ANSWER:**    Ford denies the allegations in paragraph 427.

428.    Plaintiff then complained to her UAW Representative Armando Lozano and Ford's sexual harassment hotline about continuing discrimination and retaliation.

**ANSWER:**    Ford denies that Plaintiff called the hotline as alleged.  Ford is without knowledge or information sufficient to either admit or deny what Plaintiff Ledbetter told a UAW Representative and therefore denies the allegation.  Ford denies all remaining allegations in paragraph 428.

429.    Although Plaintiff was moved back to the Spill-out Department after complaining, Ford continued to condone discrimination and retaliation in the workplace.

**ANSWER:**     Ford denies the allegations in paragraph 429.


430.     Alexander continued sexually harassing Plaintiff and other women.

**ANSWER:**     Ford denies the allegations in paragraph 430.


431.     Plaintiff complained that Alexander should stop trying to touch and sexual harass her.

**ANSWER:**     Ford denies the allegations in paragraph 431.


432.     Alexander told Plaintiff that he was going to continue doing whatever he wanted to women and that unless she retired, he was going to eventually grope her buttocks and there was nothing she could do to stop him.

**ANSWER:**     Ford denies the allegations in paragraph 432.


433.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**     Ford denies the allegations in paragraph 433.


434.     When Plaintiff repeatedly complained, Supervisors Lux and Alexander intended to make Plaintiff's workplace conditions so intolerable that it would force her to resign/retire.

**ANSWER:**     Ford denies the allegations in paragraph 434.


435.     Because of the hostile workplace environment Plaintiff experienced from ongoing sexual harassment, discrimination and retaliation, Plaintiff's workplace conditions were so

unusually adverse that a reasonable employee in her position would have felt compelled to resign/retire.

**ANSWER:** Ford denies the allegations in paragraph 435.

436. As a result of Defendant's retaliation, Plaintiff was constructively discharged from her employment.

**ANSWER:** Ford denies the allegations in paragraph 436.

437. The repeated retaliatory acts by Ford's supervisory personnel in response to Plaintiff's repeated complaints constitute materially adverse employment actions.

**ANSWER:** Ford denies the allegations in paragraph 437, including but not limited to the allegation that Plaintiff Ledbetter was subject to retaliatory acts.

438. Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:** Ford denies the allegations in paragraph 438, including but not limited to the allegation that Plaintiff Ledbetter has been subject to adverse employment actions.

439. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:** Ford denies the allegations in paragraph 439 and denies that Plaintiff Ledbetter is entitled to any recovery.

**COUNT 33**
**TITLE VII-RETALIATION**
**(LATRICIA SHANKLIN)**

440.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:** Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

441.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid, foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 441.

442.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 442.

443.    In 2013, Plaintiff repeatedly complained about sexual harassment from her Supervisors to Human Resources Manager Terrance McClain.

**ANSWER:**    Ford denies the allegations in paragraph 443.

444.    McClain did not appear to actively pursue investigations into Plaintiff's sexual harassment complaints.  Rather, McClain also made sexual passes at the Plaintiff and sexually assaulted her.

**ANSWER:**    Ford denies the allegations in paragraph 444.

445.     When Superintendent Myron Alexander sexually assaulted Plaintiff in an upstairs office at Ford, in 2014, Alexander threatened that Plaintiff would be terminated if she complained to Labor Relations or the EEOC.

**ANSWER:**     Ford denies the allegations in paragraph 445.

446.     This threat of termination constitutes a retaliatory act against Plaintiff and constitutes a materially adverse employment action.

**ANSWER:**     Paragraph 446 states a legal conclusion, to which no responsive pleading is required. To the extent a response is required, Ford denies the allegations in paragraph 446.

447.     Plaintiff complained to the sexual harassment hotline and to Labor Relations about Supervisors Brian Hubbard, Myron Alexander and Terrance McClain sexually harassing her.

**ANSWER:**     Ford admits that Plaintiff Shanklin called the hotline on May 1, 2015, the same day that the First Amended Complaint in this action was filed and complained about Brian Hubbard, Terrance McClain, and "Myron." Ford denies all remaining allegations in paragraph 447.

448.     Plaintiff's regular position is as a "Prep-Polisher."

**ANSWER:**     Ford admits that Plaintiff Shanklin has been assigned a job identified as "Polisher," but denies all remaining allegations in paragraph 448.

449.     Prior to complaining about sexual harassment, Plaintiff was occasionally asked to fill-in and perform duties as a "Driver" in the Pre-delivery Department of Ford's Assembly Plant.

**ANSWER:**    Ford is without knowledge or information sufficient to admit or deny whether she was occasionally asked to work in a driver position and therefore denies the allegations.  Ford denies all remaining allegations in paragraph 449.

450.    When Plaintiff was permitted to occasionally work as a Driver in Pre-delivery, she was given increased earning opportunities, as she and other Drivers were permitted to work through lunch and breaks − thus receiving more hours and overtime hours in a day.

**ANSWER:**    Ford is without knowledge or information sufficient to admit or deny whether she was occasionally asked to work in a driver position and therefore denies the allegations.  Ford denies all remaining allegations in paragraph 450.

451.    After Plaintiff complained about sexual harassment and joined this lawsuit, she has been denied any opportunities to work as a Driver.

**ANSWER:**    Ford denies the allegations in paragraph 451, and further states that job assignments are determined based on a variety of legitimate factors, but not protected activity.

452.    Plaintiff asked Supervisor Kim Simms why she was not allowed to work as a Driver any more.

**ANSWER:**    Ford is without knowledge or information sufficient to admit or deny whether Plaintiff Shanklin questioned Sims and therefore denies the allegations in paragraph 452.

453.    Simms told Plaintiff that Hubbard instructed Plaintiff not be allowed to perform the Driver position.

**ANSWER:**    Ford denies the allegations in paragraph 453.

454.    In retaliation for Plaintiff complaining about sexual harassment, Hubbard retaliated against Plaintiff and has barred her from ever receiving an opportunity to work as a Driver.

**ANSWER:**    Ford denies the allegations in paragraph 454.

455.    In further retaliation for Plaintiff complaining, Hubbard subjected Plaintiff's daughter (who also works at Ford) to unfair scrutiny and discipline until Plaintiff's daughter was terminated.

**ANSWER:**    Ford denies the allegations in paragraph 455.

456.    After Plaintiff complained, she experienced retaliation as stated in the aforementioned paragraphs which constitute lost economic opportunity and unbearable changes in her job conditions equating to a hostile work environment.

**ANSWER:**    Ford denies the allegations in paragraph 456, including but not limited to the allegations that Plaintiff Shanklin was subject to retaliation or a hostile work environment.

457.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 457, including but not limited to the allegation that Plaintiff Shanklin was subject to adverse employment action.

458.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 458, and denies that Plaintiff Shanklin is entitled to any recovery.

**COUNT 34**
**TITLE VII-RETALIATION**
**(ANTOINETTE SULLIVAN)**

459.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

460.    Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:**    Ford denies the allegations in paragraph 460 .

461.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:**    Ford denies the allegations in paragraph 461.

462.    Plaintiff complained about sexual harassment on numerous occasions including to her UAW Representative John, to Ford's sexual harassment hotline, and to Labor Relations Representative Natalie Dahrenger.

**ANSWER:**    Ford admits that Plaintiff Sullivan complained at various times to the hotline and to Labor Relations.  Ford denies all remaining allegations in paragraph 462.

463. From mid-July, 2012-December, 2012, Plaintiff repeatedly met with Dahrenger, but during this time period, Dahrenger refused to discuss sexual harassment and only wanted to discuss Plaintiff's recent carpal tunnel surgery.

**ANSWER:** Ford denies the allegations in paragraph 463.

464. Plaintiff had received wrist surgery in May, 2012 and had returned to work following her surgery.

**ANSWER:** Ford admits the allegations in paragraph 464.

465. Plaintiff had been placed back on the line and had been capably performing the job to which she was assigned for weeks.

**ANSWER:** Ford admits that Plaintiff Sullivan returned to work from a medical leave on or about May 30, 2012, with medical restrictions. Ford denies all remaining allegations in paragraph 465.

466. Despite that Plaintiff had demonstrated her ability to capably perform her job, Dahrenger and Ford refused to allow Plaintiff to continue performing her job and terminated her for complaining about sexual harassment.

**ANSWER:** Ford denies the allegations in paragraph 466.

467. Ford has failed to reinstate Plaintiff and failed to return her to work.

**ANSWER:** Ford admits that Plaintiff Sullivan has not been reinstated or returned to work, but states that reinstatement determinations are based on a variety of legitimate factors. Ford further avers that Sullivan voluntarily resigned from her employment. Ford denies all remaining allegations in paragraph 467.

468.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 468, including but not limited to the allegation that Plaintiff Sullivan was subject to retaliatory acts.

469.    Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 469, including but not limited to the allegation that Plaintiff Sullivan was subject to adverse employment actions.

470.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 470 and denies that Plaintiff Sullivan is entitled to any recovery.

## COUNT 35
## TITLE VII-RETALIATION
### (DERRICKA THOMAS)

471.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

472.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER:** Ford denies the allegations in paragraph 472.

473. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**ANSWER:** Ford denies the allegations in paragraph 473.

474. In retaliation for complaining about her supervisors and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints regarding sexual harassment and discrimination, Ford retaliated against this Plaintiff in the following ways:

a. Plaintiff was subjected to increased performance scrutiny relative to employees who did not complain.

b. In January, 2016, Plaintiff's Supervisor Pryor − the same Supervisor that laughed about Plaintiff and her co-worker Tiffany's sexual harassment complaints − retaliated against Plaintiff for complaining and caused Plaintiff to be sent home two hours early without pay.

c. After Plaintiff complained about sexual harassment and encouraged other women, including Tiffany to complain, Supervisor Pryor has retaliated against Plaintiff by writing her up three times and attempted to have her suspended without pay for three days.

d. Pryor did not write-up similarly situated non-complaining employees for trivial issues.

e.    Prior has identified Plaintiff as a "complainer" to other Supervisors, including Superintendent Miller and Supervisors Jennifer and Peggy.

i.    Supervisor Peggy has repeatedly told Plaintiff that she was going to be written up trivial issues including that her hair was unkept or her clothing was inappropriate.

ii.    Plaintiff confirmed with her UAW representative each time that her hair and clothing were appropriate.

iii.    Supervisor Peggy subsequently verbally apologized to Plaintiff and stated that there were continuing demands "from the top" that she continue to scrutinize the Plaintiff.

f.    Plaintiff's Supervisors have told other co-workers to "stay away" and "don't help" Plaintiff.  Plaintiff receives significantly less support and job training than other women that have not complained.

g.    Similar to retaliatory tactics used with other short statured women who complained, Plaintiff, 5'3", has been reassigned to a job hooking up wires on a car moving overhead.

i.    This job requires Plaintiff to stand on her tip-toes − a job that is extremely difficult − if not impossible − for a short-statured person to perform.

ii.    Supervisor Conrad has admitted to Plaintiff that the job is for "a much taller person."

**ANSWER:**    Ford admits that Plaintiff Derricka Thomas was disciplined at various times for various reasons, but Ford denies that Plaintiff Derricka Thomas was disciplined unfairly or that any discipline was based on her engagement in protected

activity. Ford avers that job assignments are determined based on a variety of legitimate factors, but not on protected activity. Ford denies all remaining allegations in paragraph 475, including but not limited to subparagraphs (a)-(g) and all subparts.

475. The aforementioned acts caused Plaintiff lost economic opportunity and unbearable changes in her job conditions that constitute a hostile work environment.

**ANSWER:** Ford denies the allegations in paragraph 475, including but not limited to the allegation that Plaintiff Derricka Thomas was subject to a hostile work environment.

476. Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:** Ford denies the allegations in paragraph 476, including but not limited to the allegation that Plaintiff Derricka Thomas was subject to retaliatory acts.

477. Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER:** Ford denies the allegations in paragraph 477, including but not limited to the allegation that Plaintiff Derricka Thomas was subject to adverse employment actions.

478. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:** Ford denies the allegations in paragraph 478 and denies that Plaintiff Derricka Thomas is entitled to any recovery.

## COUNT 36
## <u>TITLE VII-RETALIATION</u>
## (NICHEA WALLS)

479.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

**<u>ANSWER</u>:**    Ford incorporates its responses to paragraphs 1 through 128 as if fully set forth herein.

480.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

**<u>ANSWER</u>:**    Ford denies the allegations in paragraph 480.

481.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

**<u>ANSWER</u>:**    Ford denies the allegations in paragraph 481.

482.    Plaintiff, 5'3", is currently working in a "floating" position at Ford.

**<u>ANSWER</u>:**    Ford is without knowledge or information sufficient to admit or deny the allegations regarding Plaintiff Walls's height and therefore denies the same.   Ford further avers that Plaintiff Walls is classified as an assembler. Ford denies all remaining allegations in paragraph 482.

483.    Supervisor Rich Basaga oversees "manpower" at the Assembly Plant and is responsible for assigning "floating" employees, including Plaintiff to jobs and/or departments in need of additional help.

**ANSWER:**    Ford denies the allegations in paragraph 483.  Ford avers that, as a Senior Process Coach, Bisaga has some manpower responsibilities for employees in his department and on his shift.

484.    Basaga is close friends with Supervisor Mike Reese − one of Plaintiff's sexual harassers, as stated in more detail elsewhere in this Complaint.

**ANSWER:**    Ford denies the allegations in paragraph 484.

485.    Before Plaintiff became a member of this lawsuit, she was assigned to positions that were ergonomically suited for her short stature.

**ANSWER:**    Ford is without knowledge or information sufficient to admit or deny the allegations as to the positions to which Plaintiff claims she was assigned as the positions are not identified and therefore denies the same.  Ford avers that it assigns employees to jobs that are consistent with their medical restrictions, if any.  Ford further avers that employees may be given different job assignments within their classifications for a variety of legitimate, business-related reasons, but not for engagement in protected activity.  Ford denies all remaining allegations in paragraph 485.

486.    In retaliation for Plaintiff becoming a member of this lawsuit and in retaliation for Plaintiff complaining about Supervisor Mike Reese's sexual harassment, Basaga has retaliated against Plaintiff by:

a.       repeatedly using lower-seniority employees to cover positions that were ergonomically suited for a woman of Plaintiff's short stature, including positions she was most familiar with such as "Headlight Aiming," "Shuffler" and 'Inspector."

b.       repeatedly assigning Plaintiff to less-desirable positions for her that were not ergonomically appropriate for a person of Plaintiff's short stature including positions Plaintiff was not familiar with such as "VIN Stamping" and "Brake-Line Fill."

i.       VIN Stamping involves an employee using a torque-wrench mechanism which was elevated above Plaintiff's head and was extremely difficult for her to maneuver.

(1)       Plaintiff was required to jump to pull down on the torque lever.

(2)       In addition, the platform on which the stamp itself was on was out-of-sight for a short employee like the Plaintiff.

(3)       A short employee performing that job − at least under the current set-up − does so blindly.

(4)       A short employee performing that job experiences a greater risk of injury.

(5)       Basaga intended that Plaintiff would become injured or fail in the VIN Stamping position and constantly watched and scrutinized Plaintiff's performance.

ii.       Brake-Line Fill requires an employee with long arms to reach inside a vehicle to connect wires and hosing.

195

        (1)     An employee with short arms performing the Brake Line Fill job experiences a greater risk of injury.

        (2)     Basaga intended that Plaintiff would become injured or fail in the Brake Line Fill position and constantly watched and scrutinized Plaintiff's performance.

**ANSWER:**   Ford denies the allegations in paragraph 486, including subparagraphs (a)-(b) and all subparts thereof.

487.   Employees who did not complain were not [*sic*] subjected to increased performance scrutiny, ergonomically inappropriate work assignments or increased risk of workplace injury.

**ANSWER:**   Ford denies the allegations in paragraph 487, including but not limited to the allegations that Plaintiff Walls was subject to the conduct alleged.

488.   Plaintiff suffered neck and shoulder injuries as a result of the ergonomically inappropriate position assignments and is undergoing costly medical treatment and physical therapy and diminished economic opportunity due to being forced to take a medical leave.

**ANSWER:**   Ford denies the allegations in paragraph 488.

489.   The aforementioned retaliatory acts caused Plaintiff to experience pervasive, unbearable changes in her job conditions after she complained which equate to a hostile work environment.

**ANSWER:**   Ford denies the allegations in paragraph 489, including but not limited to the allegation that Plaintiff Walls was subject to retaliatory acts or a hostile work environment.

490.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 490, including but not limited to the allegation that Plaintiff Walls was subject to retaliatory acts.

491.    Plaintiff's complaints and joining this lawsuit led to or were a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 491, including but not limited to the allegation that Plaintiff Walls was subject to adverse employment actions.

492.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 492 and denies that Plaintiff Walls is entitled to any recovery.

## COUNT 37
## TITLE VII - NATIONAL ORIGIN DISCRIMINATON
### (DANIELLE KUDIRKA)

493.    Plaintiff adopts, realleges and incorporates by reference the allegations of paragraphs 1-82 of this Amended Complaint.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 82 as if fully set forth herein.

494.    Plaintiff's national origin is Lithuanian.

**ANSWER:**    Ford is without knowledge or information sufficient to admit or deny the

allegations in paragraph 494 and therefore denies the same.

495.    Plaintiff's work performance meets Ford's legitimate expectations.

**ANSWER:**    Ford denies the allegations in paragraph 495.

496.    Plaintiff experienced discrimination based on her national origin at Ford, including that:

a.    Plaintiff's supervisors and co-workers mocked Plaintiff's Lithuanian accent and heritage;

b.    Plaintiff's supervisors and co-workers communicated to Plaintiff that she was inferior for not being born in America;

c.    Plaintiff's supervisors gave preferences to American-born workers who did not have a Lithuanian accent, including more desirable job assignments and more overtime hours;

d.    Plaintiff was told she was not eligible for the most desirable work assignments because she was foreign" and "dumb."

**ANSWER:**    Ford denies Plaintiff's allegations in paragraph 496, including subparagraphs (a) – (d).

497.    Due to the continuous and ongoing discriminatory treatment, Plaintiff was humiliated and the terms and conditions of her employment were materially adversely affected.

**ANSWER:**    Ford denies Plaintiff's allegations in paragraph 497.

498.    Plaintiff complained about national origin discrimination to Ford through her supervisors, union, Ford's hotline and Ford's Labor Relations Department.

**ANSWER:** Ford admits that Plaintiff Kudirka reported certain concerns during her employment at Ford. Ford denies all remaining allegations in paragraph 498.

499. Despite Plaintiff's Complaints, Ford has not taken prompt remedial action to stop ongoing national origin discrimination against Plaintiff.

**ANSWER:** Ford denies the allegations in paragraph 499.

500. Ford told Plaintiff to stop complaining and to stop seeking requesting more desirable work assignments which deprived Plaintiff of future promotional opportunities.

**ANSWER:** Ford denies the allegations in paragraph 500.

501. When Plaintiff complained, she was further demeaned, discriminated against and told to stop trying to improve her job opportunities because "you should be very happy you have a job at Ford" and "most immigrants cannot get this job."

**ANSWER:** Ford denies the allegations in paragraph 501.

502. As a result of illegal national origin discrimination, Plaintiff has suffered adverse employment actions, including reduced overtime opportunities, lost opportunities for job advancement and promotions, and being relegated to less desirable job positions.

**ANSWER:** Ford denies the allegations in paragraph 502.

503. As a direct and proximate result of the foregoing acts of national origin discrimination, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 503, and denies that Plaintiff Kudirka is entitled to any recovery.

## COUNT 38
## ADA − FAILURE TO ACCOMMODATE / RETALIATION
### (CHRISTIE VAN)

504.    Plaintiff adopts, realleges and incorporates by reference the allegations of paragraphs 1-173 of this complaint as and for this paragraph.

**ANSWER:**    Ford incorporates its responses to paragraphs 1 through 173 as if fully set forth herein.

505.    This claim is brought under the Americans with Disabilities Act, as amended ("ADA").

**ANSWER:**    Ford admits only that Plaintiff Van asserts a claim under the ADA. Ford denies that it has violated the ADA.

506.    Plaintiff is a qualified individual with a disability (Major Depression, and Severe and Generalized Anxiety Disorder) all of which were caused by the harassment and discrimination she endured at Ford.

**ANSWER:**    Ford denies the allegations in paragraph 506.

507.    As a result of her condition, Plaintiff took a medical leave of absence.

**ANSWER:**    Ford admits only that Plaintiff has taken one or more medical leaves of absence during her employment at the Chicago Assembly and Chicago Stamping Plants. Ford denies all remaining allegations in paragraph 507.

508.    Thereafter, while on leave, Ford required Plaintiff to be examined by a company doctor and to submit to multiple IMEs, including one with Dr. Alexander Obolsky from the Northwestern Medical Faculty Foundation.

**ANSWER:**    Ford admits that Plaintiff Van was sent for a medical examination with Dr. Alexander Obolsky and that the medical examination was conducted in more than one session with Dr. Obolosky.  Ford denies all remaining allegations in paragraph 508.

509.    Dr. Obolsky released Van to return to work with the only restriction being that Ford should not place Van in proximity to her harassers.

**ANSWER:**    Ford denies the allegations in paragraph 509.

510.    Ford refused to return Van to work despite the return being authorized by its own physician.

**ANSWER:**    Ford admits that Plaintiff Van did not immediately return to work following the completion of the medical examination by Dr. Obolsky.  Ford denies all remaining allegations in paragraph 510.

511.    Van was forced to file a grievance and take the matter to arbitration to win her job back.

**ANSWER:**    Ford admits that Plaintiff Van filed a grievance under the terms of the collective bargaining agreement concerning her return to work following the medical examination by Dr. Obolsky.  Ford admits that an arbitrator decided the grievance in Plaintiff Van's favor. Ford denies all remaining allegations in paragraph 511.

512.    The arbitrator ruled in Van's favor and against Ford at the arbitration.

**ANSWER:**    Ford admits the allegations in paragraph 512.

513.    Ford has knowledge of Plaintiff's disability.

**ANSWER:**    Ford denies the allegations in paragraph 513.  Ford further states that the allegation of disability is a legal conclusion to which no responsive pleading is required.

514.    Plaintiff requested a reasonable accommodation − that she be allowed to work without being directly supervised by the same sexual harassers about whom she previously complained.

**ANSWER:**    Ford denies the allegations in paragraph 514.

515.    Ford refused to engage in an interactive process and refused to provide Plaintiff with the reasonable accommodation she requested.

**ANSWER:**    Ford denies the allegations in paragraph 515.

516.    Ford forced Plaintiff to pay for the costs associated with the medical visits for the IMEs which Ford required.

**ANSWER:**    Ford denies the allegations in paragraph 516.

517.    Ford required plaintiff to undergo IMEs on September 24, 2013, September 30, 2013 and October 8, 2013.

**ANSWER:**    Ford admits that Plaintiff Van attended appointments with Dr. Obolsky on September 24, 2013, September 30, 2013 and October 8, 2013.  Ford further avers that Plaintiff Van attended an appointment with Dr. Obolsky on December 13, 2013.  Ford denies all remaining allegations in paragraph 517.

518. Thereafter, Ford withheld and refused to provide plaintiff with the results of the IMEs for more nearly four months, thus delaying her return to work and denying Plaintiff her wages and benefits.

**ANSWER:** Ford denies the allegations in paragraph 518.

519. As a direct and proximate result of the foregoing acts of disability discrimination and failure to reasonably accommodate the Plaintiff, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:** Ford denies the allegations in paragraph 519 and denies that Plaintiff Van has suffered any recoverable damages or that she is entitled to any recovery.

## ALLEGATIONS COMMON TO PLAINTIFFS' INTENTIONAL TORT CLAIMS AND COUNTS 39 TO 61 (BATTERY) AND COUNTS 62 TO 92 (ASSAULT)

Ford has contemporaneously filed a Motion to Dismiss Counts 39 to 92 of the SAC. Accordingly, no response is required to paragraphs 520 to 814 at this time. Ford will plead in response to Counts 39-92, if necessary, following ruling on Ford's renewed partial motion to dismiss.

## COUNT 93
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (CHRISTIE VAN)
### (PRESERVED FOR APPEAL)

815. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-173, 504-549 and 660-664 as and for this paragraph.

816.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

817.     Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

818.     Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

819.     As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER:**     Answering paragraphs 815-819, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 93 and incorporates is prior responses to the paragraphs cited in paragraph 815.

**COUNT 94**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CHARMELLA LEVIEGE)**
**(PRESERVED FOR APPEAL)**

820.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 174-181,520-544 and 550-554 and 665-669 as and for this paragraph.

821.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

822.     Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

823.    Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

824.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER:**    Answering paragraphs 820-824, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 94 and incorporates is prior responses to the paragraphs cited in paragraph 820.

**COUNT 95**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(MARIA PRICE)**
**(PRESERVED FOR APPEAL)**

825.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 182-190, 520-544, 555-559 and 670-674 as and for this paragraph.

826.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

827.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

828.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

829.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER:**    Answering paragraphs 825-829, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 95 and incorporates is prior responses to the paragraphs cited in paragraph 825.

**COUNT 96**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(HELEN ALLEN)**
**(PRESERVED FOR APPEAL)**

830.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 191-197, 520-544, 560-564 and 675-679 as and for this paragraph.

831.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

832.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

833.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

834.    As a result of Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 830-834, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 96 and incorporates is prior responses to the paragraphs cited in paragraph 830.

**COUNT 97**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(THERESA BOSAN)**
**(PRESERVED FOR APPEAL)**

835.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-128, 205-214, 565-569 and 680-684 as and for this paragraph.

836.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

837.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

838.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

839.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 835-839, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 97 and incorporates is prior responses to the paragraphs cited in paragraph 835.

**COUNT 98**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(SHRANDA CAMPBELL) (PRESERVED FOR APPEAL)**

840.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162,520-544,570-574 and 685-689 as and for this paragraph.

841.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

842.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

843.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

844.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 840-844, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 98 and incorporates is prior responses to the paragraphs cited in paragraph 840.


**COUNT 99**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(KETRUAH CARTER)**
**(PRESERVED FOR APPEAL)**

845.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 222-236, 520-544, 575-579 and 690-694 as and for this paragraph.

846.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

847.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

848. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

849. As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**: Answering paragraph 845-849, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 99 and incorporates is prior responses to the paragraphs cited in paragraph 845.


## COUNT 100
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (MICHELLE DAHN)
### (PRESERVED FOR APPEAL)

850. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 237-243, 520-544, 580-584 and 695-699 as and for this paragraph.

851. Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

852. Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

853. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

854. As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 850-854, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 100 and incorporates is prior responses to the paragraphs cited in paragraph 850.

**COUNT 101**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(TONYA EXUM)**
**(PRESERVED FOR APPEAL)**

855.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 244-250, 520-544, 585-589 and 700-704 as and for this paragraph.

856.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

857.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

858.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

859.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress, including Post Traumatic Stress Disorder and was damaged.

**ANSWER**:    Answering paragraph 855-859, Ford states that no responsive pleading is required.  The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 101 and incorporates is prior responses to the paragraphs cited in paragraph 855.

## COUNT 102
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
### (JEANNETTE GARDNER)
### (PRESERVED FOR APPEAL)

860.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 251-257, 520-544, 590-594 and 705-709 as and for this paragraph.

861.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

862.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

863.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

864.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**<u>ANSWER</u>**:    Answering paragraph 860-864, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 102 and incorporates is prior responses to the paragraphs cited in paragraph 860.

## COUNT 103
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
### (ARLENE GOFORTH)
### (PRESERVED FOR APPEAL)

865.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 258-264, 520-544, 595-599 and 710-714 as and for this paragraph.

866.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

867.     Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

868.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

869.     As a result of Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:     Answering paragraphs 865-869, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 103 and incorporates is prior responses to the paragraphs cited in paragraph 865.


**COUNT 104**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CHRISTINE HARRIS)**
**(PRESERVED FOR APPEAL)**

870.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 265-271, 520-544, 600-604 and 715-719 as and for this paragraph.

871.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

872.     Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

873.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

874.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 870-874, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 104 and incorporates is prior responses to the paragraphs cited in paragraph 870.

### COUNT 105
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ORISSA HENRY)
### (PRESERVED FOR APPEAL)

875.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 272-278 and 720-724 as and for this paragraph.

876.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

877.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

878.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

879.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 875-879, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes

of appeal." To the extent a further response is required, Ford denies the allegations in Count 105 and incorporates is prior responses to the paragraphs cited in paragraph 875.

## COUNT 106
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (LAWANDA JORDAN)
### (PRESERVED FOR APPEAL)

880.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 279-298 and 725-729 as and for this paragraph.

881.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

882.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

883.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

884.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 880-884, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 106 and incorporates is prior responses to the paragraphs cited in paragraph 880.

**COUNT 107**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(DANIELLE KUDIRKA)**
**(PRESERVED FOR APPEAL)**

885.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 299-305, 493-503, 605-609 and 520-544 and 730-734 as and for this paragraph.

886.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

887.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

888.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

889.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 885-889, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 107 and incorporates is prior responses to the paragraphs cited in paragraph 885.

## COUNT 108
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (TERRI LEWIS-BLEDSOE)
### (PRESERVED FOR APPEAL)

890.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 306-313, 520-544, 610-614 and 735-739 and 445-461 as and for this paragraph.

891.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

892.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

893.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

894.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 890-894, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 108 and incorporates is prior responses to the paragraphs cited in paragraph 890.

## COUNT 109
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (CONSTANCE MADISON)
### (PRESERVED FOR APPEAL)

895.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 520-544 and 740-744 as and for this paragraph.

216

896.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

897.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

898.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

899.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER:** Answering paragraph 895-899, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 109 and incorporates is prior responses to the paragraphs cited in paragraph 895.

**COUNT 110**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CEPHANI MILLER)**
**(PRESERVED FOR APPEAL)**

900.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 322-344, 520-544 and 745-749 as and for this paragraph.

901.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

902.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

903.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

904.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 900-904, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 110 and incorporates is prior responses to the paragraphs cited in paragraph 900.

## COUNT 111
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (MIYOSHI MORRIS)
### (PRESERVED FOR APPEAL)

905.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 345-351, 520-544, 615-619 and 750-754 as and for this paragraph.

906.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

907.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

908.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

909.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 905-909, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes

of appeal." To the extent a further response is required, Ford denies the allegations in Count 111 and incorporates is prior responses to the paragraphs cited in paragraph 905.

## COUNT 112
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (STEPHANIE SZOT)
### (PRESERVED FOR APPEAL)

910.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 352-358, 520-544, 620-624 and 755-759 as and for this paragraph.

911.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

912.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

913.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

914.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 910-914, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 112 and incorporates is prior responses to the paragraphs cited in paragraph 910.

## COUNT 113
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (SHIRLEY THOMAS-MOORE)
### (PRESERVED FOR APPEAL)

915.　The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 359-365, 520-544 and 765-769 as and for this paragraph.

916.　Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

917.　Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

918.　Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

919.　As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:　Answering paragraphs 915-919, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 113 and incorporates is prior responses to the paragraphs cited in paragraph 915.


## COUNT 114
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ROSE THOMAS)
### (PRESERVED FOR APPEAL)

920.　The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 366-372, 520-544 and 770-774 as and for this paragraph.

921.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

922.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

923.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

924.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 920-924, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 114 and incorporates is prior responses to the paragraphs cited in paragraph 920.


**COUNT 115**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(TONI WILLIAMS)**
**(PRESERVED FOR APPEAL)**

925.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 373-381, 520-544 and 775-779 as and for this paragraph.

926.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

927.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

928.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

929.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 925-929, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 115 and incorporates is prior responses to the paragraphs cited in paragraph 925.

**COUNT 116**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(BERNADETTE CLYBURN)**
**(PRESERVED FOR APPEAL)**

930.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 382-388, 520-544 and 780-784 as and for this paragraph.

931.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

932.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

933.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

934.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:     Answering paragraph 930-934, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 116 and incorporates is prior responses to the paragraphs cited in paragraph 930.

### COUNT 117
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (MARTHA CORBIN)
### (PRESERVED FOR APPEAL)

935.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 520-544, 625-629 and 785-789 as and for this paragraph.

936.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

937.     Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

938.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

939.     As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:     Answering paragraph 935-939, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 117 and incorporates is prior responses to the paragraphs cited in paragraph 935.

## COUNT 118
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ANGELA GLENN)
### (PRESERVED FOR APPEAL)

940. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 389-403, 520-544, 630-634, and 790-794 as and for this paragraph.

941. Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

942. Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

943. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

944. As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 940-944, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 118 and incorporates is prior responses to the paragraphs cited in paragraph 940.

## COUNT 119
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (LAD WYNA HOOVER)
### (PRESERVED FOR APPEAL)

945. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 404-410, 520-544, 635-639 and 795-799 as and for this paragraph.

946.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

947.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

948.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

949.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 945-949, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 119 and incorporates is prior responses to the paragraphs cited in paragraph 945.


**COUNT 120**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(OGERY LEDBETTER)**
**(PRESERVED FOR APPEAL)**

950.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 411-439, 520-544, 640-644 and 800-804 as and for this paragraph.

951.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

952.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

953.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

954.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraph 950-954, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 120 and incorporates is prior responses to the paragraphs cited in paragraph 950.


**COUNT 121**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(LATRICIA SHANKLIN)**
**(PRESERVED FOR APPEAL)**

955.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 440-458, 520-544 and 760-764 as and for this paragraph.

956.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

957.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

958.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

959.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 955-959, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 121 and incorporates is prior responses to the paragraphs cited in paragraph 955.

## COUNT 122
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (DERRICKA THOMAS)
### (PRESERVED FOR APPEAL)

960.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 471-478, 520-544, 645-649 and 805-809 as and for this paragraph.

961.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

962.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

963.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

964.    As a direct and proximate result of the Defendants conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:    Answering paragraphs 960-964, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 122 and incorporates is prior responses to the paragraphs cited in paragraph 960.

## COUNT 123
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (NICHEA WALLS)
### (PRESERVED FOR APPEAL)

965.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 479-492, 520-544, 650-654 and 810-814 as and for this paragraph.

966.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

967.     Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

968.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

969.     As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:     Answering paragraphs 965-969, Ford states that no responsive pleading is required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes of appeal." To the extent a further response is required, Ford denies the allegations in Count 123 and incorporates is prior responses to the paragraphs cited in paragraph 965.

970.     Ford denies each and every allegation in the SAC not specifically admitted herein.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the plaintiff and Plaintiff's similarly situated persons, respectfully request that this Court provide the following equitable and monetary relief:

a.   Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.   Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

c.   Enjoin Ford from discriminating against or harassing the Named Plaintiff and Ford's employees;

d.   Appoint a monitor to supervise workplace conditions in each plant for a period of at least five (5) years;

e.   Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

f.   Award back pay, lost future earnings, and reimbursement for lost income and for lost fringe benefits;

g.   Award compensatory damages;

h.   Award liquidated damages, if applicable;

i.   Award punitive damages;

j.   Award prejudgment interest;

k.   Award reasonable attorney's fees, expert witness fees, expenses and Plaintiffs costs;

l.   Grant such Plaintiffs relief as the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

**ANSWER**:   Ford denies that Plaintiffs and Plaintiffs' similarly situated persons are entitled to any of the relief requested in the SAC, including in the "Prayer for Relief."   Ford

admits that Plaintiffs and Plaintiffs' similarly situated persons seek a trial by jury on claims so triable.

## FURTHER ANSWER AND DEFENSES

In addition to the denials set forth above, Ford asserts the following defenses. In pleading these defenses, Ford does not admit that it bears the burden of proof, production or persuasion on such defenses. Further, Ford reserves the right to amend its Answer, to add or delete defenses, and to add such counterclaims as may become necessary after reasonable opportunity for investigation and discovery.

1.      The SAC, in whole or in part, fails to state a claim upon which relief can be granted because Plaintiffs cannot satisfy each of the elements of the causes of action asserted, including hostile work environment (gender and race), gender discrimination, race discrimination, retaliation, national origin discrimination, disability discrimination, civil battery, civil assault, and intentional infliction of emotional distress ("IIED") under applicable law.

2.      Plaintiffs' claims under Title VII are barred in whole or in part to the extent Plaintiffs failed to satisfy administrative prerequisites to filing suit, including but not limited to timely filing an administrative charge and/or timely filing suit after receiving notice of the right to sue. For example, certain Plaintiffs failed to file EEOC charges asserting their claims before this lawsuit.

3.      Plaintiffs' Title VII claims are barred to the extent relief is sought for alleged acts outside the scope of the charges of discrimination on which they rely for their Title VII claims in this lawsuit.

4.      Plaintiffs' claims are barred, in whole or in part, by applicable limitations periods, to the extent they assert liability claims from before the start of such limitations periods. For

example, a Plaintiff failing to file an appropriate EEOC charge within 300 days of any alleged violation may not assert such claims under Title VII.

5.      Plaintiffs' claims may be barred in whole or in part by reason of their own actions or course of conduct under the doctrines of estoppel, waiver, or unclean hands.  For example, to the extent a Plaintiff has misrepresented the value of and/or failed to disclose her alleged claims in this suit to a bankruptcy court, she is estopped or otherwise barred from pursuing such claims.

6.      Plaintiffs' claims cannot be properly joined with the claims of any potential class members because each Plaintiff's claims involve highly individualized facts and circumstances.

7.      Some or all Plaintiffs lack standing to bring claims on behalf of putative class members with respect to the asserted class claims.  A Plaintiff may lack standing because she did not suffer an injury in fact or because there is no causal connection between asserted injury and Defendant's acts.

8.      Plaintiffs' claims are barred to the extent they have failed to mitigate damages or otherwise avoid harm, and any recovery must be reduced accordingly.  For example, to the extent any Plaintiff was discharged, she could mitigate damages by promptly seeking employment with another employer.

9.      Each Plaintiff's damages, if any, were caused by her own actions or failure to act or otherwise caused by individuals or events over whom/which Defendant had no control.

10.     Plaintiffs' hostile work environment claims are barred in whole or in part to the extent Plaintiffs cannot show that Ford knew or should have known of alleged harassment and failed to take prompt and effective remedial action.

11.     Alternatively, Plaintiffs' hostile work environment claims are barred because Ford acted reasonably in accordance with Ford's policies by exercising reasonable care to prevent and

promptly correct any alleged harassing behavior, and Plaintiffs unreasonably or untimely failed to avail themselves of preventive or corrective opportunities provided, or otherwise failed to avoid harm.

12. Plaintiffs' hostile work environment claims are barred to the extent that alleged tangible, adverse employment actions were not causally related to the alleged conduct of any Ford salaried personnel as set forth in the SAC.

13. Plaintiffs' claims are barred to the extent the acts about which Plaintiffs complain do not constitute adverse employment actions or tangible adverse employment actions under applicable law.

14. Plaintiffs' claims are barred because the employment actions complained of herein were based upon legitimate, non-discriminatory and non-retaliatory reasons. Alternatively, Ford would have taken the same employment actions in any event for legitimate reasons and/or reasons based on business necessity.

15. Any recovery of damages for purported violations of Title VII or the Americans with Disabilities Act are limited to the statutory maximum under applicable law.

16. Plaintiffs' claims for damages should be offset or reduced to the extent such claimed damages are compensated by other sources or caused by events unrelated to Defendant's conduct.

17. To the extent any alleged intentional discriminatory and/or wrongful conduct was committed by Defendant's agents (which Defendant denies), said conduct was outside the scope of the agent's authority and was contrary to Defendant's good faith efforts to comply with applicable law.

18.    Defendant is not liable for punitive damages because employment actions about which Plaintiffs complain were taken consistent with the collective bargaining agreement.

19.    Plaintiffs are not entitled to punitive damages, and any award of punitive damages may violate the U.S. Constitution and/or the Illinois Constitution, because Ford did not commit any malicious act against Plaintiffs or with reckless indifference to the rights of Plaintiffs.

20.    Plaintiffs' claims for punitive damages are barred because Ford engaged in good faith efforts to comply with Title VII.

21.    Plaintiffs' claims for punitive damages are barred because no salaried personnel of Ford acted with the requisite mental state toward any Plaintiff.

22.    To the extent allegations in this case relate to events that purportedly occurred years before this lawsuit was filed, the passage of time has prejudiced Ford because, among other things, witnesses' recollection of events have dimmed, witnesses are no longer employed by Ford or available for purposes of discovery or trial.  Accordingly, evidence in support of any such claims and any relief requested is barred by the doctrine of laches.

23.    Plaintiffs are not entitled to certification of this action as a class action because Plaintiffs are unable to establish each element necessary under Fed. R. Civ. P. 23.

24.    The certification of the class or classes requested by Plaintiffs under Fed. R. Civ. P. 23(b)(2) is inappropriate in light of Plaintiffs' request for monetary and/or compensatory damages.

25.    Plaintiffs' alleged claims cannot be certified for classwide adjudication under Fed. R. Civ. P. 23 to the extent that such adjudication would enlarge, modify or abridge any substantive right placed at issue in this case, in violation of the Rules Enabling Act, 28 USC § 2072.

26.     Plaintiffs' alleged claims cannot be certified for classwide adjudication under Fed. R. Civ. P. 23 to the extent that such adjudication would deprive Ford of its legal right to present every available defense to the asserted claims in the SAC, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

27.     Plaintiffs' alleged claims cannot be certified for classwide adjudication under Fed. R. Civ. P. 23 to the extent that such adjudication would call for multiple jury trials, in violation of the Seventh Amendment to the U.S. Constitution.

28.     Plaintiffs' claims are barred to the extent they fail to plead or prove elements of such claims in accordance with Court Orders under the law of the case doctrine.

29.     Any Plaintiff's disability claims are barred because such Plaintiff does not have, did not have and/or was not regarded or perceived as having a "disability" under the Americans with Disabilities Act.

30.     Ford reasonably accommodated any disability alleged by a Plaintiff by placing her in a position within the medical restrictions she had presented to Ford.

31.     Any Plaintiff's disability claims may be barred because an employer like Ford is not required to make a reasonable accommodation that would impose an undue hardship.

32.     Plaintiffs' state law claims are barred under the Labor Management Relations Act to the extent such claims call for interpretation of provisions in the collective bargaining agreement.

33.     Plaintiffs' claims are barred to the extent such claims were released or waived through a signed, written agreement.

34.     Plaintiffs' state law tort claims for assault,  battery and IIED are barred because Plaintiffs' remedy, if any, for such injuries is governed by the Illinois Workers' Compensation law.[4]

35.     Any claim for equitable relief may be barred because Plaintiffs have an adequate remedy at law.

36.     Plaintiffs' state law tort claims for IIED are barred as preempted by the Illinois Human Rights Act.  *See* nt. 4 supra.

37.     To the extent that any of the Plaintiffs could have been disciplined based on evidence acquired during discovery in this case, any recovery by such Plaintiff is limited by the doctrine of after acquired evidence.

38.     Should other individuals join this case, Defendant asserts the Affirmative Defenses set forth herein with respect to such individuals.

39.     Ford reserves its right to amend and state additional defenses upon further investigation and discovery.

WHEREFORE, having fully answered the Second Amended Class Action Complaint for Injunctive, Monetary and Class Wide Relief, Defendant Ford Motor Company prays that:

A.     The Second Amended Class Action Complaint be dismissed with prejudice and that Plaintiffs take nothing thereby;

B.     Ford be awarded its costs and reasonable attorneys' fees incurred in connection with the defense of this action; and

C.     Ford be awarded such other and further relief as the Court deems just and proper.

---

[4] Since Plaintiffs have realleged their IIED claims to preserve them for appeal, Defendant asserts this defense to IIED. *See Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill.2d 150, 153, 449 N.E.2d 125 (1983).

Dated:  May 27, 2016

Respectfully submitted,

**BERKOWITZ OLIVER LLP**


By: /s/ Kathleen M. Nemechek
     Kathleen M. Nemechek, N.D. Ill. #50139
     Timothy S. Millman, N.D. Ill. #44398
     2600 Grand Boulevard, Suite 1200
     Kansas City, Missouri 64108
     Telephone:  (816) 561-7007
     Facsimile:  (816) 561-1888
     Email:     tmillman@berkowitzoliver.com

       -and-

     Karen Kies DeGrand, ARDC #6191140
     Donohue Brown Mathewson & Smyth LLC
     140 South Dearborn Street, Suite 800
     Chicago, Illinois 60603
     Telephone:  (312) 422-0910
     Facsimile:  (312) 422-0909
     Email:     karen.degrand@dbmslaw.com

     ***Attorneys for Defendant Ford Motor Co.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May 2016, I caused the foregoing to be served on counsel for all parties of record as listed below by e-mail through the Court's CM/ECF system.

> Keith L. Hunt
> Bradley E. Faber
> Hunt & Associates, P.C.
> Three First National Plaza
> Suite 2100
> Chicago, Illinois 60602
> (312) 558-1300
> khunt@huntassoclaw.com
> bfaber@huntassoclaw.com
>
> *Attorneys for Plaintiff*

                    /s/ Kathleen M. Nemechek
                    ***Attorney for Defendant Ford Motor Co.***