**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, JACQUELINE BARRON, THERESA BOSAN, SHRANDA CAMPBELL, KETURAH CARTER, MICHELLE DAHN, TONYA EXUM, JEANNETTE GARDNER, ARLENE GOFORTH, CHRISTINE HARRIS, ORISSA HENRY, LAWANDA JORDAN, DANIELLE KUDIRKA, TERRI LEWIS-BLEDSOE, CONSTANCE MADISON, CEPHANI MILLER, MIYOSHI MORRIS, STEPHANIE SZOT, SHIRLEY THOMAS-MOORE, ROSE THOMAS, TONI WILLIAMS, BERNADETTE CLYBURN, MARTHA CORBIN, ANGELA GLENN, LADWYNA HOOVER, OGERY LEDBETTER, LATRICIA SHANKLIN, ANTOINETTE SULLIVAN, DERRICKA THOMAS, and NICHEA WALLS, each individually and on behalf of all similarly situated persons,** | Case No. 1:14-CV-08708 <br><br> Honorable Robert M. Dow, Jr. <br> Honorable Sidney I. Schenkier |
| **Plaintiffs,** | |
| **v.** | |
| **FORD MOTOR COMPANY,** | |
| **Defendant.** | |

**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO EXCLUDE THE TESTIMONY, REPORTS, AND OPINIONS OF
DR. LOUISE FITZGERALD**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

LEGAL STANDARD ............................................................................................................5

ARGUMENT .........................................................................................................................6

    A.    Dr. Fitzgerald's Opinions Are Not Based On Any Valid Scientific Method ....................................................................................................................7

        1.    Dr. Fitzgerald Has Not Offered Valid "Social Framework" Opinions ...............................................................................................7

        2.    Dr. Fitzgerald's Opinions Are Not Grounded In Any Scientific Method .................................................................................................9

            a.    Dr. Fitzgerald's Opinions Are Not Based On Objective, Verifiable, Or Testable Propositions ..............................9

            b.    Dr. Fitzgerald's Conclusions About The Putative Class Are Unreliable Because They Are Not Based On Representative Data ...........................................................11

    B.    Dr. Fitzgerald's Opinions Will Not Assist The Court In Deciding Whether To Certify A Class .........................................................................13

    C.    Dr. Fitzgerald's Supplemental Declaration Must Be Excluded ...........................15

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelopoulos v. Keystone Orthopedic Specialists, S.C.*,
2017 WL 2178504 (N.D. Ill. May 16, 2017) ...........................................................................5

*In re Aqua Dots Prods. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011) ...............................................................................................15

*Barber v. United Airlines, Inc.*,
17 F. App'x 433 (7th Cir. 2000) ..........................................................................................10

*Childers v. Trustees of the University of Pennsylvania*,
2016 WL 1086669 (E.D. Pa. Mar. 21, 2016).....................................................................8, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..........................................................................................................6, 13

*EEOC v. Bloomberg L.P.*,
2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010)....................................................................8, 9

*EEOC v. Dial Corp.*,
2002 WL 31061088 (N.D. Ill. Sept. 17, 2002) ............................................................2, 11, 12

*Fail-Safe, LLC v. A.O. Smith Corp.*,
744 F. Supp. 2d 870 (E.D. Wis. 2010).................................................................................10

*In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017).......................................................................11

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)..............................................................................................................12

*Johnson v. Wyeth LLC*,
2012 WL 1204081 (D. Ariz. Apr. 11, 2012) .......................................................................15

*La Playita Cicero, Inc. v. Town of Cicero, Il.*,
2017 WL 1151066 (N.D. Ill. Mar. 28, 2017).........................................................................2

*Lees v. Carthage College*,
714 F.3d 516 (7th Cir. 2013) .................................................................................................6

*Lewis v. CITGO Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009) ..............................................................................................6, 7

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) ...................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

*McMahon v. Bunn-O-Matic Corp.*,
   150 F.3d 651 (7th Cir. 1998) ....................................................................................................13

*Messner v. Northshore Univ. HealthSystems*,
   669 F.3d 802 (7th Cir. 2012) ....................................................................................................6

*Morris v. Ford Motor Co.*,
   2012 WL 5947753 (N.D. Ind. Nov. 28, 2012) ........................................................................13

*Rapier v. Ford Motor Co.*,
   49 F. Supp. 2d 1078 (N.D. Ill. 1999) ......................................................................................11

*Smith v. Ford Motor Co.*,
   215 F.3d 713 (7th Cir. 2000) ................................................................................................1, 6

*Smith v. Union Pac. R.R.*,
   2017 WL 2656583 (N.D. Ill. June 20, 2017) ..........................................................................6

*Sullivan v. Alcatel-Lucent USA Inc.*,
   2014 WL 3558690 (N.D. Ill. July 17, 2014) ..........................................................................14

*Tuli v. Brigham & Women's Hosp., Inc.*,
   592 F. Supp. 2d 208 (D. Mass. 2009) ......................................................................................7

*United States v. Benson*,
   941 F.2d 598 (7th Cir. 1991) ........................................................................................6, 14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................7, 8, 9

*Zenith Elecs. Corp. v. WH-TV Broadcasting, Corp.*,
   395 F.3d 416 (7th Cir. 2005) ............................................................................................10, 11

**Rules**

Fed. R. Evid. 403 ..........................................................................................................................13

Fed. R. Evid. 702 ....................................................................................................................1, 5, 6

**Other Authorities**

Monahan, Walker & Mitchell, *Contextual Evidence of Gender Discrimination:*
   *The Ascendance of "Social Frameworks,"* 94 Va. L. Rev. 1715 (2008) ............................7, 8

## INTRODUCTION

In their motion seeking to certify a class of women who have worked at Ford's Chicago Assembly Plant and Chicago Stamping Plant (the "Plants"), Plaintiffs rely on the expert report of psychologist Louise Fitzgerald, Ph.D. *See* Dkt. 185 ("Mem.") at 26, 37, 42, 60, 73. Among other opinions, Dr. Fitzgerald purports to offer the "expert" opinion that the Plants are "permeated with sexual harassment of the grossest, ugliest, and most degrading kind" to which "every female employee of the plants . . . inevitably [has been] exposed." Ex. A (Fitzgerald Report) at 68. Dr. Fitzgerald reaches this sweeping conclusion despite the fact that she has not visited either Plant; has not conducted a psychological evaluation of any woman at either Plant; and has not utilized any social science survey or other scientific instrument to evaluate the experiences of any woman at either Plant. And, while Dr. Fitzgerald may be qualified as a social science researcher, she admits that she "did not do any research for this case." Ex. B (Fitzgerald Dep.) at 300:20-24.

Dr. Fitzgerald's opinions should be excluded as unreliable and irrelevant under Federal Rule of Evidence 702 for three reasons. *First*, her opinions are not based on any "recognized scientific method." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Although Dr. Fitzgerald describes her opinions as based on the "social framework" method, the originators of that method have rejected "'read the case file'" opinions like Dr. Fitzgerald's as inconsistent with proper social framework analysis. *See* Ex. C (Mitchell Report) ¶ 13. Dr. Fitzgerald's opinions also are not grounded in any other scientific process: she did not base her opinions on a sample of representative data, and she failed to use objective measures to review and code the only "data" upon which she relied—deposition testimony and documents produced in discovery. Simply put, Dr. Fitzgerald's "personal judgments are not scientific judgments," Ex. D (Mitchell Dep.) at 121:8-9, and thus, are not reliable. *Second*, Dr. Fitzgerald's speculative, personal judgments also merit exclusion because they improperly seek to invade the province of the finder-of-fact, and will not

1

assist the Court in deciding whether to certify a class. *Third*, the Court should exclude Dr. Fitzgerald's belated "supplemental" declaration criticizing the Conciliation Agreement between Ford and the EEOC because Dr. Fitzgerald is not qualified to opine on the "propriety and efficacy" of a conciliation agreement. Dkt. 157-3 ¶ 1. For all these reasons, and as set forth more fully below, Dr. Fitzgerald's testimony, reports, and opinions should be excluded in their entirety.

## STATEMENT OF FACTS

Dr. Fitzgerald is a Professor Emeritus of Psychology and Gender and Women's Studies at the University of Illinois at Urbana-Champaign. She specializes in the study of sexual harassment and often serves as an expert—almost uniformly for plaintiffs—in sexual harassment cases. Ex. A at 3; Ex. B at 69:8-14, 70:22-71:6.[1]

Notably, Dr. Fitzgerald developed the "Sexual Experiences Questionnaire" (SEQ)—a social science survey she touts as "the *only* theory-based, reliable and valid measure of the prevalence of sexual harassment in the workplace." Ex. E (VAN044266) (emphasis added). Yet, Dr. Fitzgerald did not administer the SEQ (or any other survey) to women at the Plants. *See* Ex. B at 53:12-15. While Dr. Fitzgerald explained at deposition that she would "very much have loved" to administer the SEQ in this case, she speculated that Ford would not have permitted her to "do the research in [their] plant[s]." *Id.* at 53:12-15, 58:3-8. She went on to explain that, while she is "a researcher, first and foremost," *id.* at 60:4-5, she "*did not do any research for this case*," *id.* at

---

[1] Although Dr. Fitzgerald's website declares that her "reports have never been disallowed nor [her] testimony prohibited," her testimony and reports have, in fact, been excluded or limited several times, including at least twice by judges of this Court. *See, e.g.*, *La Playita Cicero, Inc. v. Town of Cicero, Il.*, 2017 WL 1151066, at *11 (N.D. Ill. Mar. 28, 2017) (Lee, J.) (excluding opinions in part and explaining that "Fitzgerald is unqualified to give such testimony because she is not . . . a legal expert"); *EEOC v. Dial Corp.*, 2002 WL 31061088, at *11 (N.D. Ill. Sept. 17, 2002) (Urbom, J.) (excluding Dr. Fitzgerald's opinions because her survey "present[ed] inherent reliability problems" and she "applied it to [the] case in an unreliable fashion").

300:20 (emphasis added). Dr. Fitzgerald did not visit the Plants, *id.* at 88:11-12, and did not conduct any psychological evaluations of any Ford employees at the Plants, *id.* at 30:23-31:15.

Dr. Fitzgerald argues that none of this research or fieldwork was necessary because her report "is not a study," Ex. B at 201:3, but instead is "social framework evidence," Ex. A at 4. According to Dr. Fitzgerald, social framework evidence is generated by "review[ing] the relevant facts and psychological literature, summariz[ing] research findings, and offer[ing] an empirically-grounded opinion that responds to the questions posed." *Id.* At deposition, Dr. Fitzgerald defined "empirically-grounded" as "based on data," and cited the depositions and documents produced in this case as the "data" upon which she relied. Ex. B at 123:21-22, 124:10-11. She conceded she did not read each and every document, *see id.* at 181:16-20; instead, she typed search terms into a document review platform containing the depositions and other documents produced in discovery, and "ones that appeared to be relevant [she] would read," *id.* at 182:6-18. Dr. Fitzgerald could not remember all the search terms she used, but did not appear bothered by her inability to retrace her steps, remarking, "I knew what I wanted – I knew what I needed to see." *Id.* at 183:5-6.

Dr. Fitzgerald clarified that her entire report reflects an "if-then" syllogism, such that *if and only if* the facts are proven to be "largely as alleged" by Plaintiffs, *then* her conclusions will follow. Ex. B at 125:3-127:2. Dr. Fitzgerald was unable to quantify what she meant by "largely," testifying that if she were to attempt to quantify the word, she did not "think that would be reliable." *Id.* at 127:1-2. But she made clear she would have *no confidence* in any of her opinions "if the facts are not at all as alleged." *Id.* at 125:14-15 ("Then who knows").

Dr. Fitzgerald's lengthy report is divided into nine parts, the heart of which are Parts IV and V. *See* Ex. A at 10-54. Part IV, entitled "Risk Factors for Sexual Harassment," primarily consists of excerpts from Plaintiffs' depositions, which, Dr. Fitzgerald contends, reveal a "high

level of ambient harassment" at the Plants. *Id.* at 13. Dr. Fitzgerald defines "ambient harassment" as "the experience of working in an environment permeated with sexually offensive and degrading behavior." *Id.* Despite her characterization of the "level" of ambient harassment at the Plants as "high," Dr. Fitzgerald conceded at deposition she "did not quantify" the level of ambient harassment at the Plants, and could not identify a "baseline" level of ambient harassment. Ex. B at 134:18-135:2. Similarly, while Dr. Fitzgerald concludes the Plants "exhibit high levels of every indicator of risk for harassment," Ex. A at 67, she explained that she "did not measure" any of these supposed indicators "*in the scientific sense.*" Ex. B at 133:5-9 (emphasis added).

Part V of Dr. Fitzgerald's report contains her assessment of "the prevalence and nature of sexually-offensive behavior at Ford during the period of this law-suit." Ex. A at 35. Again, this section consists largely of cherry-picked excerpts of Plaintiffs' deposition testimony. *Id.* at 36-47. Although Dr. Fitzgerald attempts to extrapolate from Plaintiffs' testimony to a broader population of women at the Plants, she agreed during deposition that Plaintiffs' experiences were likely "more severe" than those of other women who are *not* plaintiffs. Ex. B at 200:9-17, 201:17-23. Indeed, Dr. Fitzgerald's own research confirms as much. *See* Ex. F (L. Fitzgerald, *Angry & Afraid*) at 82 ("It is likely that, because these women have … filed legal complaints, their experiences were far more severe than nonreporting victims."). And despite Dr. Fitzgerald's sweeping statement that "the women's experiences" at the Plants were "remarkably similar in nature, basically differing only in severity," Ex. A at 47, Dr. Fitzgerald reversed course at deposition, stating that "you cannot generalize from a litigation sample to a non-litigation sample to an organization sample," and that, "[f]rom a scientific perspective, [she] could not make a case that every [woman] … in the plant had experiences identical to these plaintiffs whose actual[] specific experiences were not identical to each other['s]." Ex. B at 200:9-17, 201:10-22.

4

The night before her deposition, and more than a month after her expert report was due, *see* Dkt. 126, Dr. Fitzgerald submitted a declaration (prepared in Plaintiffs' counsel's office that same day), as a supplement to her report, *see* Ex. B at 28:14-20. In it, she purports to evaluate the "propriety and efficacy" of Ford's August 1, 2017 Conciliation Agreement with the EEOC, and laments, among other things, that the Agreement does not require Ford to alter its promotion and hiring practices and includes a claim form that is "complicated and arcane." Dkt. 157-3 ¶¶ 1, 5-12. At deposition, Dr. Fitzgerald could not explain what she meant by "arcane," and admitted she "misspoke" by using that word. Ex. B at 231:2-11. She also conceded she has no legal training, *id.* at 117:10-15, and had seen only one other conciliation agreement in her career—the prior conciliation agreement between Ford and the EEOC concerning the Plants, *id.* at 205:3-16.

In their motion for class certification, Plaintiffs cite Dr. Fitzgerald's report and declaration several times. Plaintiffs rely on Dr. Fitzgerald's report primarily to support their argument that there is a "pervasive, systematic practice of sexual harassment against women" at the Plants, which, they contend, justifies a finding of commonality under Rule 23. Mem. at 60. Plaintiffs also cite Dr. Fitzgerald's report in arguing that Ford's Conciliation Agreement with the EEOC will be ineffective in combating the alleged harassment at the Plants, and that the claims process set forth in the Agreement is not a "superior" method of resolving putative class members' claims. *Id.* at 67. Plaintiffs additionally cite Dr. Fitzgerald's report in support of their assertion that "Ford has been on notice for years that women are being harassed at these Plants." *Id.* at 37, 60.

## LEGAL STANDARD

"Rule 702 requires the district court judge to act as a gatekeeper to ensure that admitted expert testimony is relevant, reliable, and has a factual basis." *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at *2 (N.D. Ill. May 16, 2017) (Dow, J.); *see also*

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592-93 (1993). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, and an "expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion," *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), *am. on unrelated grds.*, 957 F.2d 301 (7th Cir. 1992). "To determine reliability, the proponent must show that the expert's testimony is based on 'sufficient facts or data' and that it is 'the product of reliable principles and methods.'" *Smith v. Union Pac. R.R.*, 2017 WL 2656583, at *3 (N.D. Ill. June 20, 2017) (Dow, J.) (quoting Fed. R. Evid. 702); *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013). Courts must carefully "examine the methodology the expert has used in reaching [her] conclusions," because even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Smith*, 215 F.3d at 718. The proponent of the expert testimony bears the burden of establishing its admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 706 (7th Cir. 2009).

In the context of a motion for class certification, "[i]f a district court has doubts about whether an expert's opinions may be critical for a class certification decision, the court should make an explicit *Daubert* ruling." *Messner v. Northshore Univ. HealthSystems*, 669 F.3d 802, 812 (7th Cir. 2012) (quotation marks omitted). Because Plaintiffs rely on Dr. Fitzgerald's opinions to buttress their commonality and superiority arguments in support of their request to certify a class, *see, e.g.*, Mem. at 60, 67, the court must "rule conclusively on [Ford's] challenge to her opinions before it turn[s] to the merits of plaintiffs' motion." *Messner*, 669 F.3d at 813.

## ARGUMENT

Dr. Fitzgerald's opinions are not based on any recognized scientific method and consist of

little more than speculation, "subjective belief[, and] unsupported conjecture." *Lewis*, 561 F.3d at 705. And, because Dr. Fitzgerald has conceded her opinions are inapplicable unless and until the fact-finder adjudicates the *merits* of Plaintiffs' claims (and finds the facts are "largely as alleged"), her report is entirely irrelevant for class certification purposes. Because Dr. Fitzgerald's opinions are neither reliable nor relevant, the Court should exclude them in their entirety.

**A.      Dr. Fitzgerald's Opinions Are Not Based On Any Valid Scientific Method**

Dr. Fitzgerald's opinions rest on a misapplication of the only methodology she purports to use—the "social framework" method—and are not rooted in any other scientific process.

1.      Dr. Fitzgerald Has Not Offered Valid "Social Framework" Opinions

Dr. Fitzgerald claims to ground her opinions in academic research pertaining to "social frameworks." Ex. A at 4; *see also* Ex. B at 301:1-4 ("social framework is the only methodology … implemented for the purposes of this case"). However, the originators of social framework analysis have rejected the very types of opinions offered by Dr. Fitzgerald—in which an expert purports to use social science research to analyze the facts of a *particular* case—as unscientific, *misuses* of social framework evidence. *See, e.g.*, Monahan, Walker & Mitchell, *Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks,"* 94 Va. L. Rev. 1715, 1719 (2008). A proper social framework report summarizes general academic research in a subject-matter area to provide context for the *fact-finder*'s interpretation of case-specific evidence. *See id.* at 1717. Thus, for example, in a case involving an eyewitness identification, a court might admit expert testimony to counter a commonly held—but mistaken—belief "about the nature of the general relationship between eyewitness confidence and accuracy." *Id.* at 1732 n.49.

Critically, though, a scientist offering a valid social framework opinion may "not tell the jury what to decide in any given case"—only "what to consider." *Tuli v. Brigham & Women's Hosp., Inc.*, 592 F. Supp. 2d 208, 211 (D. Mass. 2009). The Supreme Court in *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338 (2011) approvingly cited an article co-authored by Ford's expert, Dr. Gregory Mitchell, J.D., PhD., on this very point. *Id.* at 354 n.8 (citing Monahan et al., *supra*, at 1745, 1747, 1748). The Court in *Dukes* noted that the plaintiffs' expert had purported to opine "about social facts specific to" the defendant, thereby "elicit[ing] criticism from the very scholars"—including Dr. Mitchell—"on whose conclusions he relies." *Id.* As Dr. Mitchell and his co-authors explained, "[i]f linkages from general research findings to a specific case are to be made, those linkages must be recognized as arguments to be made by the attorneys, rather than evidentiary proof that can be offered by expert witnesses." Monahan et al., *supra*, at 1718.[2]

Courts have agreed with Dr. Mitchell and his colleagues and have explicitly rejected "read-the-case-file" opinions like those of Dr. Fitzgerald—in which an expert purports to apply her general knowledge base to the *specific facts* of a case—as improper uses of the social framework concept. In *EEOC v. Bloomberg L.P.*, for example, the court excluded purported "social framework" testimony, finding that the expert based his opinions on "insufficient facts and data" without "any reliable method," as he "merely engaged in 'dog-earing' passages from depositions that he believed supported his conclusion." 2010 WL 3466370, at *14-16 (S.D.N.Y. Aug. 31, 2010) (explaining that the expert "made no effort to ensure that the materials that he reviewed were representative," did not undertake a "systematic approach" to reviewing the case documents, and effectively "intuited [his] conclusions"). In *Childers v. Trustees of the University of Pennsylvania*,

---

[2] Dr. Mitchell is a preeminent social psychologist and Professor at the University of Virginia School of Law who has authored numerous peer-reviewed articles on the appropriate uses and limits of social science expert evidence. *See* Ex. C ¶¶ 1, 2, 4 & Ex. A. Although Dr. Mitchell in his legal scholarship advocates for the exclusion of case-specific social framework evidence like that offered by Dr. Fitzgerald, Dr. Mitchell's opinions in this case are being offered in his capacity as a social scientist, not as a law professor. *See, e.g.*, Ex. D at 151:19-24 (explaining that Dr. Fitzgerald "did none of the things that as a social scientist we would need to do to reach reliable opinions about the prevalence of sexual harassment at [the] plants").

the court similarly excluded "social framework" testimony where the expert "sift[ed] through evidence to find passages that support[ed] the Plaintiff's theory of the case," instead of summarizing relevant social science literature to "give jurors a context within which to evaluate the evidence" for themselves. 2016 WL 1086669, at *5-6 (E.D. Pa. Mar. 21, 2016).

Like the reports in *Dukes*, *Bloomberg*, and *Childers*, Dr. Fitzgerald's report reflects an impermissible use of the "social framework" method. Although she begins by summarizing social science literature on sexual harassment, she then "purports to apply general social science research to the evidence in the case as presented by the plaintiffs." Ex. C ¶ 13; *see, e.g.*, Ex. A at 4 (purporting to assess the "nature and alleged prevalence" of sexual harassment "*at Ford*") (emphasis added); *id.* at 67-68 (drawing conclusions regarding "[t]he working environment *at the Chicago Ford Plants*") (emphasis added). That is a transparent misuse of the "social framework" methodology, as it does not "involve application of any scientific methods, tools, or principles." Ex. C ¶¶ 24, 26. Accordingly, her report should be excluded. *See Dukes*, 564 U.S. at 354 n.8.

2. <u>Dr. Fitzgerald's Opinions Are Not Grounded In Any Scientific Method</u>

Not only does Dr. Fitzgerald go far beyond the proper bounds of a "social framework" report, she also fails to ground her opinions in any *other* reliable, scientific methodology.

a. <u>Dr. Fitzgerald's Opinions Are Not Based On Objective, Verifiable,<br>Or Testable Propositions</u>

Dr. Fitzgerald's opinions are neither objective nor systematic—as she herself effectively concedes. Far from deriving a scientific sampling plan for the "data" upon which her opinions are based, Dr. Fitzgerald admitted at deposition that she followed *no* discernable method (much less a scientific one) to determine which discovery materials to review. *See* Ex. B at 182:14-18. She did not recall the search terms she used to cull through the thousands of pages of documents produced in discovery, and she conceded that she ran what were essentially random keyword searches to

9

locate documents "that appeared to be relevant." *Id.* That is not science. *See* Ex. C ¶ 23 ("an expert who cannot 'show her work' cannot claim that her opinions are scientifically reliable"); *Zenith Elecs. Corp. v. WH-TV Broadcasting, Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (to be reliable, "[s]omeone else using the same data and methods must be able to replicate the result").

Rather than being "guided by [an] objective coding system" or other scientific process, Ex. C ¶ 15, Dr. Fitzgerald simply "cherry picked" the data she wanted to use as a basis for her "expert" opinions. Indeed, Dr. Fitzgerald effectively conceded that she was *actively looking* for examples of alleged sexually harassing conduct. *See* Ex. B at 183:5-6 ("I knew what I wanted . . . to see"). She also ignored aspects of the record that were contrary to her views—as evidenced by the fact that her report does not even mention the dozen declarations produced in discovery by women who swear they never experienced or witnessed any sexually harassing conduct at the Plants.[3] Experts who engage in this type of "'cherrypicking' of the evidence . . . 'fail[] to satisfy the scientific method and *Daubert*.'" *Fail-Safe, LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 889 (E.D. Wis. 2010) (internal citation omitted); *see also Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (expert testimony properly excluded where expert "merely accepted some of the testimony and … data that suited his theory and ignored other portions of it that did not").

Dr. Fitzgerald is capable of designing and implementing scientific studies—as a trained researcher, she testified that she would "very much have loved" to have performed such a study here. Ex. B at 58:5-8. She did not. Although she blames Ford for that failure, arguing that Ford would not have permitted her to run a study in the Plants, *id.*, Dr. Mitchell correctly explains that "there is no hardship exception to the scientific method." Ex. D at 152:11-13. It is only when a

---

[3] *See, e.g.*, Ex. G (Declarations of S. Baso, K. Boothe, N. Brown, K. Calton, D. Davis, W. Dunn, P. Henderson, J. Robinson, F. Perez, P. Servant, T. Sopher, and C. Veloz).

social scientist has "collected data properly and analyzed it properly that [she] can form reliable opinions." *Id.* at 152:15-18; *see also Zenith*, 395 F.3d at 419; *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 WL 1196990, at *11 (N.D. Ill. Mar. 31, 2017) (Dow, J.) (expert opinion not reliable where it reflects "little more than *ipse dixit*"). Dr. Fitzgerald did neither in this case. Because the sole "method" she employed—"'expert intuition'"—"is neither normal among social scientists nor testable," her conclusions "aren't worth much to either science or the judiciary" and must be excluded. *Zenith*, 395 F.3d at 419; *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 815 n.17 (N.D. Ill. 2005) (even where an expert possesses credentials as "an expert in the relevant field, the evidentiary reliability demanded by *Daubert* is not present when his or her opinion is speculative or rests on an unsound basis").[4]

> b. <u>Dr. Fitzgerald's Conclusions About The Putative Class Are Unreliable Because They Are Not Based On Representative Data</u>

Dr. Fitzgerald's opinions also must be excluded to the extent that she purports to draw generalizations about the putative class based on an invalid, unrepresentative sample.

Dr. Fitzgerald offers sweeping conclusions about thousands of women across two Plants based on a statistically insignificant sample of the 31 Plaintiffs in this case. This is not the first time Dr. Fitzgerald has attempted to make broad generalizations using an inadequate sample. In *EEOC v. Dial Corp.*, she opined on the "pervasive effect" of sexual harassment on *all* women who

---

4   As Ford's expert psychiatrist, Dr. Liza Gold, M.D., has explained, Dr. Fitzgerald's unscientific approach "is rife with the potential for bias." Ex. H (Gold Dep.) at 72:14-16. Bias is not just a theoretical concern, but an actual one—given Dr. Fitzgerald's blatant cherry-picking of the record, and what appears to be her preexisting opinions about sexual harassment at Ford's Plants from her prior involvement in the *Rapier* case. In the 1990s, Ford was a defendant in a class action lawsuit involving the same two Plants at issue in this case. *See Rapier v. Ford Motor Co.*, 49 F. Supp. 2d 1078 (N.D. Ill. 1999) (Bucklo, J.). Dr. Fitzgerald served as an expert for the plaintiffs in that case, and has characterized her report in *Rapier* as "prescient" of the "facts" here. *See* Ex. A at 65. Given Dr. Fitzgerald's participation in *Rapier*, her opinions in this case are subject to various forms of bias. *See, e.g.*, Ex. C ¶ 24 n.2.

worked at a Dial plant based on "detailed examples taken from the testimony of certain claimants." 2002 WL 31061088, at *8 n.7 (Urbom, J.). In finding Dr. Fitzgerald's opinions inadmissible, another judge of this Court explained that it was not scientifically sound for Dr. Fitzgerald to simply "assume that the experiences described by a single deponent allow one to draw formal conclusions about the experiences of the entire relevant population of employees." *Id.* at *8 n.7.

Yet that is exactly what Dr. Fitzgerald attempts again here. Despite her acknowledgment of the need for statistically-valid samples to draw generally-applicable conclusions, *see* Ex. B at 116:7-17—and her further acknowledgment that "you cannot generalize from a litigation sample to a non-litigation sample to an organization sample," *id.* at 200:9-17—Dr. Fitzgerald relies on excerpts from deposition testimony of the 31 Plaintiffs in this case to support the conclusion that "crudely sexualized behavior permeated the working environment of the Ford plants," *id.* at 98:9-100:24. Just as in *Dial*, Dr. Fitzgerald should not be permitted to make these types of "inappropriate generalization[s]" based on an inadequate sample. 2002 WL 31061088, at *8.

Dr. Fitzgerald also has failed to offer any scientific basis that would permit extrapolation from Plaintiffs' alleged experiences to those of the entire class. She admitted that she did not know how large the Plants were; how many women were in the putative class; or what percentage of the class the Plaintiffs represented. Ex. B at 14:24-15:11, 89:1-17, 96:10-98:17, 109:10-17; *see also* Ex. C ¶ 18. She nevertheless opines that the working environment at the Plants "appears to be permeated with sexual harassment of the grossest, ugliest, and most degrading kind." Ex. A at 68. That opinion appears to rest on little more than Dr. Fitzgerald's say-so; no scientific principles are offered to support it. Dr. Fitzgerald's generalizations about the putative class, based on nothing more than her review of Plaintiffs' allegations, must be excluded as unreliable under *Daubert*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules

12

of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *see also McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 657-58 (7th Cir. 1998) ("federal courts must ensure that the methodology and data behind an opinion are scientific" and "'[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process'") (citation omitted) (alteration in original).

**B.      Dr. Fitzgerald's Opinions Will Not Assist The Court In Deciding Whether To Certify A Class**

To be admissible, expert testimony must be not only "reliable," but also "relevant." *Daubert*, 509 U.S. at 589.  Experts may not offer "legal definitions, legal conclusions, or [opinions on] ultimate questions of fact better left for the jury."  *Morris v. Ford Motor Co.*, 2012 WL 5947753, at *6 (N.D. Ind. Nov. 28, 2012).  Here, Dr. Fitzgerald's opinions must be barred because they will not assist the Court in deciding whether Plaintiffs have satisfied Rule 23's requirements, and because they improperly seek to invade the province of the trier-of-fact.

Dr. Fitzgerald has conceded that her opinions *do not hold* unless the facts are "largely as alleged."  Ex. B at 125:6-127:2; *see also* Ex. A at 4.  This concession is fatal:  As Dr. Mitchell succinctly states, "if Dr. Fitzgerald's 'ifs' turn out to be 'not-ifs,' then her 'thens' do not follow." Ex. C ¶ 14.  And this Court must decide whether to certify a class *before* adjudicating the merits of Plaintiffs' claims.  Opinions that are valid *if and only if* the trier-of-fact determines the facts are "largely as alleged" will not assist the Court in evaluating the propriety of class certification.

To the extent Dr. Fitzgerald seeks to argue that, because of the supposedly high level of "ambient harassment" at the Plants, the harassment was necessarily experienced by *all* women and had "concrete, measurable, negative effects on *all* women who work" there, Ex. A at 17, that opinion also must be excluded as speculative and misleading, *see* Fed. R. Evid. 403.  It is for the fact-finder, not Dr. Fitzgerald, to determine whether any individual class member in fact

13

experienced harassing conduct or suffered emotional harm as a result. *See Benson*, 941 F.2d at 604 ("[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury."). Moreover, to assess the presence or absence of psychological symptoms, Dr. Fitzgerald would need to have conducted clinical evaluations, as Ford's expert psychiatrist Dr. Liza Gold, M.D., has explained. *See* Ex. I (Gold Report) ¶ 3. Dr. Fitzgerald did not conduct any clinical evaluations, Ex. B at 30:23-31:3, nor did she "consider[] any alternate sources of workplace stress that may have contributed to any emotional distress the plaintiffs allege they have suffered," Ex. I at 6-7. Having failed to do so, she can offer no useful opinions as to whether any Plaintiff—or other woman—in fact experienced psychological harm, much less identify the source of that harm. Through her suggestion that they *did* all experience "negative effects," and through her further suggestion that these "negative effects" were caused by their exposure to alleged harassing conduct, Dr. Fitzgerald seeks to "invade[] the province of the jury" by "improperly commenting on and interpreting testimony." *Sullivan v. Alcatel-Lucent USA Inc.*, 2014 WL 3558690, at *6-7 (N.D. Ill. July 17, 2014).

Similarly, in her report, Dr. Fitzgerald offers the "opinion" that "Ford is aware of" the alleged sexual harassment at the Plants; that it has had this knowledge "since at least 2012"; and that it "has chosen to ignore, obscure, downplay and otherwise failed to take i[t]s obligations seriously." Ex. A at 68. But Dr. Fitzgerald does not explain how she determined *who* at Ford had knowledge of *what* and *when*. Nor could she, since she lacks any expertise that "would give [her] any special insight into [Ford's corporate] mind." *Benson*, 941 F.2d at 604. This "opinion" again reflects nothing more than Dr. Fitzgerald's conjecture (and biased prejudgment)—she is "no more qualified than the jury" to reach conclusions regarding Ford's alleged awareness of harassing conduct, as her training as a social psychologist does not provide her with any "special knowledge

14

or skill that would be particularly helpful" in evaluating this issue. *Id.*; *Johnson v. Wyeth LLC*, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (precluding plaintiff's experts from offering "opinions concerning defendants' motive, intent, knowledge, or other state of mind").

**C.     Dr. Fitzgerald's Supplemental Declaration Must Be Excluded**

Finally, the Court should exclude Dr. Fitzgerald's supplemental declaration opining "to a reasonable degree of scientific certainty" on the "propriety and efficacy" of Ford's Conciliation Agreement with the EEOC. Dkt. 157-3 ¶¶ 1, 13. In truth, that Agreement renders certification of a class here unnecessary, wasteful, and inappropriate. *See, e.g.*, *In re Aqua Dots Prod. Liability Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (certification not proper where relief is already "available to all members of the putative class"). And Dr. Fitzgerald is a psychologist, not a legal expert with qualifications to assess the "propriety or efficacy" of a settlement agreement with the government. She readily admitted that opining on the "propriety" of the Agreement was "an unfortunate word choice," Ex. B at 203:23-204:7, and that "a lot of" the issues in the Agreement do not "fall within [her] bailiwick," *id*. at 206:13-18. Unsurprisingly, there is nothing scientific about her declaration: She simply compared the Agreement to the one other agreement with which she is familiar and rendered her "expert judgment" that this Agreement was allegedly inferior to that one. *See* Dkt. 157-3. Because Dr. Fitzgerald lacks qualifications to evaluate the supposed "propriety and efficacy" of Ford's Conciliation Agreement, and because nothing in her declaration is grounded in science, the belated declaration should be stricken in full. *Benson*, 941 F.2d at 604 ("[T]he opinion must be an expert opinion (that is, an opinion informed by the witness' expertise)").

## CONCLUSION

For all the foregoing reasons, Ford's motion should be granted.

DATED:  February 20, 2018

Kathleen M. Nemechek  N.D. Ill. No. 50139
Timothy S. Millman  N.D. Ill. No. 44398
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:  816.561.7007
Facsimile:  816.561.1888

Mark H. Boyle
Karen Kies DeGrand
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Telephone:  312.422.0900
Facsimile:  312.422.0909

Respectfully submitted,

/s/ Eugene Scalia
Eugene Scalia (admitted *pro hac vice*)
Katherine V.A. Smith (admitted *pro hac vice*)
Molly T. Senger (admitted *pro hac vice*)
Andrea R. Lucas (admitted *pro hac vice*)
Naima Farrell (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Counsel for Ford Motor Company*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2018, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system, which provided electronic service upon:

> Keith L. Hunt
> Bradley E. Faber
> Hunt & Associates, P.C.
> Three First National Plaza, Suite 2100
> Chicago, Illinois 60602
> (312) 558-1300
> khunt@huntassoclaw.com
> bfaber@huntassoclaw.com
> *Counsel for Plaintiffs*


> /s/ Eugene Scalia
> *Counsel for Defendant Ford Motor Company*