# EXHIBIT F

*Psychology of Women Quarterly*, 31 (2007), 73–84. Blackwell Publishing, Inc. Printed in the USA.
Copyright © 2007 Division 35, American Psychological Association. 0361-6843/07

# ANGRY AND AFRAID: WOMEN'S APPRAISAL OF SEXUAL HARASSMENT DURING LITIGATION

Caroline Vaile Wright and Louise F. Fitzgerald
University of Illinois at Urbana–Champaign



The purpose of this study was to examine primary appraisal of sexual harassment, that is, a victim's cognitive evaluation of the harassment and the factors that influence this appraisal. The perspectives of 72 female plaintiffs were investigated by measuring their primary appraisal of the event, examining the structure of this appraisal, and assessing the influence of stimulus and individual factors on appraisal. Cluster analysis revealed four distinct emotion clusters: demoralization, anxious arousal, fear, and self-blame. Significant correlations suggest that these four appraisal clusters are differentially related to certain stimulus (e.g., intensity) and individual (e.g., self-esteem, previous victimization, feminist attitudes, and attributions) factors. Theoretical and practical implications for the role of primary appraisal are discussed.

Most of the time during the harassment I felt extremely alone. I felt like no one could, or would ever understand what this man was doing to me inside of my mind.
—Litigant in sexual harassment lawsuit

I felt like running away—disappearing—becoming as unnoticeable as possible. I stopped wearing colors in my clothing—wore mostly black and gray to be less noticeable—I felt disbelief and extremely isolated from everyone.
—Litigant in sexual harassment lawsuit

For the many female targets of sexual harassment, the experience can be psychologically, physically, and economically debilitating.[1] Although the prevalence and negative consequences (e.g., psychological and physical health, job-related outcomes) of sexual harassment in organizations has been well documented (e.g., Fitzgerald, Swan, & Magley,

Caroline Vaile Wright, Department of Educational Psychology, and Louise F. Fitzgerald, Department of Psychology, University of Illinois at Urbana–Champaign.

This project was funded by the National Institute of Mental Health Grant MH50791-08 and by the Defense Manpower Data Center.
We would like to acknowledge the contributions of Fritz Drasgow, Dorothy Espelage, Lisa Spanierman, Linda Collinsworth, and Angela Lawson to earlier versions of the article.

Address correspondence and reprint requests to: Caroline Vaile Wright, University of Illinois, Department of Educational Psychology, 1310 S. Sixth St., Champaign, IL 61820. E-mail: cvwright@uiuc.edu

1997; O'Connell & Korabik, 2000), the psychological process of harassment has often been overlooked and underresearched. This gap in the literature is unfortunate because a more thorough understanding of this psychological process might explain why harassment victims experience different types and degrees of psychological and physical health and job-related outcomes. Investigating the process is complicated, however, because targets often differ in their cognitive appraisal of even roughly similar events; more specifically, they differ in regard to their emotional reactions and their subsequent behavioral responses (Fitzgerald et al., 1997).

Much of what is known about the appraisal of stressors, such as sexual harassment, arises out of the stress and coping literature, which defines cognitive appraisal as the process through which an individual evaluates whether a particular event is relevant to his or her well-being (Lazarus & Folkman, 1984). Cognitive appraisal is generally divided into two categories: primary appraisal and secondary appraisal. Primary appraisal refers to an instantaneous, largely unconscious process through which individuals evaluate stimuli as irrelevant, benign, or threatening; such appraisal is considered one of the main determinants of subsequent action. Secondary appraisal involves evaluation of the various response options available; in other words, what to do (Folkman, Lazarus, Dunkel-Schetter, DeLongis, & Gruen, 2000). This model implies that how a person appraises an event shapes his or her emotional (i.e., primary) and behavioral (i.e., secondary) responses to the stressor (Lazarus & Folkman, 1984).

In the last decade, sexual harassment research has focused almost solely on how targets react behaviorally (e.g., ignoring the harassment, reporting it to a supervisor), rather

73

than emotionally (e.g., Baker, Terpstra, & Larntz, 1990; Schneider, Swan, & Fitzgerald, 1997; Terpstra & Baker, 1989). This focus on behavioral reactions, although certainly important, ignores a crucial first step. From a cognitive theoretical framework, to fully understand the behavioral response, one must first understand the emotional reaction leading up to that response (Fitzgerald, Swan, & Fischer, 1995; Lazarus & Folkman, 1984). Although a number of analogue studies have explored perceptions of harassment (e.g., whether a particular behavior should be considered harassment and under what conditions), and some studies have asked targets the degree to which the situation was upsetting or inappropriate, to date, no studies have systematically examined the broad range of emotional responses possible in such situations, despite much discussion suggesting that sexual harassment is in the eye of the beholder. Thus, empirical research is needed to generate a greater understanding of the primary appraisal process (i.e., emotional reactions) and the contributory factors that influence these appraisals.

Although research on primary appraisal and emotional reactions to sexual harassment has been scant, several influential studies have provided groundwork from which to begin. One of the earliest studies to ask about emotional reactions to sexual harassment was conducted by Schneider (1987). Schneider (1987) surveyed female graduate students and found that 36% of participants felt embarrassed and 14% were physically afraid after being sexually coerced by a faculty member. More recently, Schneider et al. (1997) surveyed working women in the private sector and found that 66% of their sample rated a sexual harassment incident that they personally experienced as offensive or extremely offensive; an additional 26% rated the event as slightly offensive. In the same sample, 56% of women rated the incident as upsetting or extremely upsetting, and 29% rated it as slightly upsetting. Finally, Wilson (2000) examined three case studies of female sexual harassment victims who provided verbal narratives of their experiences. Wilson reported that the affective reactions of these women followed a common theme of feeling "uncomfortable, vulnerable, and frightened" (p. 1090).

Studies such as these provide a preliminary understanding of the primary appraisal of sexual harassment, but have examined only a limited number of potential emotional reactions, mostly anger and fear, and have failed to include other possible emotions such as guilt, shame, disappointment, sadness, and worry. In addition, these preliminary studies lack a theoretical framework from which to understand the various types of emotional reactions experienced and instead appear to combine all emotional reactions together as a unidimensional construct.

### Theoretical Framework

One potential theoretical framework for conceptualizing primary appraisal is the stage model developed by Salisbury, Ginorio, Remick, and Stringer (1986). This model is based upon the authors' experiences with a group of 17 female sexual harassment victims who sought group and individual psychotherapy. Salisbury et al. (1986) conceptualized the stages of emotional response as representing a progressive, ordered sequence of changes in how the victim perceives herself, her coworkers, and the work world, described as follows:

1. *Confusion/self-blame.* Victims describe feelings of humiliation, embarrassment, and often guilt resulting from the belief that they may have somehow caused or encouraged the harasser's behavior. Feelings of self-blame and embarrassment continue until the victim no longer feels responsible for the behavior and labels it as harassment.
2. *Fear/anxiety.* Victims describe feelings of helplessness, being trapped, paranoid, paralyzed, and fearful of both negative job-related reprisals and for their own physical safety. In addition, they report their self-esteem is threatened, both inside and outside of work.
3. *Depression/anger.* Feelings of anxiety shift to depression and helplessness, while self-esteem continues to plummet. Victims also report a turning point at which they begin to feel furious, expressing anger about being treated unfairly and concern for others in the workplace.
4. *Disillusionment.* Often feelings of disappointment and distrust arise after the victims begin questioning their expectations about fairness and justice and come face to face with the organizational and legal systems' inadequacies. Victims express doubts about work-related decisions, as well as their personal safety.

These stages may provide a better understanding of not only the wide spectrum of possible emotional responses but also how and why victims' affective reactions can change over time. However, Salisbury et al.'s (1986) stages could be rendered more comprehensive by empirically testing the nature of primary appraisal and by establishing the salient antecedents that influence harassment victims' appraisal.

### Antecedents to Primary Appraisal

Investigating the antecedents of primary appraisal might explain why individuals express a diverse array of emotional reactions to stressful events. Fitzgerald et al. (1997) proposed three elements that influence victims' primary appraisal of sexual harassment: stimulus factors, individual factors, and contextual factors. Their *model of harm* proposed that primary appraisal is a function of these three factors; primary appraisal, in turn, affects secondary appraisal, as well as psychological and physical health and job-related outcomes. This model was used as the framework for investigating the potential antecedents to primary appraisal.

*Stimulus factors.* Stimulus factors involve aspects of the harassing behavior itself that may affect appraisal. Fitzgerald et al. (1997) classified these factors into three general categories: *frequency, duration,* and *intensity.* Frequency refers to the actual number of harassing behaviors, whereas duration refers to the span of time over which they occurred (e.g., weeks, months, or years). Intensity refers to the magnitude or severity of the harassing behaviors. Salisbury and Sebek (1994, as cited in Fitzgerald et al., 1997) theorized that higher intensity is associated with the following sexual harassment characteristics: (a) multiple perpetrators, (b) powerful perpetrator(s), (c) experiencing physical as opposed to only verbal behavior, (d) frightening as opposed to simply annoying behavior, (e) being the specific target of the behavior, and (f) having restricted possibilities for escape.

Empirical research on the impact of these stimulus factors on primary appraisal is both promising and incomplete. Several aspects of harassment intensity (e.g., powerful perpetrators, physical vs. verbal behavior, and frightening vs. annoying behavior) have been found to influence women's primary appraisal of harassing events (e.g., Frazier, Cochran, & Olson, 1995; Kinney, 2003). In addition, several studies have also discovered a relation between harassment frequency and levels of distress (e.g., Brooks & Perot, 1991; Fitzgerald, Buchanan, Collinsworth, Magley, & Ramos, 1999; Piotrkowski, 1998; Samoluk & Pretty, 1994). The duration of harassment, believed to be theoretically linked to primary appraisal, has thus far not been empirically examined. The association between primary appraisal and harassment frequency, intensity, and duration was examined in the current study.

*Individual factors.* Aspects of the target that may influence her primary appraisal are referred to as individual factors. Although little research on the impact of individual factors has been conducted with actual victims (Koss et al., 1994), five factors have been hypothesized: previous victimization, feminist attitudes, personal resources, attributions, and control (Fitzgerald et al., 1997).

Overall, individual factors implicated as primary appraisal antecedents, such as personal resources and control, are rarely investigated; however, a few studies have examined the role of previous victimization, feminist attitudes, and attributions on primary appraisal. Recently, Collinsworth (2004) and Reed (2004) each investigated the role of previous victimization in determining harm in harassment victims. Although both investigations showed that previous victimization contributed to psychological and physical health and job-related outcomes, the effect was trumped by other factors, such as harassment intensity. Earlier studies examined the association between feminist attitudes and primary appraisal, finding that participants' feminist ideology directly influenced the degree to which they perceived the incident as offensive (e.g., Brooks & Perot, 1991; Jensen & Gutek, 1982). Victim attributions regarding harassment (i.e., beliefs about causality) have typically focused on self-blame. Jensen and Gutek (1982) found that victims who blamed themselves in some way were less likely than other victims to report the problem to someone in their workplace, suggesting that attributions can influence victim responses. However, the relationship between attributions and primary appraisal has yet to be studied directly.

Finally, although self-esteem was not included in Fitzgerald et al.'s (1997) model, some researchers have hypothesized that a victim's degree of self-esteem might affect whether she appraises sexual harassment behaviors as emotionally stressful. Malovich and Stake (1990) argued that a woman with a higher degree of self-esteem, measured specifically in their study as performance self-esteem, may also be more confident in her abilities and consequently be less intimidated by sexually harassing behaviors. Self-esteem may provide some important insight into how women differentially experience sexual harassment; therefore, it was included in this study as an individual factor along with previous victimization, feminist attitudes, and attributions to assess the impact of these antecedents on primary appraisal.[2]

*Contextual factors.* Finally, contextual factors refer to aspects of the organizational context in which the harassing behaviors take place. Examples of contextual factors that may influence women's primary appraisals include the organizational climate, management norms, organizational polices and procedures, the gender ratio of the organization, the occurrence of other types of harassment (e.g., racial harassment), and bystander stress (Fitzgerald et al., 1997). Numerous studies have established a link between contextual factors, sexual harassment, and outcomes (Fitzgerald, Drasgow, Hulin, Gelfand, & Magley, 1997; Fitzgerald, Drasgow, & Magley, 1999; Glomb et al., 1997), but have failed to include the role of cognitive appraisal in their models. Unfortunately, the current study was also unable to incorporate contextual factors into the analyses;[3] therefore, the focus of this study was on the influence of stimulus and individual factors on primary appraisal.

Expanding our understanding of how stimulus and individual factors influence a victim's primary appraisal of sexual harassment will enrich our comprehension of why women express varying degrees of fear, anger, disappointment, and blame to often similar experiences. This understanding in turn could have critical psychological (e.g., understanding why women differentially experience negative outcomes and how to effectively treat them) and legal implications (e.g., provide the legal system with a more informed understanding of the victim's perspective of the harassment she experienced). Therefore, the purpose of the present study was to extend the research on the cognitive and emotional reactions of women who have been harassed by identifying how characteristics of the situation or the women themselves influence this appraisal. The following specific research questions were examined: (a) What is the nature

of primary appraisal in a population of female sexual harassment litigants? and (b) Which stimulus and individual factors influence the primary appraisal of victims?

## METHOD

### Participants

Data for this study were collected from a sample of 72 women involved in sexual harassment litigation located throughout the United States.[4] Each had filed a formal legal complaint of work-related sexual harassment that ultimately resulted in litigation. The nature of these claims varied across cases and reflected the various behavioral patterns documented in the social science and legal literature (e.g., Fitzgerald, Swan et al., 1995; Lindemann & Kadue, 1992). Although no formal analysis was attempted, the claims appeared to be a reasonable cross-section of cases that appear in court. Gender hostility and unwanted sexual attention were more common than sexual coercion; most claims named coworkers as perpetrators; and the behaviors were typically described as frequent, repetitive, and of considerable duration. As a part of the litigation discovery process, each plaintiff underwent an extensive psychological evaluation for purposes of damages assessment.

On average, the plaintiffs were 39 years old (range = 17 to 59; $SD = 9.6$) and predominantly Caucasian (93.1%, $n = 66$; there were 4 African-Americans, 1 Hispanic/Latina, and 1 Asian American plaintiff). Approximately half were married (48.6%, $n = 35$), 26.4% were single ("never married;" $n = 19$), and 25% were separated, divorced, or widowed ($n = 18$). Nine percent had completed less than a high school education ($n = 7$), 16.7% held a GED or high school diploma ($n = 12$), nearly half (48.6%, $n = 35$) had attended some college or vocational school, 12.5% received a degree from a 4-year college ($n = 9$), and 12.5% had postcollege training ($n = 9$).

### Procedures

Participants underwent extensive individual psychological evaluations, typically conducted over a 2-day period by the second author, an experienced clinical psychologist serving as an independent expert consultant. The women were referred for evaluation to determine whether they were suffering from significant psychological distress or a diagnosable psychological disorder. During these 2 days, a three-part evaluation was conducted involving the administration of standardized tests and interviews, including the In-Depth Interview Schedule (IDIS; Fitzgerald, Magley, & Swan, 1996) and the Structured Clinical Interview for DSM-IV (Spitzer, Williams, Gibbon, & First, 1990). The IDIS is designed to tap specifics regarding the harassment situation, including information concerning various stimulus and individual factors of interest in the overall study. Participants also provided a psychosocial history and demographic information and completed a work-related survey that included scales assessing feminist attitudes and self-esteem. They also gave their own narrative account of the sexual harassment they experienced. At the conclusion of the evaluation, the participants received an additional paper-and-pencil survey either sent in the mail or given in person, with a cover letter and a self-addressed stamped envelope to return the questionnaire. The questionnaire included the primary appraisal, attributions, and harassment intensity measures and was administered after the evaluation to reduce potential demand characteristics.

Forensic evaluation presents a classic example of power disparity between the evaluator and the assessee, and combining this process with research creates a true challenge of the possibility of informed consent. We addressed these issues through a consent form emphasizing anonymity and the lack of any consequences for refusal (i.e., their choice would in no way influence the outcome of their evaluation). The consent form also emphasized that the consultant would remain blind to their decision until after the completion of the report. Each participant in the current study gave informed consent to allow her responses to be used anonymously for research purposes.

### Measures

#### Primary Appraisal

Primary appraisal was assessed by a paper-and-pencil measure that contained a 23-item scale, in which respondents indicated on a 5-point Likert-type scale from 0 (*never*) through 4 (*most of the time*) how frequently they experienced a given feeling in response to the harassment.[5] The Primary Appraisal scale, designed by Swan (1995) for her dissertation and modeled after Folkman and Lazarus's (1985) emotions scale, listed a variety of negative emotions (e.g., angry, threatened, ashamed, distressed, etc.) potentially experienced by the respondents. Means and alphas for all scales are listed in Table 1.

#### Stimulus Factors

*Frequency and type.* The Sexual Experiences Questionnaire (SEQ; Fitzgerald, Gelfand, & Drasgow, 1995; Fitzgerald et al., 1988) assesses offensive, sex-related behaviors that may have been experienced by women in the workforce. In the present case, the 20 behavioral items were presented orally during administration of the IDIS. Responses were provided orally on a 5-point Likert-type scale, ranging from 0 (*never*) through 4 (*many times*), thereby reflecting the frequency with which each respondent had experienced specific sexually harassing behaviors.

This version of the SEQ comprises three subscales: Gender Harassment (5 items), Unwanted Sexual Attention (10 items), and Sexual Coercion (5 items). These subscales reflect the different types of harassment experienced by respondents. Gender harassment refers to sexist remarks and

Table 1
Means, Standard Deviations, and Coefficient Alphas for All Scales

| Scale name | No. of items | n | M | SD | α |
|---|---|---|---|---|---|
| Primary appraisal | 23 | 72 | 85.22 | 21.61 | .95 |
| Demoralization | 7 | 72 | 27.40 | 8.02 | .93 |
| Anxious arousal | 8 | 72 | 32.18 | 7.58 | .91 |
| Fear | 6 | 72 | 20.33 | 6.82 | .87 |
| Self-blame | 2 | 72 | 5.31 | 2.65 | .76 |
| Objective factors: | | | | | |
| Frequency (SEQ) | 20 | 55 | 24.60 | 13.40 | .84 |
| Type | | | | | |
| GH | 5 | 55 | 11.09 | 5.72 | .81 |
| USA | 10 | 55 | 10.73 | 7.93 | .80 |
| SC | 5 | 55 | 2.78 | 4.46 | .85 |
| Intensity | 9 | 71 | 33.34 | 5.44 | .59 |
| Duration | 1 | 57 | 51.86 | 55.50 | — |
| Individual factors: | | | | | |
| Previous victimization | 1 | 55 | 2.11 | 1.57 | — |
| Attitudes | 13 | 69 | 54.01 | 5.15 | .63 |
| Attributions | | | | | |
| Behavioral self-blame | 5 | 69 | 10.96 | 5.06 | .79 |
| Characterological self-blame | 5 | 70 | 9.50 | 4.05 | .72 |
| Chance | 5 | 67 | 9.90 | 4.36 | .70 |
| Harasser | 5 | 69 | 19.99 | 4.18 | .64 |
| Society | 5 | 70 | 14.89 | 4.34 | .75 |
| Self-esteem | 10 | 70 | 27.50 | 5.73 | .87 |

*Note.* SEQ = Sexual Experiences Questionnaire; GH = gender harassment; USA = unwanted sexual attention; SC = sexual coercion.

behaviors that convey insulting, hostile, and degrading attitudes about women but are not necessarily aimed at sexual cooperation. Unwanted sexual attention is offensive and unwelcome verbal and nonverbal sexual behavior, including forceful attempts to stroke, fondle, or touch, as well as attempted or completed forced sex. The extortion of sexual cooperation in return for job-related considerations is referred to as sexual coercion. Gender harassment and unwanted sexual attention parallel the legal construct of hostile work environment, whereas sexual coercion maps onto the legal standard of quid pro quo (Fitzgerald, Gelfand et al., 1995).

Fitzgerald et al. (1988) reported internal consistency estimates for the SEQ between .86 and .92 and a test-retest coefficient of .86. In addition, Gelfand, Fitzgerald, and Drasgow (1995) confirmed the three-factor structure in both a workplace and university setting, as well as across two cultures (the United States and Brazil). Coefficient alphas in the present sample were just below those reported by the scale's authors (i.e., .80 to .85).

*Intensity.* The Severity Scale (Swan, 1995) is a 9-item paper-and-pencil measure that examines various objective characteristics of the harassing situation that have been theoretically linked with severity or intensity. These characteristics included hostility, sexuality, ambiguity, degree of threat, difficulty of escape from the situation, and whether the respondent was the sole target. Respondents indicated whether these items were characteristic of their harassment experiences on a 5-point Likert-type scale ranging from 1 (*never*) to 5 (*most of the time*).

*Duration.* Respondents were asked to provide the dates the harassment began and ended. Responses were recoded into number of months to reflect the length of time the harassment had occurred.

### Individual Factors

*Previous victimization.* Questions related to experiences of childhood sexual and physical abuse, adolescent sexual abuse, and adult sexual abuse and battering were assessed orally during the IDIS. In each of these five areas, participants' responses were coded dichotomously as either previously abused or not. Scores were subsequently summed to reflect a 6-point index ranging from 0 (*no experiences*) to 5 (*all five types of experiences*) of previous victimization.

*Attitudes.* The Attitudes Toward Women Scale (Swim, Aikin, Hall, & Hunter, 1995) is a 13-item paper-and-pencil measure that combines items tapping both old-fashioned and modern sexism. Items measuring old-fashioned sexism include "Women are generally not as smart as men." Modern sexism consists of three categories: denial of continuing

discrimination, antagonism toward women's demands, and resentment about special favors for women (Swim et al., 1995). Example items include, respectively, "Discrimination against women is not a problem in the U.S.," "It is easy to understand the anger of women's groups in America," and "Over the past few years, the government and news media have been showing more concern about the treatment of women than is warranted by women's actual experiences." Responses were recorded on a 5-point Likert-type scale ranging from 1 (strongly disagree) to 5 (strongly agree). Items were recoded and reverse scored such that higher scores reflected more pro-feminist attitudes.

Swim et al. (1995) used confirmatory factor analysis to establish a two-factor solution: Old-Fashioned Sexism and Modern Sexism. The authors reported internal consistency estimates of .65 for Old-Fashioned Sexism and .75 for Modern Sexism. Given that the two-factor structure demonstrated only a slightly better fit than the one-factor structure for women in their sample, the Attitudes Toward Women Scale was treated as a one-factor scale in this study, yielding a coefficient alpha moderately lower than reported by the scale's authors (i.e., .63).

*Attributions.* The Attributions Scale (Frazier, 1990; Frazier & Schauben, 1994) is a 25-item paper-and-pencil measure that assesses the degree to which respondents attributed the harassment to various causes. Responses were given on a 5-point Likert-type scale ranging from 1 (*not at all descriptive*) to 5 (*very descriptive*).

The Attributions Scale is divided into five subscales: Behavioral Self-Blame, Characterological Self-Blame, Chance, Harasser, and Society. Each subscale comprised 5 items. The Behavioral Self-Blame subscale included items that attribute the harassment to a lack of behavioral response on the part of the victim, such as "I should have resisted more" and "I didn't do enough to protect myself." The Characterological Self-Blame subscale refered to the degree that one attributes the experience to a part of their personal character (e.g., "I'm a careless person" or "I am too trusting"). The Chance subscale included items that attribute the experience to some aspect of chance or luck, such as "This was just bad luck" and "Things like this happen at random." The Harasser subscale refered to reasons attributed to the harasser himself to explain the behavior (e.g., "The harasser was sick" or "The harasser thought he could get away with it"). Finally, the Society subscale involved attributions related to aspects of society as a whole, such as "Men are socialized to be violent" and "Media encourages violence against women." Coefficient alphas for the five subscales ranged from .64 to .79. High scores reflect a greater degree to which respondents attributed their experience to each subscale.

*Self-esteem.* The Rosenberg Self-Esteem Scale (RSE; Rosenberg, 1965) is a 10-item paper-and-pencil measure assessing respondents' degree of self-esteem. The RSE is the most widely used measure of self-esteem and responses were provided on a 4-point Likert-type scale ranging from 1 (*strongly agree*) to 4 (*strongly disagree*). Negatively worded items were reverse scored, and items were recoded so that higher scores reflected higher levels of self-esteem.

### Missing Data Imputation

To maximize usable data, missing items were imputed according to a specific criterion. For scales containing 4 to 9 items, cases missing one item were imputed. In scales consisting of 10 to 19 items, up to two missing items were imputed. Finally, in scales containing 20 or more items, imputation was allowed for up to three items. Two-Way Imputation (TW) utilizes the formula item mean + (person's mean – mean of item means) by calculating across available scores the mean for the item, and the mean for the person, and the overall mean respectively; TW imputation has been identified as the most effective method available for imputing missing data (Bernaards & Sijtsma, 2000).

## RESULTS

### Nature of Primary Appraisal

To examine the structure of primary appraisal, Swan's (1995) 23-item Primary Appraisal Scale was subjected to a complete-link cluster analysis and multidimensional scaling procedure. Cluster analysis is a multivariate classification technique useful for grouping objects in complex data sets. The clustering method analyzes a proximity matrix to form groups of similar variables over a group of people (Borgen & Barnett, 1987). Cluster analysis, a nonparametric technique, as opposed to factor analysis, was employed due to sample size.

Four clusters were identified using Ward's method in hierarchical cluster analysis. Cluster 1 includes items reflecting *demoralization*, that is, litigants' expressions of being let down and betrayed as a result of their harassment. The six clustered items were feeling humiliated, degraded, insulted, offended, embarrassed, and annoyed. The items in Cluster 2 appear to represent *anxious arousal* on the part of participants. These items assessed feelings of anxiety and depression (e.g., anxious, sad, depressed, and worried) and items tapping their level of anger (e.g., angry, stressed, upset, and disgusted). Cluster 3 included items asking about the degree to which women felt *fear* as a result of their harassment experiences. The six items in this cluster include feeling afraid, threatened, intimidated, helpless, trapped, and confused. Finally, the fourth cluster, *self-blame*, was composed of two items, guilt and ashamed, apparently tapping the degree to which participants endorsed feelings of blame in regard to the harassment. Coefficient alphas for each of the four clusters were adequate (range = .76 to .93). Moreover, these four clusters closely resemble the stages of affective responses proposed by Salisbury et al. (1986).



**Fig. 1.** Multidimensional scaling of primary appraisal clusters.

To examine the structure further, the proximity matrix was then subjected to multidimensional scaling, a procedure used to spatially represent the observed similarity among a set of objects to discover the underlying meaning of dimensions (Fitzgerald & Hubert, 1987; Weinberg, 1991). The two-dimensional solution, which appears in Figure 1, converged in six iterations, with a stress value of .14 and accounted for 94% of the variance. Stress is a measure of goodness of fit, for which scores closer to zero represent a better fit (Fitzgerald & Hubert, 1987). The first dimension of the solution reveals a clear internally focused versus externally focused emotion distinction; the second dimension lacks a clear interpretation.

### The Influence of Stimulus and Individual Factors on Primary Appraisal

In addition to assessing the structure of the primary appraisal scale, this study investigated the relation between appraisal and its antecedents. Typically, hierarchical linear regression and dominance analysis would be conducted to assess the influence of stimulus and individual factors on the primary appraisal clusters. However, due to the limited sample size, these procedures are statistically inappropriate; therefore, a full correlation matrix (see Table 2) was examined as a preliminary step for future research.

There were a number of correlations of interest between primary appraisal and its stimulus and individual antecedents. Harassment intensity was correlated ($r = .31$) with primary appraisal as a total scale score, implying that the more severe the harassment, the more emotionally traumatizing the experience was perceived. Attributions toward society ($r = .24$) and self-esteem ($r = -.30$) were also correlated with primary appraisal as a total scale. Moreover, certain stimulus and individual factors were differentially correlated with the four clusters of appraisal (see Table 3).

Items corresponding to each of the four clusters were summed to create scale scores. The first cluster, *Demoralization*, was significantly negatively correlated with self-esteem ($r = -.26$). Significant correlations were found between *Anxious Arousal* and harassment intensity ($r = .35$) and self-esteem ($r = -.29$). *Fear*, the third cluster, was significantly correlated with harassment intensity ($r = .32$), previous victimization ($r = .32$), and attributions toward society ($r = .27$). Finally, the *Self-Blame* cluster was related to feminist attitudes ($r = -.30$) and three of the attribution subscales (behavioral self-blame, $r = .51$; characterological self-blame, $r = .43$; and chance, $r = .32$).

There were no significant correlations between the stimulus factors of frequency and duration with primary appraisal or the four clusters of primary appraisal. However, harassment intensity was significantly correlated ($p = .01$) with primary appraisal, *Anxious Arousal*, and *Fear*. All four individual factors were correlated with at least one of the appraisal clusters. Of particular interest was that self-esteem, which originally was not a part of Fitzgerald, Swam, and Magley's (1997) model of harm, was significantly correlated with primary appraisal, *Demoralization*, and *Anxious Arousal*. In addition, previous victimization was solely correlated with *Fear*.

### DISCUSSION

Although victim response has been much discussed in the psychological literature, one of the prime determinants of such responses, in this case primary appraisal, has

Table 2

Correlation Coefficients

| Scale | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Primary appraisal | — | | | | | | | | | | | | | | | | | | |
| 2 Demoralization | .75** | — | | | | | | | | | | | | | | | | | |
| 3 Anxious arousal | .88** | .79** | — | | | | | | | | | | | | | | | | |
| 4 Fear | .78** | .65** | .82** | — | | | | | | | | | | | | | | | |
| 5 Self-blame | .38** | .32** | .39** | .33** | — | | | | | | | | | | | | | | |
| 6 SEQ | −.03 | −.21 | −.02 | .08 | .24 | — | | | | | | | | | | | | | |
| 7 GH | −.20 | −.29* | −.24 | −.07 | .07 | .29* | — | | | | | | | | | | | | |
| 8 USA | −.06 | −.25 | .03 | .04 | .18 | .51** | .35** | — | | | | | | | | | | | |
| 9 SC | .29* | .16 | .31* | .26 | .30* | .32* | .07 | .40** | — | | | | | | | | | | |
| 10 Intensity | .31** | .20 | .35** | .32** | .05 | .32* | .04 | .39** | .20 | — | | | | | | | | | |
| 11 Duration | −.18 | −.15 | −.17 | −.15 | −.10 | .20 | .37** | .12 | −.08 | .20 | — | | | | | | | | |
| 12 PV | .23 | .13 | .19 | .32* | .08 | .16 | .22 | .03 | .15 | .04 | .18 | — | | | | | | | |
| 13 Attitudes | −.09 | −.08 | −.07 | −.01 | −.30* | .19 | .22 | .14 | .03 | .15 | −.10 | .06 | — | | | | | | |
| 14 Behavioral SB | .11 | .02 | .03 | .10 | .51** | .17 | .34* | .00 | .08 | −.23 | −.14 | .10 | −.23 | — | | | | | |
| 15 Character SB | .14 | .05 | .12 | .07 | .43** | .18 | .16 | .14 | .11 | −.04 | −.10 | −.04 | −.26* | .66** | — | | | | |
| 16 Chance | .11 | .01 | .13 | .07 | .32** | .15 | .11 | .16 | .04 | −.04 | −.17 | .00 | −.13 | .42** | .50** | — | | | |
| 17 Harasser | .19 | .10 | .20 | .17 | .23 | −.08 | −.21 | −.06 | .15 | .22 | .04 | .01 | −.01 | −.03 | .01 | .11 | — | | |
| 18 Society | .24* | .12 | .24 | .27* | .23 | .24 | .25 | .18 | .10 | .03 | −.03 | .29* | .17 | .27* | .27* | .27* | .15 | — | |
| 19 Self-Esteem | −.30* | −.26* | −.29* | −.22 | −.23 | −.12 | −.08 | −.03 | −.20 | −.27* | .02 | −.15 | .06 | −.30* | −.30* | −.23 | −.15 | −.17 | — |

Note. SEQ = Sexual Experiences Questionnaire; GH = gender harassment; USA = unwanted sexual attention; SC = sexual coercion; PV = Previous Victimization; SB = Self-Blame.
* $p < .05$ level, two-tailed. ** $p < .01$, two-tailed.

**Table 3**

Associations Between Antecedents and the Four Appraisal Clusters

| Appraisal cluster | Antecedents | |
|---|---|---|
| | Stimulus | Individual |
| Demoralization | None | Low self-esteem |
| Anxious arousal | High intensity | Low self-esteem |
| Fear | High intensity | High previous victimization |
| | | High societal attributions |
| Self-blame | None | Low feminist attitudes |
| | | High behavioral self-blame attributions |
| | | High characterological self-blame attributions |
| | | High chance attributions |

historically been overlooked and underresearched. Previous research on this topic typically investigated a limited number of emotional reactions and conceptualized primary appraisal as a unidimensional construct. To address these issues, we included a greater variety of potential cognitive and emotional reactions and examined the structure of primary appraisal using the theoretical framework of Salisbury et al. (1986) to ascertain whether a multidimensional conceptualization of primary appraisal is appropriate.

Cluster analysis and multidimensional scaling identified four distinct but related aspects of primary appraisal of sexual harassment. These four groups, which closely resemble Salisbury et al.'s (1986) stages of emotional response, represent victims' feelings of demoralization, anxious arousal, fear, and self-blame. The demoralization cluster includes feeling let down and insulted as a result of the harassment. The anxious arousal cluster refers to both feelings of anger regarding the harassment as well as more psychologically related responses such as feelings of depression and anxiety. The fear cluster represents a victim's feelings of threat and intimidation as a result of the harassment; self-blame refers to the degree to which the victim expressed feelings of responsibility for the harassment. Multidimensional scaling revealed a two-dimensional solution. The first dimension appears to distinguish between internally focused emotions (e.g., guilt toward self) and externally focused emotions (e.g., anger toward others); the second dimension is somewhat less clear and was not readily interpretable. These results suggest that primary appraisal might be better conceptualized as a multidimensional construct, reflecting a victim's emotional reaction toward herself and others.

Correlations were also examined to assess the relation between proposed antecedents in Fitzgerald, Swan, and Magley's (1997) model and primary appraisal. Stimulus and individual factors were differentially related to the four appraisal clusters. For the demoralization cluster, a significant negative correlation was found with self-esteem, suggesting that individuals with higher self-esteem were less likely to express demoralized feelings. The directionality of this relation is unclear, and researchers differ as to whether self-esteem is best conceptualized as an antecedent (Malovich & Stake, 1990) or as a consequence (Gruber & Bjorn, 1986) of sexual harassment. It may be that self-esteem operates as both and deserves further exploration.

Victims who were subjected to more intense harassment situations were more likely to endorse feelings of anxious arousal. In addition, the anxious arousal cluster was negatively correlated with self-esteem, suggesting that litigants with higher self-esteem are less likely to endorse strong anxious-arousal appraisals toward harassment; however, once again the directionality of this relation is unclear. Further, women who expressed feeling fear as a result of the harassment were more likely to have experienced intense harassment, to be previously abused, or to make societal attributions for the harassment. Finally, litigants who endorsed self-blaming feelings as a result of the harassment were more likely to express less feminist attitudes and attribute the harassment to behavioral and characterological aspects of themselves as well as to chance. This result suggests that endorsing pro-feminist attitudes may offer some psychological protection to sexual harassment victims by giving them a greater sense of control (i.e., fewer chance attributions) over the experience and, as such, are also less likely to blame themselves for the harassment.[6]

The results of this study suggest that a litigant's primary appraisal of sexual harassment is complex and involves a myriad of emotional responses. Moreover, stimulus and individual factors are differentially associated with these four distinct primary appraisal clusters. A better understanding of how and why victims differentially express aspects of demoralization, anxious arousal, fear, and self-blame can have direct theoretical and practical implications. Theoretically, primary appraisal is a critical component of Fitzgerald, Swan, and Magley's (1997) model of harm. This study empirically demonstrates that how a victim emotionally responds to harassment is influenced not only by various aspects of the harassment itself but also by her own characteristics. Primary appraisal, in turn, affects subsequent behavioral reactions (e.g., coping responses), as well as psychological and physical health and job-related outcomes. Therefore, primary appraisal serves as a crucial first step in understanding why victims cope with harassment in a variety of ways and why they experience varying degrees and types of disruption. For example, a victim who endorses feeling fear as a result of the harassment experience may be less likely to report the harassment and subsequently suffer more severe psychological or health-related outcomes, as opposed to outcomes that are more job-related.

Victims' primary appraisal of harassment also has practical legal and counseling implications. When judges and juries have a thorough understanding of a victim's experience of harassment, they are better able to empathize with her and take her perspective into account. This is particularly

pertinent for male jurors and judges, as research has empirically shown that men are less able to empathize with the victimization experiences of women (Weiner, Watts, Goldkamp, & Gasper, 1995). It is also crucial for counselors and mental health practitioners to have a thorough understanding of the emotional responses of sexual harassment victims, in that primary appraisal directly informs the course of treatment as well as the subsequent goals set by both practitioner and client (Hamilton, Alagna, King, & Lloyd, 1987; Salisbury et al., 1986).

Although the present study extends our understanding of the role of primary appraisal, we acknowledge a number of limitations on the conclusions that can be drawn. First, researchers have found that legal action for victims of sexual harassment is rare; in fact only 1% of victims participate in litigation (Fitzgerald, Swan et al., 1995). As a result, the present sample is distinctive and likely not representative of all sexual harassment victims. It is likely that, because these women have made formal reports and filed legal complaints, their experiences were more severe than nonreporting victims. The present analyses must be replicated in nonlitigant samples before statements can be made concerning the generalizability of the results. Such comparative analyses of litigants and nonlitigants could also increase our understanding of why some individuals make formal complaints and others do not.

A second limitation has to do with the nature of the data itself. At least one factor, male–female ratios in the organization, hypothesized by Fitzgerald, Swan, and Magley's (1997) model to be a determinant of primary appraisal could not be included in this study because the necessary data were not available; this is an unfortunate, though not uncommon, problem with clinical samples. Further, this is regrettable given the numerous studies that have established a link between organizational antecedents, sexual harassment, and outcomes, but failed to include the role of cognitive appraisal (e.g., Fitzgerald, Drasgow et al., 1997). The influence of such contextual factors on primary appraisal is another area for future study, as it may inform researchers and the legal system regarding job-related consequences of harassment.

It is of course reasonable to ask whether the distinctive nature of our sample may have influenced the substantive results obtained from the cluster analysis. We do not believe this is likely the case. First, the administration of additional instruments with validity checks, which are not described in the current study, suggests that the participants were not attempting to misrepresent themselves or appear more psychologically distressed than was actually the case. Second, even if this were not the case, the nature of cluster analysis is such that the results would not be affected because this analysis determines proximity by examining correlations among items, not mean scores; correlations are not affected by the magnitude of scores. Given these considerations, we believe that our results reliably represent the structure of primary appraisals of sexual harassment.

Finally, any research conducted with a vulnerable group by a more powerful (in this case, even more so than usual) investigator raises substantial ethical concerns regarding issues of voluntary consent. As feminist researchers, we take these issues particularly seriously and attempted to neutralize the situation to the degree possible. As described above, the evaluator remained blind to each litigant's decision regarding research participation, and participants were assured that there was no way their decision to participate could affect their litigation. We believe that participants had an adequate understanding of the issues of consent and power, as approximately 10% of them refused to participate in the study.

Lastly, the limited sample size restricted our ability to analyze the data to the fullest extent. It is our hope that our ongoing data collection will eventually yield a sample of sexual harassment litigants that enables us to employ more advanced analytic procedures, thus allowing a more in-depth understanding of this important process.

*Initial submission: November 21, 2005*
*Initial acceptance: June 29, 2006*
*Final acceptance: August 30, 2006*

## NOTES

1. Although studies have shown that men are also targets of sexual harassment (U.S. Merit Systems Protection Board, 1988), the prevalence rates are generally much lower for men; in this study only the sexual harassment of women will be discussed.
2. Information regarding personal resources and control were not available for this sample; therefore, these were not included in the study.
3. Contextual factor information was not available for this sample; therefore, these factors were not included in the study.
4. The original target sample consisted of 95 individuals; for various reasons, 12 were not administered or did not complete the primary appraisal questionnaire (e.g., their cases unexpectedly settled; they were atypical in some way [e.g., a few plaintiffs were male, a few were students rather than employees]). After taking into account missing data, the final sample consisted of 72 female plaintiffs involved in workplace sexual harassment litigation.
5. One item was dropped from the scale to improve reliability and because it failed to provide any additional information.
6. We would like to thank one of our anonymous reviewers for suggesting this insight.

## REFERENCES

Baker, D. D., Terpstra, D. E., & Larntz, K. (1990). The influence of individual characteristics and severity of harassing behavior on reactions to sexual harassment. *Sex Roles, 22,* 305–325.

Bernaards, C. A., & Sijtsma, K. (2000). Influence of imputation and EM methods on factor analysis when item nonresponse in questionnaire data is nonignorable. *Multivariate Behavioral Research, 35,* 321–364.

Borgen, F. H., & Barnett, D. C. (1987). Applying cluster analysis in counseling psychology research. *Journal of Counseling Psychology, 34,* 456–468.

Brooks, L., & Perot, A. R. (1991). Reporting sexual harassment: Exploring a predictive model. *Psychology of Women Quarterly, 15,* 31–47.

Collinsworth, L. L. (2004). *Individual and objective influences on psychological outcomes of sexual harassment: A preliminary examination.* Unpublished doctoral dissertation, University of Illinois, Urbana–Champaign.

Fitzgerald, L. F., Buchanan, N. T., Collinsworth, L. L., Magley, V. J., & Ramos, A. M. (1999). Junk logic: The abuse defense in sexual harassment litigation. *Psychology, Public Policy, and Law, 5,* 730–759.

Fitzgerald, L. F., Drasgow, F., Hulin, C. L., Gelfand, M. J., & Magley, V. J. (1997). Antecedents and consequences of sexual harassment in organizations: A test of an integrated model. *Journal of Applied Psychology, 82,* 578–589.

Fitzgerald, L. F., Drasgow, F., & Magley, V. J. (1999). Sexual harassment in the armed forces: A test of an integrated model. *Military Psychology, 11,* 329–343.

Fitzgerald, L. F., Gelfand, M. J., & Drasgow, F. (1995). Measuring sexual harassment: Theoretical and psychometric advances. *Basic and Applied Social Psychology, 17,* 425–445.

Fitzgerald, L. F., & Hubert, L. J. (1987). Multidimensional scaling: Some possibilities for counseling psychology. *Journal of Counseling Psychology, 34,* 469–480.

Fitzgerald, L. F., Magley, V. J., & Swan, S. (1996, March). *The in-depth interview schedule: Assessing psychological, organizational, and health-related outcomes for sexual harassment victims.* Paper presented at the annual meeting of the Association for Women in Psychology, Portland, OR.

Fitzgerald, L. F., Shullman, S. L., Bailey, N., Richards, M., Swecker, J., Gold, Y., et al. (1988). The incidence and dimensions of sexual harassment in academia and the workplace. *Journal of Vocational Behavior, 32,* 152–175.

Fitzgerald, L. F., Swan, S., & Fischer, K. (1995). Why didn't she just report him?: The psychological and legal implications of women's responses to sexual harassment. *Journal of Social Issues, 51,* 117–138.

Fitzgerald, L. F., Swan, S., & Magley, V. J. (1997). But was it really sexual harassment?: Legal, behavioral, and psychological definitions of the workplace victimization of women. In W. O'Donohue (Ed.), *Sexual harassment: Theory, research, and treatment* (pp. 5–28). Boston: Allyn & Bacon.

Folkman, S., & Lazarus, R. S. (1985). If it changes it must be a process: Study of emotion and coping during three stages of a college examination. *Journal of Personality and Social Psychology, 48,* 150–170.

Folkman, S., Lazarus, R. S., Dunkel-Schetter, C., DeLongis, A., & Gruen, R. J. (2000). The dynamics of a stressful encounter. In E. T. Higgins & A. Kruglanski (Eds.), *Motivational science: Social and personality perspectives* (pp. 111–127). Ann Arbor, MI: Sheridan Books.

Frazier, P. A. (1990). Victim attributions and post-rape trauma. *Journal of Personality and Social Psychology, 59,* 298–304.

Frazier, P. A., Cochran, C. C., & Olson, A. M. (1995). Social science research on lay definitions of sexual harassment. *Journal of Social Issues, 51,* 21–37.

Frazier, P. A., & Schauben, L. (1994). Causal attributions and recovery from rape and other stressful life events. *Journal of Social and Clinical Psychology, 13,* 1–14.

Gelfand, M. J., Fitzgerald, L. F., & Drasgow, F. (1995). The structure of sexual harassment: A confirmatory analysis across cultures and settings. *Journal of Vocational Behavior, 47,* 164–177.

Glomb, T. M., Richman, W. L., Hulin, C. L., Drasgow, F., Schneider, K. T., & Fitzgerald, L. F. (1997). Ambient sexual harassment: An integrated model of antecedents and consequences. *Organizational Behavior and Human Decision Processes, 71,* 309–328.

Gruber, J. E., & Bjorn, L. (1986). Women's responses to sexual harassment: An analysis of sociocultural, organizational, and personal resource models. *Social Science Quarterly, 67,* 814–826.

Hamilton, J. A., Alagna, S. W., King, L. S., & Lloyd, C. (1987). The emotional consequences of gender-based abuse in the workplace: New counseling programs for sex discrimination. *Women and Therapy, 6,* 155–182.

Jensen, I., & Gutek, B. A. (1982). Attributions and assignment of responsibility for sexual harassment. *Journal of Social Issues, 38,* 121–136.

Kinney, T. A. (2003). Themes and perceptions of written sexually harassing messages and their link to distress. *Journal of Language and Social Psychology, 22,* 8–28.

Koss, M. P., Goodman, L. A., Browne, A., Fitzgerald, L. F., Keita, G. P., & Russo, N. F. (Eds.). (1994). *No safe haven: Male violence against women at home, at work, and in the community.* Washington, DC: American Psychological Association.

Lazarus, R. S., & Folkman, S. (1984). *Stress, appraisal, and coping.* New York: Springer.

Lindemann, B., & Kadue, D. D. (1992). *Sexual harassment in employment law.* Washington, DC: Bureau of National Affairs.

Malovich, N. J., & Stake, J. E. (1990). Sexual harassment on campus: Individual differences in attitudes and beliefs. *Psychology of Women Quarterly, 14,* 63–81.

O'Connell, C. E., & Korabik, K. (2000). Sexual harassment: The relationship of personal vulnerability, work context, perpetrator status, and type of harassment to outcomes. *Journal of Vocational Behavior, 56,* 299–329.

Piotrkowski, C. S. (1998). Gender harassment, job satisfaction, and distress among employed white and minority women. *Journal of Occupational Health Psychology, 3,* 33–43.

Reed, M. E. (2004). *The psychological impact of sexual harassment and previous victimization in a sample of class action litigants.* Unpublished doctoral dissertation, University of Illinois, Urbana–Champaign.

Rosenberg, M. (1965). *Society and the adolescent self image.* Princeton, NJ: Princeton University Press.

Salisbury, J., Ginorio, A. B., Remick, H., & Stringer, D. M. (1986). Counseling victims of sexual harassment. *Psychotherapy, 23,* 316–324.

Samoluk, S. B., & Pretty, G. M. H. (1994). The impact of sexual harassment simulations on women's thoughts and feelings. *Sex Roles, 30,* 679–697.

Schneider, B. (1987). Graduate women, sexual harassment, and university policy. *Journal of Higher Education, 58,* 46–65.

Schneider, K. T., Swan, S., & Fitzgerald, L. F. (1997). Job-related and psychological effects of sexual harassment in the

workplace: Empirical evidence from two organizations. *Journal of Applied Psychology, 82,* 401–415.

Spitzer, R. L., Williams, J. B. W., Gibbon, M., & First, M. B. (1990). *Structured clinical interview for DSM-III-R, Nonpatient Edition.* Washington, DC: American Psychiatric Press.

Swan, S. (1995). *So what? Why did it bother her? Factors affecting women's subjective appraisal of the severity of sexual harassment experiences.* Unpublished doctoral dissertation, University of Illinois, Urbana–Champaign.

Swim, J. K., Aikin, K. J., Hall, W. S., & Hunter, B. A. (1995). Sexism and racism: Old-fashioned and modern prejudices. *Journal of Personality and Social Psychology, 68,* 199–214.

Terpstra, D. E., & Baker, D. D. (1989). The identification and classification of reactions to sexual harassment. *Journal of Organizational Behavior, 10,* 1–14.

U.S. Merit Systems Protection Board. (1988). *Sexual harassment of federal workers: An update.* Washington, DC: U.S. Government Printing Office.

Weinberg, S. L. (1991). Methods, plainly speaking: An introduction to multidimensional scaling. *Measurement and Evaluation in Counseling and Development, 24,* 12–34.

Weiner, R. L., Watts, B. A., Goldkamp, K. H., & Gasper, C. (1995). Social analytic investigation of hostile work environments. *Law and Human Behavior, 19,* 263–280.

Wilson, F. (2000). The subjective experiences of sexual harassment: Cases of students. *Human Relations, 53,* 1081–1097.

View publication stats