# EXHIBIT I

Liza H. Gold, MD, DFAPA

Clinical Professor of Psychiatry                    Certified, Board of Psychiatry and Neurology
Georgetown University Medical Center                Clinical and Forensic Psychiatry

---

In re:  Van et al. v. Ford Motor Company
        United States District Court
        Northern District of Illinois, Eastern Division
        Case No. 1:14-CV-08708

Rebuttal of Expert Report Submitted by Louise Fitzgerald, Ph.D.

Introduction
I was asked to review the report submitted by Dr. Louise Fitzgerald, dated
September 8, 2017, in the above-referenced case, and to opine on Dr. Fitzgerald's
opinions and the methodology she employed to reach those opinions in my capacity
as a clinical and forensic psychiatrist.

In preparing this report, I reviewed the following documents:
    1.  Louise F. Fitzgerald, Ph.D., Expert Report, September 8, 2017
    2.  Louise Fitzgerald Declaration, October 10, 2017
    3.  Louise F. Fitzgerald, Ph.D., Deposition Testimony, October 11, 2017

My hourly rate in this case is $600.

A list of cases in which I have given deposition or trial testimony as an expert within
the last four years is attached hereto as Exhibit A.

Background and Qualifications
I am a Clinical Professor of Psychiatry at the Georgetown University School of
Medicine (please see attached as Exhibit B my CV for a full listing of my training and
experience.)

I am a board certified clinical and forensic psychiatrist, and I hold medical licenses
in the District of Columbia, Virginia, Maryland, New Jersey, and New York. I have
written and taught extensively on the subject of sexual harassment and the
psychiatric consequences of sexual harassment in the workplace. I am currently a
member of the National Academies of Sciences, Engineering, and Medicine
Committee's Committee on Sexual Harassment in the Scientific and Technical
Workforce on Women in Science, Engineering, and Medicine.

I am author of the book *Sexual Harassment: Psychiatric Assessment in Employment
Litigation* (2004), which won the prestigious American Psychiatric Association and
American Academy of Psychiatry and the Law Guttmacher Award in 2006 for the
most outstanding contribution to the literature on forensic psychiatry.  I have
authored multiple book chapters and articles on the subject of psychiatric aspects of
employment discrimination and sexual harassment, and have lectured on this
subject locally and nationally.

1

Opinion Summary
The following are my opinions within a reasonable degree of scientific certainty.
These opinions are subject to revision should additional relevant information
become available for my consideration.

1. Dr. Fitzgerald's report does not include any evidence of clinical psychological
   evaluation of any plaintiff or other witness in this case. Dr. Fitzgerald
   confirmed during her deposition that she did not conduct clinical evaluations
   of any plaintiffs or witnesses in this case (Fitzgerald Dep. at pp. 29-31).

2. Dr. Fitzgerald's use of selected excerpts from certain plaintiffs' deposition
   testimony in lieu of conducting individual clinical evaluations is not a valid
   scientific methodology for coming to a conclusion within a reasonable degree
   of medical or psychiatric certainty as to whether any particular plaintiff or
   class of plaintiffs experienced the conduct alleged.

3. To the extent that Dr. Fitzgerald seeks to suggest that any particular plaintiff
   or class of plaintiffs suffered emotional distress or other psychological
   consequences as a result of the alleged conduct, that, too, is unscientific,
   given that Dr. Fitzgerald did not clinically evaluate any of the plaintiffs in this
   case.

4. To the extent that Dr. Fitzgerald seeks to imply or characterize the conduct
   cited in the plaintiffs' deposition excerpts as "offensive" or "unwelcome" to
   all women or to all women who worked in the two Chicago Ford Plants at
   issue, this, too, is scientifically invalid. First, mental health professionals
   have no particular training or expertise in assessing these inherently legal
   constructs. Second, to offer such opinions without even conducting any
   personal evaluations of the plaintiffs is particularly unsupportable.

5. In her report, Dr. Fitzgerald summarizes social science research on sexual
   harassment in organizations, and then purports to opine as to "the
   organizational climate at Ford during the time-period at issue" based on this
   body of social science research and the "facts of the case as they have been
   made known [to her] in the case materials made available." (Fitzgerald
   Report at p. 4). Dr. Fitzgerald presents excerpts from individual plaintiffs'
   depositions as the "facts of the case." Although Dr. Fitzgerald repeatedly
   suggests that this "methodology" is scientifically valid, utilizing a general
   body of social science research to deduce conclusions about *particular*
   individuals and their *particular* working environment, without the benefit of
   any clinical or forensic evaluation of those individuals, is not scientifically
   sound and is not accepted as such within the scientific community.

6. For these reasons, Dr. Fitzgerald's report cannot form the basis of any valid
   clinical psychological conclusions as to whether any individual plaintiff or
   class of plaintiffs experienced the conduct alleged. Nor can Dr. Fitzgerald's
   report be used to support any valid psychological conclusion as to whether
   any particular plaintiff or class of plaintiffs was in fact offended by, for
   example, alleged conversations about sex or flirtation in the workplace; as I
   have written, "[n]o psychological theory provides scientifically reliable or
   specifically relevant models addressing the evaluation of the mutuality of

sexual conduct or the offensiveness of a working environment or another person's behavior" (Gold, *Sexual Harassment: Psychiatric Assessment in Employment Litigation* at p. 150).

7. Finally, for all the reasons stated above, Dr. Fitzgerald's report cannot form the basis of any valid clinical psychological conclusions that a particular plaintiff or class of plaintiffs suffered emotional distress or other psychological consequences as a result of the alleged conduct, or that the experiences of any two or more plaintiffs or class was, in fact, "similar" (Fitzgerald Dep. at p. 191).

Discussion

Dr. Fitzgerald's report is replete with conclusions purportedly *applicable to the individual plaintiffs in this case*, based on selected excerpts from plaintiffs' deposition testimony and her assessment that aspects of their testimony are consistent with social science research findings on sexual harassment. To the extent that a review of social science research findings in regard to sexual harassment is helpful to the trier-of-fact, such a review is not scientifically objectionable.

However, to the extent that Dr. Fitzgerald purports to infer from her social science research and literature review

• that plaintiffs in *this case* experienced the conduct about which they now complain;

• that plaintiffs were *in fact* offended by sexual language they heard or conduct in which they may have participated; or

• that plaintiffs suffered negative psychological consequences as a result of this alleged conduct

such inferences are scientifically invalid and misleading.

Dr. Fitzgerald repeatedly testified during her deposition that "it is reliable to apply general standards and accepted knowledge to specific fact patterns" (e.g., Fitzgerald Dep. at p. 103). She described her methodology as "ma[king] inferences based on the data available to [her]," explaining that she "applied the general principles to this particular case" (*Id.* at p. 105). Dr. Fitzgerald also explained that she considered excerpting deposition testimony to be a valid method of assembling data, stating, "data doesn't have to be numbers. I mean, testimony is data" (*Id.* at p. 122).

When pressed, Dr. Fitzgerald testified, "There is no rule anywhere that says that you cannot apply a set of scien- -- or a body of scientific knowledge to the facts of a particular case" (Fitzgerald Dep. at p. 105). That is not strictly true; it is not scientifically defensible among the psychological or psychiatric community to deduce specific conclusions about a particular case, a particular plaintiff, or a particular class of plaintiffs based on a relevant body of scientific knowledge **unsupported by clinical evaluation**. It is not scientifically sound to draw specific conclusions regarding any individual plaintiff's experience or psychological reaction

3

to that experience based on selected excerpts from that plaintiff's (or other plaintiffs') deposition testimony.

To her credit, Dr. Fitzgerald does not draw such conclusions *directly*. Nevertheless, Dr. Fitzgerald repeatedly *implies* that because certain plaintiffs allege fact-patterns that are consistent with social science research findings, those fact-patterns *in fact* occurred as described, and further, that those fact-patterns caused the plaintiffs emotional distress or other psychological harm. In this manner, she indirectly seeks to support the plaintiffs' claims in this case without conducting clinical examinations, structured interviews, or psychological testing.

Dr. Fitzgerald defends this methodology in her deposition testimony. Dr. Fitzgerald was asked directly, "You believe that you can apply scientific knowledge and generally accepted principles to facts of a particular case to determine whether plaintiffs' experiences are typical of an entire workforce population?" Dr. Fitzgerald replied, "I believe – well, I – I do it all the time, so – and it is accepted all the time." When asked by whom, Dr. Fitzgerald replied, "Judges." When asked for an example, Dr. Fitzgerald said, "Gosh, yeah, lots. I'd have to think about it, but lots of DOJ cases, lots of EEOC cases ... even though you don't measure organizational climate directly, you make inferences based on what the plaintiff tells you..." (Fitzgerald Dep. at pp. 105-106).

It is my opinion that the deductive process described and applied by Dr. Fitzgerald in her report does not comport with generally accepted clinical, forensic psychological standards or methodology. Dr. Fitzgerald's statement that "[t]he scientific underpinnings of [her] report are drawn from peer-reviewed studies with known and specifiable error rates and are accepted as authoritative in the scientific community" (Fitzgerald Report at p. 4) is simply inaccurate in regard to her many conclusions.

I. *Dr. Fitzgerald Does Not Have A Valid Scientific Basis To Offer Conclusions As To Whether Particular Plaintiffs Or A Class Experienced The Conduct Alleged*

Dr. Fitzgerald does not have a valid scientific basis to evaluate whether or not any particular plaintiff—much less *all* women who worked at Ford's Chicago Assembly Plant and Chicago Stamping Plant (together, the "Chicago Plants") from 2012 to the present—in fact experienced sexual harassment. *See* Fitzgerald Report at p. 68 (stating that "the harassment is so pervasive as to have inevitably exposed every female employee of the plants, to a greater or lesser degree").

On page 4 of her report, Dr. Fitzgerald attempts to qualify her opinions by stating that they "represent 'if-then' statements *assuming the facts are shown to be largely as alleged*" (Fitzgerald Report at p. 4) (emphasis added). This disclaimer does not effectively offset the bulk of Dr. Fitzgerald's report, however, in which she draws conclusion after conclusion, couched as "scientific evidence," regarding the experiences of female employees at the Chicago Plants.

For example, Dr. Fitzgerald offers the penultimate "opinion"—unqualified by any "if-then" language—that the working environment at the Chicago Plants "appears to be permeated with sexual harassment of the grossest, ugliest, and most degrading kind" (Fitzgerald Report at p. 68).   This statement suggests Dr. Fitzgerald has independently investigated and found that the experiences the plaintiffs describe are *true*, despite the fact that Dr. Fitzgerald has never met or spoken with any of the plaintiffs.

In order to properly evaluate from a psychological perspective any particular individual's experience, to compare any set of individuals' experiences, or to draw conclusions about a work environment based on a group of individuals' experiences, Dr. Fitzgerald would—at a minimum—need to clinically evaluate the individuals whose experiences form the basis of her opinion(s).[1]  Dr. Fitzgerald herself acknowledges that she did not obtain a "detailed history," conduct "structured diagnostic interviews," or administer psychological tests (Fitzgerald Depo. at pp. 30-31) and thus, her opinions on these subjects are not scientifically valid.

II.      *Dr. Fitzgerald's Implication That All Sexual Conduct In The Workplace Is Offensive And Unwelcome To All Women Is Also Scientifically Invalid.*

As I have written, while certain types of conduct are "inherently and obviously unwelcome," other, more "ambiguous types of social sexual conduct" may be perceived differently by different people. (Gold, *Sexual Harassment: Psychiatric Assessment in Employment Litigation* at p. 147).  As Dr. Fitzgerald herself concedes, it is "of course possible in any individual case" for a woman to not be bothered by conduct that others would find offensive, or "even . . . [to be] flattered or welcome[] the attention."  (Fitzgerald Report at pp. 57-58).

In my opinion, it is not scientifically sound for psychologists to make *any* generalizations regarding "welcomeness" or "offense."  Because "[w]elcomeness of conduct is a legal construct with no direct psychological parallel," psychological experts' conclusions on these direct subjects are "without scientific basis."   (Gold, *Sexual Harassment: Psychiatric Assessment in Employment Litigation* at p. 151).  That is, even if Dr. Fitzgerald had undertaken to clinically evaluate the plaintiffs, it *still* would not have been scientifically sound for her to offer opinions regarding whether the plaintiffs were, in fact, "offended" by particular conduct, or whether particular conduct was or was not "welcome."

---

[1] See, e.g., standard textbooks on the subject:  Glancy G: "Forensic Evaluations and Reports," in Gold LH, Frierson RL (eds): *The American Psychiatric Association Publishing Textbook of Forensic Psychiatry* (2018); Heilbrun K, Grisso T, Goldstein A: *Foundations of Forensic Mental Health Assessment (Best Practices in Forensic Mental Health Assessment)* 1st Edition (2009); Melton GB, Petrila J: *Psychological Evaluation for the Courts*, Third Edition (2007).

Had she performed clinical examinations, Dr. Fitzgerald may have been able to properly opine, for example, on "the presence or absence of psychiatric symptoms or disorders *relevant*" to these factual questions (Gold, *Sexual Harassment: Psychiatric Assessment in Employment Litigation* at 144) (emphasis added)—but still not as to the ultimate factual questions *themselves*, which are well-within "the ability of a layperson and do not require any special expertise" (*id.* at 150). Having done *no* clinical evaluations, Dr. Fitzgerald has no scientific basis to offer opinions even on these related issues (the presence or absence of particular symptoms or disorders), much less on the ultimate questions of "welcomeness" and "offense." To the extent that she implicitly seeks to offer opinions on these subjects, they are unscientific and highly misleading.

III.    *Dr. Fitzgerald Does Not Have A Valid Scientific Basis To Offer Conclusions As To Whether Any Plaintiff Suffered Psychological Consequences As A Result Of The Conduct Alleged*

With respect to emotional distress or other psychological reactions by the plaintiffs to the conduct described, Dr. Fitzgerald implies that because
(1) social science research has found that emotional distress or psychological harm is or can be associated with experiences of sexual harassment, and
(2) Dr. Fitzgerald has concluded that "every female employee of the plants" has been exposed to sexual harassment (Fitzgerald Report at p. 68), then
(3) every female employee therefore must have experienced psychological harm.
This implication is scientifically unsupportable and invalid.

This type of reasoning does not represent standard psychological or psychiatric methodology under any circumstances, much less forensic circumstances, for evaluating claims of emotional distress or psychological consequences. The standard methodology for evaluation of emotional distress, as described extensively in psychiatric and psychological literature, includes:

   a.  Review of all relevant documents, including medical and psychiatric records;
   b.  A personal and clinical evaluation, at times including standard psychological testing;
   c.  Consideration of third party sources, either through documentary evidence or interviews;
   d.  Reaching conclusions after considering the possibility of alternate causation of emotional distress and the possibility of malingering; that is, intentionally misrepresenting oneself as suffering from medical or psychiatric symptoms for the purpose of obtaining some kind of personal gain, in one of its many forms.[2]

---

[2] See, e.g., McDermott, BE: "Evaluation of Malingering," in Gold LH, Frierson RL (eds): *The American Psychiatric Association Publishing Textbook of Forensic Psychiatry* (2018); Heilbrun K, Grisso T, Goldstein A: *Foundations of Forensic Mental Health Assessment (Best Practices in Forensic Mental Health Assessment)* 1st Edition (2009); Melton GB, Petrila J: *Psychological Evaluation for the Courts*,

Dr. Fitzgerald did not do (a), (b), (c), or (d) in this case. She did not review plaintiffs' medical or psychological treatment records; she did not conduct a clinical evaluation of any plaintiff or perform any psychological testing; and she does not appear to have considered any alternate sources of workplace stress that may have contributed to any emotional distress the plaintiffs allege they have suffered. Therefore, no valid conclusions about any individual plaintiff's or class of plaintiffs' emotional distress or psychological response to alleged workplace events can be drawn from Dr. Fitzgerald's assessment.

Nevertheless, Dr. Fitzgerald manages to include, through excerpts of deposition testimony, statements that speak to emotional distress and psychological outcomes. Without conducting a single clinical psychological evaluation, Dr. Fitzgerald implies that claims of emotional distress due to alleged sexual harassment in this case are inherently true because they are consistent with research findings.

1. For example, on page 13 of her report, Dr. Fitzgerald states, "Ambient harassment has been shown to give rise to 'bystander stress' (Schneider, 1995), that is, negative job-related, psychological, and health-related consequences that result from witnessing or hearing about sexually offensive experiences of others (or of women in general) in one's work environment. Research demonstrates that these effects can be equivalent to those of being a direct target; women who work in environments in which their coworkers are harassed display heightened anxiety, lower job satisfaction and other psychological distress and turnover intention even among those who indicate they 'didn't mind' (Berdahl and Aquino, 2009; Miner-Rubino and Cortina, 2007)."

Dr. Fitzgerald goes on to conclude (based on excerpts selectively drawn from plaintiffs' depositions) "that a high level of ambient harassment permeated the environment at the Chicago plants." Accordingly, she offers the opinion that ambient harassment "indirect though it may be, has concrete, measurable, negative effects on all women who work in it, as well as on the organization as a whole." (Fitzgerald Report at p. 17) (emphasis in original).

It is difficult to ignore Dr. Fitzgerald's (invalid) inference: because Dr. Fitzgerald has concluded (based on select deposition testimony) that a high level of ambient harassment permeated the Chicago Plants, she suggests that all women who worked at these plants suffered some negative psychological effects and consequences. Such an inference is not scientifically supportable. Whether an individual working in any environment suffered psychological stress or distress caused by that work environment requires a standard clinical evaluation.

---

Third Edition (2007); Rogers R: *Clinical Assessment of Malingering and Deception*, Third Edition (2012).

2.  Similarly, Dr. Fitzgerald uses selected excerpts from plaintiffs' deposition testimony to support her conclusion that women at the Chicago Plants believe Ford is willing to tolerate sexual harassment.  On page 28 of her report, Dr. Fitzgerald states, "Research has repeatedly demonstrated that work groups in which the members believe that harassment complaints are not taken seriously, that it is risky to complain, and there are no meaningful sanctions for offenders will experience significantly more harassing behavior (Fitzgerald et al., 1997; Hulin, Fitzgerald, Drasgow, 1996). Moreover women who are harassed in these groups have significantly worse outcomes (e.g. psychological distress, lowered job satisfaction, work withdrawal) than women who have similar experiences in a more supportive climate. Indeed some work has shown that a tolerant climate can itself lead to damage and distress, even for women who are not themselves harassed (Glomb et al. 1997) …".  Dr. Fitzgerald then concludes by stating "[t]here is considerable evidence that those involved in this case believe that the Ford Chicago Plants are willing to tolerate the sexual harassment of their employees" (Fitzgerald Report at p. 28).

Dr. Fitzgerald also cites testimony that speaks to emotional distress and alleged psychological harm.  For example, Dr. Fitzgerald quotes Cephani Miller as testifying, "And we supposed [sic] to just take it and just go see therapists.  And – and I don't want to take antidepressants and – and have panic attacks, but I do, and I'm still getting retaliated against, and it's not right" (Fitzgerald Report at p. 28).

Thus, in presenting what she states is supporting evidence for her conclusion that there is a perception that sexual harassment will be "tolerated" at the Chicago Plants, Dr. Fitzgerald introduces statements that are relevant to claims of emotional distress.  In presenting plaintiffs' deposition testimony regarding alleged psychological harm in this context, Dr. Fitzgerald implicitly substantiates Ms. Miller's individual claim, reasoning that because research has demonstrated that such an outcome is possible, Ms. Miller's testimony that she has experienced emotional harm as a result of sexual harassment is accurate.

These conclusions are not scientifically valid.  In order to determine whether Ms. Miller in fact experienced emotional distress as a result of sexual harassment, Dr. Fitzgerald would need to conduct a face-to-face clinical mental health evaluation of Ms. Miller, with objective consideration of alternate causation and the possibility, however remote, of malingering.

3. Finally, Dr. Fitzgerald states in her report that as a result of the sexual harassment that she describes at the Chicago Plants, "Anything less [than comprehensive, long term, monitored interventions] constitutes a waste of time and resources, as well as a threat to organizational reputation and good will, and – most importantly – *worker psychological health, physical safety, and overall wellbeing*" (Fitzgerald Report at p. 68) (emphasis added).  This statement is problematic in several respects.

First, as is characteristic of Dr. Fitzgerald's report, she has opined here on subjects outside the scope of a psychologist's areas of expertise. Although Dr. Fitzgerald identifies herself as an organizational psychologist (Fitzgerald Dep. at p. 37), she cannot clearly define what qualifies her as an organizational psychologist (*id.* at pp. 37-42). In fact, Dr. Fitzgerald testified that she got her Ph.D. in counseling psychology (*id.* at p. 42). She further states that "Organizational psychology depends a lot on social psychology, but I did not specialize in social psychology" (*id.* at p. 38). In addition, Dr. Fitzgerald testified that "social psychology is generally not considered an applied discipline" (*id.* at p. 40).

Although Dr. Fitzgerald has a Ph.D. in counseling psychology and has conducted research on many aspects of sexual harassment, Dr. Fitzgerald's qualifications as an organizational psychologist seem to be self-conferred. Her qualifications to opine on what may or may not be a "waste of time and resources" for a business to pursue to attempt to combat allegations of sexual harassment are unclear. The fact that Dr. Fitzgerald repeatedly *does* opine on non-psychological and frankly ultimate legal issues calls into question the validity of her conclusions.

Second, Dr. Fitzgerald is again implying that because she has concluded the working environment at the Chicago Plants is "permeated with sexual harassment of the grossest, ugliest, and most degrading kind" (Fitzgerald Report at p. 68) that "*every female*" at the Chicago Plants faces threats to her psychological health (*id.*) (emphasis added). It is scientifically invalid to suggest that because social science research has demonstrated that sexual harassment can have negative psychological consequences, every woman working in the Chicago Plants, whether a plaintiff in this matter or not, *in fact suffered* psychological consequences.

IV.   *Dr. Fitzgerald Does Not Have A Valid Scientific Basis To Offer Conclusions As To Whether Plaintiffs' Experiences Were In Fact Similar To Each Other, Or To Those Of Other Women Working At The Chicago Plants*

Finally, Dr. Fitzgerald also lacks a valid scientific basis for the conclusion that the plaintiffs' experiences were "remarkably similar" to each other—or that their experiences were somehow characteristic of *all* the women who worked at the Chicago Plants (Fitzgerald Report at p. 47).

First, Dr. Fitzgerald states that "the women's experiences were remarkably similar in nature, basically differing only in severity" (Fitzgerald Report at p. 47). It is not scientifically valid to compare any two women's experiences with respect to sexual harassment based only on a review of deposition testimony and when there has been *no clinical evaluation* of the women.

Second, with respect to Dr. Fitzgerald's attempt to infer on the basis of the *plaintiffs'* described experiences that *all* women at the Chicago Plants had similar experiences, Dr. Fitzgerald herself conceded at deposition that litigants tend not to be representative of the population at large. In her deposition, Dr. Fitzgerald testified

that the plaintiffs' experiences in this matter likely "are more severe than individuals who were not reporting or who are not joining litigation as plaintiffs," stating, "in general, I think you have to make that assumption." And again, even Dr. Fitzgerald acknowledged that "[i]n any particular case, it may not be true." (Fitzgerald Dep. at p. 200).

In fact, Dr. Fitzgerald's report is replete with assumptions that may not be true, including assumptions that are based on deduction derived from social science research regarding sexual harassment. Such research is enlightening and relevant, but cannot in and of itself substitute for an evaluation of the facts of each particular case, as Dr. Fitzgerald acknowledges. The determination of psychological or psychiatric consequences of alleged sexual harassment, if any, requires that standard methodology be utilized. This methodology, as reviewed above, includes clinical interviews with claimants and objective consideration of alternate causation and the possibility of malingering in each individual case. Having failed to employ that methodology here, Dr. Fitzgerald's conclusions, indirect implications, and suggestions regarding the alleged experiences of the women at the Chicago Plants, or their psychological reactions to those experiences, are not scientifically valid.

Conclusion
Dr. Fitzgerald's departure from well-established scientific methodology casts doubt on the credibility and reliability of her conclusions. Despite Dr. Fitzgerald's protestations to the contrary, it is not accepted scientific methodology to apply research findings to deduce conclusions about the facts of a particular case, and cite excerpts from plaintiffs' deposition testimony, without more, as support for such conclusions. Use of deposition excerpts is not a substitute for clinical evaluation of plaintiffs. Only complete clinical evaluation can result in case-specific psychological or psychiatric opinions.

Dr. Fitzgerald's use of deductive reasoning to come to conclusions regarding the Ford Chicago Plants based on findings from sexual harassment research is inherently invalid and misleading. A clinical psychological or psychiatric evaluation, including clinical interviews with plaintiffs is the standard and accepted methodology for forming psychological and psychiatric conclusions. Dr. Fitzgerald's report is replete with conclusions and implications that she has come to without evaluation of individual plaintiffs. Therefore, to the extent that Dr. Fitzgerald's report suggests that any particular plaintiff or group of plaintiffs experienced sexual harassment, was offended by conduct or welcomed it, or suffered negative psychological consequences from sexual harassment, Dr. Fitzgerald's conclusions and implications are invalid.

# EXHIBIT A

**Liza H. Gold, MD**
Clinical Professor Psychiatry                          2501 N. Glebe Rd, Suite 204
Georgetown University School of Medicine           Arlington, VA  22207

Testimony Provided, 2013 - 2017
Burke v. Mattis and Depatment of Defense
United States District Court
Eastern District of Virginia, Alexandria Division
     Nature of Case:                          Gender Discrimination, Retiation
     Deposition Testimony:              July 2017
     Trial Testimony:                       November 2017

Marshall v. New Horizons Medical Center and Dr. Mark Miller
Commonwealth of Kentucky, 15th Judicial District
     Nature of case:                          Professional Negligence
     Deposition Testimony                June 2017

Kimberly Lapetina v. Johns Hopkins University Applied Physics Laboratory
Howard County Circuit Court, Maryland
     Nature of Case:                          Gender Discrimination
                                Retaliation
     Trial Testimony:                       May 2017

Sharyn S. Meister v. Philip Rafferty and Sarno & Sons Tuxedo, et al.
Arlington County Circuit Court
     Nature of Case:                          Personal Injury
     *De bene esse* Trial Testimony:      March 2017

O'Brien v. Sajahtera, Inc. d/b/a The Beverly Hills Hotel
Los Angeles County Superior Court
     Nature of Case:                          Retaliation
     Deposition Testimony:              December 2016

Equal Employment Opportunity Commission Costco Wholesale Corporation
United States District Court
Northern District of Illinois, Eastern Division
Nature of Case:                          Sexual harassment
Deposition Testimony              August 2016
     Trial Testimony                       December 2016

John Doe v. The Archdiocese of Chicago, the Catholic Bishop of Chicago and Cardinal Francis George
Circuit Court of Cook County Illinois
County Department, Law Division
Nature of case:                          Sexual Abuse, Personal Injury

*1*

Deposition Testimony      June 2016

Chris T. Sarris v. Mireille Curro
Arlington County Circuit Court
      Nature of case:      Testamentary capacity
      Deposition Testimony      January 2016, February 2016
      Trial Testimony      March 2016

Jane Doe v Virginia Wesleyan College, Defendant/Third Party Plaintiff v Robert Roe,
Third-Party Defendant
      Norfolk VA Circuit Court
      Nature of Case:      Personal Injury
      Deposition Testimony      November 2015

John Doe v. The Archdiocese of Chicago, the Catholic Bishop of Chicago and Cardinal Francis
George
Circuit Court of Cook County Illinois
County Department, Law Division
Nature of case:      Sexual Abuse, Personal Injury
Deposition Testimony      September 2015


Enid Thompson v. Douglas G. Thompson, Jr.
      Fairfax County Circuit Court
      Nature of Case:      Divorce
      Trial Testimony:      February 2015

John J. Doe vs. The Archdiocese of Chicago, the Catholic Bishop of Chicago, and
Cardinal Francis George
Cook County Illinois Circuit Court County Department, Law Division
Nature of Case:      Sexual Abuse, Personal Injury
Deposition Testimony:      January 2015

Raissa Wilson v. Raytheon Technical Services Company, LLC
United States District Court
Eastern District of Virginia, Alexandria
Nature of Case:      Whistleblower retaliation, wrongful termination
Deposition Testimony:      June 2014

Reema Dunn v. The Johns Hopkins University Applied Physics Laboratory, LLC and
Harriet Harrison
Circuit Court, Howard County, MD
Nature of case:      ADA Discrimination/Retaliation
Trial Testimony:      May 2014

Linda D. Robinson v. Richard Valentine
Circuit Court for the City of Norfolk, VA
Nature of case:              Professional Negligence
Trial Testimony              April 2014

Kellie M. Ballard v. Offit Kurman, P.A., Andrew R. Polott, Ballard Spahr, Charles R. Moran
Circuit Court of Montgomery County, Maryland
Nature of case:              Competency to enter contract
Deposition Testimony:        April 2014

Bret D. Lovejoy v. Print Management Inc., Margaret Gene Ford, and Pauline Goulah
        Circuit Court for the City of Alexandria
        Nature of Case:              Defamation, Personal Injury
        Deposition Testimony:        October 2013
        Trial Testimony:             May 2014

*3*

# EXHIBIT B

10/30/17

**Liza H. Gold, MD**

2501 North Glebe Road, Suite 204      O: 703-875-0435
Arlington, VA  22207      F: 703-875-0434
     Email: lhgoldmd@gmail.com

Website: www.lizahgoldmd.com

## Curriculum Vitae

### Medical Board Certification and Membership

American Board of Psychiatry and Neurology  (1991)
Forensic Psychiatry, Subspecialty Certification (1999, recertified 2009)

Member, American Board of Psychiatry and Neurology
     Forensic Psychiatry Certification Examination Committee, 2008 – 2021

National Board of Medical Examiners  (1987)

### Licensure

Licenses (active):      Maryland (2012)
     District of Columbia (renewed 2004)
     Commonwealth of Virginia  (1991)
     New Jersey (2011)
     New York (2010)

Licenses (past):      District of Columbia  (1992 - 1997)
     New Hampshire  (1988 - 1992)
     Massachusetts  (1986 - 1992)

**Member**      Commission on Mental Health, 7/17 - 7/18
     Superior Court of the District of Columbia

### Academic Appointments

Clinical Professor of Psychiatry, April 2006 - present
Department of Psychiatry
Georgetown University School of Medicine
- Clinical Associate Professor of Psychiatry, 2003 - April 2006
- Clinical Assistant Professor of Psychiatry, 1998 - 2003

- Course Director, Writing in Forensic Psychiatry, 2009
- Associate Director, Program in Psychiatry and Law, 2001 - 2009
- Course Director, Gender Issues in Psychiatry, 2003 - 2005

**Postgraduate Medical Training**
Boston University Psychiatry Residency Training Program, 1986 - 1990
    Boston City Hospital, Boston, MA
    University Hospital, Boston, MA
       Chief Resident in Psychiatry, 1989
    Edith Norse Rogers Veterans Administration Hospital, Bedford, MA
    Brockton Hospital, Brockton, MA, Transitional Intern 1986 - 1987

- Ginsberg Fellow, Group for the Advancement of Psychiatry, 1989 - 1990

**Medical Education**
New York University School of Medicine, M.D., 1986
- Alex Rosen Award for Excellence in Medicine and the Humanities, 1986

**Graduate Education**
University of Cambridge, Master of Philosophy in the History of Medicine, 1983

**Undergraduate Education**
Harvard/Radcliffe College, *magna cum laude*, B.A., 1981
- Elizabeth Cary Agassiz Scholar, in recognition of academic achievement of
  highest distinction, 1980-1981

**Professional Honors or Recognitions**
Seymour Pollack Distinguished Achievement Award, 2011, American Academy of
Psychiatry and the Law, for distinguished contributions to the teaching and
educational functions of forensic psychiatry

Manfred S. Guttmacher Award 2011, American Psychiatric Association and American
Academy of Psychiatry and the Law, for outstanding contributions to the literature on
forensic psychiatry, for <u>Evaluating Mental Health Disability in the Workplace: Model,
Process, and Analysis</u>. Co-author Daniel W. Shuman, J.D. (Springer, 2009).

Manfred S. Guttmacher Award 2006, American Psychiatric Association and American
Academy of Psychiatry and the Law, for outstanding contributions to the
literature on forensic psychiatry, for <u>Sexual Harassment: Psychiatric
Assessment in Employment Litigation</u> (American Psychiatric Publishing, Inc., 2004)

*Washingtonian Magazine,* Top Mental Health Professionals, 2009
*Washingtonian Magazine*, Top Doctor, 2008

Washington Psychiatric Foundation Community Service Award, 1997

Alex Rosen Award for Excellence in Medicine and the Humanities, 1986
New York University School of Medicine

Elizabeth Cary Agassiz Scholar, in recognition of academic achievement of highest
        distinction, Harvard/Radcliffe College, 1981

**Media Consultant**

| | |
|---|---|
| ABC News | Christian Science Monitor |
| NBC News | Agence France-Presse |
| CNN News | Newsweek |
| USA Today | Al Jazeera America |
| MSNBC News | Washington Post |
| National Public Radio (NPR) News | Politico |
| NPR "All Things Considered" | HBO: "Vice" |
| WAMU/NPR "The Diane Rehm Show" | |

**Experience Summary**

2001 - present

Private Practice, Clinical and Forensic Psychiatry, Arlington, VA
District of Columbia Mental Health Commission, 2017-2018
St. Elizabeths Hospital, Consultant, John Howard Pavilion, 2008 - 2009
Court Consultant
- Arlington County District and Circuit Courts, 2008 – present
- Fairfax County District and Circuit Courts, 2010 – present
- City of Alexandria 2009 - present
Arlington County Department of Mental Health Consultant, 2009 - 2010

1992 - 2000

Private Practice, Clinical and Forensic Psychiatry, McLean, VA
Columbia HCA Reston Hospital, Reston, VA, Attending Psychiatrist, 1997-2000
Psychiatric Institute of Washington, DC, Medical Director, Day Center Program,
        Center for Posttraumatic Disorders, 1996 - 1997
Psychiatric Institute of Washington, DC, Attending Psychiatrist,
        Center for Posttraumatic Disorders, 1992 - 1997

1986 - 1992

Psychiatric Institute of Catholic Medical Center, Manchester, NH,
        Associate Medical Director, 1991 - 1992
Nashua Brookside Hospital, Nashua, NH, Attending Psychiatrist, 1991 - 1992
Nashua Memorial Hospital, Nashua, NH, Attending Psychiatrist, 1991 - 1992
Psychiatric Institute of Malden Hospital, Malden, MA,
        Assistant Clinical Director, 1990 - 1991
Clinical Instructor in Psychiatry, Boston University School of Medicine,
        Boston, MA, 1990 - 1991
Hampstead Hospital, Hampstead, NH, Attending Psychiatrist, 1989 - 1991
Charles River Hospital, Wellesley, MA, Attending Psychiatrist, 1988 - 1990

**Professional Affiliations**
**American Academy of Psychiatry and the Law, member since 1997**
Board Member
- AAPL Institute for Research and Education, 2015-2018

Elected Offices
- Vice President, 2017-2018
- Vice President, 2011-2012
- Board of Governance Councilor, 2006-2009

Chairmanships
- Vice Chair, Education Committee, 2017
- Program Chair, 2006 Annual Meeting (Chicago, IL), 2005-2006
- Chair, Task Force on the Development of Disability Evaluations Guidelines, 2005-2007

Committees
- Disability Practice Guideline Workgroup, 2014 - 2015
- AAPL Newsletter/Website Editor Search Task Force, 2013
- Ethics Committee, 2012-2017
- AAPL Newsletter Editor Search Committee, 2008
- Nominating Committee, 2006-2008
- Education Committee, 2006-2018
- Program Committee, 2005-2009
- Trauma and Stress Committee, 2003-2008
- Suicidology Committee, 1999-2008
- Gender Issues Committee, 1999-2015

Chesapeake Bay Chapter of the American Academy of Psychiatry and the Law, 1997
   President, Chesapeake Bay Chapter, 2004-2008
   Councilor for Virginia, Chesapeake Bay Chapter, 2001-2003

**American Psychiatric Association, member since 1986**
Membership Status
- Distinguished Fellow, 2006
- Fellow, 2003

Chairmanships
- Isaac Ray Award Committee, 2015-2018
- Committee of Tellers, 2003-2006

Committees
- Isaac Ray Award Committee, 2010-2013; 2015 - 2018
- Council on Psychiatry and Law, 2007-2010; corresponding member 2015-2018

*4*

- Committee on Judicial Action, 2002-2006; consultant 2015-2018
- Council on Psychiatry and Law Firearms Workgroup, 2013-2014
- Committee of Tellers, 2002-2008
- Corresponding Committee on History and Library, 2002-2008

**APA Representative: American Bar Association, "Moving From Crisis to Action: A Public Health Approach to Reducing to Gun Violence," Mother Emanuel A.M.E. Church, Charleston, SC, December 4, 2015**

**American Psychiatric Association Publishing, Associate Editor, 2017-2020**

**Additional Professional Affiliations**
National Medical Council on Gun Violence, 2013 to present
        Founding Member, National Advisory Committee
Royal College of Psychiatry, International Associate, 2015
Washington Psychiatric Association, 1992 - present
American Medical Association, 2002 - present
Association of Women Psychiatrists, 1997 – present
Medical Society of Virginia, 1992 - present

**Public Service Activities**
The National Academies of Sciences, Engineering, and Medicine
Committee on Women in Science, Engineering, and Medicine
Policy and Global Affairs Division
Member, Committee on Sexual Harassment in the Scientific and Technical Workforce
January 2017- December 2018

The Consortium for Risk-Based Firearm Policy, 2012 - present
Johns Hopkins Bloomberg School of Public Health

Commonwealth of Virginia, Commission on Mental Health Law Reform
Working Group on Health Privacy and the Civil Commitment Process, 2007 – 2008

St. Elizabeths Hospital Sesquicentennial Celebration, 2004 -2005
        Chair, Educational Symposium Committee
        Program Director, Educational Symposium
        "The Role of the Public Psychiatric Hospital in the 21st Century"
                May 5 and May 6, 2005, Washington Convention Center, Washington, DC

**Journal Affiliations**
        *Journal of the American Academy of Psychiatry and the Law,*
            Associate Editor, 2009-2015
        *Journal of Psychiatry and the Law*, Professional Editorial Board, 2009-2015
        *Psychiatric Annals*, Editorial Review Board, 1999 - present

*Psychiatric Times,* Advisory Committee for CME, 2000

Peer Reviewer
      *JAMA-Psychiatry*
      *Annals of Internal Medicine*
      *American Journal of Psychiatry*
      J*ournal of the American Academy of Psychiatry and the Law*
      *Psychiatry: Interpersonal and Biological Processes*
      *Obstetrics and Gynecology*
      *Primary Psychiatry*
      *Behavioral Sciences and the Law*
      *CME LLC Psychiatric Congress Peer Reviewer*

## Publications
### *Books*

**Gold, LH** and Frierson, RL (Editors): *The American Psychiatric Textbook of Forensic Psychiatry*, 3rd edition. American Psychiatric Publishing, Inc., 2018
- Second edition: Simon, RI and **Gold, LH** (editors), published 2010
- First edition: Simon, RI and **Gold, LH** (editors), published 2004

**Gold, LH** (Editor) and Simon, RI (Coeditor): *Gun Violence and Mental Illness.* American Psychiatric Publishing, Inc., 2016

**Gold, LH** and Vanderpool, DL (Editors): *Clinical Guide to Mental Disability Evaluations*. Springer, 2012

**Gold, LH** and Shuman, DW: *Evaluating Mental Health Disability in the Workplace: Model, Process, and Analysis*. Springer, 2009
- **Guttmacher Award Winner, 2011, American Psychiatric Association and American Academy of Psychiatry of Law**

**Gold, LH**: *Sexual Harassment: Psychiatric Assessment in Employment Litigation.* American Psychiatric Publishing, Inc., 2004
- **Guttmacher Award Winner, 2006, American Psychiatric Association and American Academy of Psychiatry of Law**

Simon, RI and **Gold, LH**: *The American Psychiatric Publishing Textbook of Forensic Psychiatry Study Guide*. American Psychiatric Publishing, Inc., 2004

### Book Chapters

**Gold, LH** and Joshi, K: Suicide Risk Assessment. In **Gold, LH** and Frierson, RL (Editors): *The American Psychiatric Textbook of Forensic Psychiatry*, 3rd edition. American Psychiatric Publishing, Inc., in press

**Gold, LH**: Psychiatric Evaluation in Discrimination and Harassment Claims. In **Gold, LH** and Frierson, RL (Editors): *The American Psychiatric Textbook of Forensic Psychiatry*, 3rd edition. American Psychiatric Publishing, Inc., in press

**Gold, LH**; Metzner, J.; and Buck, J.: Psychiatric Disability Determinations and Personal Injury Litigation. In Rosner, R. and Scott, C. (Editors): *Principles and Practice of Forensic Psychiatry,* 3rd edition. Oxford University Press, pp. 307-317, 2017

**Gold, LH**: Sexual Harassment. In Rosner, R. and Scott, C. (Editors): *Principles and Practice of Forensic Psychiatry,* 3rd edition. Oxford University Press, pp. 327-335, 2017 (also in 2nd edition, published 2003)

**Gold, LH** and Vanderpool, DL: "Relief from Disabilities:" Mental Health Evaluations in Firearm Rights Restoration Hearings. In **Gold, LH** (Editor) and Simon, RI (Coeditor): *Gun Violence and Mental Illness.* American Psychiatric Publishing, Inc., 2016

Simon, RI and **Gold, LH**: Suicide and Firearms: Risk Assessment and Public Policy. In **Gold, LH** (Editor) and Simon, RI (Coeditor): *Gun Violence and Mental Illness.* American Psychiatric Publishing, Inc., 2016

Trestman, RL; Volkmar, F; and **Gold, LH:** Accessing Mental Health Care. In **Gold, LH** (Editor) and Simon, RI (Coeditor): *Gun Violence and Mental Illness.* American Psychiatric Publishing, Inc., 2016

**Gold, LH**: Mental Health Disability: A Model for Assessment. In Gold LH and Vanderpool, DL (Editors): *Clinical Guide to Mental Disability Evaluations*. Springer, 2012

**Gold, LH**: Suicide and Gender. In Simon, R.I and Hales, R.E. (Editors): *The American Psychiatric Textbook of Suicide Assessment and Management*, 2nd edition. American Psychiatric Publishing, Inc., 2012 (also in first edition, published 2006)

**Gold, LH** and Stejskal, W: Employment Discrimination and Harassment. In Drogin, EY; Sadoff, RL; Dattilo, FM; and Gutheil, TG (Editors): *Handbook of Forensic Assessment: Psychological and Psychiatric Perspectives.* John Wiley & Sons, 2011

**Gold, LH**: The Workplace. In Simon, RI and Gold, LH (Editors): *The American Psychiatric Textbook of Forensic Psychiatry,* 2nd edition. American Psychiatric Publishing, Inc., 2010 (also in first edition, published 2004)

Simon, RI and **Gold, LH**: Psychiatric Diagnosis in Litigation. In Simon, RI and Gold, LH

(Editors): *The American Psychiatric Textbook of Forensic Psychiatry,* 2nd edition. American Psychiatric Publishing, Inc., 2010 (also in first edition, published 2004)

Berger, SH and **Gold, LH**: Starting a Forensic Practice. In Simon, RI and Gold, LH (Editors): *The American Psychiatric Textbook of Forensic Psychiatry,* 2nd edition. American Psychiatric Publishing, Inc., 2010

**Gold, LH**: Rediscovering Forensic Psychiatry. In Simon, RI and Gold, LH (Editors): *The American Psychiatric Textbook of Forensic Psychiatry,* 2nd edition. American Psychiatric Publishing, Inc., 2010 (also in 1st edition, published 2004)

Weinstock, R and **Gold, LH**: Ethical issues in Forensic Psychiatry. In Simon, RI and Gold, LH (Editors): *The American Psychiatric Textbook of Forensic Psychiatry,* 2nd edition. American Psychiatric Publishing, Inc., 2010 (also in 1st edition, published 2004)

**Gold, LH**: Psychiatric Diagnoses and the Retrospective Assessment of Mental Status." Simon, RI and Shuman, DS (Editors): *Retrospective Assessment of Mental States in Litigation: Predicting the Past.* American Psychiatric Publishing, Inc., 2002

**Gold, LH**: PTSD in Employment Litigation. In Simon, RI (Editor): *Posttraumatic Stress Disorder in Litigation: Guidelines for Forensic Assessment*, 2nd edition. American Psychiatric Publishing, Inc., 2002

**Gold, LH** and Simon, RI: Posttraumatic Stress Disorder in Employment Cases. In McDonald, JJ and Kulick, F (Editors): *Mental and Emotional Injuries in Employment Litigation,* 2nd edition. Washington DC: The Bureau of National Affairs, Inc., 2001

### *Articles*
Gold LH and Vanderpool DL: Legal Regulation of Firearm Rights After Mental Health Prohibition. Accepted for publication, 10/18/17, *Journal of the American Academy of Psychiatry and the Law*

Pinals, DA; Appelbaum, PS; Bonnie, R; Fisher, C; **Gold, L;** Lee, L: APA Official Actions: Resource Document on Access to Firearms by People with Mental Disorders, 2014

**Gold, LH**: DSM-5 and the assessment of functioning: The World Health Organization Disability Assessment Schedule 2.0 (WHODAS 2.0). *Journal of the American Academy of Psychiatry and the Law*, 2014, Vol. 42, No. 2, pp 173-181

**Gold, LH**: Introduction to the Special Section on DSM-5 and Forensic Psychiatry. *Journal of the American Academy of Psychiatry and the Law*, 2014, Vol. 42, No. 2, pp 132-135

**Gold, LH**: Daniel W. Shuman: A gift for collaboration, *Southern Methodist University Law Review*, 2011,Vol. 64, pp.1197 et seq.

**Gold, LH**: Challenges in providing psychiatric disability evaluations (Commentary). *Journal of the American Academy of Psychiatry and the Law*, 2011, Vol. 39, No. 2, pp.189-93

**Gold, LH:** The Psychiatrist-Mom: Added stigmatization when children have ADHD. *Psychiatric Services*, 2010, Vol. 61, No. 12, pp. 1181-1182

Levin, AP, **Gold, LH**, Onorato, AA: POWs v. Torturers: Forensic evaluation of military personnel. *Journal of the American Academy of Psychiatry and the Law*, 2009, Vol. 37, No. 3, pp 316-328

**Gold, LH**, Anfang SA, Drukteinis MD, JD, et al.: Forensic Evaluation of Psychiatric Disability Practice Guideline. *Journal of the American Academy of Psychiatry and the Law*, 2008, Vol. 36, No. 4, Supplement 3, pp 1-50

Shuman, DW and **Gold, LH**: Without thinking: Impulsive aggression and criminal responsibility. *Behavioral Sciences and the Law*, 2008, Vol. 26, No. 6, pp. 723-34

**Gold, LH**, Davidson, J: Do you understand your risk? Liability and third party evaluations in civil litigation. J*ournal of the American Academy of Psychiatry and the Law*, June 2007, Vol. 35, No. 2, pp. 200-210

**Gold, LH:** The Doctor-patient relationship and liability in third-party evaluations for civil litigation," *Psychiatric Times*, June 2006, Vol. 23, No. 7, pp 65-6.

**Gold, LH** and Metzner, JL Psychiatric employment evaluations and the Health Insurance Portability and Accountability Act." *The American Journal of Psychiatry,* Nov 2006, Vol. 163, No. 11, pp 1878-1882

**Gold, LH** and Gutheil, TG: Robert I. Simon, MD: Of psychiatry, law and books. *The Journal of the American Academy of Psychiatry and the Law*, 2006, Vol. 34, No. 1: pp. 9-13

**Gold, LH** and Epstein, SJ. "Formal training in women's issues in psychiatry: A survey of residency training directors." *Academic Psychiatry*, 2006, Vol. 30, No. 5, pp. 403-409

**Gold, LH**: Posttraumatic Stress Disorder in Litigation, article for "Psychiatric Times Special Report on Forensic Psychiatry," *Psychiatric Times*, December 2005, Vol. XXII, No. 14, pp. 30-31

**Gold, LH**: Gender issues in suicide. *Psychiatric Times*, October 2005. Vol 22, No. 11, pp 64-72

**Gold, LH**: Psychopharmacological treatment of depression during pregnancy. *Current Women's Health Reports: Psychosocial Health* 2003, Vol. 3, No. 3

**Gold, LH**: Postpartum disorders and their pharmacological treatment. *Primary Care: Clinics in Office Practice, Special Issue on Women's Mental Health*, 2002, Vol. 29, No. 1, pp. 27-41

**Gold, LH**: Clinical and forensic aspects of postpartum depression. *Journal of the American Academy of Psychiatry and the Law*, 2001, Vol. 29, No. 3, pp. 344-347

**Gold, LH**: Use of psychotropic medication during pregnancy: Risk management guidelines. *Psychiatric Annals*, 2000, Vol. 30, No. 6, pp. 1-12

**Gold, LH**: Treatment of depression during pregnancy. *Journal of Women's Health*, 1999, Vol. 8, No. 5, pp. 1-7

**Gold, LH**: Addressing bias in the forensic assessment of sexual harassment claims. *Journal of the American Academy of Psychiatry and the Law*, 1998, Vol. 26, No. 4, pp. 563-578

**Gold, LH**: Why use a forensic psychiatrist? Role conflict between treating psychiatrist and forensic psychiatrist. *The Journal of the Virginia Trial Lawyers Association*, 1998, Vol. 10, No. 4, pp. 16-19.
Reprinted in *The Alaska Trial Lawyer*, published by the Alaska Academy of Trial Lawyers, Volume 1, 1999, pp. 18, 25

## *Special Editor*
Co-editor, Special Section, "DSM-5 and Forensic Psychiatry," Journal of the American Academy of Psychiatry and the Law, Volume 42, No. 2, pp. 132-201, 2014

Editor, "Psychiatric Times Special Report on Forensic Psychiatry," *Psychiatric Times*, Vol. XXII, No. 14, pp. 25-36, December 2005

## *Editorials*
**Gold, LH**: Gun violence: Psychiatry, risk assessment, and social policy. *Journal of the American Academy of Psychiatry and the Law*, 2013, Vol. 41, No. 3, pp 337 - 343

**Gold, LH**: American Psychiatric Association honors Dorothea Dix with first posthumous fellowship. *Psychiatric Services* 56(4): 502, 2005

**Gold, LH**: AAPL and the death penalty: A historical perspective on the debate. *Journal of the American Academy of Psychiatry and the Law*, 33(1): 6-7, 2005

## *Book Reviews*
**Gold, LH**: *American Journal of Psychiatry,* Isabela Z. Schultz, E. Sally Rogers: Work

Accommodation and Retention in Mental Health (Springer, 20011). Vol. 39, No. 4, pp 598-599

**Gold, LH**: *American Journal of Psychiatry*, Sarah C. Charles, Paul R. Frisch: <u>A Physician's Guide: Adverse Events, Stress and Litigation</u> (Oxford University Press, 2005). Vol. 163, No. 1, pp 166-167

**Gold, LH**: *American Journal of Psychiatry*, Robert I. Simon, Daniel W. Shuman: *Clinical Manual of Psychiatry and the Law* (American Psychiatric Publishing, 2007). Vol. 164, No. 5, pp 837-838

## **Invited Presentations**

| | |
|---|---|
| **Course Director:** | Expert Testimony in Suicide Malpractice Litigation<br>American Academy of Psychiatry and the Law, Annual Meeting<br>October 28, 2016; Portland, Oregon |
| Panel: | Crucial Conversations with Clients<br>Wealth Counsel and Elder Counsel<br>National Symposium<br>October 21, 2016; Reston, VA |
| Lecture: | Gun Violence and Mental Illness<br>American Psychiatric Association<br>IPS: The Mental Health Services Conference<br>October 8, 2016; Washington DC |
| **Symposium Chair**: | Gun Violence and Mental Illness, Advances in Psychiatry Series<br>American Psychiatric Association, Annual Meeting<br>May 17, 2016; Atlanta, GA |
| Mock Trial: | Suicide Malpractice<br>American Psychiatric Association, Annual Meeting<br>May 17, 2016; Atlanta, GA |
| Lecture: | Firearms and Suicide<br>National Medical Council on Gun Violence<br>April 16, 2016; Chicago, IL |
| Lecture: | Suicide and Firearms<br>Washington Psychiatric Society 2016 Presidential Symposium:<br>Violence Risk Reduction<br>February 27, 2016; Washington, DC |
| Panel: | Gun Violence<br>O'Neill Institute for National and Global Health Law |

O'Neill Institute Colloquium, Georgetown University School of Law
October 28, 2015; Washington, DC

Panel:       Plenary – The Truth About Guns and Suicide
             Brady and American Public Health Association National Summit
             October 27, 2015; Washington, DC

Panel:       Myth vs Fact: Mental Health and Gun Violence
             Brady and American Public Health Association National Summit
             October 27, 2015; Washington, DC

**Symposium**: Gun Violence and Mental Illness, Advances in Psychiatry Series
**Chair**    American Psychiatric Association, Annual Meeting
             May 18, 2015; Toronto, Canada

Lecture:    Violence Risk Assessment in Clinical Practice
            Caring for Patients at Risk for Gun Violence: Medical, Legal, & Ethical Issues
            Bay State Health and National Medical Council on Gun Violence
            December 6, 2014: Waltham Woods, MA

Symposium:  **American Academy of Psychiatry and the Law Presidential Symposium**
Panel:      Preventing Chronic Psychiatric Disability: The ADA and FMLA in Clinical
            Practice
            American Psychiatric Association, Annual Meeting
            May 6, 2014: New York, NY

**Course**   Can't Work or Won't Work? Psychiatric Disability in the Workplace
**Director** American Academy of Psychiatry and the Law,  Annual Meeting
             October 25, 2013; San Diego, C
             October 22, 2010; Tucson, AZ

Workshop:       AAPL Goes to the Movies
             American Academy of Psychiatry and the law, 2013 Annual Meeting
             October 24, 2013; San Diego, CA

**Course**   Can't Work or Won't Work? Psychiatric Disability in the Workplace
**Director** American Psychiatric Association, Annual Meeting
             May 6, 2014: New York, NY
             May 18, 2013: San Francisco, CA
             May 7, 2012; Philadelphia, PA
             May 17, 2011; Honolulu, HI

Workshop: Fit for Duty? Evaluations in High-Stakes Professions: Lawyers, Police, and
          Physicians
          American Psychiatric Association, 2013 Annual Meeting

*12*

May 18, 2013: San Francisco, California

Workshop:     Can't Work or Won't Work? Psychiatric Disability in the Workplace
              Washington Psychiatric Society
              March 10, 2013

Panel:        Dr. Frasier Crane Goes to Court: Teleforensic Psychiatry
              American Academy of Psychiatry and the Law 2012 Annual Meeting
              October 27, 2012: Montreal, Canada

Panel:        Ask the Experts: Ethics Dilemmas in Forensic Psychiatry
              American Academy of Psychiatry and the Law 2012 Annual Meeting
              October 27, 2012: Montreal, Canada

**Symposium Co-Chair**: *Forensic Psychiatry: Informing Clinical Practice*
Presenter:    Disability Evaluations: A Model for Assessment
              American Psychiatric Association 2012 Annual Meeting
              May 5, 2012; Philadelphia, PA

Lecture:      Georgetown University Medical Center Department of Psychiatry
              Grand Rounds
              Psychiatric Disability: A Model for Assessment
              December 8, 2011; Washington, DC

Lecture:      St. Elizabeths Hospital Grand Rounds
              Ethics and the Practice of Forensic Psychiatry
              November 16, 2011; Washington, DC

Lecture:      Psychiatric Disability: Can't Work or Won't Work?
              Association of Occupational Health Professionals in Healthcare
                   2011 Annual Meeting
              October 1, 2011: Minneapolis, Minnesota

**Guttmacher Award Lecture:**
              Psychiatric Disability: A Model for Assessment
              American Psychiatric Association 2011 Annual Meeting
              May 16, 2006; Honolulu, HI

Lecture:    Psychiatric Disability Evaluations
            American Occupational Health Conference, American College of Occupational and
            Environmental Medicine
            March 28, 2011; Washington, DC

Lecture:    The Psychiatric Expert in Workers' Compensation Cases
            Workers' Compensation National Conference, PESI Law & Accounting

*13*

February 22, 2011; Las Vegas, NV

Lecture:     Can't Work or Won't Work? Psychiatric Disability Evaluations in the Workplace
             Workers' Compensation National Conference, PESI Law & Accounting
             February 22, 2011; Las Vegas, NV

Lecture:     Psychiatric Evaluation in Sexual Harassment Litigation
             Tri-State Chapter, American Academy of Psychiatry and the Law
             January 22, 2011; New York, NY

Lecture:     Can't Work or Won't Work? Psychiatric Disability in the Workplace
             SEAK Workers' Compensation and Occupational Medicine Conference
             July 20, 2010; Hyannis, MA

Lecture:     The History of Forensic Psychiatry
             American Academy of Psychiatry and the Law, 2009 Annual Meeting
             November 1, 2009: Baltimore, MD

**Symposium Co-Chair**: *Advances in Forensic Psychiatry*
Presenter:   Disability Evaluations: The American Academy of Psychiatry and Law
             Guidelines
             American Psychiatric Association 2009 Annual Meeting
             May 19, 2009; San Francisco, CA

Lecture:     Delusional Disorder and Stalking: Clinical and Forensic Management
             Sheppard Pratt Hospital Grand Rounds
             December 17, 2008; Baltimore, MD

*Panel Chair:*   *Liability in Forensic Practice: Minimizing Increasing Risk*
             American Academy of Psychiatry and the Law, 2007 Annual Meeting
             October 19, 2007: Miami, FL

Panel:       Through the Eyes of the Expert: How Lawyers Can Improve Their
                 Preparation of Experts
             Virginia Bar Association Continuing Legal Education Seminar
             The Survivor's Guide to Expert Witnesses: From Selection through Trial
             June 7, 2007; Fairfax, VA

Panel:       Advances in Assessment and Management of Suicide
             Suicide and Gender
             American Psychiatric Association 2007 Annual Meeting
             May 22, 2007; San Diego, CA

*Symposium:*   *Bullying in the Workplace: Associated Health Problems*
*Co-Chair*     American Psychiatric Association 2007 Annual Meeting

*14*

May 22, 2007; San Diego, CA

Lecture:     The History of Forensic Psychiatry in the US and UK
             Anglo-American Conference on Forensic Psychiatry
             Royal College of Psychiatry, Forensic Division
             April 27, 2007; London, England

Lecture:     Liability and Third-Party Evaluations in Civil Litigation
             New York Chapter of the American Academy of Psychiatry and the Law
             January 21, 2007; New York, NY

Lecture:     Suicide and Gender
             2006 U.S. Psychiatric and Mental Health Congress
             November 16, 2006; New Orleans, LA

Lecture:     Forensic Psychiatry: The Role of Medical Jurisprudence in the
             Development of Psychiatry
             Association of Mental Health Librarians 2006 Annual Meeting
             November 3, 2006; National Library of Medicine, Bethesda, MD

Mock Trial:  Medical Malpractice: Postpartum Psychosis and Suicide
             American Academy of Psychiatry and the Law 2006 Annual Meeting
             October 26, 2006; Chicago, IL

Panel:       POW's v. Torturers: A New Cause of Action?
             American Academy of Psychiatry and the Law 2006 Annual Meeting
             October 27, 2006; Chicago, IL

Panel:       Proposed AAPL Guidelines: Trial Competence, Disability Assessments
             American Academy of Psychiatry and the Law 2006 Annual Meeting
             October 27, 2006; Chicago, IL

Panel:       Sexual Harassment: Who is Believed?
             American Academy of Psychiatry and the Law 2006 Annual Meeting
             October 28, 2006; Chicago, IL

**Guttmacher Award Lecture:**
             The Challenge of Employment-Related Psychiatric Evaluations
             American Psychiatric Association 2006 Annual Meeting
             May 21, 2006; Toronto, Canada

Symposium:   Bullying in the Workplace
             American Psychiatric Association 2006 Annual Meeting
             May 23, 2006; Toronto, Canada

*15*

Workshop:    Sexual Harassment in the Workplace: Reducing Risk and Liability
Chesapeake Human Resources Association
May 17, 2006; Towson, MD

Lecture:    Psychiatric Expert Testimony in Employment Litigation
Montgomery County Bar Association
Employment Law Division
April 20, 2006; Rockville, MD

Lecture:    Rediscovering forensic psychiatry
The American Academy of Psychiatry and the Law, 2005 Annual Meeting
October 2005; Montreal, Canada

Lecture:    The Mental Health Expert in Employment Litigation
DC Bar Association, Labor and Employment Section
March 2005; Washington, DC

Lecture:    The Mental Health Expert in Employment Litigation
Fairfax County Bar Association, Labor and Employment Section
February 2005; Fairfax, VA

Lecture:    Sexual Harassment in the Workplace
The Annapolis Society for Human Resource Management
August 2004; Annapolis, MD

Panel:    Does Gender Matter? Examining Gender's Role in Forensics
American Academy of Psychiatry and the Law, 2004 Annual Meeting
October 2004; Scottsdale, AZ

*Panel Chair*:    Psychiatric Evaluation in Sexual Harassment Cases
American Academy of Psychiatry and the Law, 2004 Annual Meeting
October 2004; Scottsdale, AZ

Lecture:    Sexual Harassment in the Workplace
Annapolis Chapter, Society for Human Resources Management
September 2004; Annapolis, MD

Seminar:    Sexual Harassment in the Workplace
Human Resources Association of New York
June 2004; New York, NY

Workshop:    Whither our own history: Rediscovering forensic psychiatry
American Psychiatric Association Annual Meeting
May 2004: New York, NY

*16*

Seminar:     Posttraumatic Stress Disorder in Employment Litigation
             The Forensic Network, Annual Mental and Emotional Injury Claims
             Conference and Seminar
             November 2002; New Orleans, LA

Lecture:     Women and depression
             Sponsored by Glaxo-Welcome Pharmaceuticals
             November 3, 2001; Washington, DC

Panel:       Bending Gender:  How Gender Makes a Difference
             Panel Presentation Coordinator
             American Academy of Psychiatry and the Law 2002 Annual Meeting
             October 2002; Newport Beach, California

Panel:       Retrospective Assessment:  Daubert and the Insanity Defense
             American Academy of Psychiatry and the Law 2002 Annual Meeting
             October 2002; Newport Beach, California

Workshop:    Writing and Publishing in Forensic Psychiatry
             American Academy of Psychiatry and the Law 2001 Annual Meeting
             October 27, 2001; Boston, MA

Seminar:     Discharging Inpatients: Managed Care and Risk Assessment
             American Academy of Psychiatry and the Law 2001 Annual Meeting
             October 26, 2001; Boston, MA

Lecture:     Use of Psychiatric Drugs and the Treatment of Depression During
                  Pregnancy
             Sponsored by Forest Pharmaceuticals
                  •   January 24, 2002: Washington, DC
                  •   September 20, 2001; Chevy Chase, Maryland
                  •   June 20, 2001; McLean, Virginia

Panel:       Inter-Profession Ethics: The Ethical Interplay between
             Psychologists, Psychiatrists and Attorneys
             The Forensic Network, Annual Mental and Emotional Injury Claims
             Conference and Seminar
             July 2001; Jackson Hole, WY

Seminar:     Defending Emotional Injury Claims in Employment Litigation
             The Forensic Network, Annual Mental and Emotional Injury Claims
             Conference and Seminar

*17*

July 2001; Jackson Hole, WY

Seminar:     Sexual Harassment:  Confidentiality, Rape Shield Laws, and
Assessment in Litigation
American Psychiatric Association Annual Conference
May 9, 2001; New Orleans, Louisiana

Seminar:     The Examination of Expert Witnesses
George Mason American Inn of Court
February 23, 2000; Roslyn, Virginia

Seminar:     Espionage, psychological exploitation and entrapment,
American Academy of Psychiatry and Law 1999 Annual Meeting
October 14, 1999; Baltimore, Maryland

Lecture:     Assessing emotional damages in sexual harassment litigation,
Virginia Trial Lawyers Association 1999 Annual Convention
March 27, 1999; The Greenbrier, White Sulphur Springs, WV

Lecture:      Depression or just a bad day,
The New Moms Support Group, Columbia Reston Hospital Center
June 2, 1998; Reston, Virginia

Seminar:     The use of psychiatric medication during pregnancy
Pfizer Inc. Physician Education Program
April 18, 1998; Alexandria, Virginia

Seminar:     Posttraumatic Stress Disorder, Diagnosis and Treatment,
Vienna Women's Center
March 28, 1998; Vienna, Virginia

Lecture:     Posttraumatic Stress Disorder and Trauma Related Disorders,
Springwood Hospital
February 12, 1998; Leesburg, Virginia

Lecture:     Psychiatry and the Treatment of Women - A Biopsychosocial Model
Department of Family Practitioners, Reston Hospital
Reston, Virginia, 1997

Lecture:     Secondary Rescuer Syndrome:  Consultations in Working with Abuse
Survivors
International Society for the Study of Multiple Personality Disorders,
Chicago, Illinois, 1993

Lecture:     Ignaz Semmelweis and Medical Mythology

*18*

- Grand Rounds, Boston University Department of Psychiatry, Boston, MA, 1988
- Maine History of Medicine Society, Bangor, Maine, 1988
- Benjamin Waterhouse History of Medicine Society, Boston, MA, 1987