**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, JACQUELINE BARRON, THERESA BOSAN, SHRANDA CAMPBELL, KETURAH CARTER, MICHELLE DAHN, TONYA EXUM, JEANNETTE GARDNER, ARLENE GOFORTH, CHRISTINE HARRIS, ORISSA HENRY, LAWANDA JORDAN, DANIELLE KUDIRKA, TERRI LEWIS-BLEDSOE, CONSTANCE MADISON, CEPHANI MILLER, MIYOSHI MORRIS, STEPHANIE SZOT, SHIRLEY THOMAS-MOORE, ROSE THOMAS, TONI WILLIAMS, BERNADETTE CLYBURN, MARTHA CORBIN, ANGELA GLENN, LADWYNA HOOVER, OGERY LEDBETTER, LATRICIA SHANKLIN, ANTOINETTE SULLIVAN, DERRICKA THOMAS, and NICHEA WALLS, each individually and on behalf of all similarly situated persons, | Case No. 1:14-CV-08708<br><br>Honorable Sharon Johnson Coleman<br><br>Magistrate Sidney I. Schenkier<br><br>Jury Trial Demanded |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

<u>**DEFENDANT'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**</u>

COMES NOW, Defendant Ford Motor Company ("Ford"), by and through its counsel, and for its Answers to Plaintiffs' First Set of Interrogatories propounded to Defendant states as follows:

## Preliminary Statement

A.    Ford's responses to these Interrogatories have been prepared in accordance with the Federal Rules of Civil Procedure and pursuant to a reasonably diligent search for the information requested. Ford has tens of thousands of employees located around the world who collectively generate millions of documents every year. Many of those employees change jobs and relocate to different Ford facilities throughout the course of their careers. The information that they generate in the course of their employment may or may not move with them. Moreover, because of the breadth of Ford's global operations, responsive information is often maintained in numerous locations and may be moved from time to time as Ford's organizational structure changes. Accordingly, Ford does not, and could not possibly, represent that these responses reflect or include "all" potentially responsive information located anywhere within Ford worldwide. Rather, the scope of the investigation conducted to locate responsive information has been limited to making inquiries of those Ford employees most likely to be knowledgeable about the specific matters at issue, and to reviewing Ford files and databases in which information related to such matters ordinarily would be expected to be found subject to the limitations set forth in the Court's Discovery Order (Dkt. 86), including limiting Ford's review to the files of 40 custodians in responding to these requests, and consistent with ongoing communications by counsel. To the extent that this discovery set purports to require or define an investigation that exceeds the foregoing scope, Ford objects thereto on the grounds that such a requirement or definition (a) exceeds the scope of permissible discovery, (b) improperly attempts to impose upon Ford an unreasonable burden and expense, and (c) is not proportional to the needs of the case.

B.    Ford has not yet completed its investigation of the facts related to this litigation. Consequently, all of the responses contained herein are based only on such information as is

presently available to Ford. It is anticipated that further investigation, research, and analysis will supply additional facts, add meaning to known facts, and perhaps establish entirely new factual conclusions, all of which may in turn lead to substantial additions or changes to these responses. Accordingly, Ford reserves the right to supplement these responses pursuant to the Federal Rules of Civil Procedure.

C.      Ford does not concede that any of the information or documents it will produce are or will be admissible evidence at trial or any evidentiary hearing. Further, Ford does not waive any objection, whether or not asserted herein, to the use of any such documents at trial.

D.      Whether or not stated in response to a specific request, to the extent that these requests seek confidential, proprietary, sensitive or personal and/or financial information, and Ford agrees to produce such information, Ford will provide such information pursuant to the terms of a protective order.

E.      Some of the Interrogatories contained herein appear to require information that is protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine. In addition, certain of these interrogatories are so broad or ambiguous that privileged and/or work-product information is arguably encompassed within the scope thereof, even though Ford may not have specifically identified to date any information or documents that are being withheld. To the extent of the foregoing, Ford objects to these interrogatories as exceeding the scope of permissible discovery. Ford will not produce privileged information or information protected as attorney work-product. To the extent documents are responsive, Ford will provide a privilege log for otherwise responsive documents created prior to the initiation of legal action or adversarial proceedings that are withheld on the grounds of attorney-client privilege and/or work-

product. Ford will not, for example, log communications by its counsel of record in this case after the filing of the litigation or any related administrative charge.

F.     Ford objects to Plaintiffs' instructions and definitions to the extent they are inconsistent with and/or exceed the scope and/or requirements of the Federal Rules of Civil Procedure or applicable law.

G.     Ford objects to the requests to the extent they are not limited to Ford's Chicago Assembly Plant ("CAP") or Stamping Plant ("CSP") (collectively, the "Plants"). Plaintiffs have identified putative class members as being employees/former employees from these two facilities.

Subject to and without waiving its objections, and incorporating its objections into each response below, Ford responds as follows to Plaintiffs' Interrogatories:

## INTERROGATORIES

1.     Identify all persons providing information responsive to these interrogatories, including all persons assisting with the drafting of Responses to these interrogatories, as well as each person's title, address, and whether each person is Ford's employee, agent, or attorney.

**ANSWER**:     Ford states that its legal counsel prepared these answers. Ford further states that various human resources, labor relations and legal counsel personnel assisted in gathering information and documents used by Ford's legal counsel in preparing these answers. Ford objects to providing further response to this request as seeking information protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

2.     Identify all persons from whom you or your attorneys took a statement regarding the allegations in this case and for each person state the date the statement was made or taken and

identify the person taking the statement, and identify the contents of the statement and identify all documents that relate to any, all, or part of this answer.

**ANSWER**:    Ford objects to this request to the extent it calls for information protected by the attorney client privilege and/or attorney work product doctrine, including but not limited to listing the individuals whom defense counsel had spoken to regarding the allegations in the case and the content of those communications.  Ford also objects to the term "allegations in this case" as overly broad, vague, ambiguous and subject to multiple interpretations.  Plaintiffs' Second Amended Complaint consists of 194 pages and 965 fact paragraphs, many with multiple sub-parts, and includes claims that have been dismissed by the Court.  (Dkt. 52)  Ford further objects to the production of statements that may be related to non-class claims at this phase of pre-certification discovery. For example, the class claims do not include retaliation, assault and battery, disability discrimination, and/or national origin discrimination, which are all plead as individual claims by one or more of the named Plaintiffs. Ford will not produce documents related to such non-class issues except to the extent they are included in statements concerning class claims.  Ford further objects to the request that Ford re-state the content of any such statements in a narrative response and to the request that Ford identify "all" documents that "relate" to such statements as overly broad, unduly burdensome, not proportional, and seeking duplicative information.

Subject to and without waiving its objections, and consistent with Rule 33(d), Ford will provide non-privileged final statements made or taken by Ford employees in connection with investigating complaints of race and/or sex discrimination and/or harassment by Plaintiffs specifically referenced in the Second Amended Complaint, subject to the protective order.  Ford notes that such statements may be contained in individual investigation files related to the specific

complaints that Ford will produce in response to Requests for Production 8 and 9. The statements that have been or will be produced reflect the date the statement was taken, the individuals who took or were present for the statement and the information provided by the individual giving the statement.

<u>Identify Internal Complaints</u>

3.  Identify every Ford employee or former employee that complained to Ford's Hotline, or Ford's Human Resources or Labor Relations Department between January, 2000 and the present regarding Discrimination or retaliation for complaining unlawful Discrimination or civil rights violations, and for each complaining employee identified, provide:

   a.  Each complainant's name and last known address and telephone number;

   b.  The date of each complaint;

   c.  Any UAW Representative, Labor Relations or Human Resource Department employee, or any other managerial employee who was involved in any interview taken in connection with each complaint;

   d.  All persons interviewed in response to the complaint or grievance;

   e.  The outcome of such complaint or grievance; and

   f.  State whether any discipline was taken against, or whether any counseling or training was provided to or for any individual involved in the complaint or grievance process and describe the nature of such discipline, counseling or training.

**ANSWER**:  Ford objects to this request (including its subparts) as overly broad in time and scope, unduly burdensome and seeking information that is neither relevant nor proportional to the needs of the case. Plaintiffs have identified the class period as 2012 to the present. This request seeks information for a 17-year period when most named Plaintiffs were not even employed at the facilities at issue. Ford also objects to the request for documents concerning complaints of retaliation at this pre-certification stage of the case. Plaintiffs do not allege class-

6

wide retaliation and thus, such request is not appropriate during the class discovery phase of the case. Ford also objects to this request as it seeks complaints of any type of "civil rights violation" against these individuals, which could include, for example, ADA, ADEA and other types of complaints, which are not included in the class allegations in the Second Amended Complaint. Ford further objects to the request as seeking confidential, private and sensitive information, including contact information, concerning non-Plaintiff employees, the production of which may negatively impact employees' willingness to participate in future complaints/investigations. Ford also objects to the burden imposed by the Illinois Personnel Records Review Act in responding to this request as such Act would require Ford to provide notice of the production of disciplinary information for numerous current and former employees. Ford further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine. Ford also objects to this request to the extent it seeks production of information, which is already in the possession of Plaintiffs, such as letters or other materials that they or their counsel may have drafted and submitted to Ford. Finally, Ford objects to producing the contact information for any employees that Plaintiffs' counsel is ethically prohibited from contacting and/or to the extent that counsel uses such information to solicit new clients.

Subject to and without waiving its objections, and subject to the protective order, Ford will produce documents pursuant to Rule 33(d) reflecting complaints of sex and/or race discrimination and/or harassment made by female hourly employees and female production supervisors of CAP or CSP from January 1, 2012 to the present. Information responsive to subparagraphs a (with the exception of contact information)-f may be derived from those documents.

<u>Identify Complaints To The UAW Or Government Agencies Or Lawsuits</u>

4.     Identify each and every charge, complaint or grievance made to the UAW or to the EEOC, IDHR, or any other governmental body known to or received by Ford, whether oral or written, alleging Discrimination or retaliation for complaining unlawful Discrimination or civil rights violations against any individual employed by Ford between 2000 and the present, and with respect to each such complaint, please identify:

a.     The name and last known address and phone number of each person making the complaint and each person who was the subject of each complaint;

b.     The date on which the charge, complaint lawsuit or grievance was made, filed or received;

c.     The entity, department, agency or Court to whom the charge, grievance or complaint was made or filed;

d.     The grievance number, administrative charge number or docket or case number applicable to the charge, grievance or complaint;

e.     Any step, action or investigation Ford made in response to the complaint, charge, grievance or lawsuit;

f.     All persons interviewed or who provided testimony in response to the complaint, charge, grievance or lawsuit;

g.     The outcome of such complaint or grievance, including the disposition of the case, and the amount of any settlement, verdict, judgment or arbitration award;

h.     State whether any discipline was taken against, or whether any counseling or training was provided to or for any individual involved in the complaint or grievance process and describe the nature of such discipline, counseling or training; and

i.     Whether Ford instituted any policy, practice or procedure, conducted any training or took any disciplinary or remedial measure as a result of the complaint, charge, grievance or lawsuit.

**ANSWER**:     Ford objects to this request (including its subparts) as overly broad in time and scope, unduly burdensome and seeking information that is neither relevant nor

8

proportional to the needs of the case. Plaintiffs have identified the class period as 2012 to the present. This request seeks information for a 17-year period when most named Plaintiffs were not even employed at the facilities at issue. Ford further objects to the request for documents concerning complaints of retaliation at this pre-certification stage of the case. Plaintiffs do not allege class-wide retaliation and thus, such request is not appropriate during the class discovery phase of the case. Ford also objects to this request as it seeks complaints of any type of "Civil Rights Violation" against these individuals, including, for example, ADA, ADEA and other types of complaints, which are not included in the class allegations in the Second Amended Complaint. Ford further objects to the request as seeking confidential, private and sensitive information, including contact information, concerning non-Plaintiff employees, the production of which may negatively impact employees' willingness to participate in future complaints/investigations. Ford also objects to the burden imposed by the Illinois Personnel Records Review Act in responding to this request as such act would require Ford to provide notice of the production of disciplinary information for numerous current and former employees. Ford also objects to producing the contact information for any employees that Plaintiffs' counsel is ethically prohibited from contacting and/or to the extent that counsel uses such information to solicit new clients. Further, Ford objects to the request for information on "oral" complaints or charges, to the extent it seeks the creation of documents for purposes of responding to this request, as unduly burdensome and not proportional to the needs of the case.

Ford also objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. For example, as written, this request could seek the disclosure and/or logging of every document in the legal files of Ford's counsel who represented Ford in the subject proceeding. In addition, as written,

Subsection (e) seeks "every step" taken by Ford in response to the subject proceeding. Such request would require Ford to compile and disclose each step taken in its participation in such proceedings, including procedural or strategic decisions/actions that would be neither relevant nor proportional to the case. In addition, Ford objects to this request to the extent it seeks information which is subject to protective orders entered in the individual cases which bar or limit the further production of certain information. Ford also objects to the request for information concerning settlements, non-public awards or resolution of such matters because the terms of settlement agreements are or may be subject to contractual, negotiated confidentiality agreements, such information is irrelevant to Plaintiffs' claims, and the disclosure of such information could have a negative business impact on Ford.

Ford further objects to this request to the extent it seeks information in the possession of the UAW, which is not in the custody and control of Ford. Ford also objects to this request to the extent it asks Ford to produce charges and lawsuits filed by Plaintiffs as such documents are already in the possession of Plaintiffs.

Subject to and without waiving its objections, and subject to the protective order in the case and pursuant to Rule 33(d), Ford will produce administrative charges submitted by female hourly employees and female production supervisors alleging sex and/or race harassment and/or discrimination for the period January 1, 2012, to the present, along with the investigation files concerning such charges from which other responsive information requested in subsections a -i herein (excluding contact information) may be derived. Ford also refers to its response and objections to Interrogatory 3.

Ford further identifies the following lawsuits that are a matter of public record:

1. *Heather Hoekstra v. Ford Motor Company,* Case No. 13 C 2814; summary judgment granted; appeal dismissed.

2.   *Lawanda King v. Ford Motor Company*, No. 13 C 7967; summary judgment granted; on appeal.

3.   *Lillie Blue v. Ford Motor Company*, Case No. 15-CV-4287; resolved through confidential settlement.

4.   *Essence Clark v. Ford Motor Company*; Case No. 13-cv-03651; resolved through confidential settlement.

5.   *Rogers et al. v. Ford Motor Company;* Case No. 1:12-cv-07220; pending.

Identify Decision-makers That Took<br>Employment Actions Against Named Plaintiffs

5.   Identify all persons involved in any decision to terminate or suspend any of the Named Plaintiffs or to determine that there was "No Work Available" for any of the named Plaintiffs at any time between 2012 and the present and for each decision maker, identify which termination, suspension or "No Work Available" decision he or she was involved in deciding, and the basis for any such termination, suspension or "No Work Available" designation.

**ANSWER**:   Ford objects to this request as overly broad in time and scope, unduly burdensome and seeking information which is not proportional to the needs of the case. As written, this request seeks the identity of "all" persons "involved" in various employment decisions for the 33 named Plaintiffs over a period of five years, regardless of the role the individual may have played and regardless of whether they would have cumulative or duplicative knowledge of other witnesses.

Subject to and without waiving its objections, subject to the protective order, and pursuant to Rule 33(d), Ford has produced or will produce herewith Disciplinary Action Reports, also referred to as form 4600's, which reflect discipline administered to each of the hourly Plaintiffs. Ford similarly has produced or will produce disciplinary action documents for salaried Plaintiffs that contain similar information. These forms reflect the name of the HR, labor representative, Union representative and supervisor (if applicable) involved in the meeting/hearing leading to the

discipline as well as the charge underlying the discipline. As such, the responsive names and information can be derived from these documents concerning disciplines. For those Plaintiffs who were terminated from the Company, Ford has produced files related to their terminations that contains a form identifying the Labor Relations personnel who implemented the discharge as well as the reason for the discharge (*see, e.g.*, FMC-VCA-0000807, FMC-VCA-0004274, FMC-VCA-0014414). In addition, Ford has or will produce investigation files, to the extent such files exist, which relate to the conduct underlying the termination from which other responsive names may be derived. In some circumstances, such as where the termination was based on attendance, there may not be an investigation file. Finally, Ford has produced OHSIM records that include medical restriction history reports. If an employee was placed on no work available leave during the requested time period an entry will appear in the records reflecting the individual who approved such leave as well as the medical restriction underlying the no work available leave (*see, e.g.*, FMC-VCA-0000820, FMC-VCA-0003879, FMC-VCA-0004397).

<u>Identify Complaints Against Specific Individuals</u>

6.  Identify each and every complaint made by any Ford employee or former employee between 2000 and the present related to Discrimination or retaliation for complaining unlawful Discrimination or civil rights violations against any of the following individuals: Myron Alexander; Robert Powell; Terrance McClain; Coby Millender; Ken Millender; Buck Owens; Robert "Bob" Divine; Brian Hubbard; Marvin Chones; Ben Anderson; Darren McElroy; Willie Fonseca; Michael Reese; Michael Francisco; Erik Bystrom; Mark Allen; Anthony "Tony" Dodson; George Melchore; Charles "Chuck" Nennert; Jeffrey Bivens; Dan Lacy; Pierre Hawkins; Kendall Brooks; Kevin "Red" Marshall; Ashley Lowe; Dazman Gray; Brian Robinson; Darryl Galloway; Gerardo "Dre" Harris; Jabari Muse; Carmel Gregory; Terrell

Wilkerson; LaDell Conway; Willie Shaw; Ken Perry; Kevin Ballard; Lance Caldman; Marcus Carpenter; Rappa Arrington; Fred Jones; Aaron Strayker; Omar, the Chicago Assembly Plant employee who sells or sold dvd's and other paraphernalia in the plant; Tom Jones; Chris Wells; David Gilyard; Chandler Stevens; Marquis Sullivan; Neely Clemmons; Creston Battle; Ron Woods; Chris Martin; Brian Williams; Tracy Potter; Wilde Regatte; Roy Erdman; Rob Diver; Dan Lawrence; Kevin Deake; Brad Swing; Rob Kemp; Mark Olsen; Don Byers; Ed Smith; Quise; Courtney Malory; Shawn Morton; Shawn Morton; Tom Hernandez; Greg Williams; Tom Czpiniski; Ed Davis; John Weems; Carlos Young; Zack Bozanic; Clay Kuesis; Fred Jones; Terry Conwell; Chris Pena; Tony Amonelille; Joel Thornsberry; Robert Cronenwett; Jeff Tucker; Jackie Montgomery; Rich Murray; Kenny Eder; Jason Bubhin; Kevin Edwards; Eddie Cather; John Williams; Charlie Smart; Robert Pryor; or Dematio Petite.

For each complaint identified, provide:

(a)    the name and last known contact information of the complainant;

(b)    the date the complaint or grievance was made;

(c)    whether the complaint was internal (including but not limited to a complaint to Ford's Hotline or Labor Relations Office), to the UAW, or to a public agency (including but not limited to the EEOC or IDHR), and

(d)    whether any investigation was performed and the findings of any investigation; and

(e)    Identify any discipline taken against any of the above employees, including the date(s) on which such disciplinary action was issued and the nature of the discipline.

**ANSWER**:    Ford objects to this request (including its subparts) as overly broad in time and scope, unduly burdensome and seeking information which is neither relevant nor proportional to the needs of the case. Plaintiffs have identified the class period as the period from 2012 to the present. This request seeks information for a 17-year period when most named

Plaintiffs were not even employed at the facilities. Ford further objects to the request for documents concerning complaints of retaliation at this pre-certification stage of the case. Plaintiffs do not allege class-wide retaliation and thus, such request is not appropriate during the class discovery phase of the case. Ford also objects to this request as it seeks complaints of any type of "civil rights violation" against these individuals, which could include, for example, ADA, ADEA and other types of complaints, which are not included in the class allegations in the Second Amended Complaint.

Ford further objects to this request to the extent it seeks documents or information in the care, custody and control of the UAW. The UAW is a separate entity and documents in their possession are not in the possession of Ford.

Ford further objects to the request as seeking confidential, private and sensitive information, including contact information, concerning non-plaintiff employees, the production of which may negatively impact employees' willingness to participate in future complaints/investigations. Ford also objects to the burden imposed by the Illinois Personnel Records Review Act responding to this request as such act would require Ford to provide notice of the production of disciplinary information for numerous current and former employees. Ford also objects to producing the contact information for any employees that Plaintiffs' counsel is ethically prohibited from contacting and/or to the extent that counsel uses such information to solicit new clients.

Subject to and without waiving its objections, subject to the protective order, and pursuant to Rule 33(d), Ford will produce charges of discrimination or internal complaints to Labor Relations or Human Resources of sex and/or race harassment and/or discrimination made by female hourly employees and female production supervisors against such individuals identified,

during the class period, from 2012 to the present, if any, along with the investigation files concerning such charges or internal complaints from which other responsive information requested in subsections a -e herein (excluding contact information) may be derived.

Policies And Procedures

7.  Describe in detail each and every policy, practice or procedure that Ford had in place from 2000 to present regarding employment discrimination, retaliation and/or sexual harassment and with respect to each such policy, please identify:

    a.  The text or wording of the policy;

    b.  Any changes or additions to the policy, between 2000 and the present and the dates any changes were made; and

    c.  Whether the policy, practice or procedure was ever communicated to the employees of the Chicago Stamping Plant or Chicago Assembly Plant and if so, how and when.

**ANSWER**:  Ford objects to this request (including its subparts) as overly broad in time and scope, unduly burdensome and seeking information which is neither relevant nor proportional to the needs of the case. Plaintiffs have identified the class period as the period from January 1, 2012 to the present. This request seeks information for a 17-year period when most named Plaintiffs were not even employed at the facilities. Ford further objects to the request for documents concerning policies related to retaliation or other non-class causes of action during this pre-certification stage of the case. Plaintiffs do not allege class-wide retaliation, for example, and thus, such request is not appropriate for the class discovery phase of the case. Ford also objects to the term "practice" or "procedure" as vague and ambiguous as used here. Ford further objects to this request as overly broad, unduly burdensome and not proportional to the needs of the case to the extent it seeks the identification of the exact dates on which employee/each new hire received the identified training, because Ford has trained thousands of employees/new hires from 2012-

15

present. Also, Ford objects to the extent this request would require it to interview every current and former employee of the Plants over the requested time-frame to determine whether a policy had been discussed or reviewed with them, as overly broad, unduly burdensome and not proportional to the needs of the case.

Subject to and without waiving its objections, subject to the protective order, and pursuant to Rule 33(d), Ford will produce copies of its anti-harassment policies and procedures in effect from 2012 to the present at the Plants. These include: Directive B-110; Ford Motor Company Anti-Harassment Policy; Anti-Harassment Guide for Managers and Supervisors; Directive B-103 Affirmative Action in the US; Policy Letter No. 2-Relationship with Employees; Policy Letter No. 6-Equal Opportunity. Ford's anti-harassment brochure was recently updated to include gender expression as a protected category. The revised version will be available on a going-forward basis at both facilities. Ford has also previously produced the collective bargaining agreements in effect at the Plants for the years 2012 to the present, which may also contain responsive information.

Further answering, Ford states that at both CAP and CSP, it has on-site human resources and labor relations staff who are trained and available to address any concerns or complaints regarding harassment or discrimination. It also has communicated its anti-harassment policy to hourly and salaried employees at CAP and CSP as follows for the period 2012 to present. All new hires, hourly and salaried, are trained on Ford's anti-harassment policy during orientation and acknowledge receipt and understanding of such policy. In addition, both CAP and CSP post Ford's anti-harassment policy at multiple locations where it is easily viewable by both salaried and hourly employees. Ford also posts all required federal and state postings concerning anti-

discrimination.   In addition to these actions, Ford identifies the following additional communication/steps:

- Beginning in or about January 2012— salaried employees at the Plants were required to complete on-line training on Mutual Respect for Managers and Supervisors,  Preventing Sexual Harassment and Recognizing Sexual Harassment Such training was conducted for a period of months thereafter.

- February 2012—Ford increased new employee diversity training from 2.5 hours to 4 hours.

- March 2012—Supervisors in CAP Trim Department were asked to coach and counsel Trim employees on anti-harassment.

- On or about August 14, 2012—Ford e-mailed CAP personnel a Joint CAP/UAW Bulletin dated August 13, 2012, concerning "Expected Behaviors" and In-Plant problem solving resources and asked that the bulletin be posted and shared.

- November 2012—A UAW bulletin concerning Anti-Harassment was posted at CAP.   In addition, CSP distributed an anti-harassment bulletin/refresher to Plant employees.

- In or about  December 2012 and early January 2013—Ford conducted mandatory four-hour Diversity Training for CAP and CSP Process Coaches, Senior Process Coaches and UAW District Representatives.   During 2012 and 2013, diversity training was also provided to hourly employees at both facilities.

- On or about January 16, 2013—CAP e-mailed an open door policy memo from the Plant Manager to CAP salaried employees.   Ford also made available additional

sexual harassment investigation process training materials for CAP Human Resources Representatives.

- February 2014—Anti-harassment refresher training was conducted for CAP Central Maintenance employees and supervisors.

- March 2014 – CSP conducted an anti-harassment stand-down for employees in the Material Planning and Logistics Department.

- April 2014—CAP Plant Labor Relations re-distributed its Anti-Harassment policy to certain operators and supervisors at locations T3A-01W, 01E and T3A-2W and 2E.

- April 2014—CAP Human Resources sent an e-mail reminder regarding management responsibilities concerning graffiti.

- September 2014—CSP conducted an anti-harassment refresher for all employees.

- December 2014—CAP Supervisors were asked to review the Company's Anti-Harassment policy with their teams, including hourly employees.

- February 2015—CAP again posted its open door policy.

- In multiple sessions occurring in 2015, Ford trained all CAP and CSP hourly and salaried employees on a four-hour course concerning building a respectful, harassment-free workplace. During 2015, Ford also conducted additional "Working Together" anti-harassment and diversity training specifically for supervisors and managers.

- May 2015—Ford distributed an updated Single Point Lesson concerning addressing graffiti in the workplace.

- June 2015—Ford rolled out its Relationships in the Workplace policy to all CAP and CSP salaried employees.

In addition, Ford requires salaried employees at the Plants to annually review and acknowledge their understanding of Ford's Code of Conduct which addresses, among other things, equal opportunity and diversity, and anti-harassment. Ford also periodically transmits information concerning Ford's Anti-Harassment and Discrimination: Guide for Supervisors and Managers. For example, such information was distributed in January 2012 and March 2015.

Ford also may verbally review its anti-harassment policy with individuals or groups of individuals at the Plants or provide them with an additional copy of its anti-harassment policy from time to time as deemed appropriate, including when such individuals are involved in an investigation of harassment allegations. Ford does not always keep a record of these instances. Ford further notes that statements, which have been produced in response to other interrogatories and requests for production in this discovery set, may note in the text of the statement that Ford's anti-harassment policy was reviewed during the course of the meeting and/or that a copy of B-110 was provided to the employee during or at the conclusion of the interview. Disciplinary documents otherwise produced may also reflect that Ford reviewed its anti-harassment policy with the affected individual(s).

8.    Describe each and every step taken since 2000 to maintain a work environment free from discrimination and harassment at the Chicago Assembly Plant and Chicago Stamping Plant.

**ANSWER**:    Ford objects to this request as overly broad in time and scope, unduly burdensome and seeking information which is neither relevant nor proportional to the needs of the case. Plaintiffs have identified the class period as from 2012 to the present. This request seeks

information for a 17-year period when most named Plaintiffs were not even employed at the facilities. Ford further objects to this request for "each and every" step taken. As written, this request would require identification of individual actions taken by thousands of employees at CAP and CSP over a 17-year period. Even if the time-period were shortened, this request would still require Ford to interview potentially thousands of current and former employees to determine what, if any, steps such individuals took which may be responsive to this request. In addition, this request is not limited to the type of discrimination alleged in the class allegations of the Second Amended Complaint, but rather applies to all forms/types of discrimination and harassment, regardless of basis. Accordingly, Ford's response is limited to those steps taken by the Plant Human Resources functions concerning alleged sex and/or race harassment and/or discrimination for the period 2012 to the present.

Subject to and without waving its objections, Ford incorporates its response to Interrogatory No. 7 summarizing training and policy dissemination at the two facilities from 2012 to the present and to the documents provided in response thereto. In addition to policies and training, Ford identifies the following actions that may be responsive:

As noted in response to Interrogatory No. 7, at both CAP and CSP, Ford has on-site human resources and labor relations staff who are trained and available to address any concerns or complaints regarding harassment or discrimination. These personnel receive guidance, instruction and education regarding the performance of their responsibilities. Ford investigates and appropriately responds to complaints of race and/or sex harassment and/or discrimination at the Chicago Plants, including taking disciplinary action up to and including termination where warranted. In addition to the various avenues to report harassment contained in Ford's anti-harassment policy, which include reporting channels both inside and outside of the facilities, Ford

also maintains an open door policy for all employees. Further, Plant Managers conduct town hall meetings and "skip level" meetings that allow hourly and salaried employees to voice concerns about their workplace. Human resources personnel, including labor relations staff, regularly engage with the hourly work force to identify and respond to concerns. In addition, hourly employees may file a grievance under the terms of the applicable collective bargaining agreements. Finally, in fall 2014, Ford assembled a Dearborn-based team variably consisting of human resources, Union, and Labor Affairs personnel to investigate allegations of sexual and/or racial harassment occurring at the Plants.

9.     Identify the date, title, subject matter and describe in detail the content of each and every training or education seminar, meeting, session or the like relating in any way to the topics of sexual harassment, discrimination of any type, and/or retaliation held at or for the Chicago Assembly Plant or Chicago Stamping Plant from 2010 to the present. With respect to each seminar, training session or meeting, please also identify whether any written materials were provided to attendees, or whether any written communication was provided via slides, projections or electronic visual media, and if so, describe the content of such materials and identify the instructor(s).

**ANSWER**:     Ford objects to this request as overly broad in time and scope, unduly burdensome and seeking information which is neither relevant nor proportional to the claims in the case. Plaintiffs have identified the class period as from 2012 to the present. Ford further objects to the extent this request seeks information concerning "discrimination of any type" and retaliation, as such are not included in the class claims in the Second Amended Complaint and thus are not relevant topics for discovery at this pre-certification phase of the case. Ford further objects that the request for each and every "meeting, session or the like" would conceivably

require Ford to interview thousands of current and former employees to determine responsive information. Ford also objects to the request that it prepare a narrative recitation of the content of all such training and the identification of each and every instructor at each session as unduly burdensome.

Subject to and without waiving its objections, Ford incorporates its response and objections to Interrogatory No. 7. Further answering, subject to the protective order and pursuant to Rule 33(d), Ford will produce the materials used in connection with the identified training sessions and meetings concerning sex and/or race harassment and/or discrimination from 2012 to the present.

### Class Member Identification

10. Identify (as that term is defined) each and every female employee who worked at the Chicago Stamping Plant and the Chicago Assembly Plant from 2010 to present and for each person please be sure to include their full name, address, home and cellular telephone numbers, email address and identify the dates of employment and state the plant at which they were employed.

**ANSWER**: Ford objects to this request as overly broad in time and scope, unduly burdensome and seeking information which is neither relevant nor proportional to the needs of the case. Plaintiffs have identified the class period as from 2012 to the present. As written, this request seeks the identification of hundreds if not thousands of current and former employees for two years pre-dating the class period. Ford further objects to producing the list requested at this time. No class has been certified; as such, this request is premature and not necessary for purposes of class certification motion practice. In addition, Ford objects to producing contact information for hundreds if not thousands of nonparty employees as an invasion of privacy and

calling for disclosure of sensitive information. Ford also objects to the extent the purpose of this request is for the solicitation of new clients. Ford further objects to the extent the request seeks contact information for individuals whom may be contacted only through counsel and/or whom Plaintiffs' counsel are prohibited from contacting by the applicable ethical rules.

### Identify Witnesses Who May Be Called

11.     Identify the full name, last known home address, and phone number for each witness that Defendant intends to call in any hearing, or trial in this matter.

**ANSWER**:     Ford objects to this request as premature, as Ford has not yet identified individuals whom it intends to call at any hearing or trial in this matter. Ford will supplement its response as directed by the Court in orders concerning discovery or other applicable orders. In addition, Ford objects to producing contact information for nonparty employees as an invasion of privacy and calling for disclosure of sensitive information. Ford also objects to providing contact information for witnesses whom Plaintiffs' counsel is prohibited from contacting by the applicable ethical rules and/or to the extent counsel intends to use such information to solicit new clients.

Subject to and without waiving its objections, Ford refers Plaintiffs to its Rule 26(a) Disclosures containing the names of individuals who may have discoverable information to support its claims or defenses.

12.     Identify the full name, last known address and phone number for each expert witness that Defendant intends to call in any hearing, or trial in this matter, the subject of any expert's expected testimony, and identify any expert opinions each witness is expected to provide and all other information required pursuant to Fed. R. Civ. P. 26.

**ANSWER**:   Ford objects to this request as premature, as Ford has not yet identified expert witnesses whom it intends to call at any hearing or trial in this matter. Ford will supplement its response as directed by the Court's Order for Discovery and Case Management or other applicable orders.   Ford objects to this request to the extent it seeks production of information that is protected by the attorney client privilege and/or work product doctrine or is in excess of that required under Rule 26.

13.     Identify by name, address, phone number and title, each and every female and/or African American (black) worker employed by Ford Motor Company at its Chicago Assembly Plant and Chicago Stamping Plant from 2012 to present.

**ANSWER**:   Ford incorporates its response and objections to Interrogatory No. 10, as if fully restated herein.   In addition, Ford objects to the request for identification of all African American employees, male or female, as overly broad and seeking irrelevant information. Plaintiffs' putative class is limited to females.

<u>Identify Facts Related To Any Defenses</u>

14.     Identify each and every fact, contention or allegation known by Ford which may negate, defeat, undermine or affect the credibility or success of any claim which has been brought or alleged in this lawsuit or in any pending charge, including the identify of any persons having any relevant information or knowledge of any such fact and the identity of any documents referring or relating to such contention, fact or allegation.

**ANSWER**:   Ford objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case.   As written, the request seeks "each and every fact, contention or allegation" which may negate, defeat or affect the "credibility or success of any

24

claim in the lawsuit or in any pending charge." Plaintiffs' Second Amended Complaint is over 190 hundred pages long and asserts 965 fact paragraphs. Requiring Ford to determine "each and every" fact which may "undermine" or "affect" each and every allegation in the Second Amended Complaint, as well as every fact which may undermine or negate claims brought in an unidentified universe of "pending charges," is beyond the scope of permissible discovery. Ford further objects to the extent this request seeks information protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving its objections and pursuant to Rule 33(d), Ford identifies the documents and discovery produced or to be produced in this case, as containing responsive information.

DATED:  February 28, 2017

Respectfully submitted,

Eugene Scalia (admitted *pro hac vice* )
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:     (202) 955-8500
Facsimile:     (202) 467-0539

Mark H. Boyle
Karen Kies DeGrand
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Telephone:     (312) 422-0900
Facsimile:     (312) 422-0909

*Counsel for Ford Motor Company*

Kathleen M. Nemechek, N.D. Ill. No. 50139
Timothy S. Millman, N.D. Ill. No. 44398
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:     (816) 561-7007
Facsimile:     (816) 561-1888

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February 2017, I served the foregoing by e-mail

upon:

Keith L. Hunt
Bradley E. Faber
HUNT & ASSOCIATES, P.C.
Three First National Plaza, Suite 2100
Chicago, Illinois 60602
Telephone:     (312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com

*Counsel for Plaintiffs*


_____
*Counsel for Defendant Ford Motor Company*