**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, JACQUELINE BARRON, THERESA BOSAN, SHRANDA CAMPBELL, KETURAH CARTER, MICHELLE DAHN, TONYA EXUM, JEANNETTE GARDNER, ARLENE GOFORTH, CHRISTINE HARRIS, ORISSA HENRY, LAWANDA JORDAN, DANIELLE KUDIRKA, TERRI LEWIS-BLEDSOE, CONSTANCE MADISON, CEPHANI MILLER, MIYOSHI MORRIS, STEPHANIE SZOT, SHIRLEY THOMAS-MOORE, ROSE THOMAS, TONI WILLIAMS, BERNADETTE CLYBURN, MARTHA CORBIN, ANGELA GLENN, LADWYNA HOOVER, OGERY LEDBETTER, LATRICIA SHANKLIN, ANTOINETTE SULLIVAN, DERRICKA THOMAS, and NICHEA WALLS, each individually and on behalf of all similarly situated persons,** | Case No. 1:14-CV-08708  Honorable Robert M. Dow, Jr. Honorable Sidney I. Schenkier |
| **Plaintiffs,** | |
| **v.** | |
| **FORD MOTOR COMPANY,** | |
| **Defendant.** | |

**DEFENDANT FORD MOTOR COMPANY'S OPPOSITION TO PLAINTIFFS'
MOTION TO STAY THE DISTRIBUTION OF NOTICES OF
FORD/EEOC CONCILIATION CLAIMS AWARDS**

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................3

LEGAL STANDARD......................................................................................................................5

ARGUMENT ..................................................................................................................................5

    A.    This Court Lacks Authority To Enjoin The Mailing Of Award Notices.................6

        1.    This Court Cannot Halt The EEOC-Overseen Claims Process At The Request Of Plaintiffs In A Putative Class Action To Which The EEOC Is Not A Party ..............................................................................................6

        2.    Plaintiffs Lack Standing To Interfere With The Claims Process.................7

    B.    Plaintiffs Have Not Justified The Extraordinary Remedy Of A Preliminary Injunction ...............................................................................................8

        1.    Plaintiffs Have Failed To Show They Are Likely To Succeed On The Merits, And Have Failed To Identify Any Harm That Merits A Remedy...8

        2.    Plaintiffs Have Failed To Show That Irreparable Harm Would Result To Putative Class Members From Mailing EEOC-Approved Notices ............9

        3.    The Balance Of Harms And Public Interest Weigh Heavily Against Plaintiffs' Requested Injunction ............................................................12

    C.    Plaintiffs Have Not Shown That Pre-Certification Notice Is Appropriate Or Warranted....................................................................................................13

CONCLUSION...............................................................................................................................15

i

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*In re Aftermarket Filters*,
 No. 08-cv-4883, 2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) ...................................................8

*Am. Pipe & Const. Co. v. Utah*,
 414 U.S. 538 (1974) ..........................................................................................................11

*Andrews v. Orr*,
 851 F.2d 146 (6th Cir. 1988) .............................................................................................11

*Armstrong v. Martin Marietta Corp.*,
 138 F.3d 1374 (11th Cir. 1998) .........................................................................................11

*Balschmiter v. TD Auto Fin. LLC*,
 No. 13-CV-1186-JPS, 2015 WL 2451853 (E.D. Wis. May 21, 2015) ..........................14, 15

*Brown v. Club Assist Rd. Servs. U.S., Inc.*,
 No. 12 CV 5710, 2014 WL 1884461 (N.D. Ill. May 12, 2014)..........................................2, 5

*China Agritech, Inc. v. Resh*,
 138 S. Ct. 1800 (2018)......................................................................................................11

*Culver v. City of Milwaukee*,
 277 F.3d. 908 (7th Cir. 2002) ...........................................................................................14

*Diamond v. Charles*,
 476 U.S. 54 (1986)..............................................................................................................8

*East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*,
 414 F.3d 700 (7th Cir. 2005) ............................................................................................11

*Edwards v. Clendenon Henney & Hoy*,
 No. IP02-0271-CTK, 2003 WL 21254438 (S.D. Ind. Mar. 17, 2003) ..................................14

*EEOC v. Sidley Austin LLP*,
 437 F.3d 695 (7th Cir. 2006) ..............................................................................................6

*EEOC v. Union Pac. R.R. Co.*,
 867 F.3d 843 (7th Cir. 2017) ..............................................................................................6

*EEOC v. Waffle House, Inc.*,
 534 U.S. 279 (2002)............................................................................................................6

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Elias v. Nat'l Rental Sys., Inc.*,
    59 F.R.D. 276 (D. Minn. 1973) ................................................................................15

*Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*,
    No. 17-CV-8381, 2017 WL 6059971 (N.D. Ill. Dec. 7, 2017) .......................................5, 6, 8

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*,
    549 F.3d 1079 (7th Cir. 2008) ..................................................................................5

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ...............................................................................................9

*Griffin v. Singletary*,
    17 F.3d 356 (11th Cir. 1994) ..................................................................................11

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ...............................................................................................15

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ...............................................................................................8

*Mach Mining, LLC v. EEOC*,
    135 S. Ct. 1645 (2015) ...........................................................................................6

*Marian Bank v. Elec. Payment Servs., Inc.*,
    No. 95-614-SLR, 1999 WL 151872 (D. Del. Mar. 12, 1999) .........................................14, 15

*McDonald v. Secretary of Health & Human Serv.*,
    834 F.2d 1085 (1st Cir. 1987) ................................................................................11

*McKenzie v. City of Chicago*,
    118 F.3d 552 (7th Cir. 1997) ................................................................................2, 8

*Meyers v. Nicolet Rest. of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ..................................................................................7

*Offor v. Illinois Dep't of Human Servs.*,
    No. 11 C 7296, 2013 WL 170000 (N.D. Ill. Jan. 16, 2013) ..........................................7

*Puffer v. Allstate Ins. Co.*,
    614 F. Supp. 2d 905 (N.D. Ill. 2009) ......................................................................14

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ...............................................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Soto v. Great Am. LLC*,
   No. 17-CV-6902, 2018 WL 2364916 (N.D. Ill. May 24, 2018)................................................7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).........................................................................................................7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)............................................................................................................7

*Turnell v. CentiMark Corp.*,
   796 F.3d 656 (7th Cir. 2015) ..........................................................................................5, 6

*Ty, Inc. v. Jones Grp., Inc.*,
   237 F.3d 891 (7th Cir. 2001) ............................................................................................10

*Youngblood v. Wilson*,
   No. 3:07-CV-0079 PS, 2008 WL 215739 (N.D. Ind. Jan. 24, 2008)........................................9

### <u>Statutes</u>

42 U.S.C. § 2000e-5(b)..............................................................................................................3, 6

42 U.S.C. § 2000e-5(f)(1).........................................................................................................1, 6

### <u>Rules</u>

Fed. R. Civ. P. 23(d)(1)(B) .....................................................................................................2, 14

**INTRODUCTION**

For the second time, Plaintiffs seek to delay or prevent their coworkers—whom Plaintiffs do not represent—from receiving the proceeds of a $10.125 million settlement fund. That fund, and the claims process by which it is to be distributed, were established by the August 1, 2017 Conciliation Agreement between Ford and the Equal Employment Opportunity Commission ("EEOC")—the agency with a statutory duty to act in the public interest in enforcing Title VII. Title VII authorizes the EEOC to reach a conciliation agreement on terms that are "acceptable to the Commission," 42 U.S.C. 2000e-5(f)(1), and the EEOC did so. Now, more than a year later, Plaintiffs ask this Court to derail the Agreement by "staying" its claims process until class certification is decided in *this* case, in which the EEOC is not a party. Dkt. 320 ("Mot.") ¶ 30. In the alternative, Plaintiffs ask the Court to order that a "precertification notice" be sent to women participants in the claims process, "advising them[] of [their] options and timeframes." *Id.* at 14.

Plaintiffs' Motion is a thinly-veiled attempt to obstruct the claims process in order to divert more putative class members—and attorneys' fees—to this case. If Plaintiffs actually were concerned about the EEOC conciliation process, they could have *participated in it*. Instead, they and their lawyers demanded "right-to-sue letters" from the EEOC, so they could swiftly proceed to court. *See* Dkt. 20 ¶ 10. Having chosen to litigate rather than conciliate, Plaintiffs must not be allowed to thwart the claims process for their co-workers who wish to consider a different path.

Plaintiffs' Motion should be denied, *first*, because this Court lacks authority to grant the relief Plaintiffs seek. Plaintiffs have cited no legal basis for this Court to enjoin the EEOC—a non-party to this suit—from implementing its conciliation agreement. Indeed, Plaintiffs do not even have standing to make this request: Plaintiffs have identified no injury they would suffer if women participants in the claims process are notified of their awards; instead, their request is based on speculative injuries to "absent putative class members" (Mot. ¶ 35) whom they do not represent.

1

That is insufficient. *See McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997).

*Second*, Plaintiffs' cannot meet the demanding criteria for the "extraordinary and drastic remedy" of a preliminary injunction. *Brown v. Club Assist Rd. Servs. U.S., Inc.*, No. 12 CV 5710, 2014 WL 1884461, at *12 (N.D. Ill. May 12, 2014) (Dow, J.) (internal quotation marks omitted). Neither Plaintiffs nor the putative class would suffer any harm from the timely notification of awards under the Agreement, much less the "irreparable harm" required for a preliminary injunction. On the other hand, if Plaintiffs' requested "relief" *were* granted, participants in the claims process would be harmed, as their payments would be unnecessarily delayed. (Remarkably, Plaintiffs and their counsel appear oblivious to this adverse consequence—even though they aspire to represent absent class members.) Plaintiffs' requested injunction also would impair the public interest in EEOC conciliation of Title VII claims, and "impede EEOC's enforcement of the laws"—as the EEOC explains in a letter regarding Plaintiffs' motion attached hereto as Exhibit C.

*Third*, Plaintiffs have not justified their alternative "request that the Court require that a notice be issued" to putative class members "to inform them of their options and rights." Mot. ¶ 55. Rule 23(d)(1)(B) does not authorize the kind of pre-certification class notice that Plaintiffs demand. And even if it did, Plaintiffs have not explained why a pre-certification notice is needed here "to protect [putative] class members." Fed. R. Civ. P. 23(d)(1)(B).

* * *

Plaintiffs' motion is meritless, yet significant: It is fresh evidence that Plaintiffs' and their co-counsel will put their own interests ahead of the class they seek to represent. This Court should repose its confidence instead in the federal agency and process created by Congress to benefit victims of discrimination.

## FACTUAL AND PROCEDURAL BACKGROUND

Ford's Conciliation Agreement with the EEOC sets forth a detailed claims process under which all women and African-Americans who were employed at the Chicago Assembly Plant or Chicago Stamping Plant (the "Chicago Plants") at any time from January 1, 2010 to August 1, 2017 are eligible to receive monetary compensation from a settlement fund of up to $10.125 million. *See* Ex. A ¶¶ 38-39. The Agreement was the product of lengthy negotiations between Ford and the EEOC, pursuant to the EEOC's statutory conciliation procedures. *See* 42 U.S.C. § 2000e-5(b). The Agreement was *not* the product of the EEOC charges filed by Plaintiffs: Plaintiffs chose not to participate in the conciliation process, instead requesting right-to-sue letters so they could proceed directly to court. *See* Dkt. 20 ¶ 10.

Under the Conciliation Agreement, a claimant may complete and return her Claim Form, learn the amount of monetary relief, if any, available to her, and *then* decide whether to accept the award in exchange for a release. Ex. A ¶¶ 48-49. In October 2017, Plaintiffs filed a supposed "emergency motion" to prevent the issuance of Claim Forms under the Agreement, arguing that the Forms would sow "confusion among members of the proposed class" in this case, and requesting that the mailing be stayed until the Court ruled on Plaintiffs' (then-unfiled) class certification motion. Dkt. 157 at 3-4. Judge Coleman denied Plaintiffs' motion, Dkt. 169 at 3, and the Claim Forms were mailed. Ex. B.

The Claim Form—which was negotiated by the EEOC—provides that a claimant may fill out the Form, learn the amount of monetary relief available to her, if any, and then decide whether to "accept[] a monetary payment." Ex. B at 14. The Form explains that by "accepting a monetary payment, **if awarded** under this process," a claimant will "waive [her] right to have [her] claim heard by a court or by a jury," and will "not thereafter be able to bring or recover through a lawsuit

3

relating to claims of sexual harassment . . . against Ford Motor Company." *Id.* The Form expressly states that to receive an award, a claimant "will be required to sign a release by Ford Motor Company." *Id.* The Form also provides contact information for an individual at the EEOC who is available to answer "any questions" that claimants may have "concerning this matter." *Id.*

Approximately ███████████ submitted Claim Forms for the Monitor Panel's evaluation, including ████████. *See* Ex. D (Rust Decl.) ¶ 4. Under the Agreement's terms, within 30 days of receiving the Monitor Panel's Final Award List, the settlement administrator must mail award notices and releases to persons who were determined to be entitled to monetary relief. Ex. A ¶ 48. On November 7, 2018, the Monitor Panel provided the Final Award List to the settlement administrator. Ex. D ¶ 6. Thus, Ford anticipates that the settlement administrator will mail award notices and releases on December 7, 2018. Ex. A ¶ 48.

According to the Final Award List, approximately ██████ will be offered an award. Ex. D ¶ 7. Approximately ████████████████████████ ████████████████████████. *Id.* ¶ 8; *see also* Dkt. 320-5 at 3. The award notices will be accompanied by a release and, under the Agreement, awardees have 60 days from the date of the notices to decide whether to accept their awards and, if so, to return their completed releases. Ex. A ¶ 48. The Agreement explains that the releases will have no impact on individuals' ability to file a future "charge or complaint of discrimination, speak[] about their work environment, or participat[e] in future EEOC proceedings." *Id.*

On September 27, 2018, this Court denied without prejudice Plaintiffs' motion for class certification, on the ground that lead Plaintiff attorney Keith Hunt had failed to show that he was adequate class counsel. *See* Dkt. 306. The Court also identified numerous other potential problems with Plaintiffs' proposed class that had not been sufficiently addressed in Plaintiffs' papers. *Id.* at

13-17.  Plaintiffs have now filed a renewed motion for class certification, *see* Dkt. 324, on which briefing will be completed in February 2019, *see* Dkt. 331.

## LEGAL STANDARD

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'"  *Brown*, 2014 WL 1884461, at *12 (citation omitted); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotation marks and citations omitted).  To justify this remedy, the movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits."  *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, No. 17-CV-8381, 2017 WL 6059971, at *3 (N.D. Ill. Dec. 7, 2017) (Dow, J.) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661-62 (7th Cir. 2015)).  If the movant makes this showing, the court then considers "'(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties,' *i.e.* the public interest."  *Id*. (quoting *Turnell*, 796 F.3d at 662).

## ARGUMENT

Plaintiffs' motion is a transparent attempt to interfere with the EEOC conciliation process in the hopes of persuading potential beneficiaries to decline to participate in the "preferred means" of resolving discrimination complaints and to join Plaintiffs' class action instead.  This Court should forcefully reject Plaintiffs' unprecedented interference with a government settlement and the procedures set forth by Congress.

### A.     This Court Lacks Authority To Enjoin The Mailing Of Award Notices

This Court lacks authority to grant the relief that Plaintiffs seek, both because it lacks jurisdiction over the EEOC and the Agreement, and because Plaintiffs do not have standing to seek relief on behalf of "female conciliation claimants," Mot. ¶ 29, whom they do not represent.

### 1.     This Court Cannot Halt The EEOC-Overseen Claims Process At The Request Of Plaintiffs In A Putative Class Action To Which The EEOC Is Not A Party

The EEOC cannot be impeded in resolving its own case against Ford because of Plaintiffs' putative class action.  *See generally EEOC v. Waffle House, Inc.*, 534 U.S. 279, 298 (2002).  Plaintiffs cite no authority to the contrary, and make no attempt to support their extraordinary claim that this Court has the power to supervise the EEOC's exercise of its authority under 42 U.S.C. § 2000e-5(b) to investigate Title VII complaints and conciliate them as it deems appropriate.  Title VII "grants the EEOC control over its own investigation and enforcement efforts," *EEOC v. Union Pac. R.R. Co.*, 867 F.3d 843, 851 (7th Cir. 2017), *cert denied*, *Union Pac. R.R. Co. v.* EEOC, 138 S. Ct. 2677 (2018), and its "enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole," *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006).  The "exclusive authority" the EEOC possesses over its enforcement activities includes the authority to enter into conciliation agreements, the "preferred means" of resolving Title VII claims.  *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) (internal quotation marks omitted).  In doing so, the EEOC's charter is "to secure from the respondent a conciliation agreement acceptable to the Commission."  42 U.S.C. 2000e-5(f)(1).

As the EEOC affirms in a letter that addresses Plaintiffs' motion, the Commission has determined that its Conciliation Agreement with Ford "is acceptable to the Commission and in the public interest."  Ex. C.  Plaintiffs and the Court have no basis to interfere with that determination.  And as the EEOC rightly states, "Plaintiffs' Motion is a clear attempt to frustrate the resolution

process agreed to by EEOC and Ford." *Id.* The EEOC "strongly objects to any attempt to alter the terms of or process for effectuating the Agreement." *Id.*

The fact that certain plaintiffs and their lawyers would like to bring a class action cannot be a basis for importing judicial oversight of the EEOC conciliation process. There often will be persons who believe that more could have been achieved in a government settlement—their recourse is to proceed on their own, not to dragoon a federal court into an effort to alter or derail the resolution achieved by the government. If this Court were to grant Plaintiffs the extraordinary relief they seek, it would mean that any individual could—by filing a putative class action— preempt the EEOC's discharge of the statute's "preferred means" of resolving Title VII claims. This Court should not support Plaintiffs and their counsel in blazing that path.

## 2. Plaintiffs Lack Standing To Interfere With The Claims Process

Standing is an "'irreducible constitutional minimum" and "'a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action.'" *Soto v. Great Am. LLC*, No. 17-CV-6902, 2018 WL 2364916, at *2 (N.D. Ill. May 24, 2018) (Dow, J.) (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016)). In the context of injunctive relief, Article III requires a plaintiff to show that she "'is under threat of suffering an 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.'" *Offor v. Illinois Dep't of Human Servs.*, No. 11 C 7296, 2013 WL 170000, at *3 (N.D. Ill. Jan. 16, 2013) (Dow, J.) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). An injury in fact "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted).

Plaintiffs fail to meet the "irreducible constitutional minimum" of Article III standing because their Motion does not identify—or even purport to identify—any threatened "injury in fact" that they *themselves* would suffer absent the requested relief. Plaintiffs claim the relief they seek is necessary to ensure that unrepresented "putative class members to this case are being adequately informed of their rights and options" regarding the claims process. Mot. ¶ 30. But neither Plaintiffs nor their counsel represent all putative class members. *See, e.g.*, *In re Aftermarket Filters*, No. 08-cv-4883, 2010 WL 3909502, at *1 (N.D. Ill. Oct. 1, 2010). Because no class has been certified in this case, the only interests at stake in *this* litigation "are those of the named plaintiffs," and Plaintiffs have not identified any injury that *they* will suffer from the dissemination of award notices. Thus, "plaintiffs lack standing to seek—and the district court therefore lacks authority to grant" the preliminary injunction that Plaintiffs demand. *McKenzie*, 118 F.3d at 555.

"Article III standing is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (citation omitted). While Plaintiffs may prefer to litigate than to participate in the EEOC claims process, they may not disrupt that process for other claimants, many of whom may prefer to accept a payment now and forego their right to participate in this (or another) case.

**B.     Plaintiffs Have Not Justified The Extraordinary Remedy Of A Preliminary Injunction**

   **1.     Plaintiffs Have Failed To Show They Are Likely To Succeed On The Merits, And Have Failed To Identify Any Harm That Merits A Remedy**

Plaintiffs argue that they are entitled to preliminary injunctive relief because they "have a better than negligible chance of success on prevailing on . . . a motion for class certification." Mot. ¶ 34. But a party seeking preliminary injunctive relief must show that it has "a *reasonable likelihood of success* on the merits," *Epic Fresh Produce*, 2017 WL 6059971, at *3 (emphasis added), not just that its odds of success are "more than negligible." More importantly, Plaintiffs'

argument conflates the "merits" of Plaintiffs' (dubious) class certification motion with the merits of their claimed right to interfere with a claims process established by the federal government. "A preliminary injunction is designed to preserve the status quo until a final hearing or trial can be held on a request for a permanent injunction." *Youngblood v. Wilson*, No. 3:07-CV-0079 PS, 2008 WL 215739, at *1 (N.D. Ind. Jan. 24, 2008). Accordingly, there must be a connection between the temporary relief sought and the final relief that the plaintiffs will seek at trial. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). No such connection exists here. Plaintiffs have not even requested a permanent injunction of the claims process, much less shown that they have a "substantial likelihood of success" in achieving one. Plaintiffs' contention—that they are entitled to a preliminary stay of the claims process because they *may* be able to certify a class—only underscores the incoherence of their Motion.

Plaintiffs next assert in a conclusory fashion that "[t]here is no adequate remedy at law for the lack of information being provided to the absent putative class members." Mot. ¶ 35. Again, this argument misses the mark. The supposed "lack of information being provided to the absent putative class members" is not a legally cognizable injury to *Plaintiffs* at all. *See supra* at pp. 9-12. To be entitled to a judicial remedy, "the party seeking review [must] be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Because Plaintiffs do not even assert that they will be "injured" by the dissemination of award notices, their harm is non-existent.

### 2. Plaintiffs Have Failed To Show That Irreparable Harm Would Result To Putative Class Members From Mailing EEOC-Approved Notices

Even assuming that alleged "harm" to putative class members were sufficient for a preliminary injunction—and it is not—Plaintiffs have failed to articulate any legally cognizable harm that would result from the dissemination of the award notices. Plaintiffs base their request

for injunctive relief on four types of speculative harms, none of which have merit.[1]

*First*, Plaintiffs allege that claimants are not being advised of "their rights, alternatives or the ramifications of their choices in accepting or rejecting conciliation awards," Mot. ¶¶ 6, 30, and instead "have been effectively misled in the [claims] process," *id.* ¶¶ 46-47. In particular, Plaintiffs contend that the Claim Form—which was negotiated by the EEOC—"does not advise individual claimants that they have a right to take other actions," *id.* ¶ 6, and does not tell claimants of "their right to reject an award," *id.* ¶ 47. But Plaintiffs already made this argument over a year ago—and lost. *See* Dkt. 169. The text of the Claim Form also belies Plaintiffs' contention: It states, for example, that by "accepting a monetary payment," a claimant will "waive [her] right to have [her] claim heard by a court or by a jury" and will "not thereafter be able to bring or recover through a lawsuit relating to claims of sexual harassment . . . against Ford Motor Company." Ex. B at 14.

Worse, Plaintiffs' Motion assumes without basis that when claimants are presented with a release, they will receive no further information about *what* they are being asked to release. But releases always provide information on the claims being released, and the releases here will be no different. Plaintiffs' Motion is thus predicated on a speculative "injury"—and "speculative injuries do not justify th[e] extraordinary remedy" of a preliminary injunction. *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005).

*Second*, Plaintiffs allege that claimants may not see a need to promptly file charges with the EEOC to preserve their ability to litigate, if they choose not to accept their awards. *See* Mot.

---

[1] Plaintiffs' delay in seeking to halt the conciliation process itself casts doubt on their claim that putative class members would suffer "irreparable" harm absent a preliminary injunction. *See, e.g.*, *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). Plaintiffs have been aware of the deadlines governing the claims process since at least August 2017. During the September 2018 argument on class certification, Plaintiffs were reminded of these deadlines. Mot. ¶ 2. Yet Plaintiffs waited six weeks after that argument and more than a year after first learning of the schedule established by the Conciliation Agreement to bring this Motion.

¶¶ 7-18.  This speculative "harm" is no basis for temporarily halting the issuance of award notices, however, since *when* award notices are issued has no bearing on *what* claimants should know about the exhaustion of administrative remedies.   This argument by Plaintiffs is but another manifestation of their (and their lawyers') frustration with the EEOC's discharge of its statutorily-assigned responsibilities, and their attempt to persuade this Court to interfere with the conciliation process in a manner that, if allowed here, would become standard operating procedure whenever the government sought to settle a Title VII dispute in a way that enterprising plaintiffs' lawyers feared might diminish their own ability to collect fees.[2]

*Third*, Plaintiffs complain that some claimants "*may* accept a paltry and insubstantial award because they lack information and feel they have no option."  Mot. ¶ 36 (emphasis added).  The real fear of Plaintiffs' lawyers, of course, is that claimants will *not* regard the sums as "paltry," and *will* accept the awards.  The Final Award List provides for ████████████████████ ██████████████████████████, *see* Ex. D ¶ 8; Dkt. 320-5 at 3, which to many claimants constitutes a substantial sum, particularly when available without having to submit to the rigors and uncertainties of litigation and without sharing a substantial part of the recovery with

---

[2]   Plaintiffs warn that there is not "clear binding precedent" "in this jurisdiction" stating that *American Pipe* tolling applies to the "period a claimant has in which to file an EEOC charge."  Mot. ¶ 12.  The Court may wonder what case-law is obscured by that cryptic statement.  Every court of appeals to address the issue has concluded that *American Pipe* tolling does apply to the filing of administrative claims, including EEOC charges.  *See*, *e.g.*, *Griffin v. Singletary*, 17 F.3d 356, 360-61 (11th Cir. 1994) (rejecting "defendants' argument that [*American Pipe*] tolling should not apply because the limitations period at issue in this case is an administrative rather than a statutory period"); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1392 (11th Cir. 1998); *McDonald v. Sec'y of Health & Human Serv.*, 834 F.2d 1085, 1092 (1st Cir. 1987); *Andrews v. Orr*, 851 F.2d 146, 150 (6th Cir. 1988).  To be clear, Ford does not rely upon that case-law in this Opposition.  It is, however, case-law that Plaintiffs' co-lead counsel might have cited in the interest of candor toward the tribunal.

a lawyer.[3]  Plaintiffs cite no facts to support their conclusory allegations that claimants "may" accept such awards "because they lack information and feel they have no option."   This Court should be alert to attempts by Plaintiffs' counsel to denigrate and spoil the EEOC conciliation process, in order to divert more clients to this litigation.

*Fourth*, Plaintiffs assert that "non-disclosure, non-disparagement and similar clauses could be imposed [on claimants] restricting their rights and/or complicating their ability to serve as . . . witnesses in this case." Mot. ¶ 48.  This is false, as Plaintiffs and their lawyers should know:  The Conciliation Agreement mandates that the releases "shall not include provisions . . . prohibiting the recipients from filing a charge or complaint of discrimination, speaking about their work environment, or participating in future EEOC proceedings." Ex. A ¶ 48.

In short, all the purported harms that Plaintiffs cite are either conjectural, contradicted by the evidence in the record, or both.  None of these harms is "irreparable."  Indeed, these "harms"— that absent class members may not file EEOC charges, or may accept awards through the claims process that are less than what they could obtain through litigation—are not "harms" at all:  They are circumstances that exist whenever the EEOC settles and administers a settlement fund, and there is nothing about the presence of a pending putative class action that compounds these risks.

### 3.    The Balance Of Harms And Public Interest Weigh Heavily Against Plaintiffs' Requested Injunction

Plaintiffs assert that "[t]he balance of hardships" points in their favor because "[d]elaying the issuance of award notices for a brief time will not result in any hardship *to Ford*."  Mot. ¶ 37

---

[3]    This will not be the case for clients represented in the claims process by Mr. Hunt, however; he is seeking a 40 percent lien, despite his statement to this Court that he would represent clients for free in that process.  *Compare* Ex. E (Sept. 20, 2018 Hr'g Tr.) at 23:6-8 ("In the last case, class counsel represented every one of those [EEOC] claimants for free, and we're prepared to do the same here.") *with* Ex. F (lien letter submitted by Hunt to Ford, seeking 40% interest in amounts awarded to his client under the conciliation process).

(emphasis added). This is a telling failure on the part of Plaintiffs and their lawyers to consider the interests of the third parties they aspire to represent—putative class members, who, if Plaintiffs' relief were granted, would experience substantial delay in learning of their awards and receiving them. Plaintiffs also fail to address the substantial public interest in allowing the EEOC to conciliate claims as it wishes, in accordance with its statutory obligations to do so. *See* Ex. C (EEOC Letter). As in their first "emergency motion," Plaintiffs do no more than "minimally assert[] that a balance of harms weighs in favor an injunction." Dkt. 169 at 3. It does not.

## C. Plaintiffs Have Not Shown That Pre-Certification Notice Is Appropriate Or Warranted

In the alternative, Plaintiffs "request that the Court require that a notice be issued" to putative class members "to inform them of their options and rights," Mot. ¶ 55, or that the Court approve Plaintiffs' sending a pre-certification class-wide notice. But Rule 23 does not authorize the type of pre-certification notice that Plaintiffs seek, and even if it did, Plaintiffs have failed to demonstrate a need for such a notice in this case.

Rule 23(d)—which is titled "Conducting the Action"—identifies steps a court may take in "conducting an action under this rule," including "measures to prevent undue repetition . . . in presenting evidence" and to "impose conditions on the representative parties." Subsection 23(d)(1)(B)(i) provides that, in order "to protect class members and fairly conduct the action," a court may give "appropriate notice to some or all class members of . . . any step in the action."

By its terms, Rule 23(d) concerns an "action" that has been certified under Rule 23. Where no class has been certified, one court has explained, "there is no class, no action under Rule 23, and thus Rule 23(d) would have no application." *Balschmiter v. TD Auto Fin. LLC*, No. 13-CV-1186-JPS, 2015 WL 2451853, at *7 n.6 (E.D. Wis. May 21, 2015) ("question[ing]" whether 23(d) permits pre-certification notice, "given that Rule 23(d) presumes that the Court is 'conducting an

action' under Rule 23—*i.e.* the matter is properly a class action—and thus there are 'class members' that require protection"); *see also Marian Bank v. Elec. Payment Servs., Inc.*, No. 95-614-SLR, 1999 WL 151872, at *2 (D. Del. Mar. 12, 1999) ("the language of Rule 23(d)(2) explicitly contemplates the issuance of notices . . . only after a court has certified a class action"). Indeed, until a class is certified, the prerequisites to communicating with the class have not occurred—including defining the class, and identifying counsel and representatives who can be trusted to represent the interests of class members in advising what the communication should say.

Even if Rule 23(d) did authorize pre-certification notice to putative class members in limited circumstances, no such circumstances exist here.[4] To begin, the Rule only provides for notice with respect to "any step *in the action*." 23(d)(1)(B)(i) (emphasis added). Plaintiffs do not seek a notice regarding a "step" in "*th[is]* action": they request a notice regarding a separate legal proceeding—the claims process under the Conciliation Agreement, as well as the possible effect of filing or not filing an EEOC charge. Nothing in Rule 23(d) authorizes court-sponsored communications with putative class members regarding separate legal proceedings.

In any event, there is no need to "protect" the putative class from an EEOC-sponsored claims process. Putative class members' options with respect to the claims process have been explained in the Claim Form, and the releases they will receive will identify the claims they are

---

[4]   In *Puffer v. Allstate Ins. Co.*, 614 F. Supp. 2d 905 (N.D. Ill. 2009), *aff'd on other grds.*, 675 F.3d 709 (7th Cir. 2012), Judge Schenkier authorized a notice to putative class members stating that class certification had been denied *with* prejudice. Of course, that has not occurred here. *Puffer* relied heavily on *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002), where the court approved the dissemination of a notice advising that a previously-certified class had been *decertified*, identifying the potential "prejudice to class members from a dismissal of which they may be unaware." 277 F.3d at 914. Other district courts have limited *Culver* "to situations in which the class members have received formal notice of the class action and may have relied on that notice" before an order decertifying the class. *Edwards v. Clendenon Henney & Hoy*, No. IP02-0271-CTK, 2003 WL 21254438, at *2 (S.D. Ind. Mar. 17, 2003).

14

being asked to release. Moreover, as this Court has stated, given the "amount of publicity this case has gotten," Ex. E (Sept. 20, 2018 Hr'g Tr.) at 20:5-15, the putative class is well "aware that they have th[e] choice" to decide whether to "take the bird in the hand today" by accepting an award through the claims process, or to see "if they can get a different bird, a bigger bird, perhaps, in the future . . . because this litigation is not a secret to anybody at Ford." *Id.* 21:5-10.

At bottom, Plaintiffs' request for a pre-certification notice is not "a function of [their] altruism—or that of Plaintiff's counsel" but instead, a "ruse" designed to "identify new clients and thereby recoup money Plaintiff's counsel has expended in attempt to certify the class." *Balschmiter*, 2015 WL 2451853, at *7. But the drafters of Rule 23 made clear that it "should not be used merely as a device for the undesirable solicitation of claims." Fed. R. Civ. P., Notes of Advisory Committee on Rules – 1966 Amendment. And "[n]umerous courts have recognized the danger of providing putative class members with court-ordered notice of the opportunity to sue." *Marian Bank*, 1999 WL 151872 at *2. Thus, courts in this Circuit and elsewhere have denied requests for pre-certification notices that appear motivated by nothing more than a desire to "'solicit[] client[s] for plaintiff's counsel under the aegis of the court.'" *Balschmiter* , 2015 WL 2451853, at *7 (quoting *Elias v. Nat'l Rental Sys., Inc.*, 59 F.R.D. 276, 277 (D. Minn. 1973)); *see also Marian Bank*, 1999 WL 151872 at *2. The same caution is warranted here.[5]

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion should be denied.

---

[5] This Court should be particularly circumspect before authorizing any notice or other communications between Plaintiffs' counsel and putative class members, given its finding that lead counsel has not shown himself to be adequate class counsel. *See* Dkt. 306. While Ford is not—at this time—seeking an order formally "limiting communications" between Plaintiffs' counsel and putative class members, Ford reserves its right to do so. *See, e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-102 (1981).

DATED:  November 21, 2018

Kathleen M. Nemechek  N.D. Ill. No. 50139
Timothy S. Millman  N.D. Ill. No. 44398
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:  816.561.7007
Facsimile:  816.561.1888

Karen Kies DeGrand
Mark H. Boyle
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Telephone:  312.422.0900
Facsimile:  312.422.0909

Respectfully submitted,

/s/ Eugene Scalia
Eugene Scalia (admitted *pro hac vice*)
Katherine V.A. Smith (admitted *pro hac vice*)
Molly T. Senger (admitted *pro hac vice*)
Andrea R. Lucas (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Counsel for Defendant Ford Motor Company*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2018, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system, which provided electronic service upon:

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
Three First National Plaza, Suite 2100
Chicago, Illinois 60602
(312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com

Antonio M. Romanucci
Stephen D. Blandin
Bryce T. Hensley
Bhavani K. Raveendran
Nicolette A. Ward
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, IL 60654
(312) 253-8600
aromanucci@rblaw.net
sblandin@rblaw.net
bhensley@rblaw.net
braveendran@rblaw.net
nward@rblaw.net

*Counsel for Plaintiffs*

/s/ Eugene Scalia
*Counsel for Defendant Ford Motor Company*