# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIE VAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 14-cv-8708 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Plaintiffs' motion to stay the distribution of notices of the

Ford/EEOC conciliation claims awards to putative class members [320] is denied.

## I.     Background

Plaintiffs are women who currently are employed or who were employed at one of two

Chicago-area Ford Motor Company facilities (the "Plants")—the Chicago Assembly Plant

("Assembly Plant") and the Chicago Stamping Plant ("Stamping Plant").   Plaintiffs have filed a

123-count second amended complaint on behalf of themselves and all similarly situated persons,

alleging sexual harassment and hostile work environment, gender/sex discrimination, race

discrimination, retaliation, national origin discrimination, failure to accommodate under the

Americans with Disabilities Act, battery, and assault.   On August 1, 2017, Defendant and the

EEOC entered into a conciliation agreement (the "Conciliation Agreement"), which sets forth a

detailed claims process under which all women and African Americans who were employed at the

Plants at any time between January 1, 2010 to August 1, 2017 are eligible to receive monetary

compensation from a settlement fund of at least $7.75 million, and up to $10.125 million.   [335-

1, at ¶¶ 38-39.] Pursuant to that process, claimants may complete and return claim forms to learn the amount of monetary relief, if any, available. [*Id.* at ¶¶ 48-49.] Once claimants know the amount they would receive through the claims process, they may decide whether they wish to settle their claims pursuant to the claims process or pursue other avenues of relief. [*Id.*]

The EEOC-negotiated claim form explains that by "accepting a monetary payment, if awarded under [the] process," claimants will "waive [their] right to have [their] claim[s] heard by a court or by a jury," and will "not thereafter be able to bring or recover through a lawsuit relating to claims of sexual harassment" against Defendant. [335-2, at 15.] The claim form advises claimants that they "will be required to sign a release" to receive an award. [*Id.*] The claim form provides contact information for an individual at the EEOC who is available to answer "any questions" that claimants may have "concerning this matter." [*Id.*]

In October 2017, Plaintiffs filed an emergency motion seeking to prevent the issuance of claims forms under the Conciliation Agreement, arguing that the forms would sow "confusion among members of the proposed class" in this case and requesting that the mailing be stayed until the Court ruled on Plaintiffs' (then-unfiled) class certification motion. [157, at 3-4.] Judge Coleman denied Plaintiffs' motion, concluding that Plaintiffs failed to establish the necessary requirements for seeking preliminary injunctive relief. [169, at 3.][1] The claim forms were then mailed.

Approximately 1,260 individuals submitted claim forms for evaluation, including 736 women. [See 335-4, at ¶ 4.] Under the terms of the Conciliation Agreement, the settlement administrator must mail award notices and releases to persons who were determined to be entitled to monetary relief within 30 days of receiving the final award list. [335-1, at ¶ 48.] On

---

[1] This case had been assigned to Judge Coleman from its inception until it was transferred to this Court by the Executive Committee on January 5, 2018, following Judge Coleman's recusal [see 215].

September 27, 2018, the Court denied Plaintiffs' motion for class certification without prejudice. [See 306.] Soon after, on November 7, 2018, the settlement administrator received the final award list. [See 335-4, at ¶ 6.] On November 9, 2018, Plaintiffs filed a renewed motion for class certification [318], which will be fully briefed as of mid-February 2019 under the parties' agreed briefing schedule [see 331]. On the same day, Plaintiffs filed the instant motion, which seeks an order staying the claims process and distribution of notices of claims awards until the Court rules on class certification and/or permitting a court-approved notice to be sent to prospective claimants, including putative class members, in advance of any payments under the EEOC process. As noted at oral argument, Defendant anticipates that notices will be mailed on December 20, 2018.

The award notices will be accompanied by a release and, under the Conciliation Agreement, awardees have 60 days from the date of the notices to decide whether to accept their awards and, if so, to return their completed releases. [335-1, at ¶ 48.] The Conciliation Agreement explains that the releases will have no impact on individuals' ability to file a future "charge or complaint of discrimination, speak[] about their work environment, or participat[e] in future EEOC proceedings." [*Id*.] The Court turns first to Plaintiffs' request for a stay.

II.    **Analysis**

A.    **Standing**

Defendant argues that Plaintiffs' motion should be denied because Plaintiffs lack standing to interfere with the claims process established through the EEOC conciliation process. "[S]tanding is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (internal quotation

marks omitted)); see also *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) ("Article III of the Constitution limits our review to actual 'Cases' and 'Controversies' brought by litigants who demonstrate standing."). In order to have standing to seek injunctive relief, Article III requires a plaintiff to show that she "is under threat of suffering an 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). An injury in fact "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted).

Plaintiffs contend that the "issuance of notices of awards should be stayed until it is clear that putative class members * * * are being adequately informed of their rights and options." [320, at ¶ 30.] Plaintiffs argue that they have standing to seek injunctive relief on behalf of putative class members because proposed class representatives and the Court owe a fiduciary duty to all members of the class equally. However, in making that argument, Plaintiffs rely on cases in which a class had been certified at least at some point in the litigation. *Dechert v. Cadle Co.*, 333 F.3d 801, 803 (7th Cir. 2003) (class certification vacated where bankruptcy trustee was sole class representative because the trustee's fiduciary duties to creditors could conflict with his fiduciary duties to the class as a class representative); *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002) (district court has a duty to notify absent class members of the decertification of a class). Plaintiffs here are not now—and never have been—representatives of any class. The Seventh Circuit has held that where, as here, no class has been certified, "the only interests at stake are those of the named plaintiffs." *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 310 n. 1 (1976)). Plaintiffs fail to address this

controlling case law, which forecloses their bid for injunctive relief. Simply put, in the absence of a certified class, the named plaintiffs in a putative class action lack standing to seek injunctive relief on behalf of anyone but themselves.

Perhaps recognizing this problem, Plaintiffs contend that even if they lack standing to seek relief on behalf of putative absent class members, they can seek relief on their own behalf, as they all have participated in the EEOC conciliation process. [340, at 11.] Specifically, each named Plaintiff received a claim form and at least one—though apparently only one—named Plaintiff has actually submitted a claim form. [*Id*.] According to Plaintiffs, a stay is necessary to make sure that those participating in the EEOC conciliation process "are being adequately informed of their rights and options." [320, at ¶ 30.] But insofar as the request for relief is limited to Plaintiffs themselves, each is represented by counsel and thus has had every opportunity to be informed of her rights and options. In short, relief to benefit the named Plaintiffs would be redundant and ineffectual and relief to anyone else lies outside the scope of any complaint that Plaintiffs have standing to bring. See *McKenzie*, 118 F.3d at 555 ("The fundamental problem with this injunction is that plaintiffs lack standing to seek—and the district court therefore lacks authority to grant— relief that benefits third parties.").

B.      Authority to Stay

Although Plaintiffs' request for a stay fails for lack standing, that is not its only shortcoming. Even if Plaintiffs had standing to seek injunctive relief on behalf of putative class members, they cite no statute or case law even suggesting that this Court has authority to interfere with the EEOC conciliation process. "In pursuing the goal of bringing employment discrimination to an end, Congress choose cooperation and voluntary compliance as its preferred means." *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1651 (2015) (internal quotations and

alterations omitted).   To that end, Title VII "imposes a ***duty*** on the EEOC to attempt conciliation

of a discrimination charge prior to filing a lawsuit."   *Id*. (emphasis added).   In accordance with

that mandate, Title VII "grants the EEOC control over its own investigation and enforcement

efforts," *EEOC v. Union Pac. R.R. Co.*, 867 F.3d 843, 851 (7th Cir. 2017), cert denied, *Union Pac.*

*R.R. Co. v. EEOC*, 138 S. Ct. 2677 (2018), and its "enforcement authority is not derivative of the

legal rights of individuals even when it is seeking to make them whole."   *EEOC v. Sidley Austin*

*LLP*, 437 F.3d 695, 696 (7th Cir. 2006).   Title VII also makes clear that the EEOC, not the courts,

controls the conciliation process.   For example, Title VII establishes that the goal of conciliation

is "a conciliation agreement acceptable to the Commission."   42 U.S.C. 200e-5(f)(1).

Furthermore, in *Mack Mining*, the Supreme Court confirmed that Title VII "leaves to the EEOC

the ultimate decision whether to accept a settlement[.]"   135 S. Ct. at 1649-50.

In their motion to stay, Plaintiffs seek to at least temporarily enjoin the implementation of

the settlement between the EEOC and Defendant.   Plaintiffs do not contend that the EEOC was

without authority to enter into the Conciliation Agreement (nor could they given the

Congressionally-conferred authority discussed above).   Still, Plaintiffs contend that the Court can

interrupt the conciliation process because the EEOC is not adequately protecting the interests of

putative class members who have submitted claims forms.   This argument, too, suffers from a

paucity of statutory or decisional support.

As noted in the EEOC's position letter submitted with Defendant's opposition, the

Administrative Procedure Act does not authorize the relief sought by Plaintiffs here.   [335-3, at 3

(collecting cases).]   The APA generally does not provide for judicial review of agency action or

inaction.   See, *e.g., McCottrell v. E.E.O.C.*, 726 F.2d 350, 351 n. 1 (7th Cir. 1984) ("[T]his court

has held that the Administrative Procedure Act does not provide a right to judicial review of an

adverse EEOC determination." (citation omitted)).   Under the APA, "agency action is reviewable

in that narrow realm of 'finality' and only in the absence of another 'adequate remedy in a

court[.]'"   *Stewart v. Equal Employment Opportunity Comm'n*, 611 F.2d 679, 683 (7th Cir. 1979)

(quoting *Deering Milliken, Inc. v. Johnston*, 295 F.2d 856, 865 (4th Cir. 1961)).   Plaintiffs have

not established that the EEOC's actions here fall within the narrow category of agency action that

is subject to judicial review.

The only authority Plaintiffs have identified for interfering with the EEOC's conciliation

process is the Court's authority to issue preliminary injunctive relief under Federal Rule of Civil

Procedure ("Rule") 65 [320, at ¶¶ 31-38].   To obtain preliminary injunctive relief,[2] a party must

make a threshold showing that "(1) [her] underlying case has some likelihood of success on the

merits, (2) no adequate remedy at law exists, and (3) [s]he will suffer irreparable harm without the

injunction."   *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss,* 496

F.3d 620, 622 (7th Cir. 2007)).   "If those three factors are shown, the court then must balance the

harm to each party and to the public interest from granting or denying the injunction."   *Id*.

(citations omitted).

Although the Court has authority to order preliminary injunctive relief, the exercise of that

authority must be tied to some substantive basis for relief.   Here, there is a disconnect between

the relief sought in the pending motion to stay (intervention in the EEOC's conciliation process)

and the relief sought in this lawsuit (class certification followed by a finding of liability on the

merits of the claims in the complaint).   *Gonzales v. O Centro Espirita Beneficente Uniao do*

*Vegetal*, 546 U.S. 418, 429 (2006) ("The * * * burdens at the preliminary injunction stage track

---

[2] Plaintiffs do not clearly indicate whether they are seeking a temporary restraining order or a preliminary injunction.   Because the standard for issuing a TRO is the same as the standard for issuing a PI, *McDonald v. Cook Cty. Officers' Electoral Bd.*, 2018 WL 1334931, at *4 (N.D. Ill. Mar. 15, 2018), the Court refers to the relief sought as preliminary injunctive relief.

the burdens at trial."). Defendant pointed out this disconnect in its opposition, yet Plaintiffs have failed to address it.

Furthermore, putting aside the disconnect between the relief sought in Plaintiffs' motion and the relief sought in this lawsuit, Plaintiffs fail to make the requisite showing necessary for preliminary injunctive relief. Preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Although Plaintiffs assert that they have a better than negligible chance of success in prevailing on at least one of their claims and in prevailing on class certification, Plaintiffs do not further develop that argument. Plaintiffs' moving papers therefore do not establish any likelihood of success on the merits.

The balance of harms and the public interest also weigh against ordering preliminary injunctive relief. To begin, the purported harm identified by Plaintiffs (*i.e.*, a lack of information available to putative class members) is highly speculative. Defendant and the EEOC entered into a Conciliation Agreement setting forth a detailed claims process under which claimants are eligible to receive monetary compensation from the settlement fund. Under the terms of the Conciliation Agreement, claimants learn the amount of monetary relief they will receive through the claims process *before* deciding whether to settle their claims or pursue other avenues of relief. The claims form explains that claimants will waive their right to pursue legal action by accepting monetary payment through the claims process. The claims form also provides contact information for an individual at the EEOC who is available to answer "any questions" that claimants may have "concerning this matter."

Furthermore, since the EEOC agreement was announced, the *New York Times* has published a lengthy article that described in considerable detail both the EEOC investigation and

settlement as well as this lawsuit.[3]   Given the unusually high degree of publicity about this dispute

and the relatively large number of named Plaintiffs, it is hard to believe that putative class members

could be unaware of the parallel proceedings in this Court and the EEOC and their opportunity to

forego any claim award and remain a putative class member.[4]   Plaintiffs' argument that putative

class members lack information is speculative and therefore cannot serve as the basis for seeking

preliminary injunctive relief.  *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage

Co.*, 414 F.3d 700, 704 (7th Cir. 2005).

Although Plaintiffs make much of the fact that just half of the female claimants have been

deemed eligible to recover an award, none of those claimants have been prejudiced as a result of

their participation in the conciliation process.   Unsuccessful claimants in the EEOC process

remain able to pursue their claims in litigation, either independently or as part of the putative class.

Staying award notices pending resolution of Plaintiffs' renewed motion for class certification

would do nothing to help these claimants.   However, staying the notices would prevent hundreds

of women who have submitted claims forms from receiving notification of their awards and a cash

payment if they accept those awards.   Given that these women affirmatively have indicated a

desire to participate in the conciliation process (at least to some extent), the Court sees no reason

---

[3] Susan Chita & Catrin Einhorn, "How Tough Is It to Change a Culture of Harassment? Ask Women at Ford?" *New York Times*, Dec. 19, 2017,
available at https://www.nytimes.com/interactive/2017/12/19/us/ford-chicago-sexual-harassment.html.

[4] To the extent that Plaintiffs are arguing that putative class members cannot make an informed decision regarding the claims process because of a lack of certainty regarding class certification, such an argument fails. Even if this Court certifies a class, the class always could be decertified (*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015)) or subject to appeal (see Fed. R. Civ. P. 23(f)). To the extent that Plaintiffs are arguing that putative class members cannot make an informed decision regarding the claims process due to a lack of certainty regarding whether *American Pipe* tolling applies to the period in which a claimant may file an EEOC charge, that issue will not be resolved by the Court's disposition of Plaintiffs' pending class certification motion.   Nor would a ruling on the *American Pipe* issue standing alone provide certainty to the class, as that ruling too would be subject to appeal in a circuit where there is no controlling authority.

to delay the conciliation process for these putative class members.  Although named Plaintiffs have chosen litigation over conciliation, this does not mean that all putative class members would prefer litigation.  The Court sees no reason why these putative class members should not be permitted to determine for themselves whether they want to settle their claims as part of the conciliation process or pursue other avenues of relief.  The EEOC makes several salient points in this regard in its position letter, which states:

> Plaintiffs' Motion is a clear attempt to frustrate the resolution process agreed to by [the] EEOC and [Defendant].  The EEOC has been charged by Congress with responsibility for the enforcement of federal laws prohibiting discrimination, which includes the investigation and resolution of charges of such discrimination.  Critical to the agency's mission to eradicate employment discrimination is ensuring that conciliation agreements are implemented and enforced.  The delay requested by Plaintiffs here will clearly impede [the] EEOC's enforcement of the laws.

[335-3, at 3.]  Given the EEOC's congressional mandate, the Court is not inclined to interfere with the claims process that it administers.

To be sure, both named Plaintiffs and absent putative class members retain the option of pursuing their claims in this Court and seeking any relief that this Court has authority to provide.  Similarly, successful claimants in the EEOC process who are unhappy with the amount of their award are free to reject it and remain in this action.  However, Plaintiffs have not identified any authority for the Court to intervene in the separate conciliation process being conducted pursuant to the EEOC's congressional mandate.

### C.     Notice

In the alternative to a stay, Plaintiffs seek permission to send court-approved, pre-certification notices to female conciliation claimants and putative class members "to inform them of their options and rights."  [320, at ¶¶ 55-56.]  Rule 23(d)(1) states, in relevant part: "In conducting an action under this rule, the court may issue orders that * * * (B) require—to protect

class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action." Fed. R. Civ. P. 23(d)(1)(B). Although Rule 23(d) allows for notice to class members after a class has been certified, see, e.g., *Culver v. City of Milwaukee*, 277 F.3d 908, 911 (7th Cir. 2002) (notice allowed under the former Rule 23(e) upon decertification of a class); *Howard v. Securitas Sec. Servs., USA Inc.*, 630 F. Supp. 2d 905, 906 (N.D. Ill. 2009) (notice allowed in Fair Labor Standards Act case in which class already had been conditionally certified), it is by no means clear that Rule 23(d) gives courts authority to issue notice to putative class members when no class has ever been certified. See, *e.g., Puffer v. Allstate Ins. Co.*, 614 F. Supp. 2d 905, 911 (N.D. Ill. 2009) (recognizing an ambiguity in Rule 23(d) but concluding that the court has discretion "to order that putative class members be notified of the denial of class certification").

The Court is not persuaded that the notice requested by Plaintiffs would be appropriate in the present circumstances. In *Puffer*—the only case Plaintiffs have cited in which the Court issued notice to putative class members when no class had ever been certified[5]—the court concluded that it had discretion to issue notice to putative class members regarding the denial of class certification and elected to exercise that discretion. 614 F. Supp. 2d at 914-15. Of course, in that case, the denial of class certification was a "step in the action" and notice therefore fell squarely within the scope of subsection (i) of Rule 23(d)(1)(B). By contrast, Plaintiffs' briefing

---

[5] Plaintiffs also cite to *Sapia v. Bd. of Educ. of City of Chicago*, 2018 WL 1565600 (N.D. Ill. Mar. 31, 2018). However, in that case, the court denied the plaintiffs' request to notify putative class members that the plaintiffs were removing class allegations from their complaint. *Id*. at 8-11. Furthermore, the plaintiffs in that case were seeking to notify putative class members of a step in that action, not in a parallel agency proceeding.

makes clear that the notice they wish to transmit in this instance concerns a step in the EEOC conciliation process, not a step in this action. At present, this action concerns only the interests of the thirty-one named Plaintiffs (see *McKenzie*, 118 F.3d at 535), only one of whom has submitted a claim in the EEOC process. Accordingly, Plaintiff's alternative request for notice to putative class members also is denied.

## III. Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion to stay [320] the distribution of notices.

Dated: December 19, 2018

Robert M. Dow, Jr.
United States District Judge